DORSEY & WHITNEY LLP
Bruce R. Ewing
Fara S. Sunderji
Amanda M. Prentice
51 West 52nd Street
New York, New York 10019
(212) 415-9200

*Attorneys for Plaintiff*
*Girl Scouts of the United States of America*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
GIRL SCOUTS OF THE UNITED STATES   :
OF AMERICA,   :
   :      18-CV-
           Plaintiff,   :
   :
     - against -   :
   :      **COMPLAINT WITH JURY**
BOY SCOUTS OF AMERICA,   :      **DEMAND**
   :
         Defendant.   :
-----------------------------------------------------------------X

Plaintiff Girl Scouts of the United States of America, a congressionally chartered corporation ("GSUSA" or "Plaintiff"), complains and alleges against the Boy Scouts of America, a congressionally chartered corporation ("BSA" or "Defendant"), as follows:

## INTRODUCTION

1. For over more than a century, GSUSA has established itself as the preeminent, best-known provider of leadership development services for American girls. Dedicated to the proposition that girls should be prepared for a lifetime of success, leadership and adventure, GSUSA has developed award-winning programs that empower girls to attain their full potential, develop a strong sense of self, and learn positive values that will aid them throughout their lives. Many millions of girls have participated in and benefited from GSUSA's services, which are

founded on research showing that girls learn best in environments led by girls, through programs tailored specifically for girls.  GSUSA's long track record of success is best symbolized by the extraordinary number of GIRL SCOUTS alumnae who are leaders across all segments of American society, in fields that include government, science, sports, industry, culture and many others.

2.     The core elements of GSUSA's brand identity among the American public are its famous, registered GIRL SCOUTS trademarks, which are powerful symbols of a unique, extraordinarily valuable goodwill that has grown over decades and been carefully protected by GSUSA.  To the vast majority of Americans, the GIRL SCOUTS trademarks embody the values of an organization whose unique and specific mission is to advance the cause of girls' leadership and empowerment through programs exclusively for girls, so that they will mature into the extraordinary women that every girl can and should become.

3.     Throughout GSUSA's history, it has coexisted with defendant BSA, which has long offered programs aimed at boys under the BOY SCOUTS trademark.  Like the GIRL SCOUTS trademark, the BOY SCOUTS trademark is a symbol of youth development programs that, for more than a century, have been aimed at, led by and developed primarily for boys.  Thus, even though both GSUSA and BSA use the term SCOUTS as part of their core trademarks, the organizations are distinct, with one offering leadership programming developed for and aimed at girls, and the other offering programming developed for and aimed at boys.

4.     However, that core gender distinction between the two organizations and their use of the term SCOUTS and variations thereof has been altered by BSA's recent decision to offer *all* of its services to *both* boys *and girls* of all ages for the first time in its long history.  Indeed, even though GSUSA and BSA have Congressional charters and separate grants of intellectual

2

property rights that are specific to girls and boys, respectively, BSA is now using its trademarks

in a manner that is both new and uniquely damaging to GSUSA, its trademarks and their

underlying goodwill.  In particular, given its significant programming shift, BSA is now trying to

alter its core brand identity from BOY SCOUTS to SCOUTS, through the use of communicative

elements like the slogan "Scout Me In" and the new name by which it will refer to its best known

Boy Scout program – "Scouts BSA" with members being called "Scouts."

     5.     BSA does not have the right under either federal or New York law to use terms

like SCOUTS or SCOUTING by themselves in connection with services offered to girls, or to

rebrand itself as "the Scouts" and thereby falsely communicate to the American public that it is

now the organization exclusively associated with leadership development services offered under

that mark to girls.  Such misconduct will not only cause confusion among the public, damage the

goodwill of GSUSA's GIRL SCOUTS trademarks, and erode its core brand identity, but it will

also marginalize the GIRL SCOUTS Movement by causing the public to believe that GSUSA's

extraordinarily successful services are not true or official "Scouting" programs, but niche

services with limited utility and appeal.

     6.     Since BSA's announcement that it would admit girls to its core programs,

GSUSA's fears about the damage that would be caused to its trademarks and the mission those

trademarks symbolize have been realized.  Throughout the country, families, schools and

communities have been told that GSUSA and BSA have merged, or even that GSUSA no longer

exists.  Parents interested in signing up for GIRL SCOUTS programs have instead mistakenly

signed up for the new girls' programs offered by BSA.  BSA regional councils and troops have

used the GIRL SCOUTS trademarks in their advertising and marketing materials since BSA's

announcement occurred.  BSA is even using quotations from GSUSA's founder, Juliette Gordon

Low, about the value of GIRL SCOUTS programs to promote **_BSA's_** newly launched services. And even though GSUSA has repeatedly called to BSA's attention these ongoing instances of actual confusion, and the unauthorized uses of GSUSA's intellectual property, they keep recurring.

7.        Only GSUSA has the right to use the GIRL SCOUTS and SCOUTS trademarks with leadership development services for girls.  To the extent BSA wishes to open its programs to girls, it cannot do so using GSUSA's intellectual property without authorization, in a manner that causes confusion among the public and harms the goodwill of the GIRL SCOUTS trademarks.  It is therefore imperative that this Court take action to prevent the ongoing acts of trademark infringement, unfair competition and dilution perpetrated by BSA, both directly and vicariously through its regional and local councils, in order to prevent further damage to GSUSA's trademarks and preserve their goodwill.

**THE PARTIES**

8.        GSUSA is a congressionally chartered corporation organized under 36 U.S.C. § 80301.  GSUSA's headquarters is located at 420 Fifth Avenue, New York, New York.

9.        Defendant is a congressionally chartered corporation organized under 36 U.S.C. § 30901.  Upon information and belief, Defendant's headquarters is located at 1325 West Walnut Hill Lane, Irving, Texas.

**JURISDICTION AND VENUE**

10.        This is an action for direct and vicarious trademark infringement, trademark dilution and unfair competition in violation of the U.S. Trademark Act of 1946, 15 U.S.C. §1051, *et seq*. (the "Lanham Act"), and for trademark infringement, dilution, unfair competition, tortious

interference with prospective economic advantage, and deceptive business practices under New York law.

11.     This Court has original jurisdiction over GSUSA's federal trademark infringement, trademark dilution and unfair competition claims pursuant to 15 U.S.C. §§ 1114, 1121, 1125 and 28 U.S.C. §§ 1331 and 1338.

12.     This Court has supplemental jurisdiction over GSUSA's New York claims under 28 U.S.C. § 1367(a) because these claims are so related to the federal Lanham Act claims that they form part of the same case or controversy under Article III of the United States Constitution.

13.     This Court has personal jurisdiction over Defendant under multiple prongs of the New York long-arm statute, CPLR 302, as well as under the Due Process Clause of the U.S. Constitution.  Specifically, Defendant regularly transacts business within the State of New York, including by, upon information and belief, offering its services and programs within New York to its regional councils and local troops, and by raising funds for its services and programs within New York.  Defendant has been registered since at least 1996 with the New York State Department of Law, Charities Bureau, as a charitable organization that operates and raises funds in the State of New York.  Upon information and belief, Defendant hires lobbyists and conducts lobbying in New York.  In addition, Defendant contracts to supply its leadership development programs within New York to regional councils and troops located here, making unauthorized use of GSUSA's trademarks in the process.

14.     In addition, Defendant has engaged in tortious conduct within the State of New York by disseminating or causing to be disseminated within the State of New York advertising, promotional, marketing and programming materials that are violative of GSUSA's trademark

and other rights as set forth herein, and that are likely to cause and have caused confusion to occur within the State of New York, and caused damage to GSUSA within the State of New York.

15.     Finally, Defendant has engaged in tortious conduct outside the State of New York that has caused injury to GSUSA within New York by disseminating or causing to be disseminated advertising, promotional, marketing and programming materials that are violative of GSUSA's trademark and other rights as set forth herein, and that are likely to cause and have caused confusion in New York and throughout the United States.  Upon information and belief, and as set forth above, Defendant both regularly solicits business, engages in a persistent course of conduct, and derives substantial revenue from services rendered within the State of New York. Likewise, Defendant also should reasonably expect its misconduct as described herein to have consequences within the State of New York, given its awareness of GSUSA's location here. Upon information and belief, Defendant also derives substantial revenue from interstate commerce.

16.     Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. § 1391(b) because: (i) GSUSA maintains its headquarters in this judicial district; (ii) Defendant's tortious conduct has caused and will continue to cause injury in this judicial district; (iii) Defendant conducts regular and systematic business in this district; and/or (iv) a substantial part of the events or omissions giving rise to GSUSA's claims occurred in this judicial district.

## FACTUAL BACKGROUND

### GSUSA AND THE GIRL SCOUTS TRADEMARKS

17.     GSUSA is a national, nonprofit organization that was incorporated in 1915 and thereafter congressionally chartered on March 16, 1950.  It is currently the largest girl-led leadership development organization for girls in the world, and its iconic GIRL SCOUTS program is both well-known and highly regarded.  Founded in 1912 by Juliette Gordon Low in Savannah, Georgia, GSUSA promotes, encourages and inspires girls to develop courage, confidence and character through a variety of activities and practical skills programs.

18.     Over the past 106 years, many millions of American women have participated in the GIRL SCOUTS program coordinated by GSUSA, and GSUSA currently has about 2 million active members.

19.     Over the years, Girl Scouts have been able to earn over 400 types of badges covering a broad range of skills and topics that include, among other things, camping, mechanical engineering, environmental stewardship, robotics, cyber security, financial literacy and athletics.  Girl Scouts are able to participate in a variety of skill-based programs that include programs about the outdoors, STEM and life skills.  The Girl Scout Cookie Program is also one of the most famous entrepreneurship and financial literacy programs in the United States, helping girls to develop essential life and business skills.

20.     GSUSA recruits and offers programs for girls in grades K-12.  The specific programs available to girls are determined by grade level:  (i) grades K-1 are considered "Daisies;" (ii) grades 2-3 are considered "Brownies;" (iii) grades 4-5 are considered "Juniors;" (iv) grades 6-8 are considered "Cadettes;" (v) grades 9-10 are considered "Seniors;" and (vi) grades 11-12 are considered "Ambassadors."  All are considered Girl Scouts.

21.     The Girl Scout Movement in the United States, its territories and possessions is directed and coordinated by GSUSA at the national level.  GSUSA charters 112 local Girl Scout councils across the nation that deliver Girl Scout programming within their respective jurisdictions.  GSUSA, among other things, licenses the GIRL SCOUTS and related trademarks, and other intellectual property, to each of the local councils.  Individual girls may become Girl Scouts, and multiple Girl Scouts band together to form troops, which typically consist of 12-20 girls, led by a volunteer registered with a chartered Girl Scout council.

22.     Girls in grades K-12 may sign up to join Girl Scouts by filling out a form online or signing up through local recruiting efforts.  It is common for local Girl Scout troops to host tables at back-to-school events, churches and other community locations at the beginning of the school year for the purpose of renewing or enrolling new members.

23.     GSUSA's brand and programs have received many prestigious awards, including being designated as a Top 10 brand for the last two years in the World Value Index compiled by the Enso branding agency, as well as numerous other accolades.  GSUSA has been recognized and honored by Presidents throughout history, including by President George H.W. Bush on March 10, 1992.  In 2012, President Barack Obama awarded the Presidential Medal of Freedom to Juliette Gordon Low posthumously for her work in founding the Girl Scouts.

24.     GSUSA has long enjoyed an excellent reputation among the consuming public with respect to the positive and safe environment it creates for all girls who participate in its leadership programs.  Among other things, the public perceives GSUSA programs as welcoming to all girls, regardless of race, ethnicity, background, disability, family structure, religious beliefs and socioeconomic status.

25.     GSUSA is entitled to the exclusive use of the GIRL SCOUTS and related trademarks adopted by GSUSA pursuant to 36 U.S.C. § 80305, which in relevant part states that GSUSA "has the exclusive right to use all emblems and badges, descriptive or designating marks, and words or phrases the corporation adopts, including the badge of the Girl Scouts."

26.     The United States Patent and Trademark Office (the "PTO") has recognized the congressional protections afforded to GSUSA that grant it the exclusive right to use and register the GIRL SCOUTS mark in every class of goods and services recognized by the PTO, under Serial No. 89/000,078.

27.     To further protect its famous brand, and to place the public on notice of its trademark rights, GSUSA has secured and owns multiple trademark registrations for its GIRL SCOUTS and GIRL SCOUTS & Profile Design marks, including:



- **Girl Scouts**, incontestable U.S. Trademark Registration No. 1,318,643, issued February 5, 1985, in connection with "educational services-namely, conducting programs and activities for girls and young women to promote social, physical and intellectual growth and development" in International Class 41;



- **Girl Scouts**, incontestable U.S. Trademark Registration No. 1,142,655, issued December 9, 1980, in connection with "t-shirts" in International Class 25;



- **Girl Scouts**, incontestable U.S. Trademark Registration No. 1,142,666, issued December 9, 1980, in connection with "embroidered patch" in International Class 26;

- **CAMPUS GIRL SCOUTS**, incontestable U.S. Trademark Registration No. 0,905,264, issued March 25, 1968, in connection with "organizing and maintaining student groups in colleges and universities to develop leadership and fellowship through continued participation in such groups and through service within the college community" in Class 42;

- **DAISY GIRL SCOUT**, incontestable U.S. Trademark Registration No. 1,480,077, issued March 8, 1988, in connection with "educational services, namely, conducting programs and activities for girls and young women to promote social, physical and intellectual growth and development" in Class 41;

- **GIRL SCOUT COOKIE SALE**, incontestable U.S. Trademark Registration No. 1,816,138, issued January 11, 1994 in connection with "charitable fundraising services featuring the sale of cookies" in Class 36;

- **GIRL SCOUTS**, incontestable U.S. Trademark Registration No. 1,816,847, issued January 18, 1994, in connection with "stationery, note pads, book marks, stickers, pens, pencils and posters" in Class 16 and "sweaters, shirts, blouses, tee-shirts, ties, shorts, tights, socks, sweatshirts, sweatpants, scarves, hats, headbands, sweatbands and visors in Class 25;

- **GIRL SCOUT GOLD AWARD**, incontestable U.S. Trademark Registration No. 2,094,328, issued September 9, 1997, in connection with "jewelry" in Class 14, "paper goods in the nature of printed invitations, folders and certificate of merit and distinction" in Class 16, "picture frames and an award composed of a glass disc mounted on a wood base with an engraved brass plaque" in Class 20, "mugs" in Class 21, and "educational and entertainment services, namely, providing recognition to individuals for the purpose of outstanding service, achievement and quality in the field of scouting" in Class 41;

- , incontestable U.S. Trademark Registration No. 4,085,279, issued January 10, 2012, in connection with "tote bags" in Class 18, "clothing, namely, shirts, tee-shirts, and sweatshirts" in Class 25, and "educational services, namely, conducting programs and activities for girls to promote social, physical and intellectual growth and development" in Class 41;

- , U.S. Trademark Registration No. 4,276,193, issued January 15, 2013, in connection with "nut products, namely, candied nuts, flavored nuts and trail mixes consisting primarily of processed nuts" in Class 29 and "cookies, chocolate candies and chocolate covered nuts" in Class 30;

- , U.S. Trademark Registration No. 4,481,906, issued February 11, 2014, in connection with "providing recognition and incentives by way of awards to demonstrate outstanding service, achievement and quality in the field of scouting" in Class 41;

- **GIRL SCOUT COOKIE PROGRAM**, U.S. Trademark Registration No. 4,558,536, issued July 1, 2014, in connection with "educational services, namely, conducting cookie-related programs and activities for girls to promote entrepreneurial skills, business management, and intellectual growth and development" in Class 41;

- **girl scouts** , U.S. Trademark Registration No. 4,200,117, issued August 28, 2012, in connection with "stationery, namely, pens and pencils" in Class 16;

- **GIRL SCOUTS**, U.S. Trademark Registration No. 4,727,381, issued April 28, 2015, in connection with "lip balm; lip gloss" in Class 3; and

- **GIRL SCOUT S'MORES**, U.S. Trademark Registration No. 5,336,893, issued November 14, 2017, in connection with "cookies" in Class 30.

True and accurate copies of the aforementioned trademark registrations are attached collectively as Exhibit A.

28.     In addition to these federally registered marks, GSUSA owns common law rights in each of the trademarks identified above, as well as in all variations of GIRL SCOUTS that GSUSA has used in connection with girls' leadership development services and related products or services, as well as any related trade dress and other designations of source (collectively, hereinafter, the "GS Marks").  With respect to the term SCOUTS and SCOUTING in particular, by virtue of the long history of use of the GIRL SCOUTS trademark by GSUSA, the consuming public has come to recognize SCOUTS and SCOUTING as trademarks that, like the other GS Marks, belong exclusively to GSUSA when used in connection with leadership programs and related services for girls.

29.     The GS Marks have been extensively advertised and promoted in various media in the United States, including online through the GIRL SCOUTS website (https://www.girlscouts.org/) and social media sites such as Facebook.

11

30.     The GIRL SCOUTS mark is distinctive, famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and uniquely associated by consumers with GSUSA and its programs, services and products, both in the State of New York and the United States as a whole.  The GIRL SCOUTS mark serves as a strong source identifier by virtue of its long use, extensive promotion and long history with American consumers, and it is entitled to the widest scope of protection under federal and state anti-dilution laws.

31.     GSUSA has marketed and offered its youth development services and programs for girls featuring the GIRL SCOUTS mark in interstate commerce since at least as early as 1913.

32.     By virtue of its use, federal trademark registrations, and congressional charter, GSUSA has the exclusive right to use the GS Marks, and to prevent the use of any marks or trade dress confusingly similar thereto, in commerce in connection with youth development services and programs for girls.

### BSA AND ITS USE OF THE BOY SCOUTS TRADEMARK

33.      BSA is a congressionally chartered corporation that provides youth development services and programs for boys.  BSA is the national organization that directs and coordinates leadership services and programs under the BOY SCOUTS trademark.  Upon information and belief, those services and programs are offered through regional councils and local troops that operate under various trademarks used under license or authorized for use by BSA.

34.     According to BSA's congressional charter as set forth in 36 U.S.C. § 30902, its purpose is "to promote, through organization, and cooperation with other agencies, the ability of boys to do things for themselves and others, to train them in scoutcraft, and to teach them

patriotism, courage, self-reliance, and kindred virtues, using the methods that were in common

use by boy scouts on June 15, 1916."

35.     While GSUSA and Defendant are both congressionally chartered corporations

that offer services to American youth, the two organizations are not associated with one another,

and never have been.  Defendant is also not endorsed or sponsored by or affiliated with GSUSA.

36.     Defendant and GSUSA have coexisted in the marketplace for many decades,

with each offering youth development services and programs, under the "SCOUT," "SCOUTS"

and "SCOUTING" trademarks.  Crucially, and until recently, these terms when used have either

been preceded by words like BOY or GIRL that have highlighted the gender-specific nature of

each organization's programs, or appeared in a context making clear that the programs at issue

were developed by one organization or the other.

37.     GSUSA has always offered and rendered its services to girls.  Defendant

historically targeted its core programming to boys, has represented that its congressional charter

restricted its BOY SCOUTS and CUB SCOUTS programs to boys,[1] and has used its marks in

connection with such boy programming.

---

[1] See, *e.g.*, Long Island Girl Crusades for Right to Join Boy Scouts, *Southampton Patch* (Aug. 10, 2016, 1:41 PM, updated Aug. 11, 2016, 8:03 AM), https://patch.com/new-york/southampton/bridgehampton-girl-crusades-right-join-boy-scouts (quoting BSA spokesperson providing reason for denying a girl admission to Boy Scouts:  "[T]he Boy Scouts of America was chartered by Congress in 1916 to serve boys and young men across the nation through the Cub Scouts and Boy Scouts programs, which are year-round programs for boys in the first grade through age 18. We have since developed alternative programs that are co-ed, such as Venturing, but to change the Cub or Boy Scouting programs would go outside the bounds of our charter"; 15-Year-Old Girl Denied Permission To Join Boy Scouts Because Of Gender, CBS New York (Aug. 10, 2016, 5:46 PM), http://newyork.cbslocal.com/2016/08/10/girl-wants-to-join-boy-scouts/ (same); Petition for Writ of Certiorari, Boy Scouts of America v. Dale, 530 U.S. 640 (2000) (No. 99-699), 1999 WL 35238158, at *18 ("Boy Scouting is an expressive organization with the purpose of instilling in boys and young men certain ideals of what it means to be a man. Youth membership is therefore confined to males….").

38.     BSA expressly acknowledged this important division in trademark rights before the Trademark Trial and Appeal Board ("TTAB") of the PTO.  Specifically, in 2004, BSA admitted in a filing made in a trademark opposition proceeding, No. 91157313, that GSUSA owned exclusive, congressionally granted rights to SCOUTS and SCOUTING with respect to youth development programs for girls.  It further stated that, "the Boy Scouts controls use of the marks [SCOUT and SCOUTING] in connection with development programs for boys, while Girl Scouts controls use of the marks in connection with development programs for girls. Their joint use of the marks has been expressly recognized by Congress."  True and accurate copies of excerpts from this filing BSA made with the TTAB are attached as Exhibit B.  *See* pp. 20-21.

39.     When examining Defendant's SCOUTING trademark, the PTO requested that BSA limit the scope of goods covered by that mark to magazines offering instructional advice specific to boys, "since a similar Federally distributed magazine sponsored for girls and young women also uses the term 'Scout' and 'Scouting' in referring to organizational activities and members of its organization."  *See* PTO Office Action issued on June 15, 1982, in connection with Application Serial No. 282546, a true and accurate copy of which is attached as Exhibit C.  Plainly, the other "organization" in question is GSUSA.

40.     Although Defendant has previously offered some limited programs in which girls could participate, it has not, until recently, offered any girls' programming under the marks SCOUT or SCOUTING alone (without other source-identifying distinguishing leading words) in connection with those programs targeted to girls.  For example, Defendant previously offered programs to young women under the EXPLORER and VENTURING marks.

41.     Defendant has long acknowledged that use of the SCOUT or SCOUTING marks, unaccompanied by distinguishing terms or devoid of context, even in connection with its programs for boys, could result in confusion.  For example, on January 23, 1979, Defendant conceded in a letter to GSUSA that its use of its SCOUTING/USA mark (which obviously combines SCOUTING with the merely descriptive and therefore non-distinctive term "USA") could mislead the public into believing that GSUSA is affiliated with BSA, or could be confusing to donors who intended to donate to BSA or GSUSA.  For this reason, BSA took care at that time to make sure that its councils and troops included BSA's full name in marketing materials in which that mark was used.  A true and accurate copy of this correspondence is attached as Exhibit D.  Upon information and belief, this trademark is no longer used by BSA.

42.      In another communication sent by BSA to GSUSA on April 26, 1978, Defendant stated that it had taken "several steps that should assist potential public confusion that the communicative term Scouting/USA also refers to [GSUSA].  For one thing, we have instructed our Scouters, including our Public Relations staff, to use the term sparingly, and when it is used to always also feature the words 'Boy Scouts of America.'" A true and accurate copy of this correspondence is attached as Exhibit E.  Significantly, these steps to prevent potential confusion caused by the use of the term SCOUTING/USA were taken, even though BSA only admitted boys to its central programs at that time.

43.     Defendant has therefore long recognized both: (i) GSUSA's trademark rights in the GS Marks, including SCOUTS and SCOUTING, when used in connection with leadership programs for girls and related services and products; and (ii) that Defendant's use of the terms SCOUT or SCOUTING preceded by other distinguishing terms, or outside of a context making clear that the services in question are directed to boys, would be likely to cause confusion.

15

44.     As the correspondence attached as Exhibits D and E demonstrates, all use of the terms BOY SCOUTS, SCOUTS, SCOUTING and related trademarks in connection with services and programs offered or promulgated by BSA is controlled and supervised by BSA through licensing agreements between BSA and its regional councils, local troops and individual leaders.  Upon information and belief, BSA both has the right to supervise and control, and actually does supervise and control, the quality of goods and services offered by Defendant's various regional councils and local troops under BSA's various trademarks, as well as the use of such trademarks by BSA's regional councils, local troops and individual leaders.

45.     Upon information and belief, Defendant has published a manual for its various local councils entitled, "THE COUNCIL: How the Council Functions to Carry Out the Purpose of the BSA," that articulates standards for BSA's programs and services to ensure their overall quality, with which each BSA council must comply.  A true and accurate copy of this publication is attached as Exhibit F.

46.     Upon information and belief, Defendant has also published an "Orientation Guide for Council Officers and Executive Board Members," a true and accurate copy of which is attached as Exhibit G, in order to ensure that its councils adhere to the quality standards set and promulgated by BSA.

47.     Upon information and belief, Defendant also issues charters to each of its local BOY SCOUT councils, and each local council identified in this complaint is currently chartered with Defendant.  Upon information and belief, as a condition of maintaining their charters, and the concomitant right to use the BOY SCOUTS trademarks and variations thereof, each regional BOY SCOUTS council is required to pay fees to BSA.  Upon information and belief, all BOY SCOUTS troop members and leaders are likewise required to be members of BSA and pay

membership dues to BSA in order to remain in operation and retain the right to use the BOY
SCOUTS trademarks.

48.     Defendant has stated that "[i]t is the council's responsibility to provide
leadership and supervision for all program activities within the territory covered by its charter in
such a manner as to ensure compliance with the provisions of the *Charter and Bylaws of the Boy
Scouts of America* and the *Rules and Regulations of the Boy Scouts of America*. The local council
is an administrative organization charged with fulfilling the purpose of the movement." *See* Exh.
G at pg. 7.

### BSA's Acts of Trademark Infringement, Unfair Competition and Dilution

49.      Despite a century of coexistence with GSUSA in their respective, exclusive and
separate markets, and perhaps in an effort to address financial concerns or declining
membership, BSA recently announced that it would expand its offerings under the SCOUTS and
SCOUTING trademark to encompass programs for girls, beginning with the enrollment of girls
into its CUB SCOUTS programs.  A true and accurate copy of Defendant's announcement, dated
October 11, 2017, is attached as Exhibit H.  It then announced that it would open its BOY
SCOUTS program to girls beginning in February 2019.

50.     In May 2018, BSA went one step further by unveiling a new *Scout Me In*
advertising campaign.  In announcing this campaign, BSA stated that "[t]he *Scout Me In*
campaign celebrates [Defendant's] expansion to serve families and welcome girls and boys into
Scouting in communities across the country."  A true and accurate copy of Defendant's press
release dated May 2, 2018, is attached as Exhibit I.  Defendant now uses the SCOUT,
SCOUTING, FAMILY SCOUTING and SCOUT ME IN trademarks to recruit girls into its CUB
SCOUTS and BOY SCOUTS programs and, upon information and belief, it has also directed or

instructed its regional councils and local troops to use these trademarks or variations thereof in connection with programs and services newly offered to girls.

51.     As the May 2, 2018 press release also indicates, SCOUTS BSA has been introduced as the new name of Defendant's programs for youth who are ages 11 to 17, beginning in February 2019, and will replace the longstanding BOY SCOUTS trademark for programs offered to that age group. *Id.* Defendant intends to use the SCOUTS BSA mark in connection with youth development services and programs targeted to girls. In a June 12, 2018 publication entitled "Family Scouting Questions and Answers," a true and accurate copy of which is attached as Exhibit J, Defendant further made clear that participants in the SCOUTS BSA program – boys and girls alike – will be referred to as "Scouts." *Id.* at 10.

52.     Consistent with this message, Defendant is also currently distributing marketing materials, including videos, in which it frequently refers to girls as "Scouts." For example, upon information and belief, Defendant published a video on June 13, 2018, entitled "SCOUT ME IN" that prominently featured girls and included statements by girls such as "the Scouting world starts with my very best, right now self, and will lead me to my very best future self. Scouting will show me a kid who is brave, trustworthy, loyal and kind. . ." Defendants have also published or disseminated numerous other advertisements that are directed to girls, show pictures of girls, and reference the advertised program as SCOUTING or SCOUTS.

53.     Recent U.S. trademark filings made by BSA demonstrate that Defendant is seeking to obtain federal trademark registration rights for its rebranding effort. For example, Defendant filed a trademark application for the SCOUTS BSA mark (Serial No. 87/906,567) with the PTO based on its intent to use the mark in commerce in connection with "educational services, namely, providing programs and activities for youth" in International Class 41.

Defendant also filed a trademark application with the PTO for SCOUTS BSA as a collective membership mark (Serial No. 87/906,407) based on its intent to use the mark in commerce in connection with "indicating membership in an organization for youth."  Finally, Defendant has also filed a trademark application with the PTO for the SCOUT LIFE mark (Serial No. 87/882,226) based on its intent to use this mark in commerce in connection with "magazines directed to the interests of the members of a youth organization" in International Class 16, and "providing online magazines directed to the interests of the members of a youth organization" in International Class 41.

54.     By way of assignment from a university, Defendant also owns a trademark registration for the SCOUT mark (Reg. No. 4,865,183), issued on December 8, 2015, in connection with "education services, namely, providing on-line classes in the fields of math, history, science, economics, social studies, psychology, computer science, and environmental science; education services, namely, providing online courses of instruction at the secondary level and distribution of course material in connection therewith" in International Class 41.

55.     Defendant's decision to expand its core leadership programs to encompass girls of all ages has dramatically changed the circumstances that previously allowed its use of trademarks like SCOUTS and SCOUTING to coexist with the GS Marks without causing confusion.  As a result of this fundamental change in the nature of Defendant's services and how its marks are used, numerous examples of the mis-use of GSUSA's trademarks have come to GSUSA's attention, and actual confusion among members of the public between the two organizations, their services and their trademarks has become rampant.

56.     Indeed, acting at the direction of or instructed by BSA in connection with the implementation of its rebranding effort, Defendant's regional councils, local troops and

19

individual leaders have used the SCOUTING and SCOUTS marks, and variations thereof, to promote, market, fundraise, deliver services, and advertise their activities targeted to girls in a manner violative of GSUSA's valuable trademark rights, as demonstrated in the examples below. Upon information and belief, in each and every one of these examples, the councils, troops or leaders in question acted at either the direction of Defendant, on Defendant's behalf, or for the purpose of assisting Defendant within the scope of their relationship with Defendant. Likewise, Defendant has a direct financial interest in all of the wrongful activity delineated in these examples by virtue of the membership fees and other revenues it receives from its councils and troops that are generated in part through such wrongful use of GSUSA's trademarks.

57. Upon information and belief, and as depicted in Example 1 below, Defendant's Orange County, California Council distributed fundraising materials in connection with an event held on November 30, 2017, stating that the proceeds from the event would help, among other things, "implementation of our New BSA Girl Scouting Program."

**Example 1: BSA Fundraising Flyer for "New BSA Girl Scouting" Programs**

*"THE EL CAPITAN DISTRICT SERVES OVER 1,400 YOUTH IN ANAHEIM, GARDEN GROVE, STANTON, AND SURROUNDING CITIES. SCOUTINGS POSITIVE IMPACT HELPS OUR LOCAL FAMILIES AND YOUR COMMUNITY. PLEASE JOIN US AS WE CELEBRATE SCOUTING AND HELP ENSURE BSA'S SPECIAL SCOUTING PROGRAMS FOR TODAY'S YOUTH"*

**Troop 111 Scoutmaster Emeritus** ▮▮▮▮▮▮▮

**The proceeds from the luncheon will provide funding for our Cub Scouts, Boy Scouts, Adventure Scouts, Explorer Scouts, and in the development and implementation of our New BSA Girl Scouting Programs!**

### *Suggested Levels of Support for El Capitan Scouts*

| | |
|---|---|
| ★ Special Gift $_____ | |
| ★ Tiger/Lion Sponsor | $250.00 |
| ★ Cub Sponsor | $500.00 |
| ★ Tenderfoot Sponsor | $750.00 |
| ★ Star Sponsor | $1,000.00 |
| ★ Life  Sponsor | $2,500.00 |
| ★ Eagle Sponsor | $5,000.00 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Your Sponsorship Amount : $_____**
**Donation Information and ON-LINE Payment LINK:**

▮▮▮▮▮▮▮▮▮▮▮

Please make checks payable to Orange County Council Boy Scouts of America-501(C)3 TAX ID 95-1727660 Donor Cards will be available and collected at the Luncheon or Please send checks or credit card authorization with attached form to:
Orange County Council, Boy Scouts of America 1211 E. Dyer Road, Santa Ana, CA. 92705

Credit Card Account #_____ Type VISA MC Etc._____

Expiration_____ Name on Card _____Code_____

Address_____

City_____ZIP_____Phone_____

Email_____Signature_____

**Please RSVP by Friday Nov. 24ᵗʰ to Mayor Pro-Tem** ▮▮▮▮▮▮▮
▮▮▮▮▮▮ or ▮ at ▮▮▮▮▮▮

Questions: Mayor Pro-Tem ▮▮▮▮▮ at above email address or phone number

58.     Upon information and belief, and as depicted in Example 2 below, a flyer for a Boy Scout day camp program held between June 4, 2018 and June 7, 2018 in Texas featured the GIRL SCOUT trademark.

**Example 2:  "GIRL SCOUT Volunteer Opportunity" at Twilight Camp**



59.     Upon information and belief, and as depicted in Example 3 below, a Boy Scout leader located in Texas used the phrase "Boys/Girls Scouts of America Volunteer Form" to recruit members online.

**Example 3:  "Boys/Girls Scouts of America" Online Form**



60.     Upon information and belief, and as depicted in Example 4 below, the Defendant's Great Southwest Council in New Mexico constructed a sign that featured the words

23

"Boy & Girl Scouts www.troop174NM.org."  Upon information and belief, the website

www.troop174NM.org is owned and/or operated by Defendant or one of Defendant's councils.

**Example 4: "Boy & Girl Scouts" Public Sign**



61.     Upon information and belief, and as shown in Example 5 below, an organization located in Wantagh, New York that sponsors BSA services announced in October 2018 the planned formation of a "Girl Scouts BSA Troop" or a "Girl Scout troop" in February 2019.

**Example 5: Announcements Concerning Formation of a "Girl Scouts BSA Troop"**





62.     Upon information and belief, and as depicted in Example 6 below, a Boy Scout leader in Kirkland, Washington used the phrase, "Come talk to me about the Girl Scouts BSA Troops forming in Kirkland" in a Facebook post online.

**Example 6:  "Come talk to me about the Girl Scouts BSA Troops" Facebook Post**



63.     Upon information and belief, and as depicted in Example 7 below, a Boy Scout leader in St. Louis, Missouri misappropriated GSUSA's slogan and mission statement of "Building girls of courage, confidence and character who make the world a better place" by marketing the CUB SCOUTS program to girls under the slogan, "Building kids of courage, confidence, character and to love the outdoors, and who make the world a better place!"

GSUSA's mission statement above is explicitly set forth in the Preamble of GSUSA's

Constitution, which is published in GSUSA's Blue Book of Basic Documents, publicly

available, including on GSUSA's website, www.girlscouts.org, and widely used in GSUSA's

marketing materials.

**Example 7:  Use of Girl Scouts' Slogan/Mission Statement in Boy Scouts Marketing**



64.     Upon information and belief, a Boy Scout volunteer approached a former Gold

Award Girl Scout and solicited her to join him and others to develop the "Girl Scout program"

for Defendant's Northern Star Council (Twin Cities) located in Minneapolis, Minnesota.

65.     Upon information and belief, GSUSA's Profile Design mark depicted in paragraph 27 above was used in Boy Scout New England Base Camp marketing materials, and also in a Boy Scouts council invitation to an event in Michigan.

66.     Upon information and belief, Boy Scout councils have used pictures of Girl Scouts in Girl Scout uniforms to advertise BSA's programming in Massachusetts and Chicago.

67.     Defendant's efforts to leverage the GIRL SCOUTS brand and confuse consumers has even gone so far as to prominently display a quote from GSUSA's founder on BSA's advertising for SCOUTS programs that has been disseminated to Defendant's councils through the BSA Brand Center.  *See* Example 8, below.

**Example 8: Use of Quote from Girl Scouts' Founder in Boy Scouts Marketing**



68.     GSUSA has sent numerous letters and warnings to Defendant and its regional councils regarding Defendant's serial infringing activity.  In response, Defendant has acknowledged the "legally protected brand" that GSUSA owns in its GS Marks.  A true and

accurate copy of correspondence from Defendant to GSUSA dated November 2, 2017 is attached as Exhibit K.  This correspondence labeled the violation of GSUSA's trademark rights at issue therein as "inadvertent" and an "unfortunate error," but the ongoing violations of GSUSA's rights have mushroomed significantly since then, even though Defendant has been on notice of the infringing conduct of its councils, troops and volunteers throughout that time.

69.     Indeed, to make matters worse, upon information and belief, Defendant and its councils have also engaged in a number of unfair business practices.  For example, upon information and belief, in April and May 2018, one of Defendant's leaders approached a retailer in Red Bluff, California and attempted to dissuade the retailer from providing booth space to local Girl Scout members to sell their products, explaining that Defendant was now supposedly serving Girl Scouts and Boy Scouts.  Upon information and belief, this Boy Scout leader acted at either the direction of Defendant or its local council, on behalf of Defendant or its local council, or for the purpose of helping Defendant or its local council within the scope of his relationship with those entities.  True and accurate copies of correspondence dated April 17, 2018 and May 8, 2018 concerning this instance of unfair business practices are attached as Exhibit L.

70.     Upon information and belief, Boy Scout council representatives in Illinois directed parents at a school open house to join the "Scouts," representing that the parties' separate organizations were now combined.  In addition, upon information and belief, one of Defendant's leaders at a school recruitment event in Illinois stated that "there is no more Girl Scouts" or "there are no Girl Scouts" to a parent who was interested in signing their daughter up for GSUSA's programs.  Upon information and belief, these Boy Scout council representatives acted at either the direction of Defendant, on Defendant's behalf, or for the purpose of helping Defendant within the scope of the representatives' relationship with Defendant.

71.     Upon information and belief, Defendant's representatives in Texas have advised prospective parents interested in signing up for Girl Scouts that "it is all the same now" and that "Girl Scouts are in our pack."  Parents are also being told that the Boy Scouts are the "official" Scouts, which has prompted some parents to ask GSUSA representatives if their longstanding Girl Scouts services are properly authorized.  Upon information and belief, these Boy Scout council representatives acted at either the direction of Defendant, on Defendant's behalf, or for the purpose of helping Defendant within the scope of the representatives' relationship with Defendant.

72.     Upon information and belief, a North Carolina Girl Scout recruitment staff member called to schedule visits with school principals in Henderson, Haywood and Jackson Counties, only to be told by these principals that they thought these visits had already been scheduled, because Defendant's representatives had told the schools that the Girl Scouts had been merged into the Boy Scouts.

73.     In an effort to sow further confusion and interfere with GSUSA's leadership programming, upon information and belief, Defendant has used the GIRL SCOUTS trademark and variations thereof as Google Ad Words so that Defendant's advertisements would rank first in response to searches for "Girl Scouts" or "GSUSA Shop" on the Google search engine.  A true and accurate copy with redactions of a screenshot from this search engine showing the effect of such wrongful use of GSUSA's GS Marks is attached as Exhibit M.

74.     Upon information and belief, Defendant and its councils and volunteers have engaged in multiple other acts of misconduct that have violated GSUSA's trademark rights throughout the country that GSUSA can only fully discover through litigation.  Despite

Defendant being on notice of such infringing conduct and the interference alleged herein, this conduct is continuous and ongoing.

75.    As demonstrated by the examples above, there is a clear pattern of wrongful conduct by Defendant and its councils and leaders.  Defendant has failed to take reasonable actions to prevent or correct the wrongful conduct of its councils and leaders.

ADDITIONAL EXAMPLES OF ACTUAL CONSUMER CONFUSION

76.    Separate and apart from the unauthorized, wrongful acts of misconduct described above that have caused confusion among consumers, other use of the GS Marks, including SCOUTS and SCOUTING, as well as SCOUTS BSA, in advertising and promotional materials, has created confusion among consumers, and these are likely to continue to cause confusion unless enjoined by this Court.

77.    Specifically, GSUSA has been made aware of several instances in which girls were mistakenly signed up for Boy Scouts programs when the intent was to sign them up for the GIRL SCOUTS.  For example, upon information and belief, in Central Indiana, a parent contacted a Girl Scout council and reported that she had mistakenly enrolled her daughter in the Boy Scouts when she believed she was signing up for Girl Scouts. The parent asked whether the enrollment fees paid to Defendant could be transferred to GSUSA (they cannot).  Upon information and belief, similar instances of parents mistakenly signing their girls up for BSA programs when they had intended to enroll them in GIRL SCOUTS programs have also occurred in Texas.

78.    Upon information and belief, at a school recruitment event in South Dakota, a mother filled out membership paperwork provided by a Boy Scouts recruiter, believing that she was signing her five-year-old daughter up for GIRL SCOUTS programs.

79.     Upon information and belief, at a school recruitment event in Goshen, Indiana, several parents reported to GSUSA volunteers that they had been confused by a presentation made by local BSA volunteers at a recruiting event as to whether they represented the Boy Scouts, the Girl Scouts, or both.  One parent actually enrolled her daughter in the Boy Scouts thinking that she was signing her up for Girl Scouts and received a refund as a result.

80.     Upon information and belief, a recruiter for Defendant repeatedly stated that "Boy Scouts is now accepting Girl Scouts" at an elementary school open house event in North Carolina, at which both Defendant and GSUSA councils had recruitment tables, prompting many attendees to express confusion to the recruiter at the GSUSA council table.

81.     The confusion about the relationship between GSUSA and Defendant is spreading through third-party organizations and media channels as well.  Upon information and belief, Neighborhood Centers of Johnson County, Iowa provided information on a recruitment flyer, depicted below, for Defendant that advertised "Scout Troop Starting! . . . all elementary school-aged children welcome" on September 18, 2018, which was billed as a "Girl Scouts" event and posted on the Grant Wood Elementary School's website as such.

**"Girl Scouts" Flyer Posted by Neighborhood Centers of Johnson County**



82.     In another example, a news article published in the *Brown County Press* located in Ohio concerned ***solely*** with Defendant's events and recruiting was titled – "Boy and Girl Scouts looking for members."  A true and accurate copy of this article published in August 2018 is attached as Exhibit N.  Another article published on September 10, 2018 in the *Barnesville Record* of Barnesville, Minnesota, entitled, "Scout Me In," reported that "[a]fter a hundred years the girl scouts and boy scouts are merging into one group and will be known as Scouts BSA."  A local Boy Scout leader was quoted in the article as affirming the positive benefits that would flow from this purported merger.  A true and accurate copy with redactions of this article published on September 10, 2018 is attached as Exhibit O.

83.     Upon information and belief, Defendant's use of SCOUT, SCOUTING and variations thereof like SCOUTS BSA in connection with all of its core programs offered to girls

of all ages nationwide has caused an extraordinary level of confusion among the public and violated GSUSA's valuable trademark rights.

84.     This confusion will only be exacerbated when Defendant implements its recently announced SCOUTS BSA program in February 2019 that will see older girls admitted into BSA as "Scouts."

85.     Defendant's use of the SCOUT mark and variations thereof in connection with all of BSA's core programs offered to girls of all ages on a nationwide basis has diluted and will continue to dilute GSUSA's famous GIRL SCOUTS trademark by blurring its distinctiveness and creating an improper and inaccurate association with BSA.

86.     Such improper associations are of particular concern to GSUSA because Defendant has received significant negative publicity regarding its activities conducted under the BOY SCOUTS and SCOUTS marks, such that the goodwill associated with those terms when used in connection with boys' leadership development services has been damaged.  In particular, there have been lawsuits and media articles alleging: a poor child safety record with respect to certain aspects of Defendant's programs; acts of misconduct perpetrated by some of its leaders over the years; and BSA's decision to lobby against child protection statutes in certain states.[2]

---

[2] Boy Scouts lobby in states to stem the flow of child abuse lawsuits, *The Washington Post*, (May 9, 2018), https://www.washingtonpost.com/powerpost/boy-scouts-lobby-in-states-to-stem-the-flow-of-child-abuse-lawsuits/2018/05/08/0eee0a44-47d8-11e8-827e-190efaf1f1ee_story.html?utm_term=.21c485b800f9; Boy Scouts' 'perversion files' released: 'The secrets are out', *Los Angeles Times*, (Oct. 18, 2012), https://latimesblogs.latimes.com/lanow/2012/10/boy-scouts-perversion-files-released-the-secrets-are-out.html; Three things to know about the Boy Scouts sex abuse cases, *The Atlanta Journal-Constitution*, (Aug. 20, 2018), https://www.ajc.com/news/crime--law/three-things-to-know-about-the-boy-scouts-sex-abuse-cases/EalhiPsV8ipUyIQVcb8CmK/; 4 men sue Boy Scouts of America over alleged sexual abuse, *New York Post*, (July 24, 2018), https://nypost.com/2018/07/24/4-men-sue-boy-scouts-of-america-over-alleged-sexual-abuse/; 'Pedophile Magnet' Boy Scouts of America Let 'Serial' Sex Abuser Prey on Four Boys: Lawsuit, *Daily Beast*, (July 24, 2018),

As a result, Defendant's misleading and confusing use of the SCOUTS mark and variations thereof in connection with youth development services and programs for girls has damaged and will continue to damage the goodwill associated with the GIRL SCOUTS mark.

87.     GSUSA's GIRL SCOUTS mark will be both blurred and tarnished as a result of consumers mistakenly associating the two organizations. The incorrect and improper association is likely to be and has been harmful to GSUSA's GIRL SCOUTS marks and the organization as a whole, resulting in the impairment in the distinctiveness of the GIRL SCOUTS mark.  Indeed, the consuming public formerly associated the GIRL SCOUTS mark, when used in connection with girls' leadership development programs offered to all girls of all ages, exclusively with GSUSA, but Defendant's actions have now begun to create an improper association between that mark and a second source – BSA.  This is a classic type of dilution prohibited under 15 U.S.C. § 1125(c).

88.     GSUSA has no adequate remedy at law.

## FIRST CAUSE OF ACTION

### FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1)

89.     GSUSA realleges and incorporates by reference herein each and every allegation of the foregoing paragraphs of this Complaint as if fully set forth herein.

90.     GSUSA owns the distinctive, valid and registered GS Marks.

---

https://www.thedailybeast.com/pedophile-magnet-boy-scouts-of-america-let-serial-sex-abuser-prey-on-four-boys-lawsuit-claims, *The Guam Daily Post*, (Jan. 8, 2018), https://www.postguam.com/news/local/former-boy-scouts-file-sex-abuse-lawsuits/article_85e60006-f40f-11e7-8361-7369b1ee1218.html; A list of Boy Scout outing deaths, *Los Angeles Times*, (Dec. 5, 2010), http://articles.latimes.com/2010/dec/05/nation/la-na-scouts-list-online-20101205; Sexual abuse of Explorer Scouts has gone on for decades across the nation, *Courier Journal*, (Published May 18, 2017, Updated June 27, 2018), https://www.courier-journal.com/story/news/investigations/2017/05/18/sexual-abuse-explorer-scouts-has-gone-decades-across-nation/311510001/.

91.     Without GSUSA's consent, Defendant has used the SCOUTS and SCOUTING marks and marks similar thereto (and intends to use SCOUTS BSA), which are confusingly similar to the GS Marks, in commerce in connection with services targeted to girls and to advertise and promote such competing services.

92.     In addition, Defendant's councils, troops and leaders, at the direction of Defendant, have also used the SCOUTS and SCOUTING marks and marks similar thereto (and will soon use SCOUTS BSA), which are confusingly similar to the GS Marks, in commerce in connection with services targeted to girls and to advertise and promote such competing services. Upon information and belief, Defendant has the authority to control the use of intellectual property related to Defendant's services by its councils, troops and leaders, and Defendant exercises control over the use of such intellectual property by its councils, troops and leaders. Upon information and belief, Defendant reaps a direct financial benefit from the infringing activities of its councils, troops and leaders by virtue of membership dues that flow back to Defendant.

93.     Defendant's actions, as well as those of its councils, troops and leaders, as described herein, have caused and are likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association of Defendant with GSUSA, as to the true source of Defendant's services, and as to the sponsorship or approval of Defendant or Defendant's services by GSUSA.

94.     Neither Defendant nor its councils, troops, and leaders are affiliated or associated with GSUSA or its services, and GSUSA does not approve or sponsor Defendant, Defendant's services, or the marketing in U.S. commerce of Defendant's services by Defendant's councils, troops and leaders.

95.     Defendant is both directly and vicariously liable for the infringing use of the GS Marks, SCOUTS, SCOUTING and similar marks thereto, as well as that of Defendant's councils, troops and leaders, about which Defendant has received consistent notification from GSUSA.

96.     The actions of Defendant described above constitute direct and vicarious trademark infringement in violation of 15 U.S.C. § 1114(1).

97.     Defendant's actions are willful and reflect an intent to confuse consumers and profit from the goodwill and consumer recognition associated with GSUSA and the GS Marks.

98.     GSUSA has been, and will continue to be, damaged and irreparably harmed by the actions of Defendant, which will continue unless Defendant is enjoined by this Court.  GSUSA is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

99.     GSUSA is also entitled to actual monetary damages in an amount to be determined at trial, and to any profits made by Defendant in connection with its infringing activities.

100.     Defendant's infringement of the registered GS Marks is deliberate, willful, and without extenuating circumstances, and constitutes a knowing use of GSUSA's trademarks.  Defendant's infringement is thus an "exceptional case" within the meaning of section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).  GSUSA is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

**SECOND CAUSE OF ACTION**

**FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
UNDER 15 U.S.C. § 1125(a)**

101.    GSUSA realleges and incorporates by reference herein each and every

allegation of the foregoing paragraphs of this Complaint as if fully set forth herein.

102.    GSUSA owns the famous, distinctive, valid, and registered GS Marks, as well

as common law rights in the GS Marks, including the marks SCOUTS and SCOUTING as used

in connection with girls programs.

103.    Without GSUSA's consent, Defendant has directly used the SCOUTS and

SCOUTING marks and marks similar thereto (and intends to use SCOUTS BSA), which are

confusingly similar to the GS Marks in commerce in connection with services targeted to girls

and to advertise and promote such competing services.

104.    In addition, Defendant's councils, troops and leaders, at the direction of

Defendant, have also used the SCOUTS and SCOUTING marks and marks similar thereto (and

will soon use SCOUTS BSA), which are confusingly similar to the GS Marks, in commerce in

connection with services targeted to girls and to advertise and promote such competing services.

Upon information and belief, Defendant has the authority to control the use of intellectual

property related to Defendant's services by its councils, troops and leaders, and Defendant

exercises control over the use of such intellectual property by its councils, troops, and leaders.

Upon information and belief, Defendant reaps a direct financial benefit from the wrongful

activities of its councils, troops, and leaders by virtue of membership dues that flow back to

Defendant.

105.    Defendant's actions, as well as those of its councils, troops, and leaders, as

described herein have caused and are likely to cause confusion, mistake, and deception among

consumers as to the affiliation, connection, or association of Defendant with GSUSA, as to the true source of Defendant's services, and as to the sponsorship or approval of Defendant or Defendant's services by GSUSA.

106.    Neither Defendant nor its councils, troops, and leaders are affiliated or associated with GSUSA or its services, and GSUSA does not approve or sponsor Defendant, Defendant's services, or the marketing in U.S. commerce of Defendant's services by Defendant's councils, troops, and leaders.

107.    Defendant is both directly and vicariously liable for the use of the GS Marks, SCOUTS, SCOUTING and similar marks thereto, as well as that of Defendant's councils, troops, and leaders, about which Defendant has received consistent notification from GSUSA.

108.    The actions of Defendant described above constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a)(1).

109.    Defendant's actions are willful and reflect an intent to confuse consumers and profit from the goodwill and consumer recognition associated with GSUSA and the GS Marks.

110.    GSUSA has been, and will continue to be, damaged and irreparably harmed by the actions of Defendant, which will continue unless Defendant is enjoined by this Court.  GSUSA is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

111.    GSUSA is also entitled to actual monetary damages in an amount to be determined at trial and to any profits made by Defendant in connection with its unfairly competitive activities.

112.    Defendant's unfair competition and false designation of origin are deliberate, willful, and without extenuating circumstances.  Defendant's conduct is thus an "exceptional case" within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).  GSUSA is

therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

### THIRD CAUSE OF ACTION
### FEDERAL TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(C)

113.     GSUSA realleges and incorporates by reference herein each and every allegation of the foregoing paragraphs of this Complaint as if fully set forth herein.

114.     GSUSA's GIRL SCOUTS mark is famous and distinctive and has been for many years prior to the first offering of any services by Defendant to girls under the trademarks SCOUTS, SCOUTING and variations thereof.

115.     Without authorization or license from GSUSA, Defendant is using and intends to use the SCOUTS and SCOUTING trademarks and marks similar thereto (and intends to use SCOUTS BSA) in commerce in a manner that impairs the distinctive quality, and harms the reputation, of GSUSA's famous GIRL SCOUTS mark.

116.     In addition, Defendant's councils, troops, and leaders, at the direction of Defendant, have also used the SCOUTS and SCOUTING marks and marks similar thereto (and will soon use SCOUTS BSA) in commerce in a manner that impairs the distinctive quality, and harms the reputation, of GSUSA's famous GIRL SCOUTS mark.  Upon information and belief, Defendant has the authority to control the use of intellectual property related to Defendant's services by its councils, troops, and leaders, and Defendant exercises control over the use of such intellectual property by its councils, troops, and leaders.  Upon information and belief, Defendant reaps a direct financial benefit from the infringing activities of its councils, troops, and leaders by virtue of membership dues that flow back to Defendant.

117.     The acts and conduct of Defendant alleged herein, as well as those of Defendant's councils, troops, and leaders occurring at Defendant's direction, occurred after

GSUSA's GIRL SCOUTS mark became famous and constitute dilution by blurring and dilution by tarnishment in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), both directly and vicariously.

118.    Upon information and belief, Defendant's acts of dilution and tarnishment are willful, deliberate, and in bad faith.

119.    GSUSA has no adequate remedy at law.

120.    Defendant's acts and conduct will cause immediate and irreparable injury to GSUSA, to its goodwill and reputation, and to the public, and will continue to threaten such injury unless enjoined by this Court.

121.    GSUSA is entitled to injunctive relief and to recover GSUSA's actual damages and an award of GSUSA's profits, as well as costs and GSUSA's reasonable attorney's fees, under 15 U.S.C. §§ 1025(c), 1116, and 1117.

<u>FOURTH CAUSE OF ACTION</u>
**MODIFICATION OR PARTIAL CANCELLATION OF REGISTRATION**

122.    GSUSA realleges and incorporates by reference herein each and every allegation of the foregoing paragraphs of this Complaint as if fully set forth herein.

123.    Defendant's U.S. trademark registration for the SCOUT mark (Reg. No. 4,865,183) obtained by assignment from a university does not limit the identified online secondary level educational services to programs for boys.

124.    Defendant's use of the SCOUT mark in connection with educational services for girls is likely to cause, and has already caused, consumer confusion.

125.    Pursuant to 15 U.S.C. § 1119, this Court has the authority to "determine the right to registration, order cancellation of registrations, in whole or in part . . . and otherwise

rectify the register with respect to the registrations of any party" in an action involving a registered mark.

126.    Consistent with the authority conferred by 15 U.S.C. § 1119, Defendant's registration for the SCOUT mark should be modified or partially cancelled through entry of a decree ordering the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office to make an entry on the records of the PTO limiting the identified services in such registration to programs for boys.

### FIFTH CAUSE OF ACTION
**COMMON LAW TRADEMARK INFRINGEMENT,
UNFAIR COMPETITION AND PASSING OFF**

127.    GSUSA realleges and incorporates by reference herein each and every allegation of the foregoing paragraphs of this Complaint as if fully set forth herein.

128.    GSUSA owns common law trademark rights in the GS Marks and all such rights owned by GSUSA are superior to any rights that the Defendant may claim to have in the SCOUTS or SCOUTING marks with respect to any goods or services targeted to girls.

129.    Defendant's unauthorized use of trademarks confusingly similar to the GS Marks in connection with youth development services or programs for girls is likely to cause confusion as to the source or sponsorship of these services, and is likely to lead the public to believe that GSUSA is affiliated with or sponsors or endorses Defendant and/or Defendant's services, and is likely to mislead persons in the ordinary course of purchasing Defendant's services, thereby injuring the reputation and goodwill and unjustly diverting from GSUSA to Defendant the benefits arising therefrom.

130.    In addition, Defendant's councils, troops, and leaders, at the direction of Defendant, have also used the SCOUTS and SCOUTING marks and marks similar thereto (and

will soon use SCOUTS BSA), which are confusingly similar to the GS Marks, in commerce in connection with services targeted to girls and to advertise and promote such competing services. Upon information and belief, Defendant has the authority to control the use of intellectual property related to Defendant's services by its councils, troops, and leaders, and Defendant exercises control over the use of such intellectual property by its councils, troops, and leaders. Upon information and belief, Defendant reaps a direct financial benefit from the wrongful activities of its councils, troops, and leaders by virtue of membership dues that flow back to Defendant.

131.     Defendant's unlawful activities, as alleged above, constitute trademark infringement, unfair competition, and passing off as proscribed by common law.

132.     Defendant's acts of trademark infringement, unfair competition, and passing off were committed, or will imminently be committed, willfully, knowingly, intentionally, and in bad faith.

133.     Defendant's acts or intended acts of trademark infringement, unfair competition, and passing off, unless enjoined by this Court, will threaten to cause GSUSA irreparable damage, loss, and injury for which GSUSA has no adequate remedy at law.  GSUSA is therefore entitled to injunctive relief enjoining such wrongful conduct, and to an award of damages that provides GSUSA with adequate compensation for the harm it has suffered.

## SIXTH CAUSE OF ACTION
### TRADEMARK DILUTION UNDER NEW YORK GENERAL BUSINESS LAW § 360-l

134.     GSUSA realleges and incorporates by reference herein each and every allegation of the foregoing paragraphs of this Complaint as if fully set forth herein.

135.     GSUSA's GIRL SCOUTS mark is distinctive within the State of New York and has been for many years prior to the first offering of any services by Defendant to girls under the SCOUTS and SCOUTING trademarks and marks similar thereto.

136.     Without authorization or license from GSUSA, Defendant is using and intends to use the SCOUTS and SCOUTING trademarks and marks similar thereto (and intends to use SCOUTS BSA) in the State of New York in a manner that impairs the distinctive quality, and harms the reputation, of GSUSA's famous GIRL SCOUTS mark.

137.     In addition, Defendant's councils, troops, and leaders within the State of New York, at the direction of Defendant, have also used the SCOUTS and SCOUTING marks and marks similar thereto (and will soon use SCOUTS BSA) in New York in a manner that impairs the distinctive quality, and harms the reputation, of GSUSA's famous GIRL SCOUTS mark. Upon information and belief, Defendant has the authority to control the use of intellectual property related to Defendant's services by its councils, troops, and leaders within the State of New York, and Defendant exercises control over the use of such intellectual property by its councils, troops, and leaders.  Upon information and belief, Defendant reaps a direct financial benefit from the activities of its councils, troops, and leaders within the State of New York by virtue of membership dues that flow back to Defendant.

138.     The acts and conduct of Defendant alleged herein, as well as those of Defendant's councils, troops, and leaders occurring at Defendant's direction, occurred after GSUSA's GIRL SCOUTS mark became distinctive within the State of New York and constitute dilution by blurring and dilution by tarnishment in violation of New York General Business Law § 360-l.

139.     Defendant's acts and conduct will cause immediate and irreparable injury to GSUSA, to its goodwill and reputation, and to the public, and will continue to threaten such injury unless enjoined by this Court.  GSUSA is therefore entitled to injunctive relief in New York under General Business Law § 360-l.

## SEVENTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

140.     GSUSA realleges and incorporates by reference herein each and every allegation of the foregoing paragraphs of this Complaint as if fully set forth herein.

141.     Defendant's councils and GSUSA's councils occasionally attend the same recruitment events.

142.     Defendant is aware that GSUSA has a prospective business relationship with the parents and girls who attend these recruitment events.

143.     Defendant, by the acts described herein that illustrate a widespread and systematic course of conduct, intentionally interfered with those relationships by dishonest, unfair, and improper means.  For example, Defendant's recruiters have recently told parents and girls that there "are no more Girl Scouts" or that the organizations have combined.  These statements are dishonest, unfair, and improper because GSUSA is still in existence and Defendant cannot register girls for the GIRL SCOUTS program.   Upon information and belief, these recruiters acted on behalf of Defendant or for the purpose of serving the Defendant's interest.  Upon information and belief, as a result of Defendant's interference and/or knowledge of and failure to halt such systematic tortious behavior, girls have signed up for Defendant's program instead of GSUSA's program, causing significant harm to GSUSA's prospective business relationships with these individuals.

144.     Likewise, GSUSA had a prospective business relationship with a retailer in Red Bluff, California to provide space to a Girl Scout council for the purpose of conducting Girl Scout activities.  Defendant, knowing of this relationship, intentionally interfered with that relationship when it attempted to dissuade the retailer from providing booth space to the council on the basis that Defendant now serves both Boy Scouts and Girl Scouts.  Upon information and belief, such dishonest, unfair, and improper statements interfered with the reservation of such booth space.

145.     Upon information and belief, Defendant and its councils or leaders have made numerous other dishonest, unfair and improper statements for the purpose of intentionally and knowingly inducing parents and girls across the country to register with Defendant's programs instead of GSUSA's programs.  Upon information and belief, GSUSA can only obtain information about these additional instances of dishonest, unfair, and improper actions through discovery.

## **PRAYER FOR RELIEF**

WHEREFORE, GSUSA respectfully requests the following relief:

**(a)**     That GSUSA be granted preliminary and permanent injunctive relief under 15 U.S.C. § 1051 *et seq*. and New York law specifically requiring that Defendant and all of its councils, troops, officers, leaders, agents, servants, representatives, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and all other persons acting in concert or participation with them, or any of them, be preliminarily and permanently enjoined from: (i) using the GS Marks, or any confusingly similar variations thereof, in connection with the marketing, promotion, advertising, sale or rendering of any of Defendant's services, (ii) using the marks SCOUT, SCOUTS, SCOUTING, SCOUTS BSA, or any variation thereof, alone without an inherently distinctive or distinguishing term appearing immediately before it, in

connection with the marketing, promotion, advertising, sale or rendering of any of Defendant's services directed to girls; (iii) using any false designation of origin or any false description that can, or is likely to, mislead the public, or individual members thereof, to believe that any service distributed, sold, offered for sale, or advertised by Defendant is in any manner associated with or approved or sponsored by GSUSA; (iv) representing in any manner that Defendant or its councils or troops are endorsed or sponsored by GSUSA, or represent or work on behalf of GSUSA, or are affiliated or associated with GSUSA; and (v) any other infringing or misleading conduct discovered during the course of this action;

(b)  That Defendant be ordered to provide training to all of its councils, troops, officers, leaders, agents, servants, representatives, employees, and volunteers to prevent confusion between the parties and their respective trademarks, including with respect to: (i) Defendant's use of the marks SCOUT, SCOUTS, SCOUTING, SCOUTS BSA or variations thereof in a manner compliant with the injunction issued by this Court; (ii) Defendant's relationship with GSUSA; (iii) the GS Marks, and (iv) affirmative steps that must be taken to avoid or remediate instances of actual consumer confusion; and to provide GSUSA with a written report detailing such training;

(c)  That Defendant be ordered to file a withdrawal with prejudice of Trademark Application Serial Nos. 87/906,407, 87/906,567, 87/882,226 with the PTO;

(d)  That Defendant file with the Court, within ten (10) days from entry of the aforementioned injunction, a declaration signed under penalty of perjury certifying the manner in which Defendant has complied with the terms of the injunction;

(e)  That Defendant is adjudged to have violated 15 U.S.C. § 1114(1) by infringing the GS Marks;

**(f)**      That Defendant is adjudged to have violated 15 U.S.C. § 1125(a)(1) for unfairly competing against GSUSA and by using a false designation of origin for Defendant's services;

**(g)**      That Defendant is adjudged to have violated 15 U.S.C. § 1125(c) by diluting the GIRL SCOUTS trademark;

**(h)**      That judgment be entered in favor of GSUSA against Defendant to the effect that U.S. Reg. No. 4,865,183 is to be modified or partially cancelled, and ordering the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office to make an entry on the records of the PTO limiting the identified services in such registration to programs for boys;

**(i)**      That Defendant is adjudged to have engaged in illegal acts of common law trademark infringement, unfair competition, and passing off;

**(j)**      That Defendant is adjudged to have violated New York General Business Law § 360-1 by diluting the GIRL SCOUTS trademark;

**(k)**      That Defendant is adjudged liable for tortious interference with prospective economic advantage;

**(l)**      That GSUSA be awarded damages in an amount sufficient to compensate it for harm caused by Defendant's acts;

**(m)**      That this Court order an accounting of Defendant's profits earned as a result of Defendant's unlawful activities and disgorge all of said profits to GSUSA;

**(n)**      That GSUSA be awarded three times Defendant's profits and three times GSUSA's damages suffered as a result of Defendant's willful, intentional, and deliberate acts in violation of the Lanham Act and New York law;

**(o)** That GSUSA be awarded its attorneys' fees and costs in this action under 15 U.S.C. § 1117 as a result of Defendant's Lanham Act violations;

**(p)** That GSUSA be granted prejudgment and post judgment interest; and

**(q)** That GSUSA be granted such further relief as the Court may deem just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38, GSUSA hereby respectfully demands a trial by jury of all issues triable of right by a jury.

Dated:  New York, New York  
  November 6, 2018

Respectfully Submitted,

DORSEY & WHITNEY LLP

By:  /s/ *Bruce R. Ewing*  
Bruce R. Ewing  
Fara S. Sunderji  
Amanda M. Prentice  
51 West 52nd Street  
New York, New York 10019  
(212) 415-9200

*Attorneys for Plaintiff*  
*Girl Scouts of the United States of America*