**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GIRL SCOUTS OF THE UNITED STATES OF AMERICA, <br><br>                  Plaintiff, <br>     v. <br><br> BOY SCOUTS OF AMERICA. <br><br>                  Defendant. | Case No. 1:18-cv-10287 (AKH) |

**DEFENDANT BOY SCOUTS OF AMERICA'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT FACTUAL BACKGROUND ...............................................................................2

LEGAL STANDARD...................................................................................................................6

ARGUMENT ................................................................................................................................7

I.     GSUSA FAILS TO STATE A CLAIM OF TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS .................................................................7

    A.     GSUSA Does Not Allege A Specific Business Relationship With A Specific Third Party .............................................................................................................8

    B.     GSUSA Does Not Allege That The BSA Had Actual Knowledge Of Any Of GSUSA's Specific Business Relationships ......................................................9

    C.     GSUSA Does Not Allege That The BSA Acted Solely Out Of Malice Or Used Dishonest, Unfair, Or Improper Means ......................................................10

    D.     GSUSA Does Not Allege That Any Purported Interference Caused Injury To A Specific Business Relationship....................................................................12

II.     THE COURT SHOULD DISMISS GSUSA'S CLAIMS TO THE EXTENT THEY DEPEND ON PURPORTED COMMON LAW RIGHTS IN "SCOUT" OR "SCOUTING" ALONE ...........................................................................................14

    A.     GSUSA Does Not Allege It Is Actually Using the SCOUT And SCOUTING Marks ................................................................................................14

    B.     Amendment Would Be Futile Because GSUSA Has Consistently Disclaimed Use Of SCOUT Or SCOUTING Alone...............................................17

CONCLUSION...........................................................................................................................19

**TABLE OF AUTHORITIES**

**Page**

<u>Cases</u>

*4 K & D Corp. v. Concierge Auctions, LLC*,
    2 F. Supp. 3d 525 (S.D.N.Y. 2014)................................................... 9

*Ahluwalia v. St. George's Univ., LLC*,
    63 F. Supp. 3d 251 (E.D.N.Y. 2014) ............................................ 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................... 6, 16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................... 6

*Berwick v. New World Int'l, Ltd.*,
    2007 WL 949767 (S.D.N.Y. Mar. 28, 2007) ................................ 7

*Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*,
    2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013) ............................ 18

*Bus. Networks of N.Y., Inc. v. Complete Network Solutions Inc.*,
    265 A.D.2d 194 (N.Y. 1st Dep't 1999)........................................ 8

*Camp Summit of Summitville, Inc. v. Visinski*,
    2007 WL 1152894 (S.D.N.Y. Apr. 16, 2007)............................. 12

*Carvel Corp. v. Noonan*,
    3 N.Y.3d 182 (N.Y. 2004) ........................................................ 11

*Chao v. Mount Sinai Hosp.*,
    2010 WL 5222118 (S.D.N.Y. Dec. 17, 2010) ............................. 7

*Colodney v. Continuum Health Partners, Inc.*,
    2004 WL 829158 (S.D.N.Y. Apr. 15, 2004)............................... 18

*Daniels v. Kostreva*,
    2017 WL 823583 (E.D.N.Y. Jan. 12, 2017) ................................ 9

*Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*,
    568 F. Supp. 2d 329 (S.D.N.Y. 2008)......................................... 8

*Dentsply Int'l Inc. v. Dental Brands for Less LLC*,
    2016 WL 3676686 (S.D.N.Y. July 5, 2016) ................................ 8

*Diario El Pais, S.L. v. The Nielsen Co.*,
    (US), 2008 WL 4833012 (S.D.N.Y. Nov. 6, 2008) ...................... 7

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
    423 F. Supp. 2d 173 (S.D.N.Y. 2006).......................................... 18

*Empresa Cubana del Tabaco v. Culbro Corp.*,
    399 F.3d 462 (2d Cir. 2005)....................................................................... 16

*Enzo Biochem, Inc. v. Molecular Probes, Inc.*,
    2013 WL 6987615 (S.D.N.Y. Dec. 6, 2013) .............................................. 11

*Franklin v. X Gear 101, LLC*,
    2018 WL 4103492 (S.D.N.Y. Aug. 28, 2018) ............................................ 14

*Gameologist Grp., LLC v. Sci. Games Int'l, Inc.*,
    838 F. Supp. 2d 141 (S.D.N.Y. 2011)........................................................ 14

*Great Minds v. FedEx Office & Print Servs., Inc.*,
    886 F.3d 91 (2d Cir. 2018).................................................................... 2, 6

*Gruner + Jahr USA Publ'g, a Div. of Gruner + Jahr Printing and Pub. Co. v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993) ........................................................ 14

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
    331 F. Supp. 3d 221 (S.D.N.Y. 2018)..................................................... 8, 12

*Hawaii-Pac. Apparel Grp., Inc. v. Cleveland Browns Football Co. LLC*,
    418 F. Supp. 2d 501 (S.D.N.Y. 2006)........................................................ 14

*Insurent Agency Corp. v. Hanover Ins. Co.*,
    2018 WL 3979589 (S.D.N.Y. Aug. 20, 2018) .............................................. 8

*ITC Ltd. v. Punchgini, Inc.*,
    482 F.3d 135 (2d Cir. 2007)..................................................................... 15

*Jenkins v. Collins Bldg. Servs., Inc.*,
    2013 WL 8112381 (S.D.N.Y. Oct. 17, 2013) ............................................... 6

*Kelter v. Apex Equity Options Fund, LP*,
    2009 WL 2599607 (S.D.N.Y. Aug. 24, 2009) .............................................. 6

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006)....................................................................... 7

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014)..................................................................... 16

*Lesesne v. Brimecome*,
    918 F. Supp. 2d 221 (S.D.N.Y. 2013)......................................................... 8

*Lombard v. Booz-Allen & Hamilton, Inc.*,
    280 F.3d 209 (2d Cir. 2002)....................................................................... 7

*Lombardo v. Dr. Seuss Enters., L.P.*,
    2017 WL 1378413 (S.D.N.Y. Apr. 7, 2017)........................................... 10, 11

*Louisiana Pac. Corp. v. James Hardie Bldg. Prod., Inc.*,
    2012 WL 5520394 (N.D. Cal. Nov. 14, 2012) ............................................ 13

*McGill v. Parker*,
    582 N.Y.S.2d 91 (App. Div. 1st Dep't 1992) ................................................. 8

*Mills v. Alphabet Inc.*,
    2018 WL 1569838 (S.D.N.Y. Mar. 28, 2018) ........................................... 16

*Muniz v. Morillo*,
    2008 WL 4219073 (S.D.N.Y. Sept. 10, 2008) .......................................... 16

*MVB Collision, Inc. v. Progressive Ins. Co.*,
    13 N.Y.S.3d 139 (App. Div. 2015) ......................................................... 12

*Patsy's Italian Rest., Inc. v. Banas*,
    575 F. Supp. 2d 427 (E.D.N.Y. 2008) ..................................................... 18

*Premium Mortg. Corp. v. Equifax, Inc.*,
    583 F.3d 103 (2d Cir. 2009) .................................................................. 11

*Privado Mktg. Grp. LLC v. Eleftheria Rest Corp.*,
    2017 WL 1167332 (S.D.N.Y. Mar. 27, 2017) .......................................... 16

*Pub. Free Will Corp. v. Verizon Commc'ns Inc.*,
    2017 WL 1047330 (E.D.N.Y. Mar. 17, 2017) .......................................... 16

*R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*,
    2018 WL 1010210 (N.D.N.Y. Feb. 20, 2018) .......................................... 12

*RFP LLC v. SCVNGR, Inc.*,
    788 F. Supp. 2d 191 (S.D.N.Y. 2011) ..................................................... 11

*Riddell Sports Inc. v. Brooks*,
    872 F. Supp. 73 (S.D.N.Y. 1995) ........................................................... 12

*Ritani, LLC v. Aghjayan*,
    970 F. Supp. 2d 232 (S.D.N.Y. 2013) ..................................................... 13

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) .................................................................... 7

*S&L Vitamins, Inc. v. Australian Gold, Inc.*,
    521 F. Supp. 2d 188 (E.D.N.Y. 2007) ..................................................... 10

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
    2009 WL 1492196 (S.D.N.Y. May 27, 2009) .......................................... 10

*Smith v. Westchester Cty.*,
    2013 WL 4830963 (S.D.N.Y. Aug. 28, 2013) ........................................... 6

*Saint Laurie Ltd. v. Yves Saint Laurent Am., Inc.*,
    2015 WL 12991205 (S.D.N.Y. Mar. 27, 2015) .................................. 6, 13, 18

*Stephano Bros. v. Stamatopoulos*,
    238 F. 89 (2d Cir. 1916) ....................................................................... 15

*TechnoMarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014)..........................................................................17

*United Drug Co. v. Theodore Rectanus Co.*,
    248 U.S. 90 (1918)..........................................................................14

*Yong Ki Hong v. KBS Am., Inc.*,
    951 F. Supp. 2d 402 (E.D.N.Y. 2013) ..........................................................10

## **Rules / Statutes**

15 U.S.C. § 1125(a) ..........................................................................14

15 U.S.C. § 1125(c) ..........................................................................16

15 U.S.C. § 1127 ..........................................................................15

36 U.S.C. § 30905 ..........................................................................7

Fed. R. Civ. P. 12(b)(6)..........................................................................1, 6

Fed. R. Civ. P. 15(a)(2)..........................................................................17

Fed. R. Evid. 201(b)..........................................................................18

Defendant Boy Scouts of America (the "BSA") respectfully submits this Memorandum of Law in support of its motion to dismiss the Complaint (ECF No. 1, "Compl.") filed by Plaintiff Girl Scouts of the United States of America ("GSUSA") pursuant to Fed. R. Civ. P. 12(b)(6).  By granting the instant motion, this case will be reduced to a single theory—specifically, whether the Boy Scouts of America, in using and promoting its federally registered and common law marks in SCOUTS and SCOUTING, is somehow infringing or diluting plaintiff's registered GIRL SCOUTS mark.  It is not, as the BSA will prove in due course.

## PRELIMINARY STATEMENT

The BSA is one of the most iconic non-profit organizations in the United States, preparing this nation's youth for more than 100 years to make good ethical and moral choices over their lifetimes. (Compl., Ex. J. at 2).  The BSA has been using its registered and common law trademarks in SCOUTS and SCOUTING (among other marks) in connection with services for boys ***and*** girls for nearly 50 years.  Despite this longstanding, ubiquitous use, GSUSA remarkably now seeks to prohibit the BSA from calling its own members SCOUTS—simply because the BSA has begun welcoming girls into two more of its youth programs.  Thus, the core of GSUSA's case goes to the question of whether the BSA's use of its SCOUTS and SCOUTING marks in connection with offering services to all young people (as it has done for decades) somehow now infringes or dilutes GSUSA's rights in its GIRL SCOUTS-related marks.  It does not.  But while the BSA is confident in the merits of its defense, it recognizes that the Court would not resolve such a contested issue at the pleadings stage of the case.  Thus, this motion focuses on two claims in the Complaint that suffer from pleading deficiencies, rendering them ripe for dismissal at this time.

*First*, the Court should dismiss GSUSA's claim for tortious interference with prospective economic advantage (Count VII), as GSUSA does not identify a single specific customer who, but for any specific act by the BSA, would have joined GSUSA.  The sole purported business

relationship specifically identified by GSUSA in its Complaint was actually consummated, according to GSUSA's own allegations, thus proving no actionable interference.

*Second*, to the extent GSUSA asserts violation of its claimed common law rights in SCOUTS or SCOUTING alone (Count II), the Court should dismiss such a claim because GSUSA does not allege it is actually <u>using</u> the marks SCOUTS or SCOUTING alone, and thus does not sufficiently allege ownership of common law rights in such marks that it can enforce against anyone—let alone the BSA, who holds both common law and registered rights in such marks. For all of the foregoing reasons, the BSA's motion should be granted.

## **RELEVANT FACTUAL BACKGROUND**[1]

**The Boy Scouts of America**.   The BSA is a Congressionally-chartered "national organization that directs and coordinates leadership services and programs." (Compl. ¶ 33). When founded in 1910, the organization was directed toward boys.  Over the past 50 years, however, the BSA has offered various programs to both girls and boys. (Compl. ¶ 40 & Ex. J at 5). For example, the BSA "has been providing programs to young girls since 1971," when it welcomed young women into its Exploring program. (Compl., Ex. J at 5).  In fact, as of June 2018, girls and young women made up at least one-third of the membership in four BSA programs, including programs with the word "Scouts" in their name:  STEM Scouts, Sea Scouts, Exploring and Venturing. (Compl., Ex. J at 5).[2]

---

[1]    For the purposes of this motion only, the Court is required to assume that the factual allegations asserted in the Complaint are true. *See Great Minds v. FedEx Office & Print Servs., Inc.*, 886 F.3d 91, 92 n.1 (2d Cir. 2018).  To be clear, the BSA vigorously contests the merits of ***all*** of GSUSA's claims, and denies that GSUSA is entitled to any relief, as will be demonstrated in due course.

[2]    Girls and young women make up 45% of participants in the BSA's STEM Scouts program, 40% of participants in its Sea Scouts program, 39% of participants in its Exploring program, and 36% of participants in its Venturing program.  (Compl., Ex. J at 5).

In 2017, the BSA announced changes to two of its programs, the Cub Scouts and Boy Scouts programs, which traditionally and officially[3] had been offered only to boys. Specifically the BSA announced that: (1) starting in 2018, the BSA would welcome both boys and girls into its Cub Scouts program (ages 5-10); and (2) starting in February 2019, the BSA would welcome girls into its Boy Scouts program, which the BSA renamed "Scouts BSA," thereby enabling all eligible youth ages 11-17 to earn the BSA's prestigious Eagle Scout award. (Compl. ¶¶ 49, 51, Ex. J at 2).

The BSA decided to welcome girls and young women into these two iconic programs based on, among other things, the interest from young women in participating, and feedback from families who wanted a convenient, single-program provider for their children. (Compl., Ex. J. at 2-3). This demand was reflected in the BSA's surveys, which revealed that: (1) 90% of non-Scouting parents were interested in a program like Cub Scouts for their daughters; (2) 87% of non-Scouting parents were interested in a program like Boy Scouts for their daughters; and (3) 90% of non-Scouting girls, ages 11-18, were interested in a program like the Boy Scouts for themselves. (Compl., Ex. J at 3).

**Girl Scouts of the United States of America**. Founded in 1912, GSUSA "promotes, encourages and inspires girls to develop courage, confidence and character through a variety of activities and practical skills programs." (Compl. ¶ 17). Specifically, GSUSA permits young women to earn a variety of badges, participate in skill-based programs, and take part in the Girl Scout Cookie Program. (Compl. ¶¶ 19) As alleged in the Complaint, "the core elements of

---

[3]   In fact, girls have unofficially been joining their brothers in Cub Scout meetings for many years and were commonly referred to as "tag-a-longs." Those girls and their older sisters have asked whether the only reason they could not participate is because they are girls. The BSA believes that the time has come for those girls to choose whether they want to officially become part of the BSA's Scouting family of members.

GSUSA's brand" are "its famous, registered GIRL SCOUTS trademarks." (Compl. ¶ 2). GSUSA has "coexisted" with the BSA "[t]hroughout GSUSA's history." (Compl. ¶ 3).

**The Complaint**. On November 6, 2018, the GSUSA filed a Complaint ostensibly seeking to prohibit the BSA from using its ubiquitous trademarks SCOUTS or SCOUTING in connection with the BSA's continued efforts to offer youth or leadership programs that include both boys and girls. (*See* Compl., Prayer for Relief (a)). In particular, GSUSA primarily alleges that it owns certain trademarks that incorporate the words "girl scouts"—such as "GIRL SCOUTS," "GIRL SCOUT GOLD AWARD," and "CAMPUS GIRL SCOUTS"—and that the BSA's uses of any marks that incorporate the word SCOUT or its variants in any programs offered to both boys and girls infringe or dilute those rights. (Compl. ¶¶ 27, 102). Despite these allegations, the materials attached to GSUSA's own Complaint confirm that (1) the BSA has been using the SCOUTS and SCOUTING marks in commerce for more than 100 years, and (2) the BSA has welcomed girls into several of its programs for nearly 50 years. (Compl., Ex. J at 2, 5).

*Count II:  Common Law Rights in SCOUTS or SCOUTING*.  In addition to its alleged rights in trademarks that use the term "Girl Scouts," GSUSA also separately alleges that it has "common law rights" in "the marks SCOUTS and SCOUTING" alone, unaccompanied by the word "girl." (Compl. ¶ 102). GSUSA does not allege, however, that it is currently *using* SCOUTS or SCOUTING as a trademark unaccompanied by the prefix GIRL. Instead, it alleges that "by virtue of the long history of use of the GIRL SCOUTS trademark by GSUSA, the consuming public has come to recognize SCOUTS and SCOUTING as trademarks … belonging exclusively to GSUSA when used in connection with leadership programs and related services for girls." (Compl. ¶ 28). GSUSA alleges a claim for federal unfair competition and false designation of origin based in part on its claimed rights to SCOUTS and SCOUTING. (Compl. ¶¶ 101-112).

_Count VII:  Tortious Interference with Prospective Economic Advantage_.  GSUSA alleges that the BSA has committed tortious interference with GSUSA's prospective economic advantage, in two ways.  _First_, GSUSA alleges that unidentified BSA "recruiters" at unidentified events allegedly told unidentified parents or girls "that there 'are no more Girl Scouts' or that the organizations have combined."  (Compl. ¶ 143, _see also id._ ¶¶ 70-72).  GSUSA does not identify a specific relationship lost because of the BSA's (alleged) interference, nor does it allege any facts claiming that any such alleged "interference" was done solely out of malice or used improper means.  _Second_, GSUSA alleges that it had a prospective business relationship with a retailer in Red Bluff, California, that was "interfered with" when either the BSA or its local council allegedly "attempted to dissuade the retailer from providing booth space" to the GSUSA (Compl. ¶ 144; _see also id._ ¶ 69).  GSUSA does not allege, however, that it lost that relationship; in fact, the GSUSA alleges that it obtained the booth space at issue.  (Compl., Ex. L).[4]

**Facts Subject to Judicial Notice.** Despite GSUSA's allegations in Count II claiming common law rights in SCOUTS and SCOUTING, for nearly the past decade (including as recently as six months prior to filing this lawsuit) GSUSA has expressly directed that SCOUTS and SCOUTING should <u>not</u> be used alone in referencing the GSUSA.  _See infra_ at 17-18.  For instance, publicly available GSUSA guidelines of which this Court may take judicial notice instruct GSUSA's members, potential licensees and the general public to, among other things, "please … not say Scouts or Scouting when referring to Girl Scouts.  Always say Girl Scouts or Girl Scouting," and that "[t]he words 'Scout,' 'Scouts,' and 'Scouting' must never appear without the modifier 'Girl.' We are Girl Scouts.  We do Girl Scouting."  _Id._

---

[4]    As explained above, the BSA disputes the entirety of GSUSA's allegations.  That said, at this stage this motion is limited, as it must be under the Federal Rules, to GSUSA's pleading deficiencies for certain of the claims asserted in the Complaint, specifically, Counts II and VII.

## LEGAL STANDARD

A complaint that "fail[s] to state a claim upon which relief can be granted" should be dismissed pursuant to Rule 12(b)(6).  As noted above, *see supra* n.1, for the limited purpose of a motion to dismiss, the Court must accept as true the well-pleaded factual allegations in the Complaint, notwithstanding that the BSA vigorously disputes those allegations and will demonstrate their falsity at the appropriate stage.  *Great Minds*, 886 F.3d at 92 n.1.  However, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff nonetheless must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim cannot be grounded on mere suspicion but must rest on factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Smith v. Westchester Cty.*, 2013 WL 4830963, at *1 (S.D.N.Y. Aug. 28, 2013) (quoting *Twombly*, 550 U.S. at 555).  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

In reviewing the Complaint's allegations, the Court "may also 'consider exhibits to the complaint and documents incorporated into the complaint by reference, and documents that are integral to the plaintiff's claims, even if not explicitly incorporated by reference.'" *Jenkins v. Collins Bldg. Servs., Inc.*, 2013 WL 8112381, at *1 n.1 (S.D.N.Y. Oct. 17, 2013) (Hellerstein, J.) (quoting *Kelter v. Apex Equity Options Fund, LP*, 2009 WL 2599607 (S.D.N.Y. Aug. 24, 2009)).  Additionally, the Court may take judicial notice of statements on a party's website.  *See, e.g.*, *Saint Laurie Ltd. v. Yves Saint Laurent Am., Inc.*, 2015 WL 12991205, at *7 n.13 (S.D.N.Y. Mar. 27, 2015).

## ARGUMENT

The Complaint fails to state a claim in two fundamental respects. *First*, GSUSA fails to allege facts supporting the required elements of its claim for tortious interference with prospective business relations (Count VII). *Second*, GSUSA fails to allege facts to sufficiently support any claims arising from any purported common law rights in the marks SCOUTS or SCOUTING alone (Count II). [5]

## I. GSUSA FAILS TO STATE A CLAIM OF TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

"To state a claim for tortious interference with prospective business relations, a plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" *Lombardo v. Dr. Seuss Enters., L.P.*, 2017 WL 1378413, at *4 (S.D.N.Y. Apr. 7, 2017) (Hellerstein, J.) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006)); *see also Chao v. Mount Sinai Hosp.*, 2010 WL 5222118, at *13 (S.D.N.Y. Dec. 17, 2010) (citing same elements). [6] "Tortious interference claims have a limited scope and an extremely high pleading standard." *Diario El Pais, S.L. v. The Nielsen Co., (US)*, 2008 WL 4833012, at *7

---

[5]    In addition to the grounds addressed in this motion, GSUSA's remaining claims likely are precluded as a matter of law on constitutional grounds, including the BSA's right to freedom of association in connection with its extant trademark rights. *Cf. Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). GSUSA's remaining claims may also be precluded by 36 U.S.C. § 30905, which grants the BSA the right to use "descriptive or designating marks, and words or phrases the [BSA] adopts." Given the case's current procedural posture, the BSA will address these defenses in due course.

[6]    The tort is alternatively "referred to as tortious interference with prospective business relations or prospective economic advantage, among other names, but the legal standard is the same." *Berwick v. New World Int'l, Ltd.*, 2007 WL 949767, at *14 n.11 (S.D.N.Y. Mar. 28, 2007); *see also Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002) (same elements).

(S.D.N.Y. Nov. 6, 2008).  Indeed, courts are "stingy in their interpretation of this tort," resisting invitations to lower the bar for the wrongful conduct required.  *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 346 (S.D.N.Y. 2008) (collecting cases).

Here, GSUSA's allegations fall short of the requisite pleading standard in multiple respects, each of which independently warrants dismissal of Count VII.

### A.    GSUSA Does Not Allege A Specific Business Relationship With A Specific Third Party

First, with one exception addressed below that fails for other reasons, GSUSA fails to sufficiently identify any specific business relationships with third parties.  To state a claim, a plaintiff "must demonstrate that they had a reasonable probability of entering into a business relationship with a third party."  *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 239 (S.D.N.Y. 2018) (citation omitted).  Plaintiffs must identify a "***specific*** prospective relationship with which defendants interfered."  *Bus. Networks of N.Y., Inc. v. Complete Network Solutions Inc.,* 265 A.D.2d 194, 195 (N.Y. 1st Dep't 1999) (emphasis added).  As such, the plaintiff must "identify the potential customers at issue" with specificity.  *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 227 (S.D.N.Y. 2013) (dismissing claim).  "New York courts have … reject[ed], for example, a claim containing 'only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship." *Insurent Agency Corp. v. Hanover Ins. Co.*, 2018 WL 3979589, at *5 (S.D.N.Y. Aug. 20, 2018) (quoting *McGill v. Parker*, 582 N.Y.S.2d 91, 95 (App. Div. 1st Dep't 1992)); *Dentsply Int'l Inc. v. Dental Brands for Less LLC*, 2016 WL 3676686, at *6 (S.D.N.Y. July 5, 2016) ("Allegations of interference with 'customers,' without more, are insufficient to state a claim for tortious interference with business relations.").

Here, other than the one instance below that separately fails to support its claim, GSUSA does not identify any "business relationship" with any specific "third party." Instead, GSUSA merely alleges that: (1) the BSA and GSUSA "occasionally attend the same recruitment events;" and (2) GSUSA has a prospective relationship with "parents and girls" who attend. (Compl. ¶¶ 141-143). But the Complaint does not identify a single specific relationship it claims to have lost as a result of the BSA's alleged interference. The mere ***possibility*** of a lost recruit is not enough; even if "it is not farfetched … [such] allegations are speculative" and thus cannot support a tortious interference claim. *Daniels v. Kostreva*, 2017 WL 823583, at *9 (E.D.N.Y. Jan. 12, 2017).

The only specific relationship identified by GSUSA is with "a retailer in Red Bluff, California," which GSUSA alleges is a prospective relationship "to provide space to a Girl Scout Council for the purpose of conducting Girl Scout activities," and that the BSA "intentionally interfered with that relationship when it attempted to dissuade the retailer from providing booth space" to GSUSA. (Compl. ¶¶ 144, 69). That relationship fails to state a claim because GSUSA's own exhibit indisputably confirms it did obtain the booth space, as discussed *infra* Part I.D. In any event, it is the only factual allegation that even arguably satisfies the first element.

**B.      GSUSA Does Not Allege That The BSA Had Actual Knowledge Of Any Of GSUSA's Specific Business Relationships**

GSUSA also fails to allege that the BSA actually knew of any specific business relationship and intentionally interfered with that relationship. "[I]n order to state a claim for tortious interference … defendants must have ***actual*** knowledge of that specific [business] relationship." *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 546 (S.D.N.Y. 2014) (emphasis in original). Thus, courts regularly dismiss claims where, as here, a plaintiff does not allege facts of the defendant's actual knowledge of the plaintiff's relationship with a third party. *See, e.g.*, *id.* at

9

546–47 (granting motion to dismiss because plaintiff "fails to provide any factual allegations that the defendants had actual knowledge of any specific business relationships between Grand Estates and a potential seller or that the defendants intentionally interfered with that business relationship"); *Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 266 (E.D.N.Y. 2014) (plaintiff failed to allege that defendant "had actual knowledge of any contract between the Plaintiff and a third party"); *Sedona Corp. v. Ladenburg Thalmann & Co.*, 2009 WL 1492196, at *9 (S.D.N.Y. May 27, 2009) (dismissing claim because "at no point does the SAC actually allege that Defendants knew about the specific business relationships identified").

Here, apart from the Red Bluff retailer (discussed *infra* Part I.D.), GSUSA's sole allegation of the BSA's purported knowledge of GSUSA's prospective business relations is the conclusory allegation that "Defendant is aware that GSUSA has a prospective business relationship with the parents and girls who attend these recruitment events." (Compl. ¶ 142). This is precisely the type of "generalized allegation [that] will not pass muster." *Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 423 (E.D.N.Y. 2013) (granting summary judgment for lack of support that "Defendants knew or should have known the Plaintiffs had customers who enjoyed [Plaintiff's product]"). Thus, even if the Complaint identified specific business relationships that GSUSA claims have been affected, it does not allege that Defendants "had ***actual knowledge*** **of** ***specific*** business relationships." *Id.* (emphasis in original).

### C.    GSUSA Does Not Allege That The BSA Acted Solely Out Of Malice Or Used Dishonest, Unfair, Or Improper Means

GSUSA also does not allege any facts indicating that the BSA acted solely out of malice or used improper means. Under New York law, "'[a] plaintiff must allege that a 'defendant's conduct was motivated solely by malice or to inflict injury by unlawful means, beyond mere self-interest or other economic considerations.'" *Lombardo*, 2017 WL 1378413, at *4 (quoting *S&L*

*Vitamins, Inc. v. Australian Gold, Inc.,* 521 F. Supp. 2d 188, 217 (E.D.N.Y. 2007)).  This "represents a particularly high hurdle" for plaintiffs to satisfy.  *Enzo Biochem, Inc. v. Molecular Probes, Inc.*, 2013 WL 6987615, at *3 (S.D.N.Y. Dec. 6, 2013).  "'[A]s a general rule, the defendant's conduct must amount to a crime or an independent tort.'"  *Lombardo*, 2017 WL 1378413, at *4 (quoting *Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 190 (N.Y. 2004)).  The defendant's malicious conduct must also have been undertaken for the sole purpose of harming the plaintiff.  "If there are 'no allegations in the complaint capable of supporting a reasonable inference that … defendant acted with the ***sole purpose*** of harming the plaintiff or used dishonest, unfair, or improper means,' then the claim should be dismissed." *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011) (quoting *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 107 (2d Cir. 2009)) (emphasis in original).

GSUSA's allegations do not clear this high hurdle.  Instead, GSUSA pleads only conduct that, even taken in the light most favorable to GSUSA, accuses the BSA of acting in competitive self-interest to recruit girls for its own organization, as opposed to acting for the sole purpose harming specific GSUSA business relationships.  *See* Compl. ¶ 143 ("Defendant's recruiters have recently told parents and girls that there 'are no more Girl Scouts' or that the organizations have combined…. Upon information an belief, these recruiters acted on behalf of Defendant or ***for the purpose of serving the Defendant's interest***.  …  [a]s a result … girls have signed up for Defendant's program instead of GSUSA's program….") (emphasis added);  Compl. ¶ 144 ("Defendant … intentionally interfered with that relationship [between GSUSA and a retailer in Red Bluff, California] when it attempted to dissuade the retailer from providing booth space to the council" so that only the BSA allegedly would get booth space at the event).

11

Thus, GSUSA fails both (1) to allege anything rising to the level of a criminal act, and (2) to allege that interference with GSUSA's prospective business was the BSA's ***sole*** objective (as opposed to competitive self-interest). *R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 2018 WL 1010210, at *6 (N.D.N.Y. Feb. 20, 2018) (granting motion to dismiss tortious interference claim where Plaintiff "d[id] not allege that Defendants 'acted with the sole purpose of harming' [Plaintiff]") (quoting *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000)) "it is not enough simply to allege intentional interference"); *MVB Collision, Inc. v. Progressive Ins. Co.*, 13 N.Y.S.3d 139, 140 (App. Div. 2015) (affirming dismissal of tortious interference claim where the defendant's "conduct was, at least in part, to advance its own interests, not solely for the purpose of harming the plaintiff"). Because merely competitive conduct as GSUSA has alleged (and which the BSA vigorously disputes) is not actionable under this tort claim, it must be dismissed.

### D.    GSUSA Does Not Allege That Any Purported Interference Caused Injury To A Specific Business Relationship

Finally, GSUSA does not allege any specific injury that directly resulted from the BSA's purported interference with a prospective relationship. "[T]he defendant's interference must be direct. The defendant must target some activities directed toward the third party and convince the third party not to enter into a business relationship with the plaintiff." *Gym Door Repairs*, 331 F. Supp. 3d at 239. The plaintiff "must allege that, ***but for defendant's conduct***, his prospective business relations would have coalesced into actual contracts." *Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73, 78-79 (S.D.N.Y. 1995) (emphasis added) (dismissing claim where the "allegations are too vague to support a finding that they would have executed specific contracts but for interference by counterdefendants."). In short, GSUSA "must identify specific contracts that they would have won but for the [BSA's] alleged interference." *Gym Door Repairs*, 331 F. Supp. 3d

at 244; *see also Camp Summit of Summitville, Inc. v. Visinski*, 2007 WL 1152894, at \*15 (S.D.N.Y. Apr. 16, 2007) (dismissing claim where plaintiff "failed to allege any facts demonstrating that her relations with former Pocono Ridge campers would have translated into additional, personally lucrative contracts, but for Summit's interference").

GSUSA does not allege a single concrete loss of any actual contract that would have been secured but for the BSA's alleged interference—it does not identify any particular girl or parent who, but for the BSA's alleged interference, ***would have but did not*** sign up with GSUSA at a recruiting event. This independently requires dismissal of the claim.

And as to the only specifically identified instance of a purported business relationship with which the BSA allegedly interfered—the Red Bluff retailer—GSUSA does not allege that it ***lost*** that contract, as it must to state a claim, instead asserting via its exhibit that the retailer "agreed to permit Girl Scouts to secure space." (Compl. ¶¶ 69, 144; Ex. L).

Finally, GSUSA's allegations solely "upon information and belief" that there have been "multiple other acts of misconduct" by the BSA and its volunteer leaders which "GSUSA can only fully discover through litigation" (Compl. ¶¶ 74, 145) are insufficient to save this claim from dismissal. *See Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 261-62 (S.D.N.Y. 2013) (dismissing claim where allegation of interference based "solely '[u]pon information and belief'" was insufficient); *see also Saint Laurie Ltd.*, 2015 WL 12991205, at \*12 ("It is possible that this information is particularly in the possession of Defendants, and that such information will only come to light through discovery. However, Plaintiff is still required to allege such facts upon information and belief, which it has not done here.").[7]

---

[7]   For the same reasons as stated above, GSUSA's fleeting allegation of the BSA's purported interference with unidentified GSUSA "leadership programming" based on the purported use of a mark as a Google Ad Word (Compl. ¶ 73), cannot support this claim either, because GSUSA has

## II.   THE COURT SHOULD DISMISS GSUSA'S CLAIMS TO THE EXTENT THEY DEPEND ON PURPORTED COMMON LAW RIGHTS IN "SCOUT" OR "SCOUTING" ALONE

In Claim II, GSUSA alleges a cause of action of federal unfair competition and false designation of origin under 15 U.S.C. § 1125(a).  In support of this claim, GSUSA alleges to have "common law rights" in "the marks SCOUTS and SCOUTING as used in connection with girls programs."  (Compl. ¶ 102).  Notably, however, nowhere in its Complaint does GSUSA allege it is actually <u>using</u> the marks SCOUT or SCOUTING alone in connection with its girls programs; thus, as a matter of law, it cannot state a claim premised on its "common law rights" for those particular marks, and GSUSA's claim based on such "common law rights" should be dismissed.

### A.   GSUSA Does Not Allege It Is Actually Using the SCOUT And SCOUTING Marks

"To state a claim for unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must establish 'that it has a valid mark entitled to protection and that defendant's use of it [in commerce] is likely to cause confusion.'"  *Franklin v. X Gear 101, LLC*, 2018 WL 4103492, at *5 (S.D.N.Y. Aug. 28, 2018) (quoting *Gruner + Jahr USA Publ'g, a Div. of Gruner + Jahr Printing and Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993)).  "It is a fundamental princip[le] of trademark law that the right to exclusive use of a trademark derives from its appropriation and subsequent ***use*** in the marketplace."  *Hawaii-Pac. Apparel Grp., Inc. v. Cleveland Browns Football Co. LLC*, 418 F. Supp. 2d 501, 505 (S.D.N.Y. 2006) (emphasis added, citation omitted).  "The right to exclusive use of a trademark derives from the use in commerce of the mark, rather than from the mark's mere adoption."  *Gameologist Grp.,*

---

not identified a specific prospective recruit who, but for this alleged use, would have signed up for GSUSA.  *See Louisiana Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, 2012 WL 5520394, at *2 (N.D. Cal. Nov. 14, 2012) (dismissing tortious interference claim based on similar allegations).

*LLC v. Sci. Games Int'l, Inc.*, 838 F. Supp. 2d 141, 154 (S.D.N.Y. 2011), *aff'd*, 508 F. App'x 31 (2d Cir. 2013). This is not a controversial rule—it is the cornerstone of a common law mark. *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918) ("There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. … the right to a particular mark grows out of its use."); *Stephano Bros. v. Stamatopoulos*, 238 F. 89, 90 (2d Cir. 1916) ("By the common law the exclusive right to a trade-mark grew out of its use."). Alleging the element of ongoing use is important because its presence is required to confer ownership of a common law mark, and its absence can result in abandonment of—and inability to enforce—the mark. *See, e.g.*, *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147 (2d Cir. 2007) ("If … an owner ceases to use a mark without an intent to resume use in the reasonably foreseeable future, the mark is said to have been 'abandoned.'"). According to the Lanham Act, "[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127.

Here, GSUSA does not offer any factual allegation that it is actually using SCOUTS or SCOUTING *alone* in connection with its services. Instead, it suggests (in conclusory fashion) that the consuming public has come to associate SCOUTS and SCOUTING with GSUSA when used in connection with leadership programs for girls; that "association," however, is premised solely on GSUSA's use of the *entire* GIRL SCOUTS mark. (Compl. ¶ 28).[8] Thus, GSUSA has not

---

[8]   By contrast, GSUSA alleges throughout the Complaint that it uses GIRL SCOUTS (which it collectively defines as the "GS Marks," Compl. ¶ 28) in connection with its products and services. *See, e.g.*, *id.* (GSUSA alleges ownership rights in "all variations of GIRL SCOUTS that GSA has used in connection with girls' leadership development services and related products or services"); *id.* ¶ 29 ("the GS Marks have been extensively advertised and promoted in various media in the United States, including online through the GIRL SCOUTS website (https://www.girlscouts.org/) and social media sites such as Facebook"); *id.* ¶ 21 ("GSUSA, among other things, licenses the GIRL SCOUTS and related trademarks, and other intellectual property, to each of the local councils"); *id.* ¶ 31 ("GSUSA has marketed and offered its youth development services and

sufficiently alleged a required element of a § 1125(a) claim premised on its claimed common law rights in SCOUTS or SCOUTING.  And a conclusory legal assertion of rights—*i.e.*, that "GSUSA owns … common law rights in … the marks SCOUTS and SCOUTING" (Compl. ¶ 102)—is insufficient.  *See Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) (court will not accept as true a "legal conclusion couched as a factual allegation" nor "allegations that are wholly conclusory") (citing *Iqbal*, 556 U.S. at 662, 678-79).

Courts do not hesitate to dismiss claims (like GSUSA's) to the extent they fail to sufficiently allege <u>use</u> of a trademark.  *See, e.g.*, *Mills v. Alphabet Inc.,* 2018 WL 1569838, at *4 (S.D.N.Y. Mar. 28, 2018) (dismissing trademark infringement claim where plaintiff "does not assert that his purported marks … were used by him"); *Pub. Free Will Corp. v. Verizon Commc'ns Inc.*, 2017 WL 1047330, at *4 (E.D.N.Y. Mar. 17, 2017) (dismissing § 1125(a) claim where plaintiff's only alleged use was in "filing applications to state and federal agencies," and failed "to allege facts that establish it has a protectable service mark under the Lanham Act"); *Muniz v. Morillo*, 2008 WL 4219073, at *6 (S.D.N.Y. Sept. 10, 2008) (dismissing § 1125(a) claim because plaintiff "fails to allege that he ever ***actually*** used the mark") (emphasis in original).

The Court should therefore dismiss Count II to the extent that it is premised on GSUSA's alleged "common law rights" in SCOUT or SCOUTING alone.[9]

---

programs for girls featuring the GIRL SCOUTS mark in interstate commerce since at least as early as 1913").

[9]    Except for Count II, the Complaint's causes of action do not clearly allege that GSUSA has any rights in SCOUTS or SCOUTING alone.  But to the extent that GSUSA attempts to incorporate such unpleaded allegations into its other trademark-related claims (Counts III, IV, V or VI), such claims should be dismissed for the same reasons.  "'Courts employ substantially similar standards' when analyzing claims for trademark infringement under the Lanham Act, trademark infringement under New York common law, and unfair competition under New York common law."  *Privado Mktg. Grp. LLC v. Eleftheria Rest Corp.*, 2017 WL 1167332, at *7 (S.D.N.Y. Mar. 27, 2017) (quotation omitted)).  Likewise, a claim of dilution requires that the

**B.**     **Amendment Would Be Futile Because GSUSA Has Consistently Disclaimed Use Of SCOUT Or SCOUTING Alone**

Not only should the Court dismiss GSUSA's claims to the extent they are grounded upon purported common law rights in SCOUT or SCOUTING alone, but such claims should be dismissed with prejudice, as this defect cannot be cured on amendment.  Under Rule 15(a)(2), courts "should freely give leave" to amend "when justice so requires," but "leave may be denied for good reason, including futility." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quotations omitted).  Here, futility compels dismissal of such a claim with prejudice.

GSUSA cannot, in good faith, replead to allege that it uses SCOUT or SCOUTING alone in connection with its products and services because it has expressly *disclaimed* such use for nearly a decade.  More specifically, GSUSA has repeatedly and publicly instructed its volunteers and professionals not to use SCOUT or SCOUTING alone without the "GIRL" prefix, including because the BSA has rights in these marks.  For example, GSUSA's regional councils have published style guidelines that prohibit use of SCOUT or SCOUTING alone, as the following examples illustrate:

- "***The words 'Scout,' 'Scouts,' and 'Scouting' must never appear without the modifier 'Girl.' We are Girl Scouts. We do Girl Scouting.***"  Declaration of Rachel Kassabian ("Kassabian Decl."), Ex. A ("Graphic Guidelines & One-Time Logo Usage Agreement," Girls Scouts Arizona Cactus Pine, dated 2018) at 4 (emphasis added), *available at* https://www.girlscoutsaz.org/content/dam/girlscoutsaz/documents/volunteer-resources/brand-pr-marketing/graphic-guidelines-logo-usage-agreement.pdf.

- "Please do not use Scouts or Scouting  ***Please do not say Scouts or Scouting when referring to Girl Scouts.  Always say Girl Scouts or Girl Scouting.  The word 'Scouting' has been copyrighted by Boy Scouts and can't be used.***"  Kassabian Decl., Ex. B ("Council Style Guide," Girl Scouts North Carolina Coastal Pines, dated 2016-17) at 4 (emphasis added), *available at* http://www.nccoastalpines.org/content/dam/nc-coastal-pines-images-/forms-and-documents-/MC201_Style%20Guide_2016-17_GS-NCCP.pdf.

---

plaintiff own a valid mark.  *See* 15 U.S.C. § 1125(c); *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485-86 (2d Cir. 2005) (state law).

- "***Please do not say Scouts or Scouting when referring to Girl Scouts.  Always say Girl Scouts or Girl Scouting.  The word 'Scouting' has been copyrighted by Boy Scouts, and can't be used.***"  Kassabian Decl., Ex. C ("Style Guide for Volunteers," Girl Scouts of Western Washington, dated 2015) at 2 (emphasis added), *available at* https://www.girlscoutsww.org/content/dam/girlscouts-girlscoutsww/documents/style-guide-for-volunteers.pdf.

- "***The words 'Scout,' 'Scouts,' and 'Scouting'' must never appear without the modifier 'Girl'***"  Kassabian Decl., Ex. D (" Editorial Style Guide," Girl Scouts of NE Kansas and NW Missouri, dated 2014) at 3 (emphasis added), *available at* https://www.girlscoutsksmo.org/Forms-Resources/brand-center/Documents/GSKSMOStyleGuide-WEB.pdf.

- "[The Girl Scout service mark] is our primary logo [and] primary brand mark … [and] may not be reassembled or re-proportioned. …  The service mark may never be redrawn, re-proportioned, or modified in any way. …  To maintain the Girl Scout identity, always use full and proper names when communicating verbally or in writing.  ***Use 'Girl Scouts' not Scouts'*** and 'Girl Scout Daisy' not 'Daisies' ***and 'Girl Scouting not 'Scouting.'***"  Kassabian Decl., Ex. E ("Appendix: Logo and Graphic Design Use," Girls Scouts of Wisconsin Badgerland, dated 2011) at 102-103 (emphasis added), *available at* http://gsbadgerland.org/Portals/0/Documents/2011%20files/Logo%20Use.pdf.

Thus, GSUSA cannot cure this pleading deficiency on amendment, given its repeated public disclaimers of any such use dating back since at least 2011, of which this Court can and should take judicial notice.[10]  *See Colodney v. Continuum Health Partners, Inc.*, 2004 WL 829158, at *7 (S.D.N.Y. Apr. 15, 2004) (amendment futile where stating a claim would directly contradict party admissions).

---

[10]   On a motion to dismiss the Court may take judicial notice of statements on a party's website. *See, e.g.*, *Saint Laurie Ltd. v. Yves Saint Laurent Am., Inc.*, 2015 WL 12991205, at *7 n.13 (S.D.N.Y. Mar. 27, 2015) ("The Court takes judicial notice of Saint Laurie's website."); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'") (quoting Fed. R. Evid. 201(b)); *see also Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, 2013 WL 6670584, at *1 n.1 (S.D.N.Y. Mar. 29, 2013) (taking judicial notice of Internet material); *Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y. 2008) (similar).

## CONCLUSION

By granting the BSA's motion, this Court will eliminate the above-referenced pleading deficiencies in the Complaint, and focus this case on the core issues in dispute for purposes of discovery and summary judgment.  The BSA respectfully requests that the Court grant its motion in its entirety.

Dated:   January 23, 2019                    Respectfully submitted,

By:  /s/ *Rachel Kassabian*
Rachel Kassabian (*pro hac vice*)
rachelkassabian@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5005
Facsimile: (650) 801-5100

Todd Anten
toddanten@quinnemanuel.com
Jessica A. Rose
jessicarose@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212)  849-7100

*Attorneys for Defendant Boy Scouts of America*