DORSEY & WHITNEY LLP
Bruce R. Ewing
Fara S. Sunderji
Jonathan Montcalm
Kimberly Frumkin
51 West 52nd Street
New York, New York 10019
(212) 415-9200

Attorneys for Plaintiff
Girl Scouts of the United States of America

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GIRL SCOUTS OF THE UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BOY SCOUTS OF AMERICA,<br><br>　　　　　　　　Defendant. | Case No. 1:18-cv-10287 (AKH)<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S LOCAL CIVIL RULE 56.1 STATEMENT AND STATEMENT OF ADDITIONAL FACTS AS TO WHICH THERE IS A GENUINE ISSUE TO BE TRIED** |

## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S LOCAL CIVIL RULE 56.1 STATEMENT

Plaintiff Girl Scouts of the United States of America ("Girl Scouts" or "GSUSA"), by

and through its undersigned counsel, hereby submits the following Response to Defendant's

Local Civil Rule 56.1 Statement, Dkt. 104, 111, 122, filed by Defendant Boy Scouts of America

("Boy Scouts") in support of its motion for summary judgment.

## A.　　The Boy Scouts of America

1.　　**The BSA is a non-profit organization that aims to "prepare young people to make ethical and moral choices over their lifetimes by instilling in them the values of the Scout Oath and Law."** Declaration of Patrick Sterrett ("Sterrett Decl."), ¶¶ 2, 15.

**RESPONSE:** Admitted that Boy Scouts mission statement is quoted accurately.

2.     **Incorporated in 1910, Congress granted the BSA its federal charter on June 15, 1916, giving the BSA exclusive right to use its name, insignia, designating marks and words or phrases it adopts.** Declaration of Dylan I. Scher ("Scher Decl."), Ex. RR; 36 U.S.C § 309 *et seq.*; 36 U.S.C § 30905.

**RESPONSE:**  Admitted to the extent Boy Scouts' Congressional Charter supports the allegations contained in this paragraph and denied to the extent the Charter does not.  Boy Scouts' Congressional Charter states that Boy Scouts has "the exclusive right to use emblems, badges, descriptive or designating marks, and words or phrases the corporation adopts.  This section does not affect any vested rights."  *See* 36 U.S.C. § 30905.  This statutory provision does not reference Boy Scouts "name" or "insignia," as paragraph 2 states.

In addition, this paragraph fails to mention that Boy Scouts' Congressional Charter provides that the organization's purpose is "to promote, through organization, and cooperation with other agencies, the ability of ***boys*** to do things for themselves and others, to train them in scoutcraft, and to teach them patriotism, courage, self-reliance, and kindred virtues, using the methods that were in common use by boy scouts on June 15, 1916."  *See* 36 U.S.C. § 30902 (emphasis added).  This paragraph also fails to mention that Girl Scouts has its own Congressional Charter that grants it "the exclusive right to use all emblems and badges, descriptive or designating marks, and words or phrases the corporation adopts, including the badge of the Girl Scouts, Incorporated, referred to in the Act of August 12, 1937 (ch. 590, 50 Stat. 623), and to authorize their use, during the life of the corporation, in connection with the manufacture, advertisement, and sale of equipment and merchandise. This section does not affect any vested rights."  *See* 36 U.S.C. § 80305.  *See also* Girl Scouts Statement of Additional Facts as to Which Girl Scouts Contends There Is a Genuine Issue to Be Tried, *infra*, ¶¶ 125-282.

3.      **The BSA launched the Cub Scout program in 1930 to serve younger members. Since its inception in 1910, more than 130 million young men and women have participated in the BSA's youth programs and more than 35 million adult volunteers have helped carry out the BSA's mission.** Sterrett Decl., ¶ 16; Scher Decl., Ex. SS.

**RESPONSE:**  Admitted in part and denied in part.  As to the first sentence, admitted except to the extent "younger members" is meant to encompass girls, which is denied.  Prior to 2018, girls were not permitted to become members of CUB SCOUTS.  *See* the accompanying Declaration of Bruce R. Ewing ("Ewing Dec."), Exh. 63 (M. Surbaugh) at 12:8-20:2, 163:24-164:25.  As to the second sentence, admitted except to the extent it suggests that "young women" have participated in Boy Scouts' programs in numbers anywhere close to those of young men, which is denied.  Prior to 2018, girls and young women amounted to a small percentage of Boy Scouts' overall membership because they were only permitted to participate in "specialty" programs. *See* ¶¶ 156, 157, *infra*.

4.      **Each of the BSA's more than 50,000 Scouting units (such as troops or packs) in the United States is organized by one of more than 250 local councils that are chartered by the BSA and oversee the Scouting program in an assigned geographic area.** Sterrett Decl., ¶ 2.

**RESPONSE:**  Admitted.

5.      **Each local council is separately incorporated under the non-profit laws as an independent 501(c)(3) entity.** Sterrett Decl., ¶ 2.

**RESPONSE:**  Admitted.

6.      **Local councils have no authority to bind the BSA National Council.** Sterrett Decl., ¶ 2.

**RESPONSE:**  Girl Scouts objects to this assertion, which presents a question of law that Girl Scouts cannot answer in the abstract and is not a statement of fact.  Moreover, Boy Scouts maintains "the right to set standards of membership and leadership" as well as the right to "deny, expire, revoke, or otherwise limit or bar registration or affiliation with the Boy Scouts of

America or any local council or any other affiliated organization" in its sole discretion.  Ewing

Dec., Exh. 64 at BSA00167070.  Further still, eligibility requirements for the CUB SCOUTS,

SCOUTS BSA, VENTURING and SEA SCOUTS programs must be approved by Boy Scouts'

National Leadership Council and reported to Boy Scouts' National Executive Committee.  *Id*. at

BSA00167072.

 Additionally, Boy Scouts maintains complete control over the use of its intellectual

property by its local councils, as Boy Scouts' "National Council has the sole and exclusive right

to authorize the use of insignia, words, phrases, designation marks, pictorial representations, and

descriptive remarks relating to the program of the Boy Scouts of America on commercial

products, promotional efforts, and/or sale and distribution to members of the Boy Scouts of

America and/or the general public."  *Id*. at BSA00167073.  Under the terms of use of governing

Boy Scouts' online Brand Center, "Assets in the BSA Brand Center, including all videos, sound

recordings, photographs, banners, signs, graphics, logos, trademarks, and other content, are the

property of the Boy Scouts.  The assets are intended solely for use by BSA National Council

staff, local councils and units to promote their approved programs and activities."  *Id.*, Exh. 65 at

GSUSA_00188960.  In addition, Boy Scouts' Brand Guidelines make clear that "The Boy

Scouts of America maintains its right to regulate use of trademarks and constrain that use

whenever the BSA, in its sole discretion, deems it necessary to do so."  Ewing Dec., Exh. 66

(Dep. Exh. 69) at pg. 15; Exh. 67 (M. Ramsey) at 14:15-16:23, 183:18-185:14.

 When it comes to respecting the intellectual property rights of third parties like Girl

Scouts, Boy Scouts has also stated that "[t]hrough a longstanding quality control process, we do

and will continue to diligently oversee the use of others' intellectual property on and in

connection with BSA products."  *Id.*, Exh. 68 at GSUSA_00106535.

B.     **Girl Scouts of the United States of America**

7.     **GSUSA founder Juliette Gordon Low formed a program in 1912 –
two years after the founding of the BSA – and named it the Girl Guides. In 1913,
Ms. Low's organization renamed itself as the "Girl Scouts," incorporated in 1915,
and today is known as the Girl Scouts of the United States of America.** Scher Decl.,
Ex. TT at pp. 10-12.

**RESPONSE:**  Admitted in part and denied in part.  The first sentence is admitted.  As to the

second sentence, the adoption of the name "Girl Scouts" for Mrs. Low's program and

organization is believed to have occurred midway through the organization's first year in 1912,

not 1913.  Ewing Dec., Exh. 69 at GSUSA_00095329.  The balance of the second sentence is

admitted.

8.     **GSUSA has always been, and remains, a "girls only" organization.** Scher
Decl., Ex. VVVVVV (Acevedo Tr.);[1] 252:22-23 (Sylvia Acevedo, then-Chief Executive Officer
of GSUSA: "The Girl Scouts does not accept boys as members. And will not."); *id.* Ex. UU
(GSUSA marketing: "Girl Scouts offers the best leadership development experience for girls in
the world – one that is designed with, by, and for girls"); *id.* Ex. VV (GSUSA marketing
describing GSUSA's programs as "a unique, all-girl place designed to help [girls] reach their full
G.I.R.L potential"); *id.* Ex. WWWWWW (Archibald Tr.) 190:8-16 ("We're proud of our girl-
focused, girl-centered, girl-only leadership experience, and we've been working hard to
articulate the values of those experiences and differentiate ourselves in the marketplace."); *id.*
Ex. WW at -662 (GSUSA's foundational documents and mission statement – to "build[] girls of
courage, confidence, and character, who make the world a better place" – reflect GSUSA's
exclusive focus on single-gender programs designed for girls).

**RESPONSE:**  Admitted.

C.     **The BSA's Use of SCOUT Marks Over the Past Century, Including in
Connection with Co-ed Programs**

9.     **The BSA has used non-gender-specific SCOUT marks – that is, "scout"
without being preceded by a gender-specific term – for more than a century.**
Declaration of Tracy Waters ("Waters Decl.") ¶¶ 6-13 & Exs. G-M (examples dating back
to 1913, Ex. H); Declaration of Michael Ramsey ("Ramsey Decl."), ¶¶ 9-18 & Y-II; *see also*
*id.* ¶ 11 (the BSA maintains a "Language of Scouting" reference tool that serves as the
"definitive resource" on Scouting terms, and which includes about three dozen non-gender-
specific SCOUT-formative terms).

---

[1] Citations to deposition transcripts are denoted with the deponent's last name, followed by "Tr."

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that Boy Scouts has used the term "scout" without a gender-specific modifier in connection with leadership and development services for boys for more than a century and, as reflected in Exhibits G, H and I to the Waters Declaration, certain merchandise.  Girl Scouts denies that Boy Scouts has used the term "scout" without a gender-specific modifier in connection with leadership and development services for girls for more than a century.  Prior to 2018, the participation of girls and young women in Boy Scouts' programs was restricted to "specialty" programs whose participants, often not referred to as "scouts" at all, accounted for a small percentage of Boy Scouts' overall membership.  *See* ¶¶ 16, 18, 99, 152, 156, *infra.*

  10. **The BSA has used the term "BSA," as well as its fleur-de-lis logo, for more than a century.** Ramsey Decl. ¶ 10.

**RESPONSE:**  Girl Scouts admits that Boy Scouts has used its fleur-de-lis logo in U.S. commerce in connection with leadership and development services for boys for more than a century.  Girl Scouts also admits that a search of records of the U.S. Patent & Trademark Office (the "PTO") shows that Boy Scouts owns one U.S. trademark registration for the mark BSA that reports dates of first use in commerce in connection with certain goods as far back as 1950. Ewing Dec., Exh. 70.  Boy Scouts has not produced any evidence showing use of BSA as a stand-alone mark in commerce other than the cited, conclusory testimony of Michael Ramsey, which lacks foundation and is therefore inadmissible under Fed. R. Evid. 602.  As a result, to the extent Boy Scouts claims use of BSA as a trademark in connection with any goods or services dating back before 1950, that allegation is denied.  Likewise, Girl Scouts denies that Boy Scouts has used its fleur de lis logo or the BSA trademark in connection with leadership and development services for girls for more than a century.  Prior to 2018, the participation of girls and young women in Boy Scouts' programs was restricted to "specialty" programs whose

participants accounted for a small percentage of Boy Scouts' overall membership.  *See* ¶¶ 156, 157, *infra.*

11.     **The BSA has used its Cub Scouts name and wolf-in-the-diamond logo for more than 80 years.** Ramsey Decl. ¶ 10.

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that Boy Scouts has used the CUB SCOUTS trademark and the referenced logo in U.S. commerce in connection with leadership and development services for boys for more than eighty years.  Girl Scouts denies that Boy Scouts has used the CUB SCOUTS trademark and the referenced logo in U.S. commerce in connection with leadership and development services for girls for more than eighty years.  Prior to 2018, girls were not permitted to become members of CUB SCOUTS.  Ewing Dec., Exh. 63 (M. Surbaugh) at 163:24-164:25.

12.     **On the BSA Brand Center, the BSA's use of non-gender-specific SCOUT marks in connection with the Cub Scouts and Boy Scouts (now Scouts BSA) programs is accompanied by Cub Scout colors of blue and gold, and/or BSA corporate colors of blue, white, and red. They also consistently appear alongside other recognized BSA source indicia, including its iconic fleur-de-lis logo and the BSA name, and, when appropriate, the well-known mark "Eagle Scout," or, in the case of Cub Scouts, in connection with Cub Scouts' distinctive wolf in the diamond logo and the name "Cub Scouts."** Ramsey Decl., ¶¶ 4, 14.

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that: (i) Boy Scouts operates an online Brand Center; (ii) the program formerly known as BOY SCOUTS is now called SCOUTS BSA; (iii) the colors blue and gold are often used in connection with Boy Scouts' CUB SCOUTS program; (iv) the colors blue, white and red are used in certain materials accessible through Boy Scouts' online Brand Center; (v) Boy Scouts' EAGLE SCOUT trademark is well-known; and (vi) Boy Scouts uses a wolf-in-a-diamond logo and the name CUB SCOUTS as a trademark.

As to the balance of this paragraph, denied.  Neither of the cited paragraphs in the Ramsey Declaration supports any of the allegations in paragraph 12, nor do any other paragraphs

of the Ramsey Declaration support the assertion that "non-gender-specific SCOUT marks," whatever they are, are used "in connection with the Cub Scouts and Boy Scouts (now Scouts BSA) programs" on the BSA Brand Center.  Girl Scouts also objects to the characterization of the CUB SCOUTS logo design as "distinctive" as being a legal allegation, not a factual assertion, that is not appropriate for inclusion in a Local Civil Rule 56.1 Statement.  Finally, this paragraph omits to mention that the colors of the SCOUTS BSA program include a shade of green, a color that Girl Scouts also uses.  Ewing Dec., Exh. 66 (Dep. Exh. 69) at pg. 54; Exh. 71 (D. Kinn) at 21:18-24:8, 238:11-239:2.

13.     **The United States Patent & Trademark Office ("USPTO") has granted the BSA dozens of federal trademark registrations for SCOUT-formative [sic] that are not preceded by a gender-specific term, including for SCOUTING (1982), SCOUT SHOP BOY SCOUTS OF AMERICA (1985), and SCOUT STUFF (1998).** Scher Decl., Ex. SSSSSSS (examples of BSA SCOUT registrations that are not preceded by a gender-specific term); Request for Judicial Notice ("RJN"); Ramsey Decl., ¶ 12.

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that Boy Scouts owns multiple federal registrations issued by the PTO containing the terms SCOUT, SCOUTS and SCOUTING that lack a gender-specific term, including SCOUTING and SCOUT STUFF. (SCOUT SHOP BOY SCOUTS OF AMERICA, while a registered trademark of Boy Scouts, contains a subsequent gender-specific term.)  However, the claim that Scher Exhibit SSSSSSS contains "examples of BSA SCOUT registrations that are not preceded by a gender-specific term" is denied, as those "examples" include marks like BOY SCOUTS OF AMERICA that contain a preceding gender-specific modifier.  *See id.* at BSA00170832.  Scher Exhibit SSSSSSS also contains registrations that are limited to designs and/or marks that do not contain the words SCOUT, SCOUTS, SCOUTING or a form thereof. *See id.* at BSA00170831, BSA00170202, BSA000170203, BSA000170833, BSA00170835. Likewise, at least one of the proffered registrations, for SCOUT COFFEE, *id.* at

BSA00073845, was not granted by the PTO to Boy Scouts, but a third party, based on the third party's use of the mark.  Boy Scouts' memorandum of law in support of its motion for summary judgment also refers on page 7 to a registration for SCOUTSTUFF.ORG that is not contained in Scher Exhibit SSSSSSS, has lapsed, and is no longer valid.  Ewing Dec., ¶ 11, Exh. 72.

In addition, a number of the cited registrations contain express limitations restricting the services for which the marks at issue have been registered to boys or young men, including registrations for SCOUTING, *see* Scher Exhibit SSSSSSS at BSA00073826, NATIONAL EAGLE SCOUT ASSOCIATION & Design, *see id.* at BSA00159800, EAGLE SCOUT & Design, *see id. at* BSA00159799, Design of an Eagle, *see id.* at BSA00170202, SCOUT SHOP BOY SCOUTS OF AMERICA, *see id.* at BSA00159777, VARSITY SCOUT, *see id.* at BSA00159804, Design of an Eagle, *see id.* at BSA00170833, SCOUTMASTER, *see id.* at BSA00073827, CUB SCOUTS, *see id.* at BSA00159791, SCOUTING FOR ADVENTURE, *see id.* at BSA00073835, and EAGLE SCOUT, *see id.* at BSA00159798.

In connection with the application to register SCOUTING, a registration for which issued in 1982, Scher Dec., Exh. SSSSSSS at BSA00073826, the PTO stated that "[t]he identification of goods should be identified by indicating that the scouting instructions are primarily for boys and young men, since a similar Federally distributed magazine sponsored for girls and young women also uses the term "Scout" and "Scouting" in referring to organizational activities and members of its organization."  Ewing Dec., Exh. 73 at BSA00043767.  Following this request by the PTO, Boy Scouts amended the description of goods in this application from "magazine for adult leaders in scouting" to "magazine for

adult leaders in scouting for providing scouting instruction to boys and young men." Ewing Dec., Exh. 74 at BSA00043763; *id.*, Exh. 73 at BSA00043769.

 With respect to the application that later matured into the registration for SCOUT SHOP BOY SCOUTS OF AMERICA, Scher Dec., Exh. SSSSSSS at BSA00159777, Boy Scouts initially filed to register the mark SCOUT SHOP, covering "retail store services namely the sale of uniforms, insignias, camping gear, literature, handicrafts, trophies and awards." Ewing Dec., Exh. 75 at GSUSA_00189226. During the prosecution of the application, the PTO refused registration of the mark based on a likelihood of confusion under 15 U.S.C. §1052(d) with several marks owned by Girl Scouts, stating that "Girl Scouts have registered several marks for goods commonly associated with their activities, namely, uniforms, membership, and their camping endeavors. . . . As to the Section 2(d) refusal, the Examiner finds that the term SCOUT, 'BOY SCOUT' and Girl Scouts are legal equivalents so that the terms 'SCOUT' and 'GIRL SCOUT' would engender the same commercial impression." *Id*. at GSUSA_00189223. In response, Boy Scouts agreed to amend the mark to add BOY SCOUTS OF AMERICA, noting that "the use of the words 'BOY SCOUTS OF AMERICA', along with the mark 'SCOUT SHOP' prevent any deception as well as avoiding any consumer confusion as to the source of origin of the goods." *Id*. at GSUSA_00189220. During the prosecution of the application, Boy Scouts also amended the description of goods to cover "Retail Store Services-Namely, the Sale of Boy Scout Uniforms, Boy Scout Insignias, Camping Equipment for Boy Scouts and Boy Scout Trophies and Awards." *Id*. at GSUSA_00189186.

 14. **Since at least 1994, the domain used by the BSA for its flagship website has been, and continues to be, scouting.org. In addition, the BSA has registered and maintained the following domains continuously for the last fifteen years or more: scoutingmagazine.org (since 2000), bsascouting.org (since 2000) scoutmasters.com**

**(since 2002), scoutgear.com (since 2002), scoutjamboree.com (since 2004), and beascout.org (since 2007).** Ramsey Decl., ¶ 32.

**RESPONSE:** Admitted.

15. **Since 2006, the BSA's e-commerce website to promote and sell goods to male and female youth members and adult volunteers involved in BSA's programs has operated under the name SCOUT STUFF or SCOUT SHOP.** Ramsey Decl., ¶ 31 (www.scoutstuff.org from 2006 to March 2018, and www.scoutshop.org from March 2018 to present).

**RESPONSE:** Admitted in part and denied in part. Girl Scouts admits the allegations contained in this paragraph except to the extent it asserts that either of the two referenced websites have carried apparel or uniforms for girls and young women participating in the CUB SCOUTS program and the program now known as SCOUTS BSA since 2006. Prior to 2018, girls were not permitted to become members of CUB SCOUTS or SCOUTS BSA, when the latter was known as BOY SCOUTS. Ewing Dec., Exh. 63 (M. Surbaugh) at 163:24-164:25.

16. **Since at least 1971, the BSA has welcomed girls into various BSA programs. The BSA's Exploring program became co-ed in 1971. In 1972, the BSA's "Sea Exploring" program also became co-ed – in 1998, it was re-named Sea Scouts. Also in 1998, the BSA and [sic] launched its co-ed Venturing program for young men and women. In 2015, the BSA added another pilot program, STEM Scouts, for boys and girls.** Sterrett Decl., ¶ 14; Scher Ex. QQQQQQ (admitting Exploring program was co-ed in 1971).

**RESPONSE:** Admitted, but this paragraph fails to mention the following: (i) membership in the VENTURING and SEA EXPLORING/SEA SCOUTS programs is and has been restricted to youth of high school age; (ii) all four of the programs referenced in this paragraph are considered to be "specialty" programs by Boy Scouts because they target particular program niches and make up a small portion of Boy Scouts' total membership; (iii) since 1998, EXPLORING has been operated by a non-profit affiliate of Boy Scouts called Learning for Life and is not governed by Scout Law, and its members are not and never have been referred to as "Scouts"; (iv) as of December 31, 2017, young women or girls participating in the VENTURING, SEA

SCOUTS and STEM SCOUTS programs accounted for approximately 2.4% of Boy Scouts' total membership.  *See* ¶¶ 155-157, *infra.*

   17.   **The BSA has featured SCOUT-formative branding and images of girls and young women, in connection with advertising and promoting its programs for many decades. For example, the BSA's Sea Scouts program has use [sic] SCOUT-formative branding and images of girls and young women, in connection with advertising and promotion since 1972.** Ramsey Decl., ¶ 17 & Exs. DD-FF (historical images of female members of Sea Scouts alongside SCOUT- formative branding); Waters Decl. ¶ 10, Exh. J (1973 Scouting magazine).

**RESPONSE:**  Denied for the time period prior to 2018 and admitted for the time period since. Prior to 2018, Boy Scouts' Brand Guidelines contained very few images of girls or young women, in contrast to the 2019 version of those Brand Guidelines – issued after Boy Scouts began admitting girls to its core CUB SCOUTS program and the program now known as SCOUTS BSA – in which images of girls appear on nearly every page. *Compare* Ewing Dec., Exh. 76 (Dep. Exh. 68) *with* Exh. 66 (Dep. Exh. 69); *id.*, Exh. 67 (M. Ramsey) at 168:10-171:11, 174:14-22, 176:16-177:25.  Indeed, in 2018, as girls joined Boy Scouts' core programs for the first time, Boy Scouts recognized that its large array of advertising, marketing, recruiting and promotional materials featuring or referring to boys alone would need to be revised to include girls and omit language like "**Boys**: the boy is the main reason the rest of the organization exists. Programs are designed to meet his need at the appropriate age and grade level."  Ewing Dec., Exh. 77 at BSA00058701 (noting the need to review "around 1,500 pages on Scouting.org, not to mention 11 years' worth of CubCast podcasts available online, and more than 16,000 PDFs in filestore"); Exh. 67 (M. Ramsey) at 229:14-230:23.

   The presence of girls and young women in Boy Scouts' advertising and promotional materials prior to 2018 was so limited that Boy Scouts and one of its outside agencies successfully pitched a story to the publication *Advertising Age* about how the launch of Boy Scouts' SCOUT ME IN advertising campaign in May 2018 was worthy of being covered

because "[f]or the first time ever, girls will be featured in BSA advertising, a newsworthy story." Ewing Dec., Exh. 78 (Dep. Exh. 130) at BSA00053392; Exh. 79 (E. Delimarkos) at 14:8-15:13, 226:6-230:18.  Indeed, in the agency's view, Boy Scouts had the ability to "[l]everage the historic nature of the advertising, which – for the first time – captures the images of girls in the BSA."  Ewing Dec., Exh. 78 (Dep. Exh. 130) at BSA00053392.  On May 4, 2018, the story pitched by Boy Scouts was published in *Advertising Age* under the headline "Boy Scouts Rolls Out First Campaign to Recruit Girls."  Ewing Dec., Exh. 80.

To the extent that images of girls appeared in Boy Scouts advertising and promotional materials prior to 2018, they did so only in connection with the limited number of "specialty" programs open to girls and young women of high school age whose total participants (boys and girls) amounted to roughly 4% of Boy Scouts total membership as of the end of 2017.  *See* ¶¶ 18, 153, 156-157, *infra.*  Finally, the identification of a young woman shown on the cover of the May-June 1973 issue of *Scouting* magazine as a "Sea Scout," as set forth in the Waters Declaration in paragraph 10 and referenced in paragraph 17 herein, is not correct.  The article accompanying that cover story, which Boy Scouts withheld from its submission, states clearly that participants in that program were then known as "Sea Explorers."  Ewing Dec., Exh. 81.

18.     **The BSA's Venturing program has featured SCOUT-formative branding and images of girls and young women, in connection with advertising and promotion since 1998.** Ramsey Decl., ¶ 16 & Exs. Z-CC (images of female youth members in SCOUT-formative branding for Venturing); Waters Decl. ¶ 13 & Ex. M.

**RESPONSE:**  Admitted in part and denied in part.  As a co-educational, "specialty" program open to youth of high school age that made up a tiny percentage of Boy Scouts total membership as of the end of 2017, *see* ¶¶ 153, 156, 157, *infra*, Boy Scouts' VENTURING program has incorporated images of girls into its advertising and promotional materials at times.  However, neither the cited testimony nor evidence supports the allegation that such advertising and

13

promotional materials have "featured" either "SCOUT-formative" branding, which is *de minimis* in the cited exhibits, or girls and young women, so those allegations are denied.  Indeed, as stated in Girl Scouts' Response to paragraph 17, *supra*, the overall presence of images of girls and young women in Boy Scouts advertising and promotional materials prior to 2018 was insignificant.  Further, Exhibit Z to the Ramsey Declaration instructs that participants in the VENTURING program should be referred to as "Venturers" not "Venture Scouts."  *Id.* at BSA00170929.

**19.    The BSA uses SCOUT-formative branding in connection with its co-ed STEM Scouts program since it was piloted in 2014 and launched in 2015.** Ramsey Decl., ¶ 18 & Exs. HH-II (recent and historical imagery of both boys and girls alongside SCOUT-formative branding).

**RESPONSE:**  Admitted in part and denied in part.  The STEM SCOUTS program remains described by Boy Scouts on its website as a "pilot program of the Boy Scouts of America, currently available only in select pilot areas," Ewing Dec., Exh. 82 at GSUSA_00189465, so Girl Scouts denies that this program "launched" in 2015; *see also* Ewing Dec., Exh. 83 (P. Wellen) at 12:24-18:25, 141:4-23 (as of early 2019, STEM SCOUTS was offered only in 21 Boy Scouts councils, out of over 250 councils).  Girl Scouts admits that the term STEM SCOUTS includes the term SCOUTS, and that this program, as of the end of 2017, included only 1,862 girls as members.  Ewing Dec., Exh. 84 (Dep. Exh. 227); Exh. 85 (P. Sterrett) at 10:6-18:6, 282:1-283:23.

**20.    Females have served as volunteer adult leaders in BSA programs since as early as 1936. The BSA's female volunteers, like all adult leaders, are referred to as "Scouters" with no gender-specific modifier.** Sterrett Decl., ¶ 16.

**RESPONSE:**  Admitted.  However, this paragraph fails to mention that, prior to 2018, 95% of the leaders of the BOY SCOUTS (now SCOUTS BSA) program were men, necessitating an

effort by Boy Scouts to recruit adult female leadership for that program after it expanded to include girls in 2019.  Ewing Dec., Exh. 86 (T. Rugh) at 13:6-14:8, 197:2-20.

21.     **While each program and its members can be identified by their unique name (such as Venturers, Sea Scouts and STEM Scouts), all youth in all of these programs, both boys and girls, are members of the BSA properly called "Scouts."** Ramsey Decl., ¶ 14.

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that Boy Scouts considers participants in its "specialty" programs to be part of its "Scouting" organization but denies that these programs offer activities or an organizational model that is comparable either to the CUB SCOUTS or the (renamed) SCOUTS BSA programs.  *See* ¶¶ 263-274, *infra.*  SEA SCOUTS participants are organized into "ships," not dens, packs or troops, and their activities are focused on nautical or maritime activities.  Ewing Dec., Exh. 87.  VENTURING is a program in which youth participants decide as a group the sort of activities they want to pursue.  *Id.*, Exh. 88.  VENTURING "crews" have no uniforms, and adult supervision is merely advisory.  *Id.*  Participants in the STEM SCOUTS program, which is offered in a small number of Boy Scouts' councils, *see* Girl Scouts' Response to paragraph 19, *supra*, are organized into "labs," and the program focuses on science and technology activities.  Ewing Dec., Exh. 89.  There are no ranks or merit badges in STEM SCOUTS.  *Id.*

In contrast, the CUB SCOUTS and SCOUTS BSA programs follow a traditional model, in which youth (all boys until 2018) are organized into packs, dens or troops; progress through a series of ranks; earn merit badges; wear uniforms; and are supervised by adults.  Ewing Dec., Exhs. 90 and 91.  As of the end of 2017, more than 95% of participants in Boy Scouts programs were members of CUB SCOUTS and BOY SCOUTS, which barred girls from membership prior to 2018.  Ewing Dec., Exh. 63 (M. Surbaugh) at 163:24-164:25. *See also* ¶¶ 156, 157, *infra*; *supra* ¶ 11.

15

**D.**    **GSUSA's Consistent Use of "GIRL" Before "SCOUT"**

22.    **GSUSA has repeatedly stated, including in its brand guidelines, that the terms 'Scout,' 'Scouts,' and 'Scouting' should never be used by themselves to refer to GSUSA or its members.** Scher Decl., Ex. DDD at -726 (1989: "The terms 'Scout' or 'Scouting' should not be used in print or broadcast media without the word 'Girl' preceding them"); *id.* Ex. EEE at -604 (2001: same); *id.* Ex. FFF at -273, -274, -310 (2009, July: "never Scout or Scouts" & "never use Scouting alone"); *id.* Ex. GGG at -668, -669, -673, -706 (2009: similar); *id.* Ex. HHH at -293 (2010: "The words 'Scout,' 'Scouts,' and 'Scouting must never appear without the modifier 'Girl'"); *id.* Ex. III at -768, -769 (2012: "'Scout' or 'Scouts' should never be used independently" & "never use 'Scouting' alone"); *id.* Ex. JJJ at -298 (2017: "Don't use 'Scouting' without 'Girl' in front of it"); *id.* Ex. KKK at -290 (2017: same); *id.* Ex.LLL at -254 (2018: same); *id.* Ex.MMM at -292 (2018: similar); *id.* Ex. NNN at -295 (2018: similar); *id.* Ex. OOO at -760 (2018: similar); *id.* Ex. PPP at -259 (2018: similar); *id.* Ex. QQQ at -256 (2019: same "Don't use 'Scouting' without 'Girl' in front of it"); *id.* Ex. RRR at -964, -965 (2019: "'Scout' or 'Scouts' should never be used independently" & "don't use 'Scouting' alone").

**RESPONSE:**  As to Scher Declaration Exhibits DDD (published in 1987; incorrectly labeled in paragraph 22 as being published in 1989) and EEE (published in 2001), denied.  The relevant guidance on this issue in both publications was more limited than as characterized in this paragraph, stating only that "If projects involve Boy Scouts, there should be a clear distinction between Girl Scouts and Boy Scouts.  The terms 'Scout' or 'Scouting' should not be used in print or broadcast media without the word 'Girl' preceding them."

As to the remaining documents published since 2009, admitted.  In external communications or communications intended for external dissemination, Girl Scouts has recommended since 2009 that the word "Girl" appear before "Scout," "Scouts" or "Scouting," when those words are used, in order to communicate that SCOUTING services for girls are offered exclusively by Girl Scouts.  Ewing Dec., Exh. 92 (C. Butler) at 21:11-22:7, 166:23-168:16; Exh. 93 (S. Acevedo) at 345:14-346:21.  Indeed, the terms SCOUT, SCOUTS and SCOUTING, when used alone in connection with leadership and development services for girls, are exclusively associated with Girl Scouts among a substantial segment of the public.  *See* ¶ 141, *infra*.

23.     **GSUSA local council guidelines have stated: "The word 'Scouting' has been copyrighted [sic] by Boy Scouts and can't be used."** Scher Decl., Ex. SSS at -352; *id.* Ex. TTT at -827; *id.* Ex. UUU at -422; *id.* Ex. VVV at -301.

**RESPONSE:** Admitted in part and denied in part. Girl Scouts admits that a handful of its local councils have, at times in the past, disseminated local branding guidelines that have included the legally incorrect statement referenced in this paragraph and denies that all of its councils have done so. Girl Scouts notes that Boy Scouts has, in fact, only identified three such councils who have put out this guidance, as Scher Decl., Exhs. SSS and VVV are both from the same local council - Girl Scouts North Carolina Coastal Pines. In addition, to the extent such a statement appeared in certain local council guidelines, it was drafted and promulgated by such local councils without any knowledge, oversight or approval on the part of Girl Scouts. *See* the accompanying Declaration of Barry Horowitz ("Horowitz Dec."), ¶ 17. Once these statements came to the attention of Girl Scouts, it asked the local councils to delete the false statement from their style guides, and it is Girl Scouts' understanding that the statement has since been removed. *Id.*

24.     **USPTO records confirm that, as of the date GSUSA initiated this lawsuit, it did not own any live trademark registrations for a trademark including the word "scout" not preceded by "girl."**

**RESPONSE:** Admitted. However, PTO records show that Girl Scouts owned a U.S. trademark registration for the trademark SCOUT COOKIES that was obtained in 1974 and that lapsed in 2005, covering cookies. Ewing Dec., Exh. 94; *see* the accompanying Declaration of Page Harrington ("Harrington Dec."), Exh. 14 at GSUSA_00132170-72. Girl Scouts resumed using that trademark with cookies in 2019 and currently owns U.S. Reg. No. 5,921,736 for SCOUT COOKIES. Ewing Dec., Exh. 95; Horowitz Dec., ¶ 7. Girl Scouts filed its application for that registration on March 29, 2018, before this action was commenced. *Id.*

17

25.    **GSUSA has admitted that it did not use in commerce the terms "Scouts" or "Scouting" alone at any time between 2008 and 2018 as part of any nationwide advertising or promotional campaign for GSUSA's products or services.** Scher Decl., Ex. QQQQQQ (Resps. to 1st RFA Nos. 1-11).

**RESPONSE:** Admitted. However, Girl Scouts' decision to forego using its SCOUTS and SCOUTING trademarks between 2008-2018 in any "nationwide advertising or promotional campaign" for its products or services does not alter the fact that the terms SCOUT, SCOUTS and SCOUTING, not preceded or accompanied by the word "Girl" or another gender-specific modifier, have become strongly associated with Girl Scouts and its leadership and development programs for girls over time. *See* ¶ 141, *infra.*

### E.    GSUSA's Response to the BSA's Welcoming Girls Into Cub Scouts and Boy Scouts

26.    **On August 21, 2017, GSUSA National President Kathy Hopinkah Hannan sent a letter to BSA National President Randall Stephenson accusing the BSA of a "covert campaign to recruit girls."** Scher Decl., Ex. WWW ("I formally request that your organization … not consider expanding to recruit girls at your October board meeting").

**RESPONSE:** Admitted. Girl Scouts sent this letter to Boy Scouts after months of unsatisfactory efforts to engage in a dialogue with Boy Scouts about its plans to expand its CUB SCOUTS program and the program now known as SCOUTS BSA to include girls for the first time in their history, and after Boy Scouts leadership had concealed those plans and the substantial steps undertaken to implement them from Girl Scouts. *See* ¶¶ 160-175 *infra.*

27.    █████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████

**RESPONSE:** ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

28.     **In 2017, GSUSA directed its local councils to pressure their BSA local council counterparts to vote down any decision to welcome girls into Cub Scouts or Boy Scouts.** Scher Decl., Ex.CCCC; *Id.* Ex. RRRRRR (Resps. to 2d RFA Nos. 103-105).

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that its former Chief Executive Officer, Sylvia Acevedo, sent an email in 2017 to local Girl Scouts' Council CEOs requesting that each of them reach out to their local Boy Scouts Council counterparts and ask them to encourage Boy Scouts' national leadership not to pursue opening their core programs to girls.  Girl Scouts denies that it "directed" its local councils to "pressure" their local counterparts, as characterized in this paragraph, as the cited evidence does not support either characterization.  Rather, as Ms. Acevedo testified, she "was encouraging them" and "wanted them to ask Boy Scouts not to open up to girls." Ewing Dec., Exh. 93 (S. Acevedo) at 415:13, 416:22-23.

29.     **In 2018 GSUSA forbade the BSA from renting GSUSA camps.** Scher Decl., Ex. DDDD.

**RESPONSE:**  Denied.  Girl Scouts never forbade its local councils from allowing local Boy Scouts organizations to rent Girl Scout camps.  Rather, in 2018, in light of the directly competitive relationship that now existed between the two organizations, Ewing Dec., Exh. 96 (L. Godfrey) at 16:2-23, 94:8-97:23, ███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████  Ewing Dec., Exh. 97 at GSUSA_00023230.

██████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* at GSUSA_00023229. ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████ *Id.* Moreover, even if Girl Scouts' wanted to forbid such rental

practices, it could not – Girl Scouts local councils are independent corporations that control their

own assets. *See* Ewing Dec., Exh. 98 (J. Neubert) at 20:11-24:8, 29:24-31:4; *see also* Horowitz

Dec., ¶ 4.

30. **In 2018 GSUSA blacklisted dual BSA/GSUSA parent volunteers.** Scher
Decl., Ex. EEEE.

**RESPONSE:** Denied. Girl Scouts never blacklisted dual Boy Scout/Girl Scout parent

volunteers. Rather, such decisions were left to the purview of individual local Girl Scouts

councils, Ewing Dec., Exh. 98 (J. Neubert) at 43:18-44:18, given that Boy Scouts had now

become a direct competitor in a way that had not been the case previously. *Id.*, Exh. 96 (L.

Godfrey) at 94:8-97:23. Girl Scouts did offer informal guidance through consultation with local

councils, if such a consultation was requested, but Girl Scouts never recommended that a

volunteer be asked to leave. *Id.*, Exh. 98 (J. Neubert) at 44:24-45:3. ████████████████

████████████████████████████████████████████ Ewing Dec., Exh.

99 (B. Horowitz) at 299:2-21.

31. ██████████████████████████████████████████████

██████████████████

**RESPONSE:** ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████

**F.**   **The BSA's Decision to Welcome Girls Into Cub Scouts and Boy Scouts**

32.   **On October 11, 2017, the BSA publicly announced its plan to invite girls to join its Cub Scouts and Boy Scouts programs.** Sterrett Decl. ¶ 19; Dkt. 89 (Am. Compl.), Ex. H.

**RESPONSE:**  Admitted.  For the full history of how the decision to expand Boy Scouts' core programs to girls was made; how Boy Scouts understood from a very early stage that the admission of girls to those programs would harm Girl Scouts and be perceived negatively by Girl Scouts; how Boy Scouts knew or had reason to know that the use of terms like SCOUTS and SCOUTING with Boy Scouts' core programs offered to girls for the first time would cause confusion in the marketplace; and how Boy Scouts actively sought to conceal from Girl Scouts its planned admission of girls to those core programs, *see* paragraphs 160 to 184, *infra.*

33.   **In January 2018, the BSA welcomed an initial "early adopter" group of young girls into Cub Scouts, with the program formally opening to girls nationwide in August 2018. Cub Scouts had over 114,000 girl members as of November 13, 2019.** Sterrett Decl. ¶ 19; Scher Decl. Ex. TTTTTTT (BSA Resp. to Interrog. No. 25).

**RESPONSE:**  Admitted.

34.   **The (subsequently renamed) Boy Scouts program began welcoming girls in February 2019, and by November 13, 2019 had over 27,000 girl members.** Sterrett Decl. ¶ 19; Scher Decl. Ex. TTTTTTT (BSA Resp. to Interrog. No. 25).

**RESPONSE:**  Admitted.

35.   **The BSA has no "girls only" programs. All of the BSA's programs that serve girls also serve boys.** Sterrett Decl,. ¶ 20.

**RESPONSE:**  Admitted as of 2018.  Denied as to prior years.  Prior to 2018, girls were not permitted to become members of CUB SCOUTS or BOY SCOUTS.  *See* Ewing Dec., Exh. 63 (M. Surbaugh) at 163:24-164:25.

**G.**     **GSUSA's Letter-Writing Campaign to the BSA**

36.     **In November 2017, GSUSA began writing letters to, or copying, the BSA purporting to complain about supposed misuse of GSUSA's intellectual property, such as in local flyers or on church signs.** Scher Decl., Ex. GGGG.

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that it began writing letters to or copying Boy Scouts in November 2017 regarding the unauthorized use of Girl Scouts' intellectual property, such as on local flyers, church signs and in many other ways, and other related acts of unfair competition.  Horowitz Dec., ¶¶ 20 and 21, Exh. 50.  Girl Scouts denies that its correspondence "purport[ed] to complain about supposed misuse" of Girl Scouts intellectual property.  Rather, the letters objected to multiple instances in which Boy Scouts, its councils and volunteers used the words "Girl Scouts," the GIRL SCOUTS logo, quotations from Girl Scouts' founder Juliette Gordon Low and other intellectual property owned by Girl Scouts to promote Boy Scouts' new coeducational programs.  *Id.*

In responding to Girl Scouts' demands that such violations cease, Boy Scouts' legal department characterized multiple of the unauthorized uses of Girl Scouts' intellectual property as "errors," "mistakes," and "inadvertent" uses and thanked Girl Scouts for bringing such matters to Boy Scouts' attention.  *Id.*, Exh. 50 at GSUSA_00106545, GSUSA_00106476, GSUSA_00098944, GSUSA_00101692, and GSUSA_00106484.  Indeed, in responding to Girl Scouts' first demand letter, Boy Scouts' General Counsel promptly responded and stated, "[o]n behalf of the Orange County Council and the Boy Scouts of America, please accept our apologies for this inadvertent use of your legally protected brand."  Scher Dec., Exh. GGGG at pg. 8, GSUSA_00106545.  In other instances, Boy Scouts took corrective action in response to Girl Scouts' letters, including representing that its councils would continue efforts to communicate with its units and volunteers that they should not use Girl Scouts' trademarks,

brand elements or other intellectual property in connection with Boy Scout programs.  Horowitz Dec., Exh. 50 at GSUSA_00106476, GSUSA_00097541, and GSUSA_00101692.  At the national level, Boy Scouts agreed to "do the same."  *See, e.g.*, Scher Dec., Exh. GGGG at pp. 65, GSUSA_00098955.  A total of 36 demand letters were sent by Girl Scouts or its local councils to Boy Scouts or its local councils between November 2017 and October 2020 regarding the unauthorized use of Girl Scouts intellectual property and the attendant confusion such unauthorized use caused.  Horowitz Dec., ¶¶ 20-38.

37.     **None of GSUSA's letters to, or copying, the BSA complained or threatened litigation over the BSA's use of the program name Scouts BSA or the slogan SCOUT ME IN.** Scher Decl., Ex. GGGG .

**RESPONSE:**  Admitted.  However, on October 25, 2018, Girl Scouts' CEO, Sylvia Acevedo, contacted Boy Scouts Chief Scout Executive, Michael Surbaugh, by email to "request that Boy Scouts clearly state its name and brand in its communications, and stop using Girl Scouts' name or references to Scouts in a manner that is leading people to confuse our organizations." Horowitz Dec., ¶ 43, Exh. 62 at GSUSA_00036202.  Surbaugh did not respond to this communication prior to the filing of this lawsuit.  *Id.*, ¶ 43.

38.     **Numerous of GSUSA's letters to, or copying, the BSA complained about references to Girl Scouts that were accurate, or about references to joint BSA/GSUSA events that were approved or authorized by GSUSA local councils and staff, and one complained of a use of a quotation that is accurate and in which GSUSA admits it has no trademark or copyright ownership in.** Scher Decl., Ex. GGGG; *id.* Ex. SSSSSS (Resps. to 3d RFA Nos. 156- 158).

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts denies that numerous letters it sent to Boy Scouts complained about references to Girl Scouts that were accurate, as the correspondence makes clear.  Horowitz Dec., ¶ 20, Exh. 50.  With respect to the allegation in this paragraph concerning "joint BSA/GSUSA events," Scher Exhibit GGGG contains three letters from Girl Scouts that Boy Scouts characterized in its responses as being concerned with joint

events, *id.*, at pg. 25 (GSUSA_00098956), pg. 31 (GSUSA_00100271) and pg. 68

(GSUSA_00106535), and none of these responses asserts that such events were approved or

authorized by local Girl Scouts' councils and staff.

Girl Scouts admits that one letter it sent to Boy Scouts complained about the use of an

accurate quotation from Girl Scouts' founder, Juliette Gordon Low, in which Girl Scouts admits

it owns no trademark rights or copyright, the use of which falsely suggests a connection between

the two organizations that does not exist.  Even Boy Scouts' General Counsel characterized the

use of the quote as "evoking the proud legacy of [Girl Scouts'] founder . . . without [Girl

Scouts'] consent" and indicated that Boy Scouts would take "appropriate corrective action" if

Girl Scouts discovered further use of this quote.  Scher Dec., Exh. GGGG at pg. 31,

GSUSA_0010271.  In addition, when Girl Scouts did, in fact, identify additional uses of this

quote on Boy Scouts' online Brand Center, Boy Scouts' Associate General Counsel

confirmed that "[w]e certainly understand and respect your concern about including Juliette

Gordon Low's quote as part of the image, and commit to informing our local councils that

they should not use the quote." *Id.* at pg. 27, GSUSA_00097541.

39.    **A few of GSUSA's letters to, or copying, the BSA concerned examples of
some well-intentioned volunteers who had placed the word "girl" before the program
name "Scouts BSA" when describing the troop. When brought to the BSA's attention,
such volunteers were notified.** Scher Decl., Ex. GGGG at pp. 68-70 (GSUSA_00098942-
43, GSUSA_00101692).

**RESPONSE:**  Admitted in part and denied in part.  The cited pages of Scher Declaration Exhibit

GGGG concern a social media post that says in relevant part "Come talk to me about the Girl

Scouts BSA Troops forming in Kirkland!"  Based on the text of the social media post, *id.* at pg.

69, GSUSA_00098943, the word "girl" was not simply placed in front of SCOUTS BSA, but

included in capitalized form as part of the proper noun to which the author was referring.  *Id.*

Further, while Girl Scouts admits that Boy Scouts' Associate General Counsel characterized the

phrasing as a "good faith mistake by a well-intentioned volunteer," *id.* at pg. 71, GSUSA_00101692, that characterization is supported by no other evidence. Further still, despite Boy Scouts' claim that it has notified volunteers of Girl Scouts' protests, acts of unfair competition have persisted over the past two years. Horowitz Dec., ¶ 21.

## H.   The "Scouts BSA" Program Name Change and "Scout Me In" Marketing Campaign

40.     **In May 2018, the BSA announced its "Scouts BSA" program name (replacing the "Boy Scouts" program name), along with its "Scout Me In" slogan for use with the BSA's co-ed programs.** Ramsey Decl., ¶ 19.

**RESPONSE:** Admitted.

### a.   *Scouts BSA*

41.     **In selecting a new program name for "Boy Scouts" that would be inclusive of both genders, none of the feedback the BSA received indicated that anyone perceived "Scouts BSA" to be associated with GSUSA.** Ramsey Decl., ¶ 20.

**RESPONSE:** Admitted in part and denied in part. After extensive internal discussions within Boy Scouts, the recommended new name for the BOY SCOUTS program was SCOUTS. Ewing Dec., Exh. 101 (Dep. Exh. 80) at BSA00165775-76; Exh. 67 (M. Ramsey) at 267:3-270:21. However, a number of local Boy Scouts council executives voiced concern that the selection of SCOUTS "will likely lead to disruptions with GSUSA." *Id.*, Exh. 101 (Dep. Exh. 80) at BSA00165776. In the end, the replacement selected for the BOY SCOUTS program name was SCOUTS BSA. *Id.* at BSA00165777. *See* ¶ 182, *infra.*

42.     **The Scouts BSA name was used in singular form ("Scout BSA") on BSA youth uniforms dating back to the 1970s, including as a uniform pocket strip and chest strip in 1972-1979.** Ramsey Decl., ¶¶ 20-21 & Ex. JJ; Sterrett Decl. ¶ 18; Waters Decl. ¶¶ 14-19 & Exs. G, N-Q (examples).

**RESPONSE:** Admitted in part and denied in part. Girl Scouts admits that the term SCOUT BSA apparently appeared on some boy uniforms in the 1970s, as shown in Exhibit Q to the Waters Declaration. Girl Scouts denies that the presence of SCOUT BSA on 1970s-era Boy

Scouts uniforms had anything to do with the selection of SCOUTS BSA as the new name of the

BOY SCOUTS program adopted in 2018, as there is no evidence to support such an allegation.

Ewing Dec., Exh. 101 (Dep. Exh. 80) at BSA00165775-76; Exh. 67 (M. Ramsey) at 267:3-

270:21.  Further, Boy Scouts has never registered SCOUTS BSA as a trademark for any

programs or services, and it only applied to register that designation as a trademark for services

"Indicating membership in an organization for youth" and "Educational services, namely,

providing programs and activities for youth in the fields of youth development, community

service, leadership training, and outdoor adventure and recreation" for the first time in 2018.

Ewing Dec., ¶ 41, Exhs. 102 and 103.  Girl Scouts has opposed this application.  Ewing Dec.,

Exh. 284.

**43.      The BSA has owned and used the domain name "scoutsbsa.org" and "scoutsbsa.com" since approximately 2001.** Ramsey Decl., ¶ 21 & Ex. JJ.

**RESPONSE:**  Admitted.  As shown in Exhibit JJ to the Ramsey Declaration, the online content

accessible via the two referenced domain names was identical, and their content was identical to

the content accessible via the scouting.org domain name in 2001.  Ewing Dec., Exh. 104.

*b.  Scout Me In*

**44.      The "Scout Me In" slogan is a call to action to join in on the fun of BSA programming and highlights the inclusivity of the BSA's welcoming of girls into Cub Scouts and Scouts BSA.** Ramsey Decl., ¶ 22; *see also* Sterrett Decl., ¶ 18.

**RESPONSE:**  Girl Scouts admits that Boy Scouts viewed the SCOUT ME IN slogan as a call to

action to participate in Boy Scouts programs that, for the first time, included girls in the CUB

SCOUTS and the now renamed SCOUTS BSA program.  *See* ¶ 177, *infra.*

**45.      None of the feedback the BSA received regarding the selection of "Scout Me In" indicated that anyone perceived it to be associated with GSUSA.** Ramsey Decl., ¶ 22.

**RESPONSE:**  Admitted as to the SCOUT ME IN slogan in isolation.  As to the terms SCOUT, SCOUTS and SCOUTING generally, when used in connection with leadership and development services offered to girls, denied.  *See* ¶¶ 181, 182, *infra*, and Response to paragraph 41, *supra*.

46.  **The "Scout Me In" slogan is designed to be used on a program-specific basis.** Ramsey Decl., ¶¶ 23-24 & Ex. KK.

**RESPONSE:**  Admitted in part and denied in part depending on what "program-specific basis" means.  If Boy Scouts intends this paragraph to mean that the SCOUT ME IN trademark is only intended to be used alongside specific program names, then denied, as the last example shown in paragraph 23 of the Ramsey Declaration displays that trademark without reference to a specific Boy Scouts program name.  If Boy Scouts intends this paragraph to mean that the SCOUT ME IN trademark is meant to transcend individual program names, then admitted, as the SCOUT ME IN trademark was developed to be an "organizational tagline" for Boy Scouts.  *See* Ewing Dec., Exh. 105 (Dep. Exh. 178) at BSA00054593.  However, regardless of whether the SCOUT ME IN trademark was "designed" to be used in the manner described in the Ramsey Declaration, various Boy Scouts councils use that trademark either standing alone, or with designations other than Boy Scouts' program names or its fleur de lis trademark.  Ewing Dec., Exh. 106.

47.  **The BSA Brand Center offers various branding and logo assets depicting "Scout Me In," all of which are paired with either a particular program name, or the BSA corporate logo – it does not offer assets depicting the "Scout Me In" slogan for use by itself.** Ramsey Decl., ¶¶ 23-24 & Ex. KK.

**RESPONSE:**  Admitted.  However, as noted in Girl Scouts' Response to paragraph 46, *supra*, various Boy Scouts councils use that trademark either standing alone, or with designations other than Boy Scouts' program names or its fleur de lis trademark.  Ewing Dec., Exh. 106.

I.  **The BSA's Brand Guidelines Forbidding the Use of "Girl" Before "Scout"**

48.  **The BSA's Brand Center marketing materials do not use the term "Girl Scouts" to identify the BSA's members or programs.** Ramsey Decl., ¶¶ 23-24 & Ex. KK.

**RESPONSE:**  Admitted in part because the citations for the assertion contained in this

paragraph pertain to the SCOUT ME IN trademark, not "marketing materials" generally.

Further, various marketing and recruiting materials for Boy Scouts' programs disseminated by

Boy Scouts' councils, troops and volunteers have used the term "Girl Scouts" without Girl

Scouts' authorization.  *See* Response to paragraph 36, *supra*; Horowitz Dec., ¶¶ 20-37,

Exh. 50.

49.     **The BSA prohibits the use of the term "Girl Scouts" in marketing materials. In April 2018, the BSA reminded local councils and volunteers: "do not use the intellectual property of the Girl Scouts of the USA or other organizations."** Ramsey Decl., ¶ 26; Sterrett Decl., ¶ 4 & Ex. A at -261.

**RESPONSE:**  Admitted.  However, (i) various marketing and recruiting materials for Boy

Scouts' programs disseminated by Boy Scouts' councils, troops and volunteers have used the

term "Girl Scouts" without Girl Scouts' authorization, and such unauthorized use has

persisted for more than two years, *see* Response to paragraphs 36 and 39, *supra*;

Horowitz Dec., ¶¶ 20-37, Exh. 50; and (ii) the April 2018 advisory contained in Exhibit

A to the Sterrett Declaration, sent only after multiple demand letters were transmitted by

Girl Scouts to Boy Scouts, did not halt the ongoing violations of Girl Scouts'

intellectual property rights by Boy Scouts' councils, troops and volunteers, nor has it

diminished the ongoing confusion in the marketplace.  *Id.*; *see also* ¶¶ 196-243, *infra.*

50.     **In September and October 2018, the BSA developed specific branding guidelines which explicitly prohibited use of the word "girl" before "Scout" in marketing materials. The BSA distributed this guidance to the field in November 2018 as a one-page infographic and provided more detailed training materials the following month.** Ramsey Decl., ¶ 26 & Exs. LL (infographic) & MM (training materials).

**RESPONSE:**  Admitted.  However, (i) the guidance in question was distributed only after this

lawsuit was filed on November 6, 2018, *see* Dkt. 1; and (ii) this guidance did not halt the

ongoing violations of Girl Scouts' intellectual property rights by Boy Scouts' councils,

troops and volunteers, nor has it diminished the ongoing confusion in the marketplace.

*See* Response to paragraph 36, *supra*; Horowitz Dec., ¶¶ 32-37, Exh. 50; *see also*

¶¶ 221-243, *infra.*

**J.**     **GSUSA Retains Mercury LLC**

51.     ██████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

**RESPONSE:**  ███████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████

52.     ██████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████

**RESPONSE:**  ███████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████



53. ███████████████████████████████████████████

**RESPONSE:** ███████████████████████████

███████████████████████████████████

54. ████████████████████████████████████████

**RESPONSE:** ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

**K.**     **GSUSA's Failure to Produce Admissible Evidence of Actual Confusion**

55.     **None of GSUSA's designated 30(b)(6) witnesses testified to having any first- hand knowledge of an instance where a parent or guardian enrolled a girl in a BSA program thinking it was a GSUSA program because of the BSA's use of the marks at issue in this case (the "SCOUT Marks").** See, e.g., Decl., Ex. YYYYYY (Bartkowski Tr.) 18:16-20, 19:6-19, 38:21-39:10, 40:5-24 ("GSUSA's 30(b)(6) witness from Girl Scouts of Northeast Texas could not identify any specific instance of alleged confusion she witnessed first-hand or had first-hand knowledge of confusion); *id.* Ex. ZZZZZZ (Dailey Tr.) 19:25-20:15 (GSUSA's 30(b)(6) witness from Girl Scouts of Arkansas, OK and Texas admitted she did not "personally witness[]" or have first-hand knowledge of any instances of confusion); *id.* Ex. AAAAAAA (Park Tr.) 14:2-16 (GSUSA's 30(b)(6) witness from Girl Scouts of Northern California testified that she "wasn't a direct witness to" instances of alleged confusion, and instead only that she would testify about "things that people told [her]"); *id.* Ex. BBBBBBB (Servian Tr.) 42: 10-20, 51:3-8, 51:23-54:6, 73:8-16 (GSUSA's 30(b)(6) witness from Girl Scouts of Gulfcoast Florida could not identify any specific instance of alleged confusion she witnessed first-hand or had first-hand knowledge of); *id.* Ex. CCCCCCC (B. Davis Tr.) 51:11-19; 54:1-19 (Another GSUSA 30(b)(6) witness from Girl Scouts of Gulfcoast Florida could not identify any specific instance of alleged confusion she witnessed first-hand after the BSA announced it would welcome girls into Cub Scouts and Scouts BSA, because the only such instance she testified about was at an event she was not at and to an individual who told Davis she was not confused); *id.* Ex. DDDDDDD (Bolger Tr.) 70:11-17, 77:12-18, 120:23-121:12, 188:19-189:22, 58:10-17, 59:25-60:15, 70:2-14 (GSUSA's 30(b)(6) witness from Girl Scouts of Minnesota and Wisconsin River Valleys, Inc. could not identify a single instance of confusion she witnessed first-hand or had first-hand knowledge of, and could not identify any instance of alleged confusion she knew about second or third-hand without basing her knowledge on

"reviewing some of the documents"); *id.* Ex. EEEEEE (Trombley Tr.) 59:5-9 (GSUSA's 30(b)(6) witness from Girl Scouts of North Carolina and Coastal Pines admitted she "d[id] not personally have any firsthand knowledge of any … instances of alleged confusion"); *id.* Ex. FFFFFFF (C. Davis Tr.) 51:1-19 (GSUSA's 30(b)(6) witness from Girl Scouts of Western Oklahoma could not identify a single instance of confusion she witnessed first-hand or had first-hand knowledge of, only instances of BSA marketing she thought would be confusing).

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that its Fed. R. Civ. P.

Rule 30(b)(6) witnesses cannot know the thought processes of the parents or guardians who have

mistakenly enrolled their daughters in Boy Scouts' CUB SCOUTS and SCOUTS BSA programs

in and after 2018 under the belief that they were signing up their daughters for Girl Scouts

programs.  To the extent Boy Scouts asserts there is no evidence that the confusion that caused

such mistaken signups is attributable to Boy Scouts' use, beginning in 2018, of the terms

SCOUT, SCOUTS, SCOUTING, SCOUTS BSA and SCOUT ME IN in connection with girls

leadership and development programs, denied.

As set forth, *infra*, in paragraph 158, at no time prior to 2018, as far as Girl Scouts is

aware, had any girl or young woman ever signed up or been signed up for a Boy Scouts'

program under the mistaken belief that the program in question was sponsored by Girl Scouts.

Likewise, at no time prior to 2018, as far as Girl Scouts is aware, had any girl or young woman

ever signed up or been signed up for a program offered by any other girls youth service program,

such as American Heritage Girls or Girls, Inc., under the mistaken belief that the program in

question was sponsored by Girl Scouts.  Yet, beginning in 2018, and continuing through the

present, multiple parents or guardians have advised both Girl Scouts and Boy Scouts that they

mistakenly enrolled their daughters in Boy Scouts' programs when they intended to enroll them

in Girl Scouts' programs.  Such confusion, which began to occur when Boy Scouts adopted the

trademarks SCOUT, SCOUTS, SCOUTING, SCOUTS BSA and SCOUT ME IN in connection

with girls leadership and development programs for use in connection with its core CUB

SCOUTS and SCOUTS BSA programs for the first time in its history, can only be attributable to the use of such designations.  In the words of one such confused parent from November 7, 2018:

> I recently signed my daughter up for what I thought was girlscouts only to find out that what I signed her up for and paid for was actually boy scouts! It makes total sense now why I was so confused at the initial sign up. I'm pretty sure they even used the name girlscouts for the older children which caused further confusion.

Ewing Dec., Exh. 109 (Dep. Exh. 221) at GSNCCP_00004849.

In addition, a number of the characterizations of the testimony cited in this paragraph are not accurate.  Specifically, the citations to the Bartkowski transcript do not support the assertion that Bartkowski "could not identify any specific instance of alleged confusion she witnesse[d] first-hand or had first-hand knowledge of confusion."  Rather, the cited excerpts from this transcript concern specific instances where Bartkowski was informed that individuals mistakenly signed up for Boy Scouts thinking they were doing so for Girl Scouts, not that she had no personal knowledge of confusion.  Ewing Dec., Exh. 110 (J. Bartkowski) at 11:5-11, 18:16-20, 19:6-19, 23:24-25, 38:21-39:10, 40:5-24.

The citation to the Dailey transcript and the assertion that she did not testify that she experienced any confusion first-hand is also incorrect.  Indeed, Dailey testified that she personally experienced confusion at a recruiting event she attended.  Ewing Dec., Exh. 111 (K. Dailey) at 5:23-25, 7:10-8:16, 9:8-10:25, 97:23-18.

The citation to Parker's testimony does not support the assertion that Parker did not witness "instances of alleged confusion."  Rather, the cited portions of Parker's testimony were limited to the instances of confusion upon which she was prepared to testify as a Rule 30(b)(6) witness.  As other portions of Parker's transcript demonstrate, she observed first-hand confusion in the marketplace.  Ewing Dec., Exh. 112 (W. Parker) at 8:13-15, 28:3-17, 45:23-48:17.

The cited portions of Servian's testimony do not support the statement that Servian could not identify any specific instance of confusion that she witnessed first-hand.  Servian testified that, on a personal level, she is out in the community often and has observed confusion occurring among the general public.  Ewing Dec., Exh. 113 (M. Servian) at 7:4-12, 8:9-17, 34:5-13.

The citation to Baileigh Davis' transcript does not support the assertion that she had no personal knowledge of any instance of confusion; in fact, she testified that she spoke on the phone with a mother who had been confused.  Ewing Dec., Exh 114 (B. Davis) at 5:24-25, 6:4-25, 51:2-5.

The assertion that Bolger did not testify as to personal knowledge of any instance of confusion is also inaccurate.  She testified that she experienced confusion first-hand when she visited an elementary school and was asked if Boy Scouts and Girls Scouts were merging.  Ewing Dec., Exh. 115 (P. Bolger) at 9:14-23, 11:1-14, 137:2-138:25, 195:24-197:22.

The citation to Carrie Davis' testimony does not support the claim that she did not have any first-hand knowledge of instances of confusion, as the cited portion of the transcript describes her conversation with a confused family.  Ewing Dec., Exh. 116 (Ca. Davis) at 5:2-20, 51:1-52:9.

Finally, as set forth in paragraphs 186, 191, 196-97, 202, 205-07, 212-13, 226, 230, and 240, *infra*, other Girl Scouts' Rule 30(b)(6) witnesses on the issue of confusion whose testimony is not cited in this paragraph testified regarding the instances of confusion they witnessed first-hand.

## L.    GSUSA's Infringement Claims

56.    **GSUSA uses its GIRL SCOUTS mark in connection with its own indicia, such as the Kelly green color, trefoil logo and font.** Scher Decl., Ex. JJJJ (Girl Scout Products and Graphic Guidelines); *id.* Ex. KKKK at -090.

**RESPONSE:**  Admitted in part and denied in part.  As the two cited exhibits to the Scher Declaration make clear, the GIRL SCOUTS trademark also appears regularly in colors other than green, and in text form unaccompanied by any other distinctive elements.  *See* Scher Dec., Exh. JJJJ at GSUSA_00082280, 82287, 82292, 82299.

57.     **BSA's website includes extensive BSA branding, including the full name "BOY SCOUTS OF AMERICA" and Boy Scouts of America logo.** Scher Decl., Ex. EE.

**RESPONSE:**  Admitted.  However, Exhibit EE is not attached to the Scher Declaration, but to the Ramsey Declaration.  Further, Exhibit EE does not provide documentary support for the allegation stated in this paragraph.

58.     **In the marketplace, the BSA's Scout Marks used on BSA marketing material are consistently accompanied by distinguishing BSA brand indicia that identify the BSA as the source.** Ramsey Decl., ¶¶ 3-7 & Exs. S-U; Sterrett Decl. ¶¶ 5-10 & Exs. B-E (including photos); Scher Decl., Ex. EE.

**RESPONSE:**  Denied.  Since 2017, many of the flyers, posters and other recruiting and marketing materials created by Boy Scouts for dissemination by its councils, troops and volunteers contain images of girls unaccompanied by text making clear that the sponsoring organization is "Boy Scouts of America" and/or downplaying elements like the CUB SCOUTS logo in favor of elements like SCOUT ME IN, BEASCOUT.ORG or SCOUTS BSA that are ambiguous and confusing.  Multiple flyer templates included in Exhibits T and U to the Ramsey Declaration feature girls with such a great degree of prominence, and lack clarification as to the name of the organization offering the program being advertised, that it is entirely understandable why confusion in the marketplace is ongoing.  *See* Ramsey Declaration, Exh. T at BSA00001539, 1541, 1543, 1545, 1549, 1551, 1554, 84475, 84477, 84481, 84484, 84486; Exh. U at BSA00001425, 1455, 1479, 1482, 84595, 84607, 84611, 84617, 84620, 84627, 84634, 84639, 84643, 84644.  Popcorn products licensed by Boy Scouts for sale by local councils and troops for fundraising purposes feature girls on the packaging, trumpet that "Over 73% Goes to

Scouting" as a fundraising pitch, and only acknowledge "Boy Scouts of America" as the sponsor in small print on the side of the box. *See also* Ewing Exh. 117 (M. Gerard) at 8:18-9:10, 63:5-64:16, 117:15-120:6, 133:8-134:9; Exh. 118 (Dep. Exhs. 29, 32, 35 collectively). Purchasers of this popcorn have wrongly believed they were buying it from Girl Scouts. Ewing Dec., Exh. 119.

To make matters worse, Boy Scouts' councils, troops and volunteers have repeatedly circulated customized flyers and other materials using Boy Scouts marketing and advertising collateral using terms like SCOUT, SCOUTS, SCOUTING, SCOUTS BSA and SCOUT ME IN alongside images of girls that have caused confusion in the marketplace reported to Girl Scouts. Ewing Dec., Exh. 120 (collecting examples); Horowitz Dec., ¶ 50, Exh. 53 at GSUSA_00085469-73; Exh. 54 at GSUSA_0085374-79; *see also* Ewing Dec., Exh. 86 (T. Rugh) at 184:16-186:16 (confirming creation of "customized creative" by councils), Exh. 121 (Dep. Exh. 153).

59. **Sylvia Acevedo, then-Chief Executive Officer of GSUSA, testified that the BSA and GSUSA "are two different markets."** Scher Decl., Ex. VVVVVV (Acevedo Tr.) 287:7-11.

**RESPONSE:** Admitted in part and denied in part. Girl Scouts admits that the excerpted four words, taken out of context from deposition testimony, are accurately quoted in this paragraph, but denies that Acevedo made that statement in the context of discussing the markets served programmatically by the two organizations. The testimony in question was given when Acevedo was asked to comment on the first-aid sections of handbooks for Girl Scouts' JUNIORS program, on the one hand, and the Boy Scouts' WEBELOS program, on the other, not whether Boy Scouts and Girl Scouts operate in the same market. *See* Scher Decl., Exh. VVVVVV. During Acevedo's deposition, she confirmed the similarity between Girl Scouts' and Boy Scouts' programming and stated that Boy Scouts' opening their core programs to girls made

them a "direct competitor."  *See* Ewing Dec. Exh. 93 (S. Acevedo) at 9:18-24, 258:4-6 ("I know

some of their programming is a lot like ours in terms of outdoor."), 55:10-56:4 (describing BSA

opening its core programs to girls as making it a "direct competitor").

60.    **Andrea Bastiani Archibald, GSUSA's former Chief Girl and Family
Engagement Officer, testified that GSUSA believes current parents would not be
confused between GSUSA and the BSA due to awareness of "the uniqueness of our
separate organizations."** Scher Decl., Ex. WWWWWW (Archibald Tr.) 66:19-20.

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that the excerpted

deposition testimony is accurately quoted, but denies that it referenced "current parents" or that it

stands for the proposition that the public has not been or is not likely to be confused by Boy

Scouts' use of SCOUT-formative branding aimed at girls.  The quoted testimony was concerned

only with "existing Girl Scouts whose families are involved in Boy Scouts."  Scher Dec., Exh.

WWWWWW at 66:8-20.  Further, Archibald testified that she "was very concerned with the

increasing confusion in the marketplace" and "was concerned that families and/or girls might

sign up for Boy Scouts, thinking either that we are the same organization or that they signed up

for Girl Scouts." Ewing Dec., Exh. 108 (A. Archibald) at 11:2-12:3, 65:12-17.

61.    **Christine Butler, former Deputy Chief Marketing Officer of GSUSA,
testified that she agreed that "the programming of Boy Scouts of America is not
comparable to the programming of GSUSA."** Scher Decl., Ex. GGGGGGG (Butler Tr.)
238:9-238:18; *see also* Scher Decl., Ex. OOOO at -325 ("we know that the programming is
not comparable").

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that the excerpted

deposition testimony is accurately quoted, but denies that it stands for the proposition that Girl

Scouts and Boy Scouts do not offer programs that are very similar in terms of structure and

organization, with various elements in common.  *See* paragraphs 263-274, *infra*.  Rather, Butler

was commenting on Girl Scouts' programming not being comparable to that of Boy Scouts due

to the unique and superior benefit of it having been "created by girls, for girls." Scher Dec., Exh. OOOO at GSUSA_00048325.

62. **GSUSA documents describe its programs as "a unique, all-girl place designed to help [girls] reach their full G.I.R.L potential" and that GSUSA views its differences with BSA as crucial to competing with the BSA because "the girl-only, girl-defined, and girl-led aspects of Girl Scouts are crucial to what we offer."** Scher Decl., Exs. VV, PPPP.

**RESPONSE:** Admitted in part and denied in part. Girl Scouts admits that it has described its programs as "a unique, all-girl place designed to help [girls] reach their full G.I.R.L potential," as set forth in Exhibit VV to the Scher Declaration. Girl Scouts also admits that it believes "the girl-only, girl-defined, and girl-led aspects of Girl Scouts are crucial to what we offer," but not because it "views its differences with BSA as crucial to competing with BSA," which allegation is denied. The complete bullet point taken from Exhibit PPPP to the Scher Declaration states that "The girl-only, girl-defined, and girl-led aspects of Girl Scouts are crucial to what we offer, ***because not all girls have access to the single-gender environments in the private school system***." (Emphasis added to omitted text). As the remaining bullet points in Exhibit PPPP to the Scher Declaration demonstrate, Girl Scouts believes that its successful programming model developed over more than a century of existence is far more beneficial for girls than the programs Boy Scouts developed over its long history serving boys.

63. **According to a December 2017 GSUSA-commissioned study, 62% of respondents associated GSUSA with cookies, while the BSA was not associated with cookies (1%), and was more associated with outdoor activities than GSUSA.** Scher Decl., Ex. RRRR at 392-93 (GSUSA-commissioned study: 62% associated GSUSA with cookies, while 1% associated the BSA with cookies; 3% associated outdoor activities with GSUSA, while 27% associated outdoor activities with the BSA); *id.* Ex. ZZZZZ at -927, -936; *id.* Ex. BBBB at -020 (interview with GSUSA Chief Revenue Officer Barry Horowitz: "People don't connect with GS brand. People connect with and understand the GS Cookie brand"); *id.* at -003 (██████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████ .

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that the results of the study in question, which asked the question "When you think of the [Girl Scouts or Boy Scouts], what comes to mind?," Scher Dec., Exh. RRRR at GSUSA_00188392-93, are accurately stated in this paragraph.  Girl Scouts also admits that it is strongly associated with cookies among the American public.  However, other recent survey research commissioned by Girl Scouts shows that it is also strongly associated with outdoor activities.  *See* Scher Declaration, Exh. AAAAA (2019 Interbrand study) at GSUSA_00124862 (showing that 72% of the American public agrees that Girl Scouts "fosters a love for the outdoors").  This is not surprising, as Girl Scouts' extensive outdoor programming provides important benefits to individual Girl Scouts, as shown in a 2018-2019 study from the Girl Scouts Research Institute.  Horowitz Dec., ¶ 5, Exh. 36.

64.     **In its sworn interrogatory responses, GSUSA identified seven individuals nationwide over the course of nearly three years who it claims mistakenly enrolled children in a BSA program instead of a GSUSA program due to the SCOUT Marks.**  Scher Decl., Ex. TTTTTT (GSUSA Resp. to BSA Interrog. No. 11) (identifying ███████████████████████████████████████████████████ ).

**RESPONSE:**  Admitted, but this paragraph fails to mention that Girl Scouts identified many other instances of confusion in its interrogatory responses, and that it also disclosed two additional instances of mistaken enrollment in response to Boy Scouts Interrogatory No. 11.  Ewing Dec., Exh. 122 (Girl Scouts Further Amended Interrogatory Responses); *see* ¶¶ 65, 197, 201, 205, 216, 220, and 236, *infra*.  In addition, Boy Scouts' own surveys of new members who have joined CUB SCOUTS and SCOUTS BSA in 2018 and 2019 have disclosed additional instances of mistaken enrollment, in which parents indicated that they had enrolled their children into Boy Scouts programs under the mistaken belief that they were signing their children up for Girl Scouts programs.  *See* ¶¶ 246-249, *infra*.

65.   **GSUSA produced no admissible evidence that the individuals it identified in response to Interrogatory No. 11 enrolled in the BSA instead of GSUSA because they were confused by the BSA's use of the SCOUT Marks.** See infra 65(a)-(g).

**RESPONSE:**  Denied.  Girl Scouts denies this paragraph's characterization of Girl Scouts' evidence as inadmissible.  The confusion evidence upon which Girl Scouts relies in opposition to Boy Scouts' motion for summary judgment, and specifically the evidence in Girl Scouts' Response to Interrogatory No. 11, exists in an admissible form or exists in a form that can be made admissible for trial.  S*ee e.g., Cache Inc. v. M.Z. Berger Co.*, No. 99-cv-12320 (JGK), 2001 U.S. Dist. LEXIS 226, at *29-30 (S.D.N.Y. Jan. 9, 2001) (citing *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003-1004 (2d Cir. 1997) (Statements made by third parties showing actual confusion are admissible under Fed. R. Evid. 803(3) to show the declarant's state of mind)) and *Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc.*, 104 F. Supp. 3d 371, 378 n.1 (S.D.N.Y. 2015) ("Plaintiff's evidence of complaints is submitted mostly through emails between Plaintiff's employees reporting on conversations with customers.  Such hearsay evidence is admissible to show the customer's state of mind (i.e., confusion)").

> a.   ███████████ **submitted a declaration under oath that she "was not confused or misled by the Boy Scouts."** *See generally* Declaration of ████ ████ ¶¶ 2-5; *id.* ¶ 4 ("I understand that in this case the Girl Scouts of the USA have said that I was confused or misled by the Boy Scouts of America. That is not true."); *id.* ¶¶ 2-3 (she made "a mistake based upon my previous misunderstanding that Girl Scouts and Boy Scouts were related"); *id.* ¶ 5 ("At no time did anyone from the Girl Scouts contact me and ask me … to describe my experience this way, which is inaccurate.").

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that █████████ submitted a Declaration stating that she has always believed Boy Scouts and Girl Scouts were related organizations, which is why she enrolled her daughter in the CUB SCOUTS program, thinking it was a Girl Scouts program.  ████████ Dec., ¶¶ 2-3.

As to the balance of this paragraph, denied.  ███████  Declaration does not refute any

inference of actionable confusion.  This paragraph fails to acknowledge the fact that, while

███████  previously held a belief that Boy Scouts and Girl Scouts were related, it was also the

appearance of girls in a CUB SCOUTS flyer that made her believe she could enroll her daughter

in the GIRL SCOUTS program through the CUB SCOUTS program.  *Id.*, ¶ 3.

> b.  ███████  **submitted a declaration under oath that "When I**
> **signed my daughters up for Cub Scouts, that is exactly what I had**
> **intended to do. I knew it was Cub Scouts …."** *See generally* Declaration
> of ███████ ¶¶ 2-3; *id.* ¶ 2 ("I understand that in this case, the Girl
> Scouts of the USA are claiming that I enrolled my twin daughters in Cub
> Scouts under the mistaken belief that they were being signed up for Girl
> Scouts of the USA. This is not true."); *id.* ¶ 3 ("I was not confused or misled
> by the Boy Scouts of America").

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that  ███████

submitted a Declaration stating that she intended to enroll her daughters in Boy Scouts and was

not confused.  ████  Dec.,` ¶¶ 2-3.

As to the balance of this paragraph, denied.  ███████  Declaration does not contradict the

testimony of Kerry O'Brien of Girl Scouts of Central and Western Massachusetts that ████

called O'Brien to enroll her younger daughter in Girl Scouts and told O'Brien that her older

daughters were already in Girl Scouts.  When O'Brien could not locate the older daughters'

names in Girl Scouts' database, it became apparent to O'Brien that ████ was confused.  Ewing

Dec., Exh. 123 (K. O'Brien) at 8:14-21, 51:2-17.  O'Brien emailed ████ with information on

Girl Scouts after ████ called in order to clear up any confusion.  Ewing Dec., Exh. 124 (Dep.

Exh. 1081).  As confirmed by ████ Declaration, ████ daughters were actually enrolled in

Boy Scouts, not Girl Scouts, as O'Brien had suspected.  ████ Dec., ¶ 1.

> c.  **A GSUSA 30(b)(6) designee admitted that ███████ did not**
> **mistakenly enroll in a BSA program.** Scher Decl., Ex. SSSS (GSUSA local
> council staff determined ███████ "was not misled during the meeting that it

was Girl Scouts – she knew it was Cub Scouts the whole time"); *id.* Ex. YYYYYY (Bartkowski Tr.) 33:10-34-18 ("it appears she was not confused").

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that Jennifer Bartkowski of Girl Scouts of Northeast Texas testified that, based on an email exchange between her staff members, it appeared that ███████████ was not confused during the SCOUT NIGHT ████ attended.  Ewing Dec., Exh. 110 (J. Bartkowski) at 33:23-34:4; Exh. 125 (GSUSA Dep. Exh. 552).

As to the balance of this paragraph, denied.  Evidence exists demonstrating that ███ was confused.  Boy Scouts produced a document showing a $15 refund request submitted by ████ because she "[t]hought she registered for Girl Scouts[.]"  Ewing Dec., Exh. 126 (S. Thompson) at 8:15-10:11, 33:20-35:7, 39:3-13; Ewing Dec., Exh. 127 (GSUSA Dep. Exh. 12).

> d. **A GSUSA's 30(b)(6) designee admitted she had no knowledge whether ███████████ enrolled in the BSA instead of GSUSA because she was confused by the BSA's use of the SCOUT Marks.** Scher Decl., Ex. YYYYYY (Bartkowski Tr.) 35:4-16 ("I don't have any information about her").

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts denies that the citations to Bartkowski's transcript support an assertion that Bartkowski does not know if ██████ was confused by Boy Scouts' marketing.  Rather, Bartkowski merely testified that she did not recognize █████████ name.  Ewing Dec., Exh. 110 (J. Bartkowski) at 35:4-16.  Moreover, Samuel Thompson of Boy Scouts' Circle Ten Council testified that he was familiar with the refund receipt provided to ████████ that explicitly stated ████████ "[t]hought she registered for Girl Scouts."  Ewing. Dec., Exh. 126 (S. Thompson) at 45:15-48:19, Exh. 128 (GSUSA Dep. Exh. 13).

> e. **A GSUSA's 30(b)(6) designee admitted she had no knowledge whether ███████████ enrolled in the BSA instead of GSUSA because she was confused by the BSA's use of the SCOUT Marks.** Scher Decl., Ex. HHHHHHH (Parker Tr.) 44:21-50:5, 82:18-83:11, 119:7-22) (admitting that

█████████ never informed [her] of any basis for why she may have believed the Boy Scouts and the Girl Scouts were one organization," and agreeing "you simply just don't know one way or the other … why it was that she signed her daughter up for the Boy Scouts of America").

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts denies that testimony from Whitney Parker of Girl Scouts of Central Indiana supports an inference that Boy Scouts' marketing tactics did not lead to █████████' confusion.  In fact, evidence exists to support an inference that █████ confusion was the result of Boy Scouts' use of the SCOUTS trademark in connection with girls services.  *See* Ewing Dec., Exh. 112 (Parker) at 44:21-45:4; Exh. 129 (Dep. Exh. 671) (█████ emailed Parker stating that she enrolled her daughter "into scouts thinking it was girl scouts" and Parker wrote back that she is sorry and "scouts are being very vague when it comes to signing both boys and girls up.").

      f. **A GSUSA's 30(b)(6) designee admitted she had no knowledge whether █████ enrolled in the BSA instead of GSUSA because she was confused by the BSA's use of the SCOUT Marks.** Scher Decl., Ex. EEEEEEE (Trombley Tr.) 59:5-9; 83:5-9; 84:17-21 (admitting she had no information of why or how █████ was "confused" other than what is described in an email).

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts denies that testimony from Meta Trombley of Girl Scouts North Carolina Central Pines supports an inference that Boy Scouts' marketing tactics did not lead to █████████ confusion.  In fact, evidence exists to support an inference that █████ confusion was the result of Boy Scouts' use of the SCOUTS trademark in connection with girls services.  *See* Ewing Dec., Exh. 109, Dep. Exh. 0221 (█████ email stated, "[i]'m pretty sure they even used the name girlscouts [sic] for the older children which caused further confusion."). *See also* ¶ 219, *infra*.

      g. **GSUSA identified no evidence of what caused any supposed confusion that led █████████ [sic] to enroll in the BSA.**

**RESPONSE:**  Denied.  Boy Scouts' own evidence produced in this case demonstrates that

███████████████ mistakenly registered for Boy Scouts.  *See* ¶ 215, *infra*

66.     **The BSA has approximately 2.2 million youth members between the ages of 5 and 21.** Scher Decl., Ex. SS.

**RESPONSE:**  Denied as of December 31, 2019.  Boy Scouts' 2019 annual report stated that its

youth membership had declined to approximately 2.1 million as of that time.  Ewing Dec., Exh.

130 at GSUSA_00188868.

67.     **A consumer perception study GSUSA commissioned prior to the BSA's October 2017 announcement reported that 48% of the parents of school-aged children did not know that the parties are separate organizations.** Scher Decl., Ex. TTTT at -803 (Family Room); *see also id.* Ex. UUUU (Resps. to 1st RFA Nos. 55-56) (admitting results).

**RESPONSE:**  Admitted, although the second exhibit citation in paragraph 67 is incorrect.

However, the study in question has several limitations that make this aspect of its findings

questionable, and it also conflicts with other research Boy Scouts has produced in discovery.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ Ewing Dec., Exh. 131 (R. Dhar) at

12:17-14:25, 108:8-116:0; Exh. 132 (Dep. Exh. 271).  █████████████████████

████████████████████████████████████████████████████████

███████████████████████ *Id.*  In contrast, research commissioned in 2011 by Boy Scouts

concluded that "Parents know that the Boy Scouts and Girl Scouts are separate organizations,"

with 68% of respondents indicating that they believed the two organizations are separate, only

14% indicating that they are the same, and 18% stating that they did not know.  Ewing Dec.,

Exh. 133 (Dep. Exh. 87) at BSA00089712, 89807 (questionnaire including DON'T KNOW/NO

OPINION option); Exh. 83 (P. Wellen) at 75:12-23, 92:18-94:1.

68. **Based on a consumer study GSUSA commissioned in 1980, Burns Roper advised GSUSA that up to 75% of the U.S. public were not certain the BSA and GSUSA were separate organizations.** Scher Decl., Ex. VVVV at -426.

**RESPONSE:** Admitted in part and denied in part. The research in question was commissioned in 1977, not 1980. *See* Scher Decl., Ex. VVVV at GSUSA_00112427. No record of the study questionnaire, the universe of persons who were surveyed, the sample size that was used in the study, or anything beyond what is reflected on pages GSUSA_00112424 and GSUSA_00112427 of Exhibit VVVV to the Scher Declaration is known to exist. In addition, the characterization of what Mr. Burns Roper is reported to have communicated to Girl Scouts is misstated in this paragraph. What Exhibit VVVV to the Scher Declaration states, on page GSUSA_00112427, is that:

> 26% of those polled thought that Girl Scouts and Boy Scouts were two different divisions of the same national organization, while an additional 22% did not know. Mr. Burns roper, in assessing the implications of this question, stated that since 22% admitted they did not know, it was possible that this percentage of the 52% that gave the right answer . . . "completely separate organizations" . . . might have been guessing. In that case, as many as three-quarters of those polled might not have been clear as to the national structure of the two organizations.

69. **In 2017 and 2018 GSUSA's witnesses admitted that some people are confused about whether parties are connected or separate.** Scher Decl., Ex. BBBB (OGILVY000001) at -105 (then-Chief Operating Officer Tony Doye stated in an interview in December 2018: "Many people I talk to don't even know that we're separate from Boy Scouts …."); *id.* Ex. UUUU (July 13, 2017 email from Lynne Godfrey: "We are in the dark on parents/girls perceptions of 'scouting' in general and whether there are differences in how they value or perceive BSA vs GS. We assume there is public confusion about whether the two organizations are connected but we need to dig into this.").

**RESPONSE:** Admitted in part and denied in part. Girl Scouts admits that the cited exhibits are quoted accurately in this paragraph and that, prior to 2017, there may be a segment of the American public that believed Girl Scouts and Boy Scouts are connected to each other in some way. However, since 2017, because of Boy Scouts' decision to expand its core programs to girls using terms such as SCOUT, SCOUTS, SCOUTING, SCOUT ME IN and SCOUTS BSA, the

confusion Girl Scouts has experienced is far different in both amount and kind, as detailed in

paragraphs 185 to 245, *infra*.  Indeed, while some members of the public once may have

believed there was a connection between the two organizations, events since 2017 have

demonstrated an alarming increase in the number of parents and children who believe that the

two organizations are not simply connected to each other in some way, ***but are the same***

***organization***, as evidenced by repeated instances in which parents have signed their daughters up

for Boy Scouts programs under the mistaken belief they were signing up for Girl Scouts

programs.  *See* ¶¶ 197, 201, 205, 216, 220, and 236, 246-249, *infra.*

70.     **GSUSA's confusion survey expert, Dr. Eugene Ericksen, testified that "it appears that when people look at marketing materials that show girls doing scouting activities, regardless of what it's called, unless the word boy is in the marketing materials, people associate that with the Girl Scouts."** Scher Decl., Ex. JJJJJJJ (Ericksen Tr.) 95:14-96:3.

**RESPONSE:**  Admitted.  The words SCOUT, SCOUTS and SCOUTING, when used in

connection with youth leadership and development services offered to girls, are exclusively

associated with Girl Scouts.  *See* ¶¶ 141-148, *infra*.  Thus, Dr. Ericksen agreed that "a picture of

girls with the word scouts under it," Scher Dec., Exh. JJJJJ at 95:10-13, if he had shown such an

image to survey respondents, would be highly likely to be associated with Girl Scouts, unless the

word "boy" appeared.

71.     **Some GSUSA troops have jointly participated in various events with BSA troops.** Scher Decl., Ex. AAAAAAA (Park Tr.) 39:2-45:22 (holding joint meetings for more than a decade and sharing property); *id.* Ex. KKKKKKK (C. Davis Tr.) 78:13-79:21 (noting various joint events including a "4th of July celebration."); *id.* Ex. OOOOOOO (Smith Tr.) 80:24-81:12.

**RESPONSE:**  Admitted, except that the citation to Scher Decl., Exh. OOOOOOO is incorrect

and should be to Exh. QQQQQQQ.  Girl Scouts local councils are independent non-profit

organizations.  Since 2018, Girl Scouts has disseminated guidance to its councils, through its

Volunteer Essentials and Risk Management Guide, advising that Boy Scouts' decision to open its

core programs to girls "may mean that the relationship between a council and its BSA

counterpart should fundamentally change" because "Girl Scout participation in Boy Scout

activities will increase that confusion [seen in the marketplace] and will contribute to the

misperception that Girl Scouts has merged, or is somehow interchangeable, with Boy Scouts."

Horowitz Dec., ¶ 14, Exh. 47 at GSUSA_00107183.  *See also* Girl Scouts Response to paragraph

29, *supra.*

However, as the owner of its intellectual property, Girl Scouts has prohibited any sort of

co-branding by any of its Girl Scouts local councils with Boy Scouts local councils since 2018,

either in conjunction with a joint event or otherwise.  █████████████████████

████████████████████████████████████████████

███████████████████████████████████  Horowitz Dec., ¶ 16, Exh. 49

at GSUSA_00113098.

72.    **Some GSUSA troops and BSA troops continued to engage in joint activities after GSUSA filed this lawsuit.** Scher Decl., Ex. WWWW (GSUSA's General Counsel approving joint event in 2019); *id.* Ex. LLLLLLL (Swanson Tr.) 196:22-198:7 (joint events between the organizations "may continue" and GSUSA "didn't mandate" that councils not participate in joint events); *id.* Ex. AAAAAAA (Park Tr.) 44:8-45:22 (has not instructed its Northern California council to cease working with the BSA over concerns it would diminish GSUSA's brand); *id.* Ex. KKKKKKK (C. Davis Tr.) 78:13-79:21. GSUSA's General Counsel continues to approve joint events between the parties. Scher Decl., Ex. WWWW.

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that some Girl Scouts

troops and Boy Scouts troops have continued to engage in joint activities after Girl Scouts filed

this lawsuit.  Girl Scouts denies that Girl Scouts' General Counsel continues to approve joint

events between the parties and denies that Exhibit WWWW to the Scher Declaration supports

that latter assertion, which is addressed, *infra*, in Girl Scouts' Response to paragraph 72(a),

which duplicates the last sentence of this paragraph.

Although Girl Scouts has not mandated, nor could it mandate, that its local councils stop participating in joint events with Boy Scouts or any other organization, Girl Scouts has taken steps to prevent confusion by helping councils make informed choices as to whether to allow joint events by providing them with guidance stating that "they have to understand the context of the local situations and make the best decisions for their councils." Scher Decl., Exh. LLLLLLL (S. Swanson) at 197:23-198:7.  *See also* Girl Scouts Response to paragraph 29, *supra.*

72(a).   **GSUSA's General Counsel continues to approve joint events between the parties.** Scher Decl., Ex.WWWW.

**RESPONSE:**  Denied.  Girl Scouts' General Counsel, Jennifer Rochon, did not approve a joint event between the parties in Exhibit WWWW to the Scher Declaration, but instead relayed that she "defers and confirms the local council's approval" of a regatta event involving a local Girl Scout troop and a Sea Scout ship.  *Id.* Moreover, because the decision whether or not to participate in a joint event is within the local council's purview, Rochon is not in a position to either approve or disapprove such requests.

Exhibit WWWW to the Scher Declaration was transmitted because, prior to the regatta in question, the Sea Scouts ship attempted to require members of the Girl Scouts troop in question to register with Sea Scouts in order to participate.  Horowitz Dec., ¶ 15.  When the Girl Scouts troop members said they were not interested in doing so, the Sea Scout ship said they could participate only if Girl Scouts sent an email confirming the local council's decision to allow them to participate in a joint event.  *Id.*  At the request of the local Girl Scouts council, Rochon provided such a confirmation.

73.   **GSUSA 30(b)(6) designees have admitted they do not have any evidence of willfulness other than the BSA's use of the word "SCOUT."** Scher Decl., Ex. LLLLLLL (Swanson Tr.) 260-62, 268-26; *id.* Ex. MMMMMMM (Neubert Tr.) 283:6-285:12 ("I don't know what BSA wanted," and has no evidence of the BSA's intention).

**RESPONSE:**  Denied.  The cited deposition excerpts confirm that Boy Scouts' use of the word SCOUT was not the only basis for the testimony that Boy Scouts has intentionally intended to cause confusion.  Scher Dec., Exh. LLLLLLL at 260-62 (testifying that ongoing use of ambiguous terms like SCOUT, SCOUTS BSA, SCOUTING and SCOUT ME IN, notwithstanding inaction by Boy Scouts in response to notices of instances of confusion occurring around the country, and Girl Scouts' rights in the SCOUT terms, supported the inference that Boy Scouts intended to confuse).  In addition, Girl Scouts responded to a contention interrogatory at the close of discovery supplying a fulsome factual basis for its claim that Boy Scouts' actions are "willful and reflect an intent to confuse consumers," including information contained in internal Boy Scouts' documents to which Girl Scouts' witnesses were not privy.  Ewing Dec., Exh. 283 (Response to Boy Scouts Interrogatory No. 13); *see also* ¶¶ 131, 146-48, 164, 168, 174, 182-83 *infra.*

74.    **BSA programs are of high quality.** Sterrett Decl., ¶¶ 11-13 (discussing quality of programs and positive influence on members).

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that Boy Scouts has offered programs for over a century that have benefitted a substantial number of American boys, and that many current and former participants in those programs believe them to be of high quality.  Unfortunately, in recent years, tens of thousands of former Boy Scouts have come forward with allegations of sexual and other abuse perpetrated against them while they were participants in Boy Scouts programs.  Ewing Dec., Exh. 134, ¶¶ 17, 56 (Boy Scouts filing in its ongoing bankruptcy proceeding stating that more than 95,000 abuse claims have been filed in that proceeding).  Social media postings have linked the allegations against Boy Scouts to Girl Scouts.  Ewing Dec., Exh. 282.  In light of these claims, and Boy Scouts' acknowledgements that "there were times in the past when we failed the very children we were supposed to protect," *id.*,

Exh. 135, and that "decades ago, BSA did, in at least some instances, allow individuals to return to

Scouting even after credible accusations of sexual abuse," Ewing Dec., Exh. 136, Girl Scouts cannot

admit the allegation contained in this paragraph in its entirety.

**75.     Kimberlee Salmond, GSUSA's then-Vice President of Research and Impact, reported that, after the BSA's announcement, GSUSA received feedback that girls "mention interest in boy scouts due to their [BSA's] more robust outdoor planning" and that parents find the BSA programs to be "more rigorous and teach[] more 'skills,'" "do more in general & more adventure activities in particular," and that the BSA's "highest awards are more meaningful."** Scher Decl. Exs. XXXX & YYYY.

**RESPONSE:**  Admitted.  The first comment cited in this paragraph came from a Girl Scouts

Board Member who reported anecdotally that she had heard "older girls (no longer GS) mention

interest in boy scouts due to their more robust outdoor programming," and was not based on any

sort of survey or other research data.  *See* Scher Dec., Exh. XXXX. The other feedback – that

parents find the BSA programs to be "more rigorous and teach[] more 'skills,'" "do more in

general & more adventure activities in particular," and that the BSA's "highest awards are more

meaningful" – are themes that a Girl Scouts employee noted in coding 150 parent comments

from the 2017 "Girl Scout Voices Count" survey.  Scher Decl., Exh. YYYY.  ███████████

███████████████████████████████████████████████████████

███████████████████████████████        *See* Horowitz Dec., Exh. 37 at

GSUSA_00114612-613.  █████████████████████████████████████████

███████████████████████████  *Id.* at GSUSA_00114614.  ████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████  *Id.* at GSUSA_00114615.

Indeed, Girl Scouts programming includes many outdoor activities, both presently and

historically.  "Outdoors" has always been one of the four pillars of the Girl Scouts' program, and

Girl Scouts currently offers over 50 outdoor-related badges.  Horowitz Dec., ¶ 5; *id.*, Exh. 35
(outdoor badges pdf printout).  The Girl Scouts Research Institute conducted a study across the
2018-19 program year of 227 troops and 1,700 girls finding that "Girl Scouts gets girls outdoors,
exposes them to new and challenging experiences, and helps them develop outdoor leadership
skills…."  Horowitz Dec., Exh. 36 at GSUSA_00188785-786.

76.     **Congresspeople such as Representative Glenn Thompson and Senator
Mike Enzi have praised the BSA and its activities on the Congressional record.** Scher
Decl., Ex. ZZZZ; Sterrett Decl. ¶ 12.

**RESPONSE:**  Admitted. Numerous government officials have offered praise for Girl Scouts and
its activities as well.  *See* ¶ 136, *infra.*

77.     **GSUSA's Chief Customer Officer Lynelle McKay testified that "parents
are careful about signing their child up for anything."** Scher Decl., Ex. NNNNNNN
(McKay Tr.) 241:3-8).

**RESPONSE:**  Admitted.  However, McKay also testified that she was aware of parents who
reported to Girl Scouts that "they had signed up for Boy Scouts intending to sign up for Girl
Scouts."  Ewing Dec., Exh. 137 (L. McKay) at 14:22-15:21, 187:19-21.  And in fact, a number
of parents have mistakenly signed their children up for Boy Scouts thinking it was Girl Scouts.
*See* Girl Scouts' Responses to paragraphs 55 and 65, *supra*, and paragraphs 197, 201, 205, 216,
220, 236, and 246-250, *infra.*

Dr. Erich Joachimsthaler, Girl Scouts' marketing and branding expert, has similarly
opined that choosing a youth leadership and development program can be characterized as a
high-involvement purchase, but that the degree of care exercised by consumers can vary greatly
depending on the perceived differences in the brands being considered.  *See* the accompanying
Declaration of Erich Joachimsthaler ("Joachimsthaler Dec."), Exh. 13 (Joachimsthaler Report) at
¶¶ 100, 102; Joachimsthaler Dec., ¶ 14.  When consumers perceive fewer distinctions between
competitive brands, the high involvement nature of the purchasing process will not prevent

confusion or dispel mistaken associations. Joachimsthaler Dec., Exh. 13 (Joachimsthaler Report) at ¶ 102. Dr. Joachimsthaler further opined that in this case, there is evidence that some consumers have long perceived the GIRL SCOUTS and BOY SCOUTS brands to be associated in some way, which is not surprising given that they have common elements in their associative memory networks and are perceived to offer overlapping programming elements and shared common terms like "Scout" and "Scouting." Joachimsthaler Dec., Exh. 13 (Joachimsthaler Report) at ¶ 102. He therefore concludes that for these consumers, it is very likely that, upon encountering ambiguous terms like SCOUTS, SCOUTS BSA or SCOUT ME IN used in connection with girls leadership and development services without any clarifying context, such consumers will not engage in complex purchasing behavior, nor will they exhibit the same degree of care that is typical of complex buying behavior. Joachimsthaler Dec., Exh. 13 (Joachimsthaler Report) at ¶ 102.

78.     **Parents or guardians who enroll their children in the BSA typically have multiple touchpoints with the BSA before deciding to enroll.** Sterrett Decl., ¶ 10.

**RESPONSE:** ███████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███     Ewing Dec., Exh. 138 (Dep. Exh. 262, 2018 CUB SCOUTS data) at Trended Results, Rows 55-72 (PDF page 5-6); Exh. 139 (Dep. Exh. 263, 2019 CUB SCOUTS data) at Trended Results, Rows 56-74 (PDF page 5-6); Exh. 140 (Dep. Exh. 264, 2019 SCOUTS BSA data) at Trended Results, Rows 54-73 (PDF page 5-6); Exh. 83 (P. Wellen) at 278:23-292:20. *See also* Response to paragraph 77, *supra.*

79.     **The decision to enroll a child in a BSA program frequently involves discussion with friends and family, school activities, and/or information nights.** Sterrett Decl., ¶ 5.

**RESPONSE:**  Admitted.  *See* Responses to paragraphs 77 and 78, *infra.*

80.     **The process of joining the BSA usually begins with BSA-branded fliers or posters that encourage prospective members and their families to attend BSA "sign-up" nights, which are typically staffed by BSA volunteer leaders accompanied by current youth members, BSA-branded materials on display.** Sterrett Decl. ¶¶ 6-8 & Exs. B-C (photos of 2019 sign-up night).

**RESPONSE:** ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████ Ewing Decl., Exh. 138 (Dep. Exh. 262,

2018 CUB SCOUTS data) at Trended Results, Rows 57-75; Exh. 139 (Dep. Exh. 263, 2019

CUB SCOUTS data) at Trended Results, Rows 57-75; Exh. 140 (Dep. Exh. 264, 2019 SCOUTS

BSA data) at Trended Results, Rows 54-73.  *See* Response to paragraph 77, *supra.*

81.     **The BSA's online application, accessible through BSA's beascout.org website, features the BSA's fleur-de-lis logo, the name "Boy Scouts of America," BSA program names and logos, and images of adult leaders and youth dressed in BSA uniforms and other BSA- branded apparel.** Sterrett Decl. ¶ 9 & Exs. D-E.

**RESPONSE:** Admitted in part and denied in part.  Girl Scouts admits that Exhibit D to the

Sterrett Declaration includes Boy Scouts' fleur de lis logo once, scattered references to Boy

Scouts' program names, and several references to "Boy Scouts of America" in text.  Girl Scouts

denies that any of these elements are "featured" in such application, and Girl Scouts further

denies that any images of any kind appear in the application.  With respect to Exhibit E to the

Sterrett Declaration, which is an access page and not the application itself, Girl Scouts admits

that all of the visual elements recited in this paragraph are depicted on that page but denies that

any are "featured."  As described, *infra*, in paragraphs 197, 201, 205, 216, 220, 236, and 246-250, the fact that multiple parents or guardians mistakenly signed up for Boy Scouts instead of Girl Scouts, and requested refunds, demonstrates that the appearance of the referenced visual elements is insufficient to distinguish the organizations.

**M.   GSUSA's Dilution Claims**

82. **GSUSA commissioned brand studies from one of the most well-reputed brand assessment companies, Interbrand, that showed no decline in the external strength of GSUSA's brand between 2015 and 2019.** Scher Decl., Ex. AAAAA at -833 (Interbrand study); *id.* Ex. OOOOOOO (Godfrey Tr.) 67:4-23 (Interbrand is "highly regarded," "has a lot of credibility in the marketplace"); *id.* Ex. PPPPPPP (Joachimsthaler Tr.) 311:8-20) (GSUSA purported marketing expert cited Interbrand in one of his books as an example of a brand valuation company and testified that it is "very popular in our field.").

**RESPONSE:**  Admitted.  However, the 2019 study was conducted in May 2019, Scher Dec., Exh. AAAAA at GSUSA_00124817, just a few months after Boy Scouts started admitting girls to its SCOUTS BSA program and less than a year after Boy Scouts started formally admitting girls into CUB SCOUTS nationwide. *See* Sterrett Dec., ¶ 19.

83. **Interbrand's studies in 2015 and 2019 reveal no decline in consumer perception of GSUSA's brand.** Scher Decl., Ex. AAAAA at -825-827 (noting Interbrand considered six external factors using consistent methodology, although it changed the "understanding" factor from the 2015 study to "engagement" in the 2019 study).

**RESPONSE:**   Denied.  Neither the cited pages of the Interbrand 2019 presentation nor the balance of the cited exhibit set forth any findings concerning "consumer perception" of the GIRL SCOUTS brand.

84. **Lynn Godfrey – who [sic] designated as a witness on the topic of all market research and surveys commissioned by GSUSA on or after January 1, 2017, concerning the parties' respective marks and services – testified: "Based on the time period in which they [Interbrand] conducted the research, that is -- and that's the quantitative result, then I would agree with their observation" and she could not think of any evidence suggesting GSUSA's brand had been impacted.** Scher Decl., Ex. OOOOOOO (Godfrey Tr.) 174:15-175:19; *id.*

**RESPONSE:** Admitted, but Godfrey also testified that "I cannot say today, months after the

fact, that [the GIRL SCOUTS brand] hasn't been impacted in some way." Ewing Dec., Exh. 96

(L. Godfrey) at 175:12-175:14. *See also* Girl Scouts' Response to paragraph 77, *supra*.

85.    **GSUSA's purported marketing expert Dr. Joachimsthaler made no
attempt to compare the GIRL SCOUTS brand perception in 2020 to its perception in
2017, and admitted he had no opinion about how it had changed over that time.** Scher
Decl., Ex. PPPPPPP (Joachimsthaler Tr.) 113:21-114:19 (Q. So you don't have an opinion
on how the perception of the Girl Scouts brand changes in 2018, 2019 and in 2020 is that
correct? A. Yes.").

**RESPONSE:** Admitted in part and denied in part. Dr. Joachimsthaler is not Girl Scouts'

"purported marketing expert" but has been identified as Girl Scouts' branding and marketing

expert and, in his report, provided an opinion stating that "the use of ambiguous terms like

"Scout," Scouts," "Scouting," "Scout Me In" and "Scouts BSA" by Boy Scouts in connection

with youth leadership and development services for girls, unaccompanied by content or context

making clear that such terms are being used by Boy Scouts, has and will continue to significantly

harm the Girl Scouts brand, by causing confusion, diminishing the strength and distinctiveness of

the Girl Scouts brand." Joachimsthaler Dec., Exh. 13 (Joachimsthaler Report) at ¶ 148;

Joachimsthaler Dec., ¶ 10. In order to arrive at his expert opinion, Dr. Joachimsthaler applied

standard methods of scientific inquiry in his field. He analyzed materials using the well-known

frameworks, models, methods, and methodologies that he has worked with since the late 1980s.

Joachimsthaler Dec., Exh. 13 (Joachimsthaler Report) at ¶ 12. These frameworks, methods, and

methodologies are generally accepted by branding and marketing professionals and are standard

practice and operating procedure in his ordinary consulting work. Joachimsthaler Dec., Exh. 13

(Joachimsthaler Report) at ¶ 12. Additionally, he employed multiple approaches based on

proven conceptual models of branding and brand equity used in both academic inquiry and in

business. Joachimsthaler Dec., Exh. 13 (Joachimsthaler Report) at ¶ 12. In assessing the

damage to the GIRL SCOUTS brand, he had incorporated where applicable three major

approaches: 1) industry or category analyses, 2) brand analyses, and 3) consumer behavior

analyses.  In each of these approaches, various primary and secondary research, namely

empirical research, articles from academic journals, press releases and similar materials were

drawn upon and incorporated into his analyses before drawing any conclusions. Joachimsthaler

Dec., Exh. 13 (Joachimsthaler Report) at ¶ 12.

86.     **GSUSA's then-CEO Sylvia Acevedo testified on November 18, 2019 that GSUSA's brand "continues to be very strong,"** Scher Decl., Ex. VVVVVV (Acevedo Tr.) 334:7-335:15.

**RESPONSE:**  Admitted.

87.     **GSUSA's then-CEO Sylvia Acevedo encouraged her team to purchase paid advertising tied directly to the BSA, including certain of the BSA's registered trademarks.** Scher Decl., Ex. BBBBB at -642.

**RESPONSE:**  Admitted in part and denied in part.  The exhibit cited in this paragraph does not

support Boy Scouts' contention that Acevedo encouraged her team to purchase paid advertising

that was tied directly to Boy Scouts, whether including Boy Scouts' registered trademarks or

otherwise, so that allegation is denied.

Girl Scouts admits that Acevedo encouraged her team to purchase paid and unpaid

advertising, in the forms of Google adwords, URLs and social media handles, relating to the

words "scout," "scouts," and "scouting" for use in marketing programs offered by Girl Scouts

and its councils, and to prevent assets that had the word "scout" in them from being purchased by

Boy Scouts for use in connection with girls services, in order to prevent confusion in the

marketplace.  Ewing Dec., Exh. 92 (C. Butler) at 26:17-19, 29:16-30:6, Exh. 93 (S. Acevedo) at

347:25-350:10.  The marks SCOUT, SCOUTS and SCOUTING are owned by Girl Scouts for

use in connection with leadership and development programs offered to girls, *see* paragraphs

141-148, *infra*, and the assets Acevedo sought to purchase consisting of these terms are assets that Girl Scouts is entitled to use if it wishes.

88.     **GSUSA admitted that in 2017 and 2018, it bid on the BSA's BOY SCOUTS and CUB SCOUTS trademarks as keywords to trigger advertising on Google search results in response to searches for Boy Scouts and Cub Scouts.** Scher Decl,. Ex. RRRRRR (Resps. to 2d RFA Nos. 127 & 128); *id.* Ex. SSSSSS (Resps. to 3d RFA Nos. 250, 252).

**RESPONSE:**  Admitted that as part of Girl Scouts' purchase of the Google adwords "scout," "scouts," and "scouting," a Google algorithm began including related words, such as "Boy Scouts" and "Cub Scouts," as related terms for Girl Scouts to bid on, without Girl Scouts intending to bid on them or realizing that these terms were being included by Google.  As soon as this came to Girl Scouts' attention, it blocked these words from future purchase.  A very small proportion of a Google Adwords Grant was used on these keywords. Ewing Dec., Exh. 92 (C. Butler) at 86:8-87:15.

Likewise, when Boy Scouts decided to include the words "girl" and "scouts" in its Google adwords buy, Boy Scouts' online advertisements were returned when an individual searched for "Girl Scouts" until Boy Scouts took steps to halt this practice.  *See* Ewing Dec., Exh. 141 (Dep. Exh. 196); Exh. 71 (D. Kinn) at 276:12-20 (███████████████████ ███████████████████████████████████████████████ █████ ).  In 2018, Boy Scouts also purchased Google adwords such as "girl scouts near me" and "girlscouts.org," as well as "join ymca" and "boys and girls clubs" until Girl Scouts protested such purchases, and Boy Scouts deleted them from its buy.  Ewing Dec., Exh. 142 at BSA00028709-10 (spreadsheet highlighting "branded terms from competitive organizations" that Boy Scouts no longer wished to buy).

89.     **In June 2017, GSUSA was "in the process of doing paid search for scouts and scouting," as well as dozens of additional scout related keywords," and GSUSA admitted that in 2017, 2018 and 2019, it paid for advertising so that GSUSA would**

show up in response to searches for BSA trademarks such as "Scout" and "Scouting." Scher Decl,. Ex. CCCCC; *id.* Ex. RRRRRR (Resps. to 2d RFA Nos. 127-130); *id.* Ex. SSSSSS (Resps. to 3d RFA Nos. 262, 264, 266, 268, 270, 272).

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that, in June 2017, it bid

on "scout," "scouts" and "scouting" as well as dozens of related keywords, and that, in 2017,

2018 and 2019, it paid for online advertising so that it would show up in response to searches for

"Scout" and "Scouting."  Girl Scouts denies that SCOUT and SCOUTING are Boy Scouts

trademarks when used in connection with services for girls.  The marks SCOUT, SCOUTS and

SCOUTING are owned by Girl Scouts for use in connection with leadership and development

programs offered to girls.  *See* paragraphs 141-148, *infra*.

90.    **In 2017 GSUSA sought to obtain hundreds of domain names and social media handles that contained the word "scout" without being preceded by the word "girl," such as scouts.net and scout.net.** Scher Decl., Ex. RRRRRR (Resps. to 2d RFA Nos. 127-130 133-134); *id.* Ex. DDDDD (attaching spreadsheet showing over 700 purchased domain names);*id.* Ex. EEEEE (informing GSUSA CEO and General Counsel that, by May 4, 2018, GSUSA had "purchased 684 domains … with approximately 30 more in progress").

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that, in 2017, it sought to

obtain hundreds of domain names that contained the word "scout" without being preceded by the

word "girl," such as "scouts.net" and "scout.net."  Girl Scouts purchased hundreds of domain

names and acquired a number of social media handles that included the term "scout" without

being preceded by the word "girl" for use in marketing programs offered by Girl Scouts and its

councils, and to prevent domain names that had the word "scout" in them from being purchased

by Boy Scouts for use in connection with girls services in order to prevent confusion in the

marketplace.  Ewing Dec., Exh. 92 (C. Butler) at 26:17-19, 29:16-30:6.  The marks SCOUT,

SCOUTS and SCOUTING are owned by Girl Scouts for use in connection with leadership and

development programs offered to girls, *see* paragraphs 141-148, *infra*, and the domain names

Girl Scouts sought to purchase are assets that Girl Scouts is entitled to use if it wishes.

Girl Scouts denies that it sought to obtain "hundreds" of social media handles that contained the word "scout" without being preceded by the word "girl," as none of the referenced exhibits support this contention, or even mention social media handles.

91.     **GSUSA internally discussed purchasing domain names such as "stemscouts.com," "stemscouts.org," and "stemscouts.net," (knowing of the BSA's registered trademark STEM SCOUTS), and "webelos.com," even though WEBELO is a fanciful BSA term for a particular Cub Scout rank, and WEBELOS and STEM SCOUTS are both registered trademarks owned by the BSA.** Scher Decl., Ex. FFFFF at -929; *id.* Ex. GGGGG; Ramsey Decl., ¶ 33; *id.*, Ex. SSSSSSS (registrations); RJN.

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that certain employees internally discussed purchasing domain names such as "stemscouts.com," "stemscouts.org," "stemscouts.net" and "webelos.com."  None of the cited documents indicates that, prior to discussing whether to purchase any domain names including the trademark STEM SCOUTS, Girl Scouts was aware that STEM SCOUTS was one of Boy Scouts' registered trademarks. Girl Scouts decided not to move forward with purchasing any domain names involving either of the STEM SCOUTS or WEBELOS trademarks. *See* Ewing Dec., Exh. 92 (C. Butler) 47:5-16; Scher Dec., Exh. RRRRRR (Girl Scouts' Response to RFA No. 135).  However, as stated in Girl Scouts Response to paragraph 88, *supra*, Boy Scouts did purchase online advertising keywords including trademarks owned by "competitive organizations" like Girl Scouts.

92.     **GSUSA obtained social media handles for "scoutingorg" and "scoutorg," even though the BSA has used the domain name scouting.org for more than a decade.** Scher Decl., Ex. FFFFF at -931; Ramsey Decl., ¶ 32.

**RESPONSE:**  Admitted.  *See* Response to paragraph 90, *supra*.

93.     **In June 2017, GSUSA's then-CEO Sylvia Acevedo instructed GSUSA's marketing team to "make sure we own as many sites, social media names as possible" because the BSA used its domain "@scouting.org" for its email addresses.** Scher Decl., Ex. FFFFF at -32-33.

**RESPONSE:**  Admitted. *See* Response to paragraph 90, *supra*.

94.      **After the BSA announced it would welcome girls into Cub Scouts, she instructed the team to "grab as many social media 'scouters' labels as possible" because "BSA is … us[ing] that phrase and I'd like web searches of that phrase to point to us."** Scher Decl., Ex. HHHHH.

**RESPONSE:** Admitted.  *See* Response to paragraph 90, *supra.*

95.      **GSUSA admitted that it tried to modify Wikipedia page for "Scouting" to insert references to GSUSA.** Scher Decl., Ex. RRRRRR (Resp. to 2d RFA No. 121).

**RESPONSE:**  Admitted that Girl Scouts attempted to edit the "Scouting" Wikipedia page to reflect accurately Girl Scouts' role in the Scouting movement for girls, *see* paragraphs 141 to 148 *infra*, and clarify its brand, which was not accurately reflected in the current "Scouting" Wikipedia page.  Ewing Dec., Exh. 92 (C. Butler) at 96:12–97:18.

96.      **Through its agent, Mercury, GSUSA inserted into the opening paragraph of the "Scouting" Wikipedia page the sentence: "In 1912, Girl Scouts of the USA was founded, which brought *scouting* to girls in the U.S." GSUSA executives were informed that Wikipedia removed those and other attempts by GSUSA and its PR agency to insert GSUSA into those pages.** Scher Decl., Ex. IIIII-JJJJJ.

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits the content of paragraph 96 except for the assertion that Mercury was a Girl Scouts "agent," which is denied.  Mercury was an outside, independent contractor to Girl Scouts.  *See* Response to paragraph 51, *supra.*  Girl Scouts first attempted to make changes to the "Scouting" Wikipedia page to reflect accurately Girl Scouts' role in the SCOUTING movement for girls, *see* paragraphs 141 to 148, *infra*, and to clarify its brand, through its own staff, who disclosed their affiliation with Girl Scouts when seeking to make these changes.  Ewing Dec., Exh. 92 (C. Butler) at 96:12-98:16; Scher Dec., Exh. IIIII at GSUSA_00094939.  After those changes were rejected by Wikipedia, Girl Scouts sought the assistance of Mercury, whose attempts to make such accurate edits were also unsuccessful. *Id.*

97.      **GSUSA sought volunteers who lived outside of New York, and hired third- party contractors, to try to edit the "Scouting" Wikipedia page so that the editing would not be tracked back to GSUSA.** Scher Decl., Ex. IIIII-JJJJJ.

**RESPONSE:**  Admitted that Girl Scouts first attempted to make changes to the Wikipedia "Scouting" page to reflect accurately Girl Scouts' role in the Scouting movement for girls, *see* paragraphs 141 to 148, *infra*, and to clarify its brand through its own employees, who disclosed their affiliation with Girl Scouts when seeking to make these changes.  *See* Response to paragraph 96, *supra*.  After those changes were rejected by Wikipedia, Girl Scouts sought assistance from third parties because Girl Scouts believed that the accurate changes it was attempting to make to the Wikipedia "Scouting" page were rejected because Wikipedia discourages individuals from writing articles about themselves or their organization.  Ewing Dec., Exh. 92 (C. Butler) at 118:22-120:2.  Thus, the balance of this paragraph is denied.

98.     **GSUSA has historically advertised its highest award, the Gold Award, by comparing it to the BSA's Eagle Scout.**  Scher Decl., Ex. KKKKK; *id.* Ex. LLLLL at -97.

**RESPONSE:**  Girl Scouts admits that its marketing and communications materials have stated that the Girl Scout Gold Award is the highest and most prestigious Girl Scout award, in the same way that Eagle Scout is the highest and most prestigious Boy Scout award.  Boy Scouts former National President likewise described the Girl Scout Gold Award as "a significant achievement with effort comparable to the Eagle Award."  Ewing Dec., Exh. 143 (Dep. Exh. 236); Exh. 63 (M. Surbaugh) at 120:5-121:20.

**N.     The BSA's Laches Affirmative Defense**

99.     **In 1980, GSUSA's National Executive Director sent a letter to the BSA stating that GSUSA preferred to refer to BSA female Explorer Scouts as "young women" rather than "girls" out of concern of "confusion caused by the generic use of the term 'Scouting' without an identifier."**  Scher Decl., Ex. XX.

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts denies that the cited correspondence refers to "Explorer Scouts," as Boy Scouts itself had made clear at that time that participants in that program were to be referred to as "Explorers."  *See* ¶ 152, *infra*. The cited correspondence also does not state that "confusion caused by the generic use of the term

'Scouting' without an identifier" was the reason why Girl Scouts chose to refer to female

participants in Exploring as "young women" instead of "girls."  Scher Dec., Exh. XX.  In

actuality, the letter points out to Boy Scouts how easily the term SCOUTING can cause

confusion when it is used in advertising or other communications materials where the

identity of the sponsor is not made clear.  *Id.*; *see also* Ewing Dec., Exh. 93 (S. Acevedo) at

378:17-381:4.  The correspondence in question was part of a longer series of communications

exchanged between Girl Scouts and Boy Scouts over a period of several years, in which Girl

Scouts repeatedly requested that Boy Scouts make clear in public communications using the

word SCOUTING that such communications originated with Boy Scouts, and after Boy Scouts

had assured Girl Scouts on several occasions that it would do so.  *See* ¶ 147, *infra.*

100.    **A letter dated September 16, 1985 from the National Executive Director
of GSUSA to the Executive Director of a GSUSA local council stated that the term
"Scout" "is used world-wide by the Boy Scouts, and always has been," and "[r]ather
than be defensive about the use of this term by Boy Scouts of America, we have chosen
to be very assertive, consistent, and positive about the use of <u>Girl Scouts</u>."** Scher Decl.,
Ex. YY (emphasis in original).

**RESPONSE:**  Admitted.  This letter was sent after Girl Scouts had repeatedly requested over a

period of several years that Boy Scouts make clear in public communications using the word

SCOUTING that such communications originated with Boy Scouts, and after Boy Scouts had

assured Girl Scouts on several occasions that it would do so.  *See* ¶ 147, *infra.*  This letter was

also sent at a time when the only female members in Boy Scouts programs were participants in

its EXPLORING program, of which SEA EXPLORING was then a part.  Harrington Dec., Exh.

15 at GSUSA_00060820; Exh. 16 at GSUSA_00096107; *see also* ¶¶ 106, 154, *infra.*

101.    **In an email dated September 27, 2012 – more than 6 years before this
action was filed – GSUSA's Andrea Bastiani Archibald wrote that "'scouts generally
refers to Boy Scouts of which we have no affiliation."** Scher Decl., Ex. ZZ at -682.

**RESPONSE:**  Admitted that a single employee so stated in an email with an external partner about the correct way to refer to Girl Scouts, and in an effort to avoid confusion, because Girl Scouts "wouldn't want to be misinterpreted as for boys."  Ewing Dec., Exh. 108 (A. Archibald) at 193:20-194:9.

102.   **GSUSA's Andrea Bastiani Archibald sent at least three emails between 2014 and 2017 stating that the term "Scout" refers to "Boy Scouts," not GSUSA.** Scher Decl., Ex. AAA-CCC at -007.

**RESPONSE:**  Admitted.  As discussed, *supra*, in paragraph 101, Exhibits AAA and CCC to the Scher Declaration confirm that Archibald was either emailing external partners or internal Girl Scouts staff who would be relaying her comments to external partners, regarding Girl Scouts' preference about the correct way to refer to Girl Scouts, and in an effort to avoid confusion, and that Girl Scouts "wouldn't want to be misinterpreted as for boys." Ewing Dec., Exh. 108 (A. Archibald) at 193:20-194:9.

103.   **In 2017, GSUSA executives acknowledged that BSA's referring to itself as "Scouting" was "not new," and that "Scouting" is a term the BSA has "historically" used "for the organization and its activities."** Scher Decl., Ex. NNNNN.

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts denies that Girl Scout executives, plural, made any such acknowledgement.  Girl Scouts admits that one Girl Scout non-executive employee, Sharon Baade, Senior Program and Property Manager, acknowledged that Boy Scouts' referring to itself as "Scouting" was "not new."  Scher Dec., Exh. NNNNN.  However, Girl Scouts denies that Baade acknowledged that SCOUTING is a term Boy Scouts has "historically" used "for the organization and its activities."  What she wrote was that "historically, 'Scouting' has been [Boy Scouts'] generic term for the organization and its activities" which at the time were almost entirely focused on boys' leadership and development activities.  *See* ¶¶ 156, 157 *infra.*

104. **GSUSA was aware of the BSA's coed STEM Scouts program shortly after it launched in 2014.** Scher Decl., Ex. OOOOO (April 2015 email to GSUSA executive team about the BSA's STEM Scouts program); *id.* Ex. PPPPP (in April 2015, GSUSA preparing "a brief to be shared with E-team and possibly CEOs" that describes at a "high-level of what Stem Scouts" and that will include "media response/sentiment" and the "top 10 relevant data points re: our STEM efforts").

**RESPONSE:** Admitted in part and denied in part. Girl Scouts denies that the STEM SCOUTS

program "launched" in 2015. *See* Response to paragraph 19, *supra.* Girl Scouts admits that it

became aware of the STEM SCOUTS pilot program in April 2015, Scher Dec., Exh. PPPPP at

GSUSA_00009144, but took no action against it because the program was so small, Ewing Dec.,

Exh. 108 (A. Archibald) at 84:13-85:5, Exh. 96 (L. Godfrey) at 202:3-19, and because Girl

Scouts is unaware of that program name for a limited number of youth causing any confusion

between Girl Scouts or its programs. Horowitz Dec., ¶ 19.

105. **GSUSA initiated no lawsuits against the BSA relating to its use of SCOUT-formative marks before it filed this lawsuit in November 2018.** Sterrett Decl., ¶ 17; Ramsey Decl., ¶ 14; Scher Decl., Ex. WWWWWW (Archibald Tr.) 86:9-91:8; *id.* Ex. XXXXXX (Horowitz Tr.) 120:7-123:22); *id.* Ex. QQQQQQ (Resps. to 1st RFA Nos. 22-34) (admitting that from 2004 – 2016, GSUSA did not communicate "any objection by GSUSA to the BSA's use of the marks SCOUT, SCOUTS and/or SCOUTING—either alone or with other non-gender-specific leading words—in connection with the BSA's offering of programs and services that included girls").

**RESPONSE:** Admitted, because Girl Scouts was and still is unaware of any confusion

attributable to the participation of girls in any of the "specialty" co-educational programs offered

by Boy Scouts over time. Horowitz Dec., ¶ 19. Such confusion only began when Boy Scouts

expanded its core programs to include girls and used the designations SCOUT, SCOUTS,

SCOUTING, SCOUTS BSA and SCOUT ME IN to do so. *See* ¶¶ 158, 185-, *infra*.

106. **GSUSA initiated no lawsuits against the BSA relating to its use of "Scout" without being preceded by "boy" when BSA's Sea Scouts program became co-ed in 1972, when Ventures launched as a co-ed program in 1998, or when STEM Scouts launched as a co-ed program in 2015.** Sterrett Decl., ¶ 17; Ramsey Decl., ¶ 14; Ex. WWWWWW (Archibald Tr.) 86:9-91:8; *id.* Ex. XXXXXX (Horowitz Tr.) 120:7-123:22; *id.* Ex. QQQQQQ (Resps. to 1st RFA Nos. 22-34).

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts denies that Boy Scouts operated a program called SEA SCOUTS in 1972, as the program was then called SEA EXPLORING. *See* Boy Scouts' paragraph 16, *supra*.  Girl Scouts also denies that the name of Boy Scouts VENTURING program is "Ventures."  Ramsey Dec., Exh. Z.  Girl Scouts also denies that the STEM SCOUTS program "launched" in 2015.  *See* Response to paragraph 19, *supra*.  The balance of this paragraph is admitted because Girl Scouts was and still is unaware of any confusion attributable to the participation of girls in any of the niche "specialty" co-educational programs offered by Boy Scouts over time to a small number of girls.  Horowitz Dec., ¶ 19. Such confusion only began when Boy Scouts expanded its core programs to include girls and used the designations SCOUT, SCOUTS, SCOUTING, SCOUTS BSA and SCOUT ME IN to do so.  *See* ¶¶ 158, 185-249, *infra*.

107.   **As of 2018, GSUSA had never previously instituted a legal proceeding against the BSA in connection with the BSA's use of "Scout"-formative terms in connection with its services for girls.** Ramsey Decl., ¶¶ 27-30 & Exs. NN-QQ (describing the BSA's economic investment in welcoming girls into Cub Scouts and Scouts BSA programs, and promoting Scout Me In and Scouts BSA brands); *see also* Sterrett Decl., ¶ 17; Scher Decl., Ex. WWWWWW (Archibald Tr.) 86:9-91:8; *id.* Ex. XXXXXX (Horowitz Tr.) 120:7-123:22; *id.* Ex. QQQQQQ (Resp. to 1st RFA Nos. 22-34).

**RESPONSE:**  Admitted, because Girl Scouts was and still is unaware of any confusion attributable to the participation of girls in any of the small "specialty" co-educational programs offered by Boy Scouts over time to a small number of girls.  Horowitz Dec., ¶ 19.  Such confusion only began when Boy Scouts expanded its core programs to include girls and used the designations SCOUT, SCOUTS, SCOUTING, SCOUTS BSA and SCOUT ME IN to do so.  *See* ¶¶ 158, 185-249, *infra*.

108.   **Following its many years of efforts directed to prospective and existing female members and adult volunteer [sic] under non-gender-specific SCOUT marks, the BSA spent significant sums marketing the expanded Cub Scouts and Scouts BSA programs.** Ramsey Decl., ¶ 29 & Exs. NN-QQ (documents reflecting expenses, including for: (1) adopting the name "Scouts BSA" and associated marketing costs for the expanded

programs; (2) creating handbooks and associated costs; (3) creating uniforms and related items, such as T-shirts, and associated costs; and (4) rebranding "Boy Scouts" items and associated costs. ).

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts denies that Boy Scouts made

"many years of efforts directed to prospective and existing female members under non-gender-

specific SCOUT marks" prior to 2017, as female membership in Boy Scouts' "specialty"

programs amounted to a small percentage of Boy Scouts' total membership as of the end of that

year.  *See* ¶¶ 156, 157, *infra*.  Girl Scouts admits that Boy Scouts "expanded" its CUB SCOUTS

program and the program now known as SCOUTS BSA after 2017 to include girls for the first

time in their history.  Ewing Dec., Exh. 63 (M. Surbaugh) at 163:24-164:25.  Girl Scouts also

admits that Boy Scouts may have expended marketing sums on those two programs greater than

the amounts spent in prior years, although the difference in such spending is not disclosed in the

Ramsey Declaration.  Boy Scouts chose to make that investment even though it knew for

decades that Girl Scouts had major concerns about the admission of girls to Boy Scouts' core

programs ***and*** that it objected to the use of ambiguous terms like SCOUTING in advertising and

communications materials where the source of those communications was not made clear.  *See*

¶¶ 149-153, *infra*.  Notwithstanding prior assurances that Boy Scouts would only use terms like

SCOUTING accompanied by gender-specific or other terms identifying the provenance of such

communications, Boy Scouts not only went ahead and did what it had previously promised it

would not do, it actively concealed from Girl Scouts what it was planning in 2017.  *See* ¶¶ 160-

174, *infra*.

     109.  **The BSA incurred significant costs running its co-ed Sea Scouts, STEM Scouts, Exploring and Venturing programs over the past several decades, and has invested in branding and goods with SCOUT-formative trademarks without preceding gender-specific term for these co-ed programs.** Ramsey Decl., ¶ 30.

**RESPONSE:**  Admitted, but such expenditures have no relevance to this proceeding in light of the fact that Girl Scouts is not seeking to enjoin the use of the SEA SCOUTS or STEM SCOUTS trademarks given the small size of those programs.  Girl Scouts was and still is unaware of any confusion attributable to the participation of girls in any of these programs offered by Boy Scouts over time.  Horowitz Dec., ¶ 19.

**O.** **GSUSA's Tortious Interference with Prospective Business Relations Claim**

110.  **GSUSA has identified no evidence of any specific sale or contract it lost as a result of purported interference by the BSA.** Scher Decl., Ex. LLLLLLL (Swanson Tr.) 176:6- 17 ("Q. Are you aware of any contractual relationship the Girl Scouts had with anyone that was terminated as a result of action by the Boy Scouts? A. I am not aware. Q. Are you aware of any contracts that the Girl Scouts were trying to sign with anyone that were not signed because of any action by the Boy Scouts? … A. I am not.")

**RESPONSE:**  Admitted in part and denied in part. Girl Scouts admits that it has not identified evidence of any specific "contract" it lost as a result of interference by Boy Scouts, but denies that it has not identified any specific "sale" it lost due to Boy Scouts' tortious interference, as the cited exhibit does not discuss sales.

Moreover, Girl Scouts has identified multiple instances where parents registered their daughters for Boy Scouts programs, mistakenly believing that they were actually registering for Girl Scouts. *See* Responses to paragraphs 55 and 65, *supra*, and ¶¶ 197, 201, 205, 216, 220, and 236, *infra*.  In addition, Boy Scouts' own surveys of new members who have joined CUB SCOUTS and SCOUTS BSA in 2018 and 2019 have disclosed additional instances of mistaken enrollment, in which parents indicated that they had enrolled their children into Boy Scouts programs under the mistaken belief that they were signing their children up for Girl Scouts programs.  *See* ¶¶ 246-49, *infra*.  Boy Scouts has also produced evidence, across seven different councils, of parents mistakenly emailing local Boy Scouts councils to inquire about signing up for Girl Scouts.  *See* ¶¶ 215, 231, 232, 234, 235, 237, 238, 241, and 242, *infra*.  In some cases,

Boy Scouts personnel responded back to the parents without ever correcting the confusion

manifested by the parents. *See* ¶¶ 234, 235, 237, 241, and 242, *infra*.

**111.   GSUSA has identified no evidence of any specific relationship it had that the BSA was specifically aware of and interfered with interfered with for the sole purpose of harming the plaintiff or by using unlawful means, resulting in the loss of a sale or customer relationship.**

**RESPONSE:**  Denied.  *See* Response to paragraph 110, *supra*.

**112.   The Tractor Supply store in Red Bluff identified by GSUSA as specific relationship with which it contended the BSA improperly interfered ultimately allowed Girl Scouts to sell cookies there.** Dkt. 89 (Am. Compl.) ¶¶ 143, 69; Scher Decl., Ex. AAAAAAA (Park Tr.) 54:22-25, 56:5-57:13, 58:4-59:2, 104:17-106:24, 171:20-172:17; *id.* Ex.QQQQQ; *id.* Ex. LLLLLLL (Swanson Tr.) 174:3-12.

**RESPONSE:**  Admitted that after a Boy Scouts leader misrepresented to the store clerk that Girl

Scouts no longer needed booth space because Boy Scouts was now serving both Boy Scouts and

Girl Scouts, the Girl Scout volunteer leader was able to correct this misinformation and clarify

with the store clerk that Girl Scouts had not, in fact, merged with Boy Scouts and still required

their own booth space.  Scher Dec., Exh. QQQQQ.

**113.   GSUSA based the allegation of tortious interference in Red Bluff on a statement that originated with what a Girl Scout Leader said she was told by a store clerk or manager about what he was supposedly told by a Boy Scout leader.** Scher Decl., Ex. AAAAAAA (Park Tr.) 54:22-25, 56:5-57:13, 58:4-59:2, 104:17-106:24, 171:20-172:17; *id.* Ex. QQQQQ.

**RESPONSE:**  Admitted that a Girl Scout service unit leader reported what the store clerk said

when he approached her asking for clarification regarding what the Boy Scouts leader had

misrepresented to him.  Scher Dec., Exh. QQQQQ.

**114.   GSUSA's 30(b)(6) witnesses on the alleged tortious interference at Red Bluff had no factual information other than what she read in an email conveying the circumstances.** Scher Decl., Ex. AAAAAAA (Park Tr.) 23:19-24:9, 54:22-25, 56:5-57:13, 58:4-59:2, 172:9-17; *id.* Ex. LLLLLLL (Swanson Tr.) 172:18-174:2.

**RESPONSE:**  Admitted. The factual circumstances regarding the Red Bluff incident were

reported to the 30(b)(6) witness via email.

115.   **GSUSA admitted it has no evidence suggesting the BSA encouraged or approved the alleged interference at Tractor Supply.** Scher Decl., Ex. MMMMMMM (Neubert Tr.) 266:1-269:22; *id.* Ex. GGGG at pp. 42-45 (GSUSA_00106537, GSUSA_00106536, GSUSA_00031698, GSUSA_00106467).

**RESPONSE:**  Denied. The cited exhibits do not support the contention that Girl Scouts has

admitted it has no evidence suggesting Boy Scouts encouraged or approved the alleged

interference at Tractor Supply, so Girl Scouts denies this paragraph.  Moreover, through Boy

Scouts' partnership with its local councils in the area of recruiting and marketing, as well as its

ownership of its intellectual property which, as used by Boy Scouts councils, has caused

prospective members to mistakenly register with Boy Scouts when they intended to register with

Girl Scouts, Boy Scouts has demonstrated its encouragement and approval of Boy Scout

councils' tortious interference. *See* Response to paragraph 6, *supra* and paragraphs 252-264,

*infra.*

116.   **GSUSA has not claimed any damages attributable to alleged tortious interference.** Scher Decl., Ex. RRRRRRR (Kindler Tr.) 281:10-14 (GSUSA supposed damages expert).

**RESPONSE:**  Denied.  While Girl Scouts has not quantified the damage that it has suffered

from Boy Scouts' tortious interference, Girl Scouts does claim that it was damaged by Boy

Scouts' tortious interference.  *See* Amended Compl. [Dkt. 87] (requesting relief of an award of

damages in an amount sufficient to compensate it for harm caused by Defendant's acts, which

include tortious interference with prospective economic advantage).  Girl Scouts also denies the

description of Lauren Kindler as Girl Scouts' "supposed damages expert." Ms. Kindler, is, in

fact, Girl Scouts' damages expert.

117.   **GSUSA has not identified a trend correlation between the BSA welcoming girls into Cub Scouts and Boy Scouts and GSUSA membership loss.** Scher Decl., Ex. RRRRR at -356 (GSUSA's "Marketplace Position Board Task Force" presentation dated Oct. 30, 2018: "No trend correlation between BSA impact and GS membership."); *id.* Ex. CCCC; Ex. LLLLLLL (Swanson Tr.) 155:18-156:19 (admitting no provable trend correlation between BSA activity and GSUSA membership).

**RESPONSE:** Admitted that as of October 2018, the time period at issue in Scher Dec., Exhs. RRRRR and LLLLLLL, Girl Scouts was unable to correlate every Girl Scout local council reporting high Boy Scout recruiting activity with membership losses in every such council, but further states that this conclusion was only an estimate based on reports received from councils in their particular regions. *See* the accompanying Declaration of Susan Swanson ("Swanson Dec."), ¶ 37.  Since filing the complaint in this action on November 6, 2018, Girl Scouts has not quantified a correlation between Girl Scout local councils reporting high Boy Scout recruiting activity with membership losses in those councils, nor is it aware of any reliable method of determining such a correlation through information that it can readily obtain.  Girl Scouts also denies that Scher Declaration, Exh. CCCC supports or even discusses any membership trend correlation, or lack thereof.  Moreover there have been numerous documented instances of prospective Girl Scout members mistakenly registering for Boy Scouts when they intended to register for Girl Scouts. *See* Responses to paragraphs 55, 65 and 110, *supra*, and paragraphs 246-49, *infra.*

P.     **GSUSA's Damages Claims**

118.

**RESPONSE:**

███████████████████████████████████████

████████████████████████

119.   **Lynn Godfrey, GSUSA's 30(b)(6) designee on GSUSA's marketing, advertising, and promotion of GSUSA's programs and services for girls, testified that GSUSA did not design any ads to correct any statements made in BSA advertising, or even mentioned BSA.** Scher Decl., Ex. OOOOOOO (Godfrey Tr.) 273:5-15 ("We weren't focused on correcting statements."); 45:18-21 ("Q. Did any of Girl Scouts advertising in 2018 mention Boy Scouts? A. Coming from GSUSA? No, not that I recall.").

**RESPONSE:**   Admitted.  However, the quoted deposition testimony cited in this paragraph

omits other testimony on the very same pages clarifying that the advertising undertaken by Girl

Scouts was intended to differentiate Girl Scouts from Boy Scouts in order to dispel confusion in

the marketplace that Boy Scouts had caused.  *See* Scher Dec., Exh. OOOOOOO (L. Godfrey) at

45:12-17 ("Q.  Why not?  A.  The concern and the reason why we increased significantly our

advertising was to make sure that Girl Scouts was clearly differentiated from the Boy Scouts

program for girls."); 273:8-15 ("We have focused in 2018 on elevating and making the case for

joining Girl Scouts to make sure that the advertising clearly differentiated Girl Scouts in terms of

the look and feel and graphics from Boy Scouts.").  Girl Scouts determined that it had to

undertake advertising to differentiate itself from Boy Scouts to combat the confusion it was

seeing in the marketplace.  Ewing Dec., Exh. 107 (S. Swanson) at 27:12-28:5; 51:3-17 (Q.  Did

any of that advertising mention Boy Scouts of America?  A.  No.  And that was purposeful . . .

Our position was we were not going to spend our dollars on helping to further confuse the

market.  And we were very purposeful to spend our dollars on promoting and clarifying Girl

Scouts, our brand, and what we offer for girls.").

120.   **Ms. Godfrey admitted that none of the advertising related to the damages GSUSA seeks mentioned the BSA.** Scher Decl., Ex. OOOOOOO (Godfrey Tr.) 45:18-21 ("Q. Did any of Girl Scouts advertising in 2018 mention Boy Scouts? A. Coming from GSUSA? No, not that I recall.").

**RESPONSE:**  Admitted.  However, the quoted deposition testimony cited in this paragraph omits other testimony on the very same pages clarifying that the advertising undertaken by Girl Scouts was intended to differentiate Girl Scouts from Boy Scouts in order to dispel confusion in the marketplace that Boy Scouts had caused.  *See* Response to paragraph 119, *supra.*

121. ██████████████████████████████████████
████████████████████████████

**RESPONSE:** ████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████
████████████████

122. ██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████

**RESPONSE:**

███████████████████████████████████████████

█████████████████████████

123. ███████████████████████████████████████

████████████████████████████████

**RESPONSE:** ██████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████

███████████████████

124.   **GSUSA admits it approved the expenditures in question in April 2018 –** *before* **the BSA even announced the "Scout Me In" advertising campaign and** *before* **the BSA announced it was changing name of its Boy Scouts program to Scouts BSA.** Ramsey Decl., ¶ 19 ("Scout Me In" announcement in May 2018); Scher Decl., Ex. LLLLLLL (Swanson Tr.) 73:15-74:19 (GSUSA budget approved in April 2018) ("Q. When was the special ask of the board made to approve the budget? A. It was made in April [of 2018]. Q. Was it approved at that time? A. Yes, it was. … Q. There was not a request for an increase in the budget that was approved in April. Is that right? A. That's correct, as far as I know."); *id.* Ex. XXXXXX (Horowitz Tr.) (Horowitz Tr.) 207:21-24 ("Q. Okay. Did the spend – spend was all within the budget the board approved in April? A. Oh, yes.").

**RESPONSE:**  Admitted in part and denied in part.  Girl Scouts admits that the larger budget from which the funds that were later used to pay for the expenses that Girl Scouts now claims as corrective advertising damages was approved in April 2018.  Swanson Dec., ¶ 3.   That budget approval pre-dated any specific advertising activities, however, *id.* ¶ 4, so Girl Scouts denies Boy Scouts' characterization of the "expenditures in question" as the specific advertising and related activities for which Girl Scouts now seeks reimbursement.  More to the point, however, by April 2018, Girl Scouts already was experiencing confusion in the marketplace based on the recruiting of girls that took place after the October 2017 announcement that Boy Scouts would begin to admit girls into its core programs, approximately one month before the announcement of the SCOUT ME IN campaign and the new SCOUTS BSA program name.  Swanson Dec., ¶ 5; Ewing Dec., Exh. 108 (A. Archibald) at 34:11-36:23.

**STATEMENT OF ADDITIONAL FACTS AS TO WHICH GIRL SCOUTS
<u>CONTENDS THERE IS A GENUINE ISSUE TO BE TRIED</u>**

Pursuant to Local Civil Rule 56.1(b), Girl Scouts hereby submits the following Statement

of Additional Material Facts as to which it contends there is a genuine issue to be tried.

**A.**     <u>Girl Scouts and Its Founding Mission</u>

125.     Girl Scouts is a non-profit organization headquartered in New York, New York

whose mission is to provide leadership and development services to girls located throughout the

United States.  Girl Scouts promotes, encourages and inspires girls to develop courage,

confidence and character through a variety of activities and practical skills programs.  Girl

Scouts currently has about two million members, more than 700,000 adult volunteers, and more

than 50 million alumnae.  Throughout its long history, many millions of American women have

participated in Girl Scouts' programs.  Horowitz Dec., ¶¶ 2-4.

126.     The Girl Scouts Movement began in 1912 in Savannah, Georgia and was founded

by Juliette Gordon Low.  *Id.*, ¶ 3.  Mrs. Low was a friend of Sir Robert Baden-Powell, an

English general who founded the Boy Scouts movement in 1907.  Ewing Dec., Exh. 69 at

GSUSA_00095328.  Beginning with a group of eighteen girls in Savannah, the Movement grew

quickly and phenomenally, achieving a membership of approximately 275,000 within the decade

of its founding.  *Id.* at GSUSA_00095329.

127.     After initially adopting the name "Girl Guides" for the members of her two

original troops, Mrs. Low was persuaded by the girls themselves to adopt the trademark GIRL

SCOUTS midway through the program's first year.  *Id.*  The GIRL SCOUTS trademark has been

used continuously by Girl Scouts for more than a century since its founding.  Horowitz Dec., ¶ 8.

128.     Like the Boy Scouts program, the Girl Scouts program as originally conceived

involved outdoor activities like camping, hiking, biking and swimming, as well as citizenship

and community involvement activities.  Ewing Dec., Exh. 69 at GSUSA_00095329-30.  Like

early Boy Scouts, early Girl Scouts received badges once they had mastered various skills, but

the Girl Scouts program encompassed some skills that the Boy Scouts program did not.  *Id.*

Then, as now, the Girl Scout Movement has been organized and run by women and focuses on

empowering girls to attain their full potential, develop a strong sense of self, and learn positive

values that will aid them throughout their lives.  Horowitz Dec., ¶ 3.

129.    As the Girl Scouts Movement grew in its earliest years, conflicts arose with Boy

Scouts over the use of the common term SCOUTS they both shared.  Ewing Dec., Exh. 69 at

GSUSA_00095331.  The Chief Boy Scout Executive of the time, James E. West, believed that

"scouting was only for men and boys," and that Girl Scouts "'trivialized' and 'sissified' the name

of 'scout.'"  Ewing Dec., Exh. 69 at GSUSA_00095331 (characterizing West as believing that

"the Girl Scout uniform was 'mannish,' the program unsuited to training young ladies, and that,

in general, Girl Scout women were simply 'aping men'").

130.    Over a period of several years, Boy Scouts made efforts to persuade Girl Scouts

to change its name or to merge with its sister organization, the Camp Fire Girls, even going so

far as to raise the possibility of legal action against Girl Scouts unless its use of SCOUT ceased.

Ewing Dec., Exh. 69 at GSUSA_00095331-33.  However, Girl Scouts refused to abandon its

rights in the term SCOUT.  *Id.*  In the words of an early Girl Scout leader in 1918:

> Now that full citizenship has been extended to the women of this state, it seems to
> me essential that as girls they should learn that their responsibility for their
> country is equally as great as, if somewhat different from, that of the boys, and I
> believe there is no better way for them to learn to become good citizens than to
> learn to become the best kind of Boy Scouts and Girl Scouts.
>
> The mere fact that the name is similar brings it home to the boys and the girls that
> they are fitting themselves for the same ideal of service.

> The name "Scout" expresses in a peculiarly adequate way the significance of the larger opportunities which are coming to us, and typifies the vigorous articulation in civic affairs which we anticipate for the coming generation of American women.

*Id.* at GSUSA_00095331-32.  Eventually, Boy Scouts ceased its objections to Girl Scouts' use of the term SCOUT as part of its name.  *Id.* at GSUSA_00095333; *see also* Ewing Dec., Exh. 145 at page 3 (May 15, 1916 letter from West stating that "We have not been particularly pleased with the idea of a movement for girls making use of the word 'scout' but I presume there is no way we can prevent this even if we were right in our point of view, which I am not sure is the case.").

131.    By 1936, Boy Scouts had acknowledged Girl Scouts' rights in the term SCOUT:

> In all such matters with which we have had to deal our contention has been that in every day use the most common significance of the word 'Scout' today is in connection with the Movement for youth known by that name.  It seems obvious that where use in connection with projects or articles of merchandise most commonly related to boys, "Scout" would thus be construed as the equivalent of "Boy Scout", and with this contention the authorities have appeared to agree.  ***It would seem likewise, where the word 'Scout' was employed for a purpose distinctively related to girls and girls wear, the obvious connotation would be to "Girl Scouts".***

Harrington Dec., Exh. 17 at GSUSA_00112737 (emphasis added).

132.    Boy Scouts received a Congressional Charter in 1916 that was amended in 1998.  Boy Scouts' Charter states, *inter alia*, that its purposes "are to promote, through organization, and cooperation with other agencies, the ability of ***boys*** to do things for themselves and others, to train them in scoutcraft, and to teach them patriotism, courage, self-reliance, and kindred virtues, using the methods that were in common use by boy scouts on June 15, 1916."  *See* 36 U.S.C. § 30902 (emphasis added).  Boy Scouts' Charter further states that "[t]he corporation has the exclusive right to use emblems, badges, descriptive or designating marks, and words or phrases the corporation adopts.  This section does not affect any vested rights."  *See* 36 U.S.C. § 30905.

133.    Likewise, Girl Scouts received a Congressional Charter in 1950 that was amended

in 1998.  Girl Scouts' Charter states, *inter alia*, that its purposes are:

> (1) to promote the qualities of truth, loyalty, helpfulness, friendliness, courtesy,
> purity, kindness, obedience, cheerfulness, thriftiness, and kindred virtues among
> ***girls***, as a preparation for their responsibilities in the home and for service to the
> community;
>
> (2) to direct and coordinate the Girl Scout movement in the United States and
> territories and possessions of the United States; and
>
> (3) to fix and maintain standards for the movement that will inspire the rising
> generation with the highest ideals of character, patriotism, conduct, and
> attainment.

*See* 36 U.S.C. § 80302 (emphasis added).  Girl Scouts' Charter further states that "[t]he

corporation has the exclusive right to use all emblems and badges, descriptive or designating

marks, and words or phrases the corporation adopts, including the badge of the Girl Scouts,

Incorporated, referred to in the Act of August 12, 1937 (ch. 590, 50 Stat. 623), and to authorize

their use, during the life of the corporation, in connection with the manufacture, advertisement,

and sale of equipment and merchandise. This section does not affect any vested rights."  *See* 36

U.S.C. § 80305.

134.    In a filing made with the Trademark Trial and Appeal Board (the "TTAB") of the

PTO on March 27, 2006, Boy Scouts stated that:

> When Congress passed the statute relating to the Girl Scouts, it explicitly
> acknowledged that the Girl Scouts and Boy Scouts were receiving similar
> recognition for their respective services.  House of Representatives Report No. 266
> to H.R. 3020, 82nd Congress, 1st Session (March 14, 1951).  Congress granted
> exclusive rights to BSA for its marks in relation to its services, namely "membership
> in an organization for boys to promote moral, physical and spiritual development."
> Meanwhile, the Girl Scouts enjoyed exclusive rights in its marks in connection with
> its services, which are distinguishable, and mutually exclusive, in that they are for
> female youth.

Ewing Dec., Exh. 281 at pg. 19 (Boy Scouts of America's Supplemental Memorandum of Law in Opposition to Gregory J. Wrenn's Motion for Summary Judgment, filed in *Boy Scouts of America v. Gregory J. Wrenn*, TTAB Opp. No. 91/157,313) (emphasis in original).  *See also id.,* Exh. 145 at GSUSA_00132111 ("the Boy Scouts controls use of the marks [SCOUT and SCOUTING] in connection with development programs for boys, while Girl Scouts controls use of the marks in connection with development programs for girls. Their joint use of the marks has been expressly recognized by Congress.").

## B.    The Fame and Recognition of the GIRL SCOUTS Trademark

135.    The GIRL SCOUTS trademark is strong, famous and widely recognized by the American public.  *See* Ewing Dec., Exh. 147 at GSUSA_00124870-872 (Interbrand market research study showing that Girl Scouts "holds a strong leadership position when it comes to awareness and is frequently top of mind with its audiences"); Exh. 96 (L. Godfrey) at 16:2-23, 66:4-67:23, 75:13-25, 169:3-18, 173:18-175:18 (discussing Interbrand study and results); Exh. 148 at GSUSA_00188607 (ranking Girl Scouts as No. 10 in the Enso 2018 World Value Index Brand Rankings).  Indeed, Boy Scouts' survey expert, Dr. Ravi Dhar, has conceded that GIRL SCOUTS is a famous, strong brand from a marketing perspective.  Ewing Dec., Exh. 131 (R. Dhar) at 61:21-25.

136.    Girl Scouts has been recognized and honored by Presidents throughout its history, including by President George H.W. Bush on March 10, 1992.  Horowitz Dec., ¶ 3; Ewing Dec., Exh. 149 (1992 Presidential proclamation stating that "By affirming the importance of serving others and by upholding the traditional moral and spiritual values on which this great Republic rests, the Girl Scouts of the U.S.A. has become known as an 'All American' organization.").  Every First Lady from Edith Wilson to Michelle Obama has acted as Honorary National

President of the Girl Scouts Movement.  Horowitz Dec., ¶ 3.  In 2012, President Barack Obama awarded the Presidential Medal of Freedom to Juliette Gordon Low posthumously for her work in founding Girl Scouts.  *Id.* Prominent Girl Scouts alumnae include Hillary Clinton, Madeline Albright, Condoleezza Rice, Barbara Walters, Venus and Serena Williams, and many others.  *Id.* ¶ 2.

137.    Among the best known aspects of Girl Scouts offerings is its cookie program, an important fundraising tool for the Girl Scouts Movement that also teaches girls entrepreneurial skills like goal setting, decision making, money management, people skills, and business ethics. Horowitz Dec., ¶ 7.  The trademark GIRL SCOUT COOKIES has been used continuously by Girl Scouts since 1936.  *Id.*

138.    The PTO has recognized the congressional protections afforded to Girl Scouts that grant it the exclusive right to use and register the GIRL SCOUTS trademark in every class of goods and services recognized by the PTO, under Serial No. 89/000,078.  Ewing Dec., Exh. 150.

139.    To further protect its famous brand, and to place the public on notice of its trademark rights, Girl Scouts has secured and owns multiple trademark registrations for its GIRL SCOUTS and GIRL SCOUTS & Profile Design marks, including:



- **Girl Scouts**, incontestable U.S. Trademark Registration No. 1,318,643, issued February 5, 1985, in connection with "educational services-namely, conducting programs and activities for girls and young women to promote social, physical and intellectual growth and development" in International Class 41;



- **Girl Scouts**, incontestable U.S. Trademark Registration No. 1,142,655, issued December 9, 1980, in connection with "t-shirts" in International Class 25;



- **Girl Scouts**, incontestable U.S. Trademark Registration No. 1,142,666, issued December 9, 1980, in connection with "embroidered patch" in International Class 26;

- **CAMPUS GIRL SCOUTS**, incontestable U.S. Trademark Registration No. 0,905,264, issued March 25, 1968, in connection with "organizing and maintaining student groups in colleges and universities to develop leadership and fellowship through continued participation in such groups and through service within the college community" in Class 42;

- **DAISY GIRL SCOUT**, incontestable U.S. Trademark Registration No. 1,480,077, issued March 8, 1988, in connection with "educational services, namely, conducting programs and activities for girls and young women to promote social, physical and intellectual growth and development" in Class 41;

- **GIRL SCOUT COOKIE SALE**, incontestable U.S. Trademark Registration No. 1,816,138, issued January 11, 1994 in connection with "charitable fundraising services featuring the sale of cookies" in Class 36;

- **GIRL SCOUT COOKIES**, incontestable U.S. Trademark Registration No. 964,309, issued July 17, 1973 in connection with "cookies" in Class 30;

- **GIRL SCOUTS**, incontestable U.S. Trademark Registration No. 1,816,847, issued January 18, 1994, in connection with "stationery, note pads, book marks, stickers, pens, pencils and posters" in Class 16 and "sweaters, shirts, blouses, tee-shirts, ties, shorts, tights, socks, sweatshirts, sweatpants, scarves, hats, headbands, sweatbands and visors in Class 25;

- **GIRL SCOUT GOLD AWARD**, incontestable U.S. Trademark Registration No. 2,094,328, issued September 9, 1997, in connection with "jewelry" in Class 14, "paper goods in the nature of printed invitations, folders and certificate of merit and distinction" in Class 16, "picture frames and an award composed of a glass disc mounted on a wood base with an engraved brass plaque" in Class 20, "mugs" in Class 21, and "educational and entertainment services, namely, providing recognition to individuals for the purpose of outstanding service, achievement and quality in the field of scouting" in Class 41;

- **girl scouts**, incontestable U.S. Trademark Registration No. 4,085,279, issued January 10, 2012, in connection with "tote bags" in Class 18, "clothing, namely, shirts, tee-shirts, and sweatshirts" in Class 25, and "educational services, namely, conducting programs and activities for girls to promote social, physical and intellectual growth and development" in Class 41;

- **girl scouts**, U.S. Trademark Registration No. 4,276,193, issued January 15, 2013, in connection with "nut products, namely, candied nuts, flavored nuts and trail mixes consisting primarily of processed nuts" in Class 29 and "cookies, chocolate candies and chocolate covered nuts" in Class 30;

- **gogold** Girl Scout Gold Award, U.S. Trademark Registration No. 4,481,906, issued February 11, 2014, in connection with "providing recognition and incentives by way of awards to demonstrate outstanding service, achievement and quality in the field of scouting" in Class 41;

- **GIRL SCOUT COOKIE PROGRAM**, U.S. Trademark Registration No. 4,558,536, issued July 1, 2014, in connection with "educational services, namely, conducting cookie-related programs and activities for girls to promote entrepreneurial skills, business management, and intellectual growth and development" in Class 41;

- **girl scouts**, U.S. Trademark Registration No. 4,200,117, issued August 28, 2012, in connection with "stationery, namely, pens and pencils" in Class 16;

- **GIRL SCOUTS**, U.S. Trademark Registration No. 4,727,381, issued April 28, 2015, in connection with "lip balm; lip gloss" in Class 3; and

- **GIRL SCOUT S'MORES**, U.S. Trademark Registration No. 5,336,893, issued November 14, 2017, in connection with "cookies" in Class 30.

Ewing Dec., Exh. 151.

140.  For many years, Girl Scouts has licensed its valuable GIRL SCOUTS trademarks

to third parties for use in connection with a wide array of goods, including apparel, accessories

like backpacks and tote bags, jewelry, coffee, earbuds, beverage containers and a wide range of

other products.  Horowitz Dec., ¶ 8.

## C.   Girl Scouts' Rights in the Terms SCOUT, SCOUTS and SCOUTING
for Use in Connection with Girls' Leadership and Development Services

141.   Over many decades, the terms SCOUT, SCOUTS and SCOUTING, not preceded

or accompanied by the word "Girl" or another gender-specific modifier, have become associated

with Girl Scouts and its youth leadership and development programs for girls, as evidenced by:

a.   Dictionary definitions of the words "Scout" and "Scouting" that demonstrate
the dual association of those words with both Boy Scouts and Girl Scouts.
*See, e.g.*, Ewing Dec., Exh. 152 (Dep. Ex. 49) at GSUSA_00113890 (*Pocket
Oxford American Dictionary*, pub. 2008, Scout: "a member of the Boy
Scouts or Girl Scouts, organizations that aim to develop character through
outdoor and other activities"), GSUSA_00113772 (*American Heritage
Dictionary*, 2019 online, Scouting: "The activities of the Boy Scouts or Girl
Scouts"); *see also* Ewing Dec., Exh. 75 at GSUSA_00189223 (April 26,
1983 office action from PTO issued to Boy Scouts in connection with
SCOUT SHOP trademark application: "The Random House College
Dictionary defines 'SCOUT' as follows 'A Boy Scout or a Girl Scout.'
Thus, the Dictionary tells us that the terms 'Scout,' 'Boy Scout,' and 'Girl
Scout' are legal equivalents.").

b.   News articles in which the words SCOUT, SCOUTS and/or SCOUTING
have been used to refer to Girl Scouts and/or members of the Girl Scout
movement.  *See* Ewing Dec. Exh. 153 at GSUSA_00000322-349 (collection
of press reports using the terms SCOUT, SCOUTS or SCOUTING to refer to
GIRL SCOUTS, *e.g.,* "A Man Saw Shivering, Cookie-Selling Scouts.  To
Warm Them Up, He Bought Them Out for $500"; "Scout Provides Comfort
to Foster Care Children"; "Scouting in Their Mosque Scout Troops Learn for
Each Other"); *see also* Ewing Dec. Exh. 69 ("Fundamental to scouting was a
love of nature and outdoor physical activity which was dedicated to raising
strong, healthy American women."); Ewing Dec., Exh. 149 (1992
Presidential Proclamation stating that "When she brought scouting to the
girls of America 80 years ago, Juliette Gordon Low could not have
envisioned the immense popularity and stature it enjoys today.").

c.   Deposition testimony from multiple employees of Girl Scouts councils in
different parts of the United States confirming that both Girl Scouts
employees, volunteers and members of the public regularly use SCOUT,
SCOUTS and/or SCOUTING to refer to Girl Scouts and its programs.
Ewing Dec., Exh. 154 (A. Kanouse) at 5:8-12, 6:6-15, 108:7-24; Exh. 112

(W. Parker) at 6:14-21, 100:5-24; Exh. 155 (T. Helmuth) at 64:19-65:9; Exh. 156 (Cy. Davis) at 6:14-7:2, 87:3-9; Exh. 123 (K. O'Brien) at 8:14-9:1, 121:2-122:5; Exh. 157 (M. Trombley) at 8:4-11, 154:15-155:20; Exh. 113 (M. Servian) at 7:4-21, 115:5-24.

d.   Third-party organizations like sports teams and zoos have hosted SCOUT NIGHTS to refer to members of both Girl Scouts and Boy Scouts.  Ewing Dec., Exh. 158 (Dep. Exh. 270); *see also id.*, Exh. 159 (Dep. Exh. 214), Exh. 85 (P. Sterrett) at 101:18-106:17 (referring to SCOUTING FOR FOOD and SCOUT NIGHT events including both Girl Scouts and Boy Scouts).  In addition, the U.S. Postal Service, in 2012, issued a stamp to honor Girl Scouts' Centennial bearing the phrase "CELEBRATE SCOUTING."  Ewing Dec., Exh. 160 at GSUSA_00060946.

e.   References in documents produced by Boy Scouts that use the term SCOUTING to refer to both Boy Scouts and Girl Scouts.  *See* Ewing Dec., Exh. 161 (GSUSA Dep. Exh. 72) at BSA00053719 (referring to focus group participants with "varying knowledge and experience with scouting (GSUSA or the BSA)" and at BSA00053746 (stating that "Perceptions of Scouting Vary by Market" in reference to both Boy Scouts and Girl Scouts); Exh. 133 (Dep. Exh. 87) at BSA00089701-720, 89748, 89796 (reporting on "Participation in Scouting" and "Views of Scouting" in reference to both Boy Scouts and Girl Scouts); Exh. 162 (Dep. Exh. 100) at pg. 5 (stating that both Boy Scouts and Girl Scouts "delve under the same umbrella of Scouting"); Exh. 67 at 12:17-17:8, 210:11-214:3 (M. Ramsey testimony concerning Dep. Exh. 72); Exh. 83 at 12:24-18:25, 75:9-77:23, 248:12-249:21, 111:7-113:7, 254:3-255:13 (P. Wellen testimony concerning Dep. Exhs. 87 and 100).

f.   Admissions by Boy Scouts that Girl Scouts owns rights in the terms SCOUT, SCOUTS and/or SCOUTING for girls' leadership and development services:

   i. August 28, 2003 letter from Boy Scouts Chief Scout Executive to Girl Scouts Interim CEO stating "As you know, our organizations heretofore have enjoyed exclusive use of the word 'scouts' in connection with youth organizations pursuant to our respective federal charters.," Ewing Dec., Exh. 163 at GSUSA_00085173;

   ii. Excerpts from January 19, 2004 Memorandum of Law in Opposition to Applicant's Motion for Judgment on the Pleadings filed by Boy Scouts on January 19, 2004, *Boy Scouts of America v. Gregory J. Wrenn*, TTAB Opp. No.: 91/157313, stating, *inter alia*, that "The Terms 'SCOUTS' and 'SCOUTING' Do Not Connote Youth Development Programs in General, But Only the Programs Of the Boy Scouts and Girl Scouts in Particular." *Id.*, Exh. 146 at GSUSA_00132084, GSUSA_00132101-132103, GSUSA_00132109-132114.

iii. *Id.*, stating that "Various trademark examining attorneys through the years felt that a disclaimer was necessary so as not to exclude Girl Scouts from the right to use the terms "SCOUTS" and "SCOUTING." . . . The Boy Scouts understood and accommodated the need to respect the rights of Girl Scouts."

g.    Girl Scouts' enforcement efforts against third parties using, without Girl Scouts' authorization, designations containing the terms SCOUT, SCOUTS and/or SCOUTING without gender-specific or source identifying words. *See* Horowitz Dec., Exh. 46 (collecting correspondence sent by Girl Scouts to third parties using trademarks containing the terms SCOUT or SCOUTS); *see also Girl Scouts of the United States of America v. Alfred Sternjakob*, 212 U.S.P.Q. 388 (T.T.A.B. 1981) (sustaining opposition filed by Girl Scouts to registration of SCOUT and Design trademark for certain goods).

h.    A survey conducted by Dr. Eugene P. Ericksen for purposes of this litigation showing that the percentage of respondents who associate the term SCOUTS, standing alone, with Girl Scouts in some way as used with group leadership and development programs offered **only** to young females, is 36.5% to 48.9%.  *See* Declaration of Eugene Ericksen ("Ericksen Dec."), Exh. 2 at pp. 1-10, Tables 1-10.

142.    In addition, for much of its early history, Girl Scouts used the trademarks SCOUT, SCOUTS and SCOUTING, not preceded or accompanied by the word "Girl" or another gender-specific modifier, to refer to itself, its members and the Girl Scout Movement.  *See* Ewing Dec., Exh. 164 (excerpts from 1987 publication *Girl Scout Collector's Guide* referencing: (i) 1920s-era badges entitled "Scout Entertainer," "Scout Aide," "Scout Naturalist" and "Scout Neighbor" at GSUSA_00189149; (ii) use of "Junior Scout" as a synonym in the 1920s for "Brownie," at GSUSA_00189150; (iii) the use of "Senior Scout" and "Citizen Scout" for older girls in the 1920s, at GSUSA_00189152; (iv) the adoption of "Brownie Scout" to refer to "Brownies" in the 1930s and 1940s, at GSUSA_00189155; (v) the use of "Wing Scouts" to refer to an aviation-centered program offered until 1963, at GSUSA_00189159; (vi) the creation of publications such as *Scouting for Girls*, the *Mariner Scout Manual* and the *Wing Scout* Manual, at GSUSA_00189164 -66; (vii) publication of *The Rally*, described at times as "A Scouting

Magazine for the American Girl," at GSUSA_00189167-68; and (viii) dissemination of posters with titles like "Scouting Means Service" and "Scouting Makes for Health" during World War I, at GSUSA_00189171. *See also* ¶ 22-25, *supra.*

143.     Likewise, PTO records show that Girl Scouts owned a U.S. trademark registration for trademark SCOUT COOKIES that was obtained in 1974 and that lapsed in 2005, covering cookies.  Ewing Dec., Exh. 94; Harrington Dec., Exh. 14 at GSUSA_00132170-72.  Girl Scouts resumed using that trademark with cookies in 2019 and currently owns U.S. Reg. No. 5,921,736 for SCOUT COOKIES.  Ewing Dec., Exh. 95; Horowitz Dec., ¶ 7.

144.     Internally, Girl Scouts uses the term "Scouts' Own" interchangeably with "Girl Scouts' Own," to refer to the following:

> A Scouts' Own is a ceremony where Girl Scouts get together to share inspiration and celebration around a theme, like friendship, service, honor, or respect for the planet.  The Scouts' Own might take place indoors or outdoors, at a group meeting, at camp, or during any gathering with other Girl Scouts.  It's called a "Scouts' Own" because it's all yours – you choose a theme and decide how to share in the most meaningful way.

Horowitz Dec., ¶ 10, Exh. 43 (GSUSA_0001317-18) at pg. 19 (excerpt from *Girl Scout Junior Handbook*); Exh. 44 at GSUSA_00188842 -45; and Exh. 45 at GSUSA_00188848 (Girl Scouts' council publications using "Scouts' Own" in the same way).

145.     Various Girl Scouts councils also offer patches for sale through Girl Scouts that include SCOUT or SCOUTS unaccompanied by the word "Girl."  Horowitz Dec., Exh. 38 at GSUSA_00061381 (MELBOURNE SCOUT HOUSE), Exh. 39 at GSUSA_00061514 (SCOUTING OUR PAST), Exh. 40 at GSUSA_00061551-554 (SCOUTING), Exh. 41 GSUSA_00061594 (SCOUT THE VOTE).  Another Girl Scouts council markets a "Scout Mom" t-shirt in the same way.  *Id.*, Exh. 42 at GSUSA_00132049.

146.    Beginning by at least the mid-1970s, Boy Scouts and Girl Scouts had discussions about Boy Scouts' use of SCOUT, SCOUTS, SCOUTING and the trademark SCOUTING/USA. For example, Girl Scouts' Interim Executive Director sent a letter on March 9, 1976 to Boy Scouts' Chief Scout Executive to express concerns about the way Boy Scouts was making use of the word SCOUTING in connection with its fundraising and promotional activities that did not make clear that there are two SCOUTING organizations, stating that:

> The current and prospective usage by Boy Scouts of America of the term "Scouting" is giving us increasing concern and I need to write you about it.

> Girl Scouting and Boy Scouting are "Scouting."  "Scouting" is Boy Scouting and Girl Scouting.  You know what it is.  We know what it is.  What concerns us is the concept the general public has of the term.  If the way the term "Scouting" is used conveys the thought that it encompasses both organizations located in North Brunswick, N.J. [where Boy Scouts was then located], then we must protest such usage.

Harrington Dec., Exh. 18 at GSUSA_00125526.  This letter was forwarded by Girl Scouts' President to Boy Scouts' President asking for his assistance in achieving a "mutually satisfactory resolution." *Id.*, Exh. 19 at GSUSA_00060477.  One month later, Boy Scouts' President responded, stating that Boy Scouts' advertising using the term "Scouting" was developed several years before by "a volunteer advertising agency" and that Boy Scouts had "taken the necessary steps to correct copy whenever possible to identify us as Boy Scouts of America and hopefully this will resolve the problem.  We are sorry that this verbiage appeared the way it did and we hope you understand that we are moving to eliminate this conflict at the earliest possible time." *Id.*, Exh. 20 at GSUSA_00060479.

147.    Later in 1978, and for a number of years thereafter, Girl Scouts received repeated reassurances from Boy Scouts that, if it used terms like "Scouting" or

"Scouting/USA" in its communications, without a gender-specific modifier, it would take

steps to make sure that there was no confusion as to the source of those communications:

a. April 26, 1978: "all our nationally-produced printed materials and equipment prominently feature our continuing corporate and well-known name – Boy Scouts of America." Harrington Dec., Exh. 21 at GSUSA_00125504 (Letter from Boy Scouts' President to Girl Scouts President).

b. Excerpt from January 1979 issue of Boy Scouts *Professionally Speaking* Newsletter stating: "While 'Scouting' has been used as a generic term for the program of the Boy Scouts of America, the name of the national movement, 'Boy Scouts of America,' should be used in connection with the term. 'Cub Scouting,' 'Boy Scouting' and 'Exploring' may be used to identify a particular phase of the 'Scouting' program." Scher Dec., Exh. VVVV at GSUSA_00112428.

c. Excerpt From Nov. 1981 issue of Boy Scouts *Professionally Speaking* Newsletter stating: "Councils are reminded that the terms 'Scouts' and 'Scouting' are common to the Girl Scouts of the United States of America as well as the Boy Scouts. When 'Scouting' is used in advertising or publications it should not be used in any context that will imply that the term applies only to the Boy Scouts. Here are some typical examples of incorrect usage, followed by proper form:

Join Scouting today!          Join the Boy Scouts today!

Support Scouting              Support the Boy Scouts (of America)

Harrington Dec., Exh. 22 at GSUSA_00060517.

148.    For its part, Girl Scouts at this time began taking steps in its external

communications materials to distinguish itself from Boy Scouts where there were events or

projects with Boy Scouts, in order to avoid confusion and reinforce its commitment to girls. *See,*

*e.g.*, Scher Dec., Exhs. DDD (*Communications in Girl Scouting*, published in 1987) and EEE

(*Communications in Girl Scouting*, published in 2001) ("If projects involve Boy Scouts, there

should be a clear distinction between Girl Scouts and Boy Scouts. The terms 'Scout' or

'Scouting' should not be used in print or broadcast media without the word 'Girl' preceding

them.").

**D.     Boy Scouts' Limited Offering of Coeducational "Specialty" Programs
As of 1971 and Its Repeated Assurances to Girl Scouts Over Time
That Its Core Programs Would Not Be Expanded to Include Girls**

149.    In June 1968, after restricting membership in its programs to boys for more than

fifty years, Boy Scouts advised Girl Scouts that it was considering admitting girls ages 14 and

older as "associate members of Explorer special-interest posts." Harrington Dec., Exh. 23 at

GSUSA_00096103.  Boy Scouts contacted Girl Scouts to suggest that such expansion "can be

done in a large measure through cooperative ventures with the Girl Scouts of the U.S.A. and the

Camp Fire Girls."  *Id.* at GSUSA_00096102.

150.    After a series of meetings between Boy Scouts, Girl Scouts and the Camp Fire

Girls, the three organizations reached an agreement in principle through which girls of high

school age would join "special interest Explorer Posts," provided the girls were members of a

recognized girls' organization like Girl Scouts or the Camp Fire Girls.  Harrington Dec., Exh. 24

at GSUSA_00096114; *id.*, Exh. 25 at GSUSA_00096267.  Explorer Posts were described by Girl

Scouts in an October 1968 press release announcing this plan as being "sponsored by a

professional or business group [that] provides young people with an opportunity for vocational

exploration related to the interest of the sponsoring group, such as science, journalism or

aviation."  *Id.*, Exh. 24 at GSUSA_00096116.  The one-year trial program to which "the

Scouting organizations" and Camp Fire Girls had agreed was announced in November 1968,

with a start date of January 1969.  *Id.*, Exh. 25 at GSUSA_00096265-67.

151.    However, in February 1971, Boy Scouts announced girls would be allowed to

become full members of the Exploring program, and that it would "no longer be necessary for

them to belong to a girls' organization in order to join an Explorer unit."  Harrington Dec., Exh.

26 at GSUSA_00060349.  That same month, given Boy Scouts decision to upend the terms of

the parties' understanding, Girl Scouts responded that, in light of Boy Scouts "unilateral[]" action, Girl Scouts would no longer participate in a then-ongoing evaluation "of career special-interest co-ed activities." *Id.*, Exh. 28 at GSUSA_00112806.

152.    A template press release for local use prepared by Boy Scouts announcing the decision to expand membership in the Exploring program to girls 15 years and older without restriction included a "Note to Editors" stating that "Girls are not becoming Scouts . . . they will be Explorers.  Members of Explorer Posts are not Explorer 'Scouts', by the way.  Explorers bristle when referred to as 'Scouts'.  Exploring is a division of the Boy Scouts of America, which has two other programs . . . Cub Scouting and Boy Scouting." *Id.*, Exh. 29 at GSUSA_00125561-62; *see also* Ewing Dec., Exh. 165 (Dep. Exh. 83) at BSA_00058736 ("we don't call Explorers 'scouts'").

153.    Notwithstanding the admission of high-school-age girls to the Exploring program, Boy Scouts repeatedly assured Girl Scouts for many years that it would not accept girls younger than the age of 14 as members.

a.    October 25, 1982: "It gives us a feeling of great security that Mr. Joullian stated quite categorically that he doesn't want girl members in Boy Scouts of America, and that he agreed with us on the importance of strong male role models for boys and strong and equally positive female role models for girls.  The Explorers, of course, are an exception acknowledged." Harrington Dec., Exh. 27 at GSUSA_00112411 (Letter from Girl Scouts National Executive Director to Boy Scouts Chief Executive).  Edward C. Jouillian served as Boy Scouts' National President for two years, beginning in 1982 and ending in 1984.  Ewing Dec., Exh. 166 (Resp. to RFA No. 24).

b.    September 20, 1984: "As I leave the presidency of the Girl Scouts of the U.S.A., I cannot tell you how deeply reassured I am to hear you say that Boy Scouts of America will not recruit as members girls below the current high school Explorer age."  Harrington Dec., Exh. 30 at GSUSA_00096105 (Letter from Girl Scouts National President to Boy Scouts President).

c.      November 3, 1988: Noting that Boy Scouts officers have "commissioned a study of the pros and cons of becoming a co-ed organization as a part of our strategic planning.  This does not mean, nor can it be interpreted, that we are in favor of extending membership privileges to girls below our high school age requirement."  Harrington Dec., Exh. 31 at GSUSA_00112513 (Letter from Boy Scouts Chief Scout Executive to Girl Scouts National Executive Director).

d.      February 21, 1989: "Ben Love [Boy Scouts Chief Scout Executive] has given us his word that BSA will not expand its co-ed membership, and I feel we must trust him." Harrington Dec., Exh. 16 at GSUSA_00096107 (Memorandum from Girl Scouts National Executive Director to Girl Scouts Distribution List).

e.      February 24, 1989 and March 2, 1989: Letter from Boy Scouts Chief Executive to Girl Scouts National Executive Director advising of plan to write to "all of our Scout Executives identifying that the task force has nothing to do with becoming co-educational," followed by memorandum to "Scout Executives and Regional Directors" from Boy Scouts Chief Scout Executive advising that the referenced task force "has no direction in regard to the BSA becoming co-educational.  It is a strategic planning effort to identify who we are, what we are, and why the Boy Scouts of America should maintain its status quo."  Harrington Dec., Exhs. 32 and 33 at GSUSA_00112674 and GSUSA_00112530, respectively.

154.    ███████████████████████████████████████████



███████████████████████████████████████████████

███████████████████████████      Ewing Dec., Exh. 167 at BSA00074538, BSA00074553 ██████

███████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████

155.    In 1998, Boy Scouts restructured Exploring, creating a new-career-oriented program operated by Learning for Life, a separate non-profit corporation affiliated with Boy Scouts, under the trademark EXPLORING that is not a membership organization and whose participants do not subscribe to the Scout Oath and Law.  Since that time, the program known as

EXPLORING has not been treated by Boy Scouts as a SCOUTING program.  Ewing Dec. Exh.

168 at GSUSA_00188972, note 15 (Reply Brief for Petitioners filed in *Boy Scouts of America v.*

*Dale*, Case No. 99-699, 530 U.S. 640 (2000)).

156.    As of 2017, Boy Scouts offered three "specialty" programs that allowed girls to

join as members:

    a.    VENTURING, which Boy Scouts describes as a "youth-led and youth inspired" program open to males and females ages 14-21 in which participants join "crews" and participate in group activities determined by the crew in consultation with its advisors.  Crew members are not required to wear set uniforms but "have the opportunity to create their own standards for attire at their events and meetings, as they see fit."  Ewing Dec., Exh. 88 at GSUSA_00188938.

    b.    SEA SCOUTS, which Boy Scouts describes as a "youth led and adult mentored" program open to males and females ages 14-20 in which participants join "ships" established on oceans, bays, rivers and lakes. Ship members participate in "fun and exciting activities like sailing regattas, rowing races, and rendezvous" and "receive training in seamanship and leadership."  Ewing Dec., Exh. 87 at GSUSA_00188953-188956, GSUSA_00188959.

    c.    STEM SCOUTS, which Boy Scouts describes as a "pilot program of the Boy Scouts of America, currently available only in select pilot areas," that is open to girls and boys in grades 3 through 12 in which participants join "labs" and "work with Lab Managers and STEM professionals to do fun, hands-on experiments that teach STEM-related concepts and show how STEM knowledge is used both in everyday life and in the professional worlds."  Ewing Dec., Exh. 82 at GSUSA_00189465.

*See also* Ewing Dec., Exh. 169 (Dep. Exh. 117) at BSA00077390 (characterizing VENTURING,

SEA SCOUTS and STEM SCOUTS as "specialty" programs, unlike CUB SCOUTS and BOY

SCOUTS); Exh. 79 (E. Delimarkos) at 14:12-15:24, 131:4-134:12 (explaining distinctions

between "specialty" Boy Scouts programs and "core" or "entry" Boy Scouts programs).

157.    Boy Scouts' 2017 annual report states that there were, as of that time, 1,245,882

boys participating in CUB SCOUTS programs and 834,142 boys participating in BOY SCOUTS

and VARSITY SCOUTS programs, for a total of 2,080,024.  Ewing Dec., Exh. 170 at

BSA00000791.  In contrast, VENTURING and SEA SCOUTS had only 87,827 young men and

women participants as of that time, or approximately 4% of Boy Scouts' total membership.  *Id.*

When it comes to female participants in VENTURING, SEA SCOUTS and STEM SCOUTS

programs, the percentage is even smaller.  In 2017, the total number of female participants in

those three "specialty" programs was:

| | |
|---|---|
| VENTURING | 48,104 |
| SEA SCOUTS | 2,738 |
| STEM SCOUTS | 1,862 |
| | |
| Total: | 52,704 (approximately 2.5% of Boy Scouts 2017 membership) |

*Id.*; Ewing Dec., Exh. 84 (Dep. Exh. 227); Exh. 85 (P. Sterrett) at 282:1-283:23.[2]

158.    Girl Scouts is unaware of any confusion attributable to the participation of girls in

any of the "specialty" co-educational programs offered by Boy Scouts over time.  Horowitz

Dec., ¶ 19.  For that reason, Girl Scouts does not object, and has not objected, to the use of the

terms SCOUT, SCOUTS or SCOUTING in connection with those niche programs.  *Id.*

Likewise, Girl Scouts is unaware of any instances of confusion between it or its programs and

those of other competitive youth services organizations such as 4H or The YMCA, and even

those other youth services organizations whose membership is limited to girls, like Girls, Inc. or

American Heritage Girls.  *Id.*

159.    Over many years before 2017, Boy Scouts successfully defended multiple

lawsuits brought by girls seeking to gain admission to the CUB SCOUTS and BOY SCOUTS

---

[2] Even if EXPLORING were to be treated as a SCOUTING specialty program, then specialty
program membership (boys and girls combined) would have accounted for only approximately
8.8% of Boy Scouts total membership at the end of 2017, with girls in such programs accounting
for approximately 4.8% of total Boy Scouts membership. *Id.*

programs.  *See, e.g.*, *Yeaw v. Boy Scouts of America*, 55 Cal. App. 4th 607 (1997); *Mankes v. Boy Scouts of America*, *Inc.*, 137 F.R.D. 409, 411 (S.D. Fl. 1991); *Schwenk v. Boy Scouts of America*, 551 P.2d 465 (Or. 1976).  *See also* Ewing Dec., Exh. 171 at GSUSA_00188925 (2016 news article from *Southampton Patch* quoting Boy Scouts spokesperson providing reason for denying girl admission to the BOY SCOUTS program: "[T]he Boy Scouts of America was chartered by Congress in 1916 to serve boys and young men across the nation through the Cub Scouts and Boy Scouts programs, which are year-round programs for boys in the first grade through age 18. We have since developed alternative programs that are co-ed, such as Venturing, but to change the Cub or Boy Scouting programs would go outside the bounds of our charter."); Exh. 172 at pg. GSUSA_00189102 (Boy Scouts Petition for Writ of Certiorari filed in *Boy Scouts of America v. Dale*, Case No. 99-699, 530 U.S. 640 (2000), stating "Boy Scouting is an expressive organization with the purpose of instilling in boys and young men certain ideals of what it means to be a man. Youth membership is therefore confined to males….").

E.     **Boy Scouts' "Historic" 2017 Decision to Redirect Its Program
          Offerings by Expanding Its Core Programs to Include Girls,
          <u>and Its Effort to Conceal Its Expansion Plans From Girl Scouts</u>**

160.     As of early 2017, Boy Scouts had experienced membership declines over a number of years, dropping from 2,790,632 "Traditional Scouts" as of December 31, 2009 to 2,221,939 participants in CUB SCOUTS, BOY SCOUTS, VARSITY SCOUTS, VENTURING and SEA SCOUTS as of 2016, a decline of 568,693 members, or approximately 20% over seven years.  Ewing Dec., Exh. 173 at GSUSA_00189013; Exh. 174 at BSA00000576; Exh. 162 (Dep. Exh. 100) at pg. 8; Exh. 83 (P. Wellen) at 256:14-257:2.

161.     At the same time, as of early 2017, Boy Scouts had been made aware that the Church of Jesus Christ of Latter-Day Saints was planning to create its own youth program and

would likely end its historic relationship with Boy Scouts in the near future.  Ewing Dec., Exh.

63 (M. Surbaugh) at 143:3-145:13.  In fact, the Church announced in May 2017 that it would no

longer charter VENTURING crews as of January 1, 2018, *id.* at 145:14-18, and Boy Scouts and

the Church jointly announced in May 2018 that the Church would cease its role as a Boy Scouts

chartering organization entirely, effective December 31, 2019.  *Id.*, 146:18-147:11; Exh. 175

(Dep. Exh. 218).  Boy Scouts researchers estimated that only 15-25% of the hundreds of

thousands of Church youth then participating in Boy Scouts programs would remain with the

organization thereafter.  Ewing Dec., Exh. 83 (P. Wellen) at 142:19-144:13; Exh. 63 (M.

Surbaugh) at 143:13-17.

162.    At various points prior to 2017, Boy Scouts had considered internally whether to

admit girls as members to programs other than its "specialty" programs, but it had decided not to

do so.  Ewing Dec. Exh. 176 (Dep. Exh. 86) at BSA00082753; Exh. 83 (P. Wellen) at 68:18-

70:14, 73:1-19, 126:13-128:5.



Exh. 177 (Dep. Exh. 235) at BSA00080780

); Exh. 67 (M. Ramsey) at 199:8-200:1.

Ewing Dec., Exh. 178 (Dep. Exh. 119)

at BSA00077370; *see also id.*, Exh. 179 (Dep. Exh. 97) at BSA00041845-49 (

████████████████████████████████████████████████████████████████

██████████████████████████████████ ); Exh. 83 (P. Wellen) at 196:10-197:25, 219:3-226:13.

163.    From an early stage, Boy Scouts executives working on a potential family

program including girls expressly understood and stated that Girl Scouts "leaders will see this at

minimum as outright competition and more likely as an overt attack on the value of the Girl

Scout program," so they sought to avoid "tipping off the Girl Scouts" as their work progressed.

Ewing Dec., Exh. 180 (Dep. Exh. 237) at BSA0008111; Exh. 63 (M. Surbaugh) at 125:2-20,

127:17-129:3, 153:6-21, 156:13-157:9; Exh. 181 (Dep. Exh. 113); Exh. 178 (Dep. Exh. 119) at

BSA00077362 (██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████ ); Exh. 79 (E. Delimarkos) at 147:17-149:4, 156:8-18.

164.    As part of the planning for the family program then under discussion, Boy Scouts

formed a "GSUSA Retaliation Sub-Team" in April 2017 to consider how Girl Scouts would

react to the admission of girls into the BOY SCOUTS and CUB SCOUTS programs and to

formulate possible Boy Scouts' responses.  Ewing Dec., Exh. 182 (Dep. Exh. 98), Exh. 83 (P.

Wellen) at 231:17-233:14; Exh. 71 (D. Kinn) at 95:18-99:12. ██████████████████████

████████████████████████████████████████████

-    ████████████████████████████████████████████████
     ████████████████████████ Ewing Dec., Exh. 183 (Dep. Exh. 122) at
     BSA00167345.

-    ████████████████████████████████████████████████
     ████████████████████████ *Id.*

-    ████████████████████████████████████████████████
     *Id.*

- ███████████████████████████████████████████

███████████████████████████████

*Id.* at BSA00167347.

Ewing Dec., Exh. 184 (Dep. Exh. 101), Exh. 185 (Dep. Exh. 102); Exh. 83 (P. Wellen) at

259:17-261:4, 262:24-267:7, 267:15-269:3; Exh. 186 (Dep. 121); Exh. 79 (E. Delimarkos) at

127:4-8, 164:9-166:25, 171:7-174:4.

165.    As part of the planning for a possible family program, Boy Scouts' Research

Department also created a competitive analysis deck, most of which was specific to Girl Scouts.

Ewing Dec., Exh. 162 (Dep. Exh. 100); Exh. 83 (P. Wellen) at 248:1-250:25, 254:3-255:13.

166.    In April and May 2017, Boy Scouts commissioned a series of focus groups in

various cities to "[u]nderstand the target segment of families with girls ages 5 to 11 and their

involvement with youth organizations" and to "[r]eview the idea of a family program on an

unbranded basis."  Ewing Dec., Exh. 187 (Dep. Exh. 126) at BSA00076812; Exh. 79 (E.

Delimarkos) at 200:3-201:2, 205:14-209:9.  In addition, Boy Scouts also sought to "[g]et a

reality check on the credibility and appeal of GSUSA offering a family program that invites boys

into that program" and to review such a program "from the perspective of Boy Scouts and Girl

Scouts."  *Id.*  Accordingly, a description of Girl Scouts' programs was supplied to focus group

participants to assess their reactions to it, and images taken from Girl Scouts advertising were

shown for the same reason.   Ewing Dec., Exh. 187 (Dep. Exh. 126) at BSA00076829; Exh. 161

(Dep. Exh. 72) at BSA00053740, BSA00053744, BSA00053749, BSA00053752,

BSA00053760; Exh. 79 (E. Delimarkos) at 201:25-203:9; Exh. 67 (M. Ramsey) at 210:11-214:3.

No descriptions of the programs of other youth serving organizations were shown to focus group

participants, nor were descriptions of their programs supplied.  Ewing Dec., Exhs. 187 (Dep.

Exh. 126) and Exh. 161 (Dep. Exh. 72).

167.     In early May 2017, Boy Scouts convened a special meeting in Dallas, Texas of its regional Scout Executives to discuss whether discussions about the possible expansion of all of Boy Scouts programs, not just its "specialty" programs, to girls should continue, and the Scout Executives were invited to complete an online survey to share their views.  Exh. 63 (M. Surbaugh) at 224:11-21; Exh. 79 (E. Delimarkos) at 143:19-145:24; Exh. 83 (P. Wellen) at 199:4-201:20.  Most Scout Executives favored continuing the discussions.  Ewing Dec., Exh. 83 (P. Wellen) at 207:7-213:14; Ewing Dec., Exh. 188 at BSA00167022 (PDF pg. 4) (spreadsheet detailing survey responses that included "Mike this would be BIG news.  You may have to make the circuit to the major news networks and deliver this story" (5/4/17 at 17:26)).  At the same time, a number of Scout Executives raised the prospect of competitive conflict with Girl Scouts if girls were to be admitted to all Boy Scouts programs and either expressed concerns about that prospect, or a desire to proceed regardless, with one noting: "***Be aggressive, move faster and give a lot of serious thought to Girl Scout actions and be prepared to take them out***."  *Id.* (5/4/17 at 17:54 (emphasis added)); "I have some hesitations as I share an office with the Girl Scouts" but "Move forward!  We will prevail" *Id.* (5/4/17 at 19:54).

168.     One Scout Executive sent Boy Scouts' Chief Scout Executive his thoughts separately after the meeting, in which he expressed concern that what was being proposed was a "Radical change to brand" and asked "Is there an ethical consideration on what this means to the Girl Scouts of America?  Are we better of [sic] developing a partnership, rather than a hostile takeover?"  Ewing Dec. Exh. 189 (Dep. Exh. 245) at BSA00075215, BSA00075217-18; Exh. 63 (M. Surbaugh) at 225:12-227:16, 228:2-231:6.  This same Scout Executive stated "I strongly believe we owe Girl Scouts USA a discussion before we do anything . . . ."  *Id.*

169.     Just before the May meeting in Dallas, Girl Scouts learned of the meeting and its purpose through its own sources and from news reports.  Ewing Dec., Exh. 190 (Boy Scouts Dep. Exh. 1011); Exh. 193 (S. Acevedo) at 50:24-54:5.  Joshua Ackley, Girl Scouts Vice President of Communications, reached out to his counterpart at Boy Scouts, Effie Delimarkos, to ask what the meeting was about.  Ewing Dec., Exh. 191 (J. Ackley) at 13:5-15:12 30:16-31:20.  Delimarkos responded by stating that "we are meeting this week to discuss how to make Scouting more accessible to today's families.  As you and I have discussed before, we greatly value single-gender programs, and as such, we reiterated that to him [an NBC news reporter] today to avoid any confusion that there may be consideration of co-ed Scouting."  Ewing Dec., Exh. 192 at GSUSA_00137524.

170.     Girl Scouts CEO, Sylvia Acevedo, also reached out to Boy Scouts' Chief Scout Executive, Michael Surbaugh, to discuss the matter, Ewing Dec., Exh. 193 (Boy Scouts Dep. Exh. 1012), and they spoke a few days later.  Ewing Dec., Exh. 194 (Boy Scouts Dep. Exh. 1013) at GSUSA_00138139; Exh. 93 (S. Acevedo) at 55:2-65:25, 67:17-73:7; Exh. 63 (M. Surbaugh) at 233:18-234:10, 235:12-241:10.  After the call, Acevedo reported internally that Boy Scouts "remain committed to being a single gender organization" and that Surbaugh had told her "the most toxic thing for BSA would be to offer Co-Ed Boy Scouts." *Id.*  However, a few weeks later, after a presentation at Boy Scouts National Annual Meeting ("NAM") was reported to Girl Scouts as having been concerned with the possible admission of girls to Boy Scouts CUB SCOUTS and BOY SCOUTS programs, Acevedo reached out again to Surbaugh to speak again.  Ewing Dec., Exh. 195 (Dep. Exh. 246); Exh. 196 (Dep. Exh. 247), Exh. 63 (M. Surbaugh) at 244:16-248:17, 252:19-253:23, Exh. 93 (S. Acevedo) at 74:2-75:7.

171.    But by the end of June, the leaders of the two organizations still had not spoken, and Acevedo followed up again to express her disappointment that Girl Scouts was not hearing from Boy Scouts on this important issue. Ewing Dec., Exh. 197 (Boy Scouts Dep. Exh. 1016); Exh. 93 (S. Acevedo) at 97:13-98:25. Meanwhile, Boy Scouts had created a video presentation about expanding its core services to girls that was a version of what had been shown at NAM for presentation "in as many [Boy Scouts] councils as possible throughout the country" throughout the summer of 2017. Ewing Dec., Exh. 63 (M. Surbaugh) at 245:21-247:10. In early July, Surbaugh wrote back to Acevedo to propose a video conference in mid-August between the two executives and the respective National Board Chairs of the two organizations. Ewing Dec., Exh. 198 (Dep. Exh. 251); Exh. 93 (S. Acevedo) at 99:2-25, Exh. 63 (M. Surbaugh) at 268:9-277:4. In that communication, Surbaugh conceded that when "[w]hen we spoke on the phone in May, I shared what I felt I was able to at the time." *Id.*

172.    In mid-August 2017, the parties' four leaders finally spoke. Ewing Dec., Exh. 93 (S. Acevedo) at 109:22-110:7. During the call, it was made clear to Girl Scouts that Boy Scouts was moving ahead with its plans to open up its core programs to girls, and that any objections Girl Scouts might have would not alter Boy Scouts' decision. The Girl Scouts' representatives in attendance were surprised at Boy Scouts' position, *id.* at 112:3-120:20, and Girl Scouts National Board Chair wrote a letter to her counterpart at Boy Scouts voicing Girl Scouts' deep concerns, not just about the lack of transparency from Boy Scouts, but Boy Scouts' decision to expand its program offerings so significantly to a new market segment – girls – with which Boy Scouts had little to no expertise or experience. Scher Dec., Exh. WWW.

173.    In the weeks thereafter, the parties had further, unsatisfactory discussions in which Boy Scouts raised the possibility of future cooperation with Girl Scouts, but Girl Scouts

found the concepts too vague to warrant discussion.  Ewing Dec., Exh. 93 (S. Acevedo) at 144:6-145:16, 148:8-151:20.  By the end of September, Boy Scouts executives had prepared a list of pros and cons as to whether the decision to admit girls to Boy Scouts CUB SCOUTS and BOY SCOUTS programs should be confirmed by Boy Scouts Board in October or November 2018, with the list of perceived "cons" attendant to a delay outnumbering the "pros" by a significant number.  Ewing Dec., Exh. 199 (Dep. Exh. 176); Exh. 71 (D. Kinn) at 21:18-24:8, 142:4-20.  Among the "cons" identified were that a delay might create headlines like "Girl Scouts Successful in Delaying Boy Scout Decision About Girls" and that such a delay might "[e]xtend[] [the] opportunity for other organizations to rally against the BSA's decision."  *Id.*

174.    On October 11, 2017, Boy Scouts' Board "unanimously approved to welcome girls into its iconic Cub Scout program and to deliver a Scouting program for older girls."  Ewing Dec., Exh. 200 at GSUSA_00148759.  As part of this "historic decision," Boy Scouts announced that CUB SCOUTS would be expanded to include girls in 2018 and that a program for older girls would launch in 2019.  *Id.* at GSUSA_00148760; *see also* Ewing Dec., Exh. 201 (Exh. 139) at BSA00165780 ("In 2017, the Board of Directors passed a vote to allow girls into Scouting for the first time in the 107 year history of the BSA."); Exh. 86 (T. Rugh) at 13:4-17, 68:22-73:25; Exh. 202 (Dep. Exh. 78) at BSA00033946 ("New market – girls in Scouting"); Exh. 67 (M. Ramsey) at 42:21-25, 257:4-23; Exh. 203 (Dep. Exh. 185) ("celebrate the momentous occasion of the Cub Scouts' inclusion of girls"); Exh. 71 (D. Kinn) at 219:22-220:25, 225:16-226:22; Exh. 79 (E. Delimarkos) at 235:10-22.

175.    Girls began joining the CUB SCOUTS program on a limited basis in January 2018 and more fully in June 2018.  Ewing Dec., Exh. 204 at BSA00037015.  Girls began joining

the program now known as SCOUTS BSA (then known as BOY SCOUTS) in February 2019.

*Id.*

**F.    Boy Scouts Decision to Adopt The Terms SCOUT, SCOUTS and SCOUTING
SCOUT ME IN and SCOUTS BSA, Among Others, in Connection
With Its New Girl Members and the Services Offered to Them**

176.    Weeks after the Board decision, Boy Scouts sent out a Request for Proposal
("RFP") to various advertising agencies to help "launch Cub Scouting (a BSA core brand) to
new market segments (girls age 6-10 and their moms) and reintroduce it to existing segments
(boys age 6-10 and their moms)" and described this as a "landmark shift" for Boy Scouts.  Ewing
Dec., Exh. 205 (Dep. Exh. 177) at BSA00012284, 12287, 12288; Exh. 71 (D. Kinn) at 153:24-
155:4, 159:7-162:7.

177.    The primary firm selected through Boy Scouts' RFP process was called Johnson
& Sekin, and it proposed an advertising campaign posited on the premise that "the key to
opening up Cub Scouts to both genders relies on making moms believe that they are not giving
up anything, but gaining everything, by enrolling their daughters in this historically 'boys only'
organization."  Ewing Dec., Exh. 105 (Dep. Exh. 178) at BSA00054583; Exh. 71 (D. Kinn) at
171:8-174:23.  Noting that "the Boy Scouts of America has undergone a similar historic moment
as they have crossed gender divides by opening up Scouting to all Youth and their Families," *id.*,
Exh. 105 (Dep. Exh. 178) at BSA00054584, Johnson & Sekin proposed the use of SCOUT ME
IN as Boy Scouts' new "organizational tagline" because "It's no secret that the Boy Scouts of
America is evolving, and 2018's announcement of the Older Girls Program will be a significant
final step; one that initiates social change and eliminates the perception that the Scouts program
promotes a bygone 'boys rule, girls drool mindset."  *Id.* at BSA00054593.  There is no evidence
that Boy Scouts took into account the concerns Girl Scouts had previously expressed about the

use of terms like SCOUT, SCOUTS and SCOUTING in communications contexts where the organization offering such services was unclear, before adopting this organizational tagline lacking a gender-specific word for use in connection with services offered for the first time to girls via the CUB SCOUTS program and the program later renamed as SCOUTS BSA.

178.    In the runup to the launch of the SCOUT ME IN campaign, another outside agency working for Boy Scouts proposed generating publicity about the campaign itself because "[f]or the first time ever, girls will be featured in BSA advertising, a newsworthy story."  Ewing Dec., Exh. 78 (Dep. Exh. 130) at BSA00053392; Exh. 79 (E. Delimarkos) at 226:6-230:18.  In the agency's view, Boy Scouts had the ability to "[l]everage the historic nature of the advertising, which – for the first time – captures the images of girls in the BSA."  Ewing Dec., Exh. 78 (Dep. Exh. 130) at BSA00053392.  In fact, the launch of the SCOUT ME In campaign was itself the subject of news coverage, through a May 4, 2018 article in *Advertising Age* entitled "Boy Scouts Rolls Out First Campaign to Recruit Girls," which stated "Boys and girls appear in the campaign, alongside language that refers to both as 'scouts.'"  Ewing Dec., Exh. 80.

179.    As girls joined Boy Scouts' core programs for the first time, Boy Scouts recognized that its large array of advertising, marketing, recruiting and promotional materials featuring or referring to boys alone would need to be revised to include girls and omit language like "**Boys**: the boy is the main reason the rest of the organization exists.  Programs are designed to meet his need at the appropriate age and grade level."  Ewing Dec., Exh. 77 at BSA00058701 (noting the need to review "around 1,500 pages on Scouting.org, not to mention 11 years' worth of CubCast podcasts available online, and more than 16,000 PDFs in filestore"); Exh. 67 (M. Ramsey) at 229:14-230:23.  The substantial number of changes Boy Scouts needed to make to its advertising, marketing, recruiting and promotional materials are discernable by comparing its

November 16, 2015 Brand Guidelines, which contain very few images of girls, with its July 2019

Brand Guidelines, where images of girls are present on most pages containing images of Boy

Scouts' program participants.  *Compare* Ewing Dec., Exh. 76 (Dep. Exh. 68) *with* Exh. 66 (Dep.

Exh. 69); *id.*, Exh. 67 (M. Ramsey) at 168:10-171:11, 174:14-22, 176:16-177:25.

180.    At the time the launch of the SCOUT ME IN campaign was being readied in early

2018, Boy Scouts was considering renaming its core program for older youth – BOY SCOUTS.

Ewing Dec., Exh. 101 (Dep. Exh. 80); Exh. 67 (M. Ramsey) at 267:3-270:21.  Various potential

names were considered and presented to multiple Boy Scouts committees, panels and other

stakeholders.  *Id.*, Exh. 101 (Dep. Exh. 80) at BSA00165775.  All the groups to consider the idea

favored one name for the program that would cover both girls and boys, *id.*, and the consensus

name that emerged was SCOUTS.  *Id.* at BSA00165776.  Retaining the BOY SCOUTS program

name was one option that was considered, but it was viewed as "inadequate . . . because while

some girls like the concept of joining Boy Scouts as a movement, it's believed many others

would see the name as disrespectful."  *Id.*; Ewing Dec., Exh. 86 (T. Rugh) at 137:23-138:10.

181.    However, a number of local Boy Scouts Scout Executives voiced concern that the

selection of SCOUTS "will likely lead to disruptions with GSUSA."  *Id.*, Exh. 101 (Dep. Exh.

80) at BSA00165776.

182.    In the end, the replacement selected for the BOY SCOUTS program name was

SCOUTS BSA.  *Id.* at BSA00165777.  When questions were asked about why the BSA acronym

was added to the program name, Boy Scouts drafted talking points stating that "We kept BSA in

the program name to make sure there wouldn't be confusion with any other organization's

programs."  Ewing Dec., Exh. 207 (Dep. Exh. 254) at BSA00032686; *see also* Ewing Dec., Exh.

208 (Dep. Exh. 134) at BSA00032676 ("Why not Scouts USA? To avoid confusion with other

youth-serving organizations.").  Indeed, in a video statement issued by Boy Scouts shortly after

the initiation of this action, Surbaugh stated that "Avoiding confusion was the exact reason we

selected Scouts BSA to replace the program name, Boy Scouts.  We reviewed lots of different

options and many of our members told us, 'Just call them scouts,' but we opted for Scouts BSA.

Some thought it sounded awkward, but it was very intentional."  Ewing Dec., Exh. 209 at

GSUSA_00179581; Exh. 63 (M. Surbaugh) at 309:23-312:2.

183.    But, notwithstanding its professed desire to avoid confusion with anonymous

"other youth-serving organizations" by incorporating BSA into the SCOUTS BSA program

name, Boy Scouts has encouraged participants in those programs to be referred to as SCOUTS,

Ewing Dec., Exh. 210 at pg. GSUSA_00188933 ("Both male and female participants in the

Scouts BSA program will be referred to as 'Scouts,' just as boys now in the Boy Scout program

are often referred to as 'Scouts'"), and touted the SCOUT ME IN campaign as a celebration of

"BSA's expansion to serve families and welcome girls and boys into *Scouting* across the

country."  Ewing Dec., Exh. 211 (emphasis added).  In addition, the "Universal Emblem

Trademark" for the SCOUTS BSA program deemphasizes the BSA acronym in favor of

SCOUTS, as shown below.



Ewing Dec., Exh. 66 (Dep. Exh. 69) at pp. 6, 32; Exh. 67 (M. Ramsey) at 178:4-180:13.

184.    On October 25, 2018, Girl Scouts' CEO, Sylvia Acevedo, contacted Boy Scouts' Chief Scout Executive, Michael Surbaugh, by email to "request that Boy Scouts clearly state its name and brand in its communications, and stop using Girl Scouts' name or references to Scouts in a manner that is leading people to confuse our organizations."  Horowitz Dec., ¶ 44, Exh. 62 at GSUSA_00036202.  Surbaugh did not respond to this communication prior to the filing of this lawsuit.  *Id.*, ¶ 44.

### G.    The Rampant Confusion Caused by the Designations Used by Boy Scouts in Marketing Its Services to Girls and Their Families, the Unauthorized Use of Girl Scouts Intellectual Property, and the <u>Interference With Girl Scouts' Efforts to Market Its Own Services</u>

185.    Since expanding its core programs to girls, Boy Scouts has targeted girls and their parents with marketing and recruiting communications in ways it never has before.  Ewing Dec., Exh. 212 (Dep. Exh. 84) at BSA00015070 (referencing SCOUTS BSA campaign resources as "a new product launch . . . New name, new audiences who may not be familiar with our iconic brand."); Exh. 213 (Dep. Exh. 166) at BSA00138678 (referencing plan to "Target teens (heavy emphasis on girls)"); Exh. 214 (Dep. Exh. 164) at BSA00054724 ("the big year 1 opportunity is with all girl troops"); Exh. 86 (T. Rugh) at 241:14-243:9.  The widespread use of such terms like SCOUT, SCOUTS, SCOUTING, SCOUT ME IN and SCOUTS BSA in Boy Scouts' advertising and marketing materials, in connection with leadership and development targeting girls for the first time in Boy Scouts' history, has resulted in rampant instances of confusion and mistaken instances of association around the country that have caused substantial harm to Girl Scouts, as set forth below.

186.    **Fall 2017 - Girl Scout member in tears at news Boy Scouts and Girl Scouts were "merging":** In late September or early October of 2017, Kristen Stevens, Field Assistant with Girl Scouts Council for the Nation's Capital, who has been with Girl Scouts since

November 5, 2016, attended a Back-to-School night at Spring Ridge Elementary. Ewing Dec., Exh. 215 (K. Stevens) at 10:14-11:5, 93:1-6.  A seventh grader approached Stevens in tears, saying she was told that Girl Scouts was merging with Boy Scouts, and that Girl Scouts would have to take boys. *Id.* at 94:13-20. Stevens consoled the girl, and reassured her that Girl Scouts was not merging, was continuing to serve only girls, and that she would be receiving the same Girl Scouts program she had previously. *Id.* at 97:13-19. During her time with Girl Scouts, Stevens said that, prior to Boy Scouts' announcement of the expansion of its core programs to girls, instances of confusion where parents perceived Boy Scouts and Girl Scouts to be part of the same organization were "extremely rare." *Id.* at 140:13-141:9.  Following Boy Scouts' announcement, such instances were no longer rare, and there were quite a lot of them. *Id.* 141:10-19.

187.   **November 1, 2017 - California Boy Scouts council fundraises using Girl Scouts' trademark:** On November 1, 2017, Girl Scouts notified Boy Scouts of trademark infringement by the El Capitan District Scouts of Boy Scouts Orange Council.  Horowitz Dec., ¶ 22, Exh. 50 at GSUSA_00097326-330, GSUSA_00106545.  Girl Scouts' notification enclosed a flyer for a fundraising luncheon seeking funds for, among other things, "implementation of our New BSA *Girl Scouting* Programs." *Id.* (emphasis added.)  Boy Scouts replied to the letter saying, among other things, "please accept our apologies for this inadvertent use of your legally protected brand." *Id.*  Boy Scouts suggested "volunteers and non-lawyer employees" were responsible for the infringement.  *Id.*

188.   **January 2, 2018 - Boy Scout sends letter to GSUSA about joint selling program:**  In a letter dated January 2, 2018 addressed to Kathy Hannan, National President of Girl Scouts, a young Boy Scout named ███████████████████████, offered his

suggestions about Boy Scouts' popcorn program.  Horowitz Dec., ¶ 23, Exh. 34 at GSUSA_00004089.  ████ wrote he was "very happy to see the Girls Scouts are teaming with the younger Cub Scouts," and now that "the Scouts are working together," he wanted Hannan to "let Boy Scouts partake in the selling of your cookies." *Id.* He noted that, if his troop could sell "your cookies," "we could be virtually unstoppable" and "could raise money that scouts have never seen before." *Id*.

189.    **January 18, 2018 - Illinois Boy Scouts use Girl Scouts' slogan in Cub Scouts recruiting materials:** On January 18, 2018, Girl Scouts notified Boy Scouts of trademark infringement by Boy Scouts' Greater St. Louis Area Boy Council.  Horowitz Dec., ¶ 24, Exh. 50 at GSUSA_00099344-45, GSUSA_00106476.  Girl Scouts' notification enclosed a CUB SCOUTS recruiting flyer that used the slogan "Building kids of courage, confidence, character and to love the outdoors, and who make the world a better place!"  *Id.*  As Girl Scouts pointed out, the flyer misappropriated Girl Scouts' mission statement in its Constitution – "Girl Scouting builds girls of courage, confidence, and character, who make the world a better place."  *Id.*  Boy Scouts replied to the letter saying, among other things, "[w]e apologize for this inadvertent use of your slogan and appreciate the opportunity to correct the error and educate our volunteers." *Id.*  Boy Scouts blamed "volunteer leaders of a Cub Scout pack" for the flyer, which Boy Scouts claimed was disseminated without the local council's approval.  *Id.*

190.    **January 30, 2018 - Illinois Boy Scouts use photos of Girl Scouts in uniform in Boy Scouts recruiting materials:** On January 30, 2018, Girl Scouts notified Boy Scouts of trademark infringement by Boy Scouts Pathway to Adventure Council.  Horowitz Dec., ¶ 25, Exh. 50 at GSUSA_00037360-61, GSUSA_00073603-04.  Girl Scouts' notification enclosed Boy Scouts recruiting material that used images of Girl Scouts in their official capacity wearing

Girl Scouts uniforms and badges to promote a Boy Scouts "Scouts Sign-Up Night!" at a church. *Id.* The CEO of the Pathway to Adventure Council replied saying that the recruiting material "appears to be from one of our units in the suburbs," acknowledged the problem, and promised to correct it. *Id.*

191.     **February 2018 - Boy Scouts interfere with Girl Scouts' fundraising:** A Boy Scouts' leader approached a store clerk at Tractor Supply in Red Bluff, California and attempted to dissuade the store clerk from providing booth space to Girl Scouts, and told the clerk that Boy Scouts was now enrolling Girl Scouts. Ewing Dec., Exh. 216 (M. Park) at 8:13-15, 28:3-17, 56:5- 24; 104:17-105:5; *see also* Exh. 217 (Dep. Exh. 646). The Boy Scouts' leader's actions caused confusion and the store clerk believed that Boy Scouts and Girl Scouts had merged. *Id.*

192.     **February and April 2018 - Boy Scouts uses famous quote from Girl Scouts' founder in Boy Scouts' national marketing toolkit:** On February 26, 2018, Girl Scouts wrote to Boy Scouts objecting to Boy Scouts' dissemination of a national marketing toolkit that included the famous quote from Girl Scouts' founder, Juliette Gordon Low: "Scouting rises within you and inspires you to put forth your best." Horowitz Dec., ¶ 26, Exh. 50 at GSUSA_00049965-66. Boy Scouts replied denying that the quote was used in a marketing toolkit, but stated "we do regret [a particular Boy Scouts council] evoking the proud legacy of your organization's founder in this manner without your consent." *Id.* at GSUSA_00100271. Girl Scouts responded by pointing out that the image using the Juliette Gordon Low quote was available on at least two pages of Boy Scouts' online Brand Center. *Id.* at GSUSA_00080028. Boy Scouts subsequently admitted that the image was within "the BSA Brand Center," but claimed it had been created "almost four years ago." *Id.* at GSUSA_00097541.

193.    **February 27, 2018 - Massachusetts Boy Scouts use Girl Scouts trademarks on Boy Scouts camp website:**  On February 27, 2018, Girl Scouts wrote to Boy Scouts Spirit of Adventure Council in Massachusetts objecting to Boy Scouts' use of the GIRL SCOUTS and Design trademark on the Boy Scouts council's website for purposes of advertising a camp. Horowitz Dec., ¶ 27, Exh. 50 at GSUSA_001060552-54.  The website claimed the camp offered "specific programs" such as "Brownies" and "Girl Scouts." *Id.*  Boy Scouts replied claiming "Girl Scouts adult leaders" (whom Boy Scouts did not name) had asked the Boy Scouts council to include the infringing marks.  *Id.* at GSUSA_00100271. But after advising that the unauthorized use would cease, Girl Scouts was forced to write Boy Scouts again, after Boy Scouts failed to remove all of Girl Scouts trademarks from the website.  *Id.* at GSUSA_00100733-35.

194.    **March 12, 2018 - Boy Scouts' official retail website sells Girl Scouts Gold Award recognition ribbon:** On March 12, 2018, Girl Scouts notified Boy Scouts that its online Scout Shop was selling an "Eagle or Gold Award Recognition Ribbon," which Boy Scouts described as a ribbon that "[m]ay be worn by an Explorer who has achieved the Boy Scouts of America or Girl Scouts of the U.S.A. highest award and honor (the BSA Eagle or GSUSA Gold)."  Horowitz Dec., ¶ 28, Exh. 50 at GSUSA_00106519-20.  Boy Scouts did not have permission to use Girl Scouts intellectual property – the Gold Award – or trade on the Girl Scouts brand in its commercial products.  Boy Scouts replied stating that it had removed "Gold Award" from the product name and revised the product description.  *Id.* at GSUSA_00106472.

195.    **April 4, 2018 - Massachusetts Boy Scouts use photo of Girl Scouts Brownie in Boy Scouts recruiting materials:** On April 4, 2018, Girl Scouts notified Boy Scouts of trademark infringement by Boy Scouts Western Massachusetts Council.  Horowitz Dec., Exh. 50

at GSUSA_00097403-05.  Girl Scouts enclosed a flyer posted on Facebook by the Boy Scouts council that included a photograph of a girl depicted in her Girl Scouts Brownie uniform.  *Id.* Boy Scouts replied claiming that "the flyer was created by the volunteer leaders" of a Boy Scouts pack.  *Id.* at GSUSA_00097335.

196.    **May 30, 2018 - Girl Scouts council forced to dispel incorrect statement about Girl Scouts:** On May 30, 2018, Linda Farley, the Chief Executive Officer of Girl Scouts Heart of Central California council since January 2014, emailed her counterpart at Boy Scouts' Golden Empire Council, Chuck Brasfeild, and explained that there were "misconceptions" being spread by Boy Scouts regarding Girl Scouts.  Ewing Dec., Exh. 218 (L. Farley) at 17:23-18:3, 44:6-45:1, *see also id.*, Exh. 219 at GECBSA00000135-37.  She relayed that "someone at a recruitment table communicate[d] to a Girl Scout mom that 'next year Boy Scouts and Girl Scouts would be joining up anyway'" and Farley further explained how she "had a Placer county community leader ask me how I was doing with the 'merger of Boys Scouts and Girl Scouts.'" *Id.*

197.    **Summer 2018 - Mother mistakenly enrolls her daughter in Boy Scouts, believing it was Girl Scouts:** In the summer of 2018, Cynthia Davis, Membership Services Specialist for Girl Scouts of Central & Western Massachusetts since 2016, received a call from a mother who claimed to have enrolled her daughter in Girl Scouts.  Ewing Dec., Exh. 156 (Cy. Davis) at 6:14-22, 24:1-25:5.  When Davis tried to find the girl or the girl's parents' information in the council's computer system, it was not there.  *Id.* at 24:1-25:5.  Davis told the parent to find a receipt, credit card or bank statement and send it to Davis and she would "fix it and get [the registration] going." *Id.* at 24:25-25:5.  The parent later called Davis again and stated that she could not find a receipt and thought that she had registered for Boy Scouts by mistake.  *See id.* at

25:17-19, 26:12-14.  Davis recalled that, often at recruiting events after 2017, she was approached by boys thinking they could register for Boy Scouts with Girl Scouts and that generally people thought the two organizations "were one group." *Id.* at 72:24-73:25, 74:13-75:8. In addition to working as a Membership Services Specialist for Girl Scouts of Central & Western Massachusetts, Davis was a Girl Scout troop leader from roughly 2004 to 2009.  *Id.* at 86:5-11. During her time as Girl Scout troop leader, Davis never encountered members of the public expressing the view that Girl Scouts and Boy Scouts were the same organization.  *Id.* at 86:12-20. Davis first saw confusion in the marketplace during the 2018 recruiting season.  *Id.* at 87:10-16.

198.   **June 20, 2018 - Kentucky Boy Scouts use Girl Scouts' copyrighted curriculum and trademarks for camping services:** On June 20, 2018, Girl Scouts wrote to Boy Scouts objecting to Boy Scouts Lincoln Heritage Council's use of Girl Scouts' curriculum and trademarks in operating a camp.  Horowitz Dec., ¶ 29, Exh. 50 at GSUSA_00100258-59. Girl Scouts enclosed a flyer the Boy Scouts camp had disseminated entitled "GIRL Scout Achievement" that listed "what a GIRL Scout may have earned at Day Camp," and identifying Girl Scouts badges.  *Id.*  Boy Scouts responded admitting the camp had disseminated the flyer but disputing Girl Scouts' copyright and trademark claims.  *Id.* at GSUSA_00098997-98.

199.   **July 13, 2018 - New Mexico Boy Scouts use Girl Scouts trademark on a public recruitment sign:** On July 13, 2018, Girl Scouts notified Boy Scouts Great Southwestern Council that Girl Scouts objected to the Boy Scouts council's use of the phrase "Boy and Girl Scouts" on a sign outside their headquarters.  Horowitz Dec., Exh. 50 at GSUSA_00100592-93. Boy Scouts responded, blaming a local church for the sign and saying it would be taken down. *Id.* at GSUSA_00098955.

200.     **August 17, 2018 - Mother attends what she believes to be a "Girl Scout"
recruiting night, only to realize it is for "Cub Scouts":** Baileigh Davis, Placement Specialist
for Girl Scouts of Gulfcoast Florida, who has been with Girl Scouts since March 14, 2017, sent
an email to Mary Anne Servian, Chief Executive Officer of that Council since May of 2017,
summarizing an incident at Pinewood Elementary School in Estero, Florida relayed to her by the
mother of a prospective Girl Scout, █████████.  Ewing Dec., Exh. 220 (Dep. Exh. 948) at
GSUSA_00007073-75; Exh. 114 (B. Davis) at 6:8-25, 36:16-24, 54:1-15; Exh. 113 (M. Servian)
at 8:9-17, 48:1-21.  █████ noted that her daughter was "super excited to join" Girl Scouts and
wanted to go to the information night at Pinewood Elementary, as she received a "sticker" about
the information night.  *Id.*  The sticker did not say "Boy Scouts of America" on it.  Ewing Dec.,
Exh. 114 (B. Davis) at 63:4-6.  When █████ called the school about the information night, the
school informed her that it was a "girl scout night."  Ewing Dec., Exh. 220 (Dep. Exh. 948); Exh.
114 (B. Davis) at 55:17-25. However, when █████ arrived at the Pinewood Elementary
information night, she realized it was "cub scout night" and that many girls were there with their
parents.  *See* Ewing Dec., Exh. 220 (Dep. Exh. 948) at GSUSA_00007073-75); Exh. 113 (M.
Servian) at 48:1-21.  Following receipt of Davis' email, Servian called the office secretary at
Pinewood Elementary to try to understand how this situation could have happened.  Ewing Dec.,
Exh. 113 (M. Servian) at 77:13-18. The office secretary said that, when she was contacted to set
up the recruiting night at issue, the person she spoke to said "they were recruiting for Girl Scouts
and Boy Scouts." *Id.* at 77:19-22. Servian then clarified that "that was not correct," that she had a
"Girl Scout recruitment set up for the following week," and that if Servian had not called the
school, the office secretary "was going to cancel the following week's [Girl Scout] recruitment."
*Id.* at 77:24-78:25.

201.    **August 22, 2018 - Confused parent seeks refund of fees paid she paid to Boy Scouts thinking it was Girl Scouts:** On August 22, 2018, a woman named ▮▮▮▮▮▮ emailed Whitney Parker, a Recruitment Manager for Girl Scouts of Central Indiana who has been with Girl Scouts since mid-2014, about enrolling her daughter in "scouts thinking it was girl scouts." Ewing Dec., Exh. 112 (W. Parker) at 6:14-7:5, 44:21-46:13; Exh. 129 (Dep. Exh. 671); Horowitz Dec., Exh. 56 at GSUSA_00106965.  ▮▮▮▮ stated that her daughter "wants to be in Girls Scouts and not cub scouts," and she wanted to know if the membership fee she paid to Boy Scouts could be transferred to Girl Scouts. *Id.*  Parker replied that, because the two organizations are different, the fee could not transfer, but that she would not charge ▮▮▮ the Girl Scouts' registration fee.  *Id.*  On August 24, 2018, Deana Potter, Chief Communications Officer for Girl Scouts of Central Indiana, emailed Girl Scout employees Janet Neubert and Kelly Hill about ▮▮▮▮ email, describing her as a mother "who thought she signed her daughter up for Girl Scouts, but later discovered it was with Boy Scouts." Horowitz Dec., Exh. 57 at GSUSA_00003746.  Potter confirmed ▮▮▮▮ had asked "how to transfer the fees from Boy Scouts" to Girls Scouts.  *Id.*  Prior to Boy Scouts announcement of the expansion of its programs to girls in October 2017 and new marketing campaign, Parker could not recall a single instance in which someone was confused about the relationship between Girl Scout and Boy Scouts. Ewing Dec., Exh. 112 (W. Parker) at 85:19-24.  All of the confusion Parker has encountered occurred after Boy Scouts' announcement.  *Id.* at 85:25-86:4.

202.    **August 23, 2018 - Boy Scouts used "accepting Girl Scouts" at a recruiting event, which confused people as they walked passed Girl Scouts' table:**  Lisa Jones, the Chief Executive Officer of Girl Scouts North Carolina Coastal Pines, sent an email to John Akerman, Boy Scouts' Scout Executive for the Raleigh/Durham area, concerning an incident in which a

Boy Scouts representative at a recruiting event repeatedly advised parents that Boy Scouts was "now accepting Girl Scouts." Ewing Dec., Exh. 157 (M. Trombley) at 65:1-15, 69:10-24; Exh. 221 (Dep. Exh. 1204). Akerman responded by stating that he would address this "unfortunate incident" with his volunteers. *Id.*

203. **August 23, 2018 - Ohio Boy Scouts pitched an article to a local newspaper using the GIRL SCOUTS trademark:** On August 23, 2018, Girl Scouts wrote to Boy Scouts Dan Beard Council objecting to several of its troops pitching of a storyline for media placement entitled "Boy and Girl Scouts Looking for Members," despite that the story was designed for Boy Scouts – not Girl Scouts – recruiting. Horowitz Dec., Exh. 50 at GSUSA_00100248-49. Boy Scouts responded by stating the article "was prepared by BSA unit volunteers" and blaming the newspaper for adding "Girl Scouts" to the headline. *Id.* at GSUSA_00100247. Boy Scouts did not provide any evidence to substantiate its claims. *Id.*

204. **August 28, 2018 - Boy Scouts council responds to parent confusion regarding a school event:** On August 28, 2018, Kathy Lou Walden, a Registrar of Boy Scouts' Southwest Florida Council, sent an email to a man named David asking him to reach out to a parent, ███, ███, about his Kindergarten-aged daughter who was "excited about joining Cub Scouts." Ewing Dec., Exh. 222 at SWFLBSA00001068. The parent attended an Allen Park School Night event on August 21, 2018, but said the meeting was confusing, as he thought there was no pack for his daughter to join. *Id.* Later, on August 28, 2018, Walden followed up on her previous email, asking David to disregard her prior email because she spoke to ███, who said he thought he was speaking to a Girl Scout office, and that his daughter did not want to be a Cub Scout, but wanted to be a Girl Scout. *Id.*

205.    **August 29, 2018 – mother signs her daughter up for Boy Scouts, believing it was Girl Scouts:** On August 29, 2018, Kristen Stevens, a Membership Specialist for Girl Scout Council for the Nation's Capital, attended a Back-to-School Night at Urbana Elementary for Girl Scouts recruiting purposes. Ewing Dec., Exh. 215 (K. Stevens) at 56:22-59:6. The Girl Scout table was set up two tables away from the Boy Scouts' table.  *Id.* at 59:7-12. She was approached by a mother with her two girls who Stevens could see were "excited" to join Girls Scouts.  *Id.* at 60:13-15. Stevens asked the mother if she was there to sign up for Girl Scouts.  *See id.* at 60:16-18; *see also* Ewing Dec., Exh. 223 (Dep. Exh. 865); *see also* Horowitz Dec., ¶ 40, Exh. 58 at GSUSA_00005655-56, Exh. 58 at GSUSA_67673-75.  The mother responded "we signed up for Girl Scouts," and had received troop information for her daughters. Ewing Dec., Exh. 215 (K. Stevens) at 60:17-19. Stevens recalled that she had not seen the mother's name come across in the registration system, so she clarified about whether the mother registered online with Girl Scouts and talked to a troop leader. *Id.* at 61:2-6.  The mother responded that she "just registered over there," and pointed to the Boy Scouts recruiting table. Ewing Dec., Exh. 215 (K. Stevens) at 61:6-9; *see also* Exh. 223 (Dep. Exh. 865); *see also* Horowitz Dec., Exh. 58 at GSUSA_00005655-56; *see also* Exh. 58 at GSUSA_00067673-75.  Stevens clarified that those were Boy Scouts, and she was representing Girl Scouts, to which the mother responded "why didn't they tell me that!" Ewing Dec., Exh. 215 (K. Stevens) at 61:11-14; *see also* Exh. 223 (Dep. Exh. 865); *see also* Horowitz Dec., Exh. 58 at GSUSA_00067673-75. Even though the mother had told the Boy Scouts representatives how excited she and her daughters were to join Girl Scouts, the Boy Scouts representatives never rectified her confusion.  Ewing Dec., Exh. 215 (K. Stevens) at 61:16-21. Stevens is not aware if the mother ever signed up her daughters for Girl Scouts.  *Id.* at 63:6-64:9.

206.     **Fall of 2018 - School secretary believes Boy Scouts and Girl Scouts are one organization:** In the fall of 2018, June Sisk, Outside Recruitment Manager for Girl Scouts of Carolina Peaks to Piedmont, who has been with Girl Scouts since January of 2015, reached out to the office of the superintendent for Gaston County Schools in order to schedule a time for her local Girl Scouts council to go into the schools to recruit new members.  Ewing Dec., Exh. 224 (J. Sisk) at 11:15-18, 13:3-25, 16:18-18:7, 19:18-21:7. When Sisk called the office to schedule a time, the office secretary informed her that the superintendent had already scheduled with Boy Scouts, and they were "good to go."  *Id.* at 13:10-21.  When Sisk tried to clarify whether that schedule applied to Girl Scouts as well, the secretary was confused, and indicated she thought they were one organization.  *Id.* at 13:18-22. Sisk had worked with the same superintendent's office for the prior five recruiting seasons, and had never before experienced such confusion.  *Id.* at 24:2-3.

207.     **Fall of 2018 - School superintendents believe Boy Scouts and Girl Scouts are one organization:**  During that same fall 2018 recruiting season, Sisk also reached out to the administration of three local elementary schools – North Brook Elementary, S. Ray Lowder Elementary, and Union Elementary – to schedule a time for Girl Scouts to come into the schools for recruiting sessions. Ewing Dec., Exh. 224 (J. Sisk) at 37:7-15. At all three schools, Sisk was told the schools had already scheduled "our Scout meeting" that was going to include "the Boys Scouts and the Girl Scouts." *Id*. at 37:11-15, 38:4-7. But this meeting was scheduled with the Boy Scouts representative, not the Girls Scouts representative. *Id.* at 38:11-13.

208.     **September of 2018 - Washington Boy Scouts use Girl Scouts trademark in social media recruiting:** In September 2018, Girl Scouts wrote to Boy Scouts Chief Seattle Council objecting to the Boy Scouts council's use of the GIRL SCOUTS trademark in social

media recruiting materials.  Horowitz Dec., ¶ 30, Exh. 50 at GSUSA_00098942-43.  The social

media post encouraged the public to "Come talk to me about the Girl Scouts BSA Troops

forming in Kirkland!"  *Id.*

209.    **September 12, 2018 - Florida Boy Scouts provide false information about**

**Girl Scouts to parents:**  On September 12, 2018, Girl Scouts wrote to Boy Scouts North Florida

Council after one of the Boy Scouts council's employees told parents at a school information

night that "Girl Scouts don't start until February" and encouraged the parents to register their

daughters with Boy Scouts.  Horowitz Dec., Exh. 50 at GSUSA_00106471.  This statement was

false – the Girl Scouts' information night was the following day, at which there was low turnout

following Boy Scouts' false statement.  *Id.*  Boy Scouts replied and said its representatives could

not "recall" making the statement and blamed the low turnout on Girl Scouts for having their

information session on a Friday.  *Id.* at GSUSA_00101712.

210.    **September 17, 2018 - North Dakota Boy Scouts tell newspaper Girl Scouts**

**and Boy Scouts are merging:**  On September 17, 2018, Girl Scouts wrote to Boy Scouts

Northern Lights Council objecting to a Boy Scouts cub master telling a local newspaper that Girl

Scouts and Boy Scouts were merging.  Horowitz Dec., Exh. 50 at GSUSA_00106538-39. This

incorrect statement was then published in a second newspaper.  *Id.*  Boy Scouts replied and

blamed the newspaper reporter for asking a "leading question."  *Id.* at GSUSA_00106484.

211.    **September 18, 2018 - Iowa Boy Scouts use Girl Scouts trademark on**

**recruiting flyer:**  On September 18, 2018, Girl Scouts wrote to Boy Scouts Hawkeye Area

Council objecting to the council's use of the GIRL SCOUTS trademark on a flyer distributed to a

school promoting recruiting for Boy Scouts.  Horowitz Dec., ¶ 31, Exh. 50 at

GSUSA_00050340-41.  Boy Scouts replied and claimed "a local organization" that "runs a local

after-school program" created the flyer without Boy Scouts' involvement.  *Id.* at

GSUSA_00097500.

212.    **September 24, 2018 - Father believes Boy Scouts and Girl Scouts are the**

**same organization:** At a Benton Elementary recruiting event in Goshen, Indiana, Amy Kanouse,

Outside Membership Recruiter for Girl Scouts of Northern Indiana, was approached by a father

who asked "are the Boy Scouts and the Girl Scouts the same thing? I thought they were." *See*

Ewing Dec., Exh. 225 (Dep. Exh. 679); *see also* Exh. 154 (A. Kanouse) at 58:23-59:6. Kanouse

explained to him that "we [are] two separate organizations," and the father then signed his

daughter up for Girl Scouts. *See* Ewing Dec., Exh. 225 (Dep. Exh. 679); *see also* Exh. 154 (A.

Kanouse) at 58:19-59:15.

213.    **September 27, 2018 - Girl Scouts encounters confused teacher at recruiting**

**night:** On September 27, 2018, Carrie Davis, a recruiting specialist with Girl Scouts of Western

Oklahoma who has been with Girl Scouts since August of 2015, was visiting the Katherine I.

Daily Elementary school for a "Girl talk." Ewing Dec., Exh. 116 (Ca. Davis) at 5:6-20; 26:18-25,

27:2-16, 61:13-62:4; *see also* Exh. 226 (Dep. Exh. 1076).  A teacher approached Davis and said

she was confused because she had attended the "Scouts sign up night," and was told the "Boy

Scouts and Girl Scouts had joined together." Ewing Dec., Exh. 116 (Ca. Davis) at 26:18-25,

27:2-16, 61:13-62:4; *see also* Exh. 226 (Dep. Exh. 1076).

214.    **October 9, 2018 - Boy Scouts CEO admits to confusion in the community:** ███

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████                    *See* Ewing Dec.,

Exh. 227 ( Dep. Exh. 572), Exh. 110 (J. Bartkowski) at 16:11-17:2; 40:25-41:8; 72:3-5; 77:25-

78:16; 175:20-176:8. ████████████████████████████████████████████████████████



215.    **October 15, 2018 - Boy Scouts council ignores explicit question on whether Cub Scouts is for "Girl Scouts" too:** On October 15, 2019, a woman named ████████ emailed Adam McCarrison asking whether "Cub Scouts is more like Boy Scouts or is this for both boy and girls [sic] scouts?" *See* Ewing Dec., Exh. 245 at PIEDMONT00001195. She further stated that her "daughter wants to do Girl Scouts which is why I'm asking." *Id.* On October 16, 2019, McCarrison followed up by saying, "it is great to hear that your family is interested in our Cub Scouting program." *Id.* Then, he provided information about Cub Scouts and said that ████████ should reach out if she as any more questions. *See id.* Once again, McCarrison made no attempt to clarify which program ████████ was interested in signing up for and completely ignored that ████████ stated that her "daughter wants to do Girl Scouts." *See id.*

216.    **October 16, 2018 - Boy Scouts council refunds registration fee due to confusion:** On October 16, 2018, Gail Wojtkowiak, the Certified Registrar of Boy Scouts' Western Massachusetts Council, informed Alex Cantor, Senior District Executive of Boy Scouts'

Western Massachusetts Council, that she received a call from a mother, ██████████,
seeking a refund of her registration fee to Boy Scouts.  *See* Ewing Dec., Exh. 228 at
WMABSA00000887-888; *see also* Exh. 229 at WMABSA00000949-54.  ██████ had registered
her daughter online for Boy Scouts, but believed that she was registering her daughter for Girl
Scouts, not Boy Scouts. *See id.* ██████ noted that her daughter did not want to be in Boy Scouts,
and was seeking a refund of the registration fee paid to Boy Scouts.  *See id.*

217.    **October 19, 2018 - New York Boy Scouts council uses Girl Scouts
advertisement:**  On October 19, 2018, Girl Scouts contacted Boy Scouts Pequot District of the
Theodore Roosevelt Council objecting to the district's use of "Girl Scouts" in a recruiting
advertisement the District placed in a religious newsletter.  Horowitz Dec., ¶ 32, Exh. 50 at
GSUSA_00061443-45.

218.    **October 19, 2018 - Boy Scouts use Girl Scouts trademarks and curriculum in
promoting Boy Scouts amateur radio activity:**  On October 19, 2018, Girl Scouts wrote to
Boy Scouts objecting to Boy Scouts' use of Girl Scouts' name, trademarks, levels, badges, and
other elements of Girl Scouts' curriculum to promote an activity sponsored by a Boy Scouts-
affiliated amateur radio station.  Horowitz Dec., Exh. 50 at GSUSA_00098927-37.  Boy Scouts'
misappropriation of Girl Scouts' intellectual property went far beyond fair use, in light of the
amount of property used, and Boy Scouts' use of the property to promote a fee-based activity
and recruiting for Boy Scouts programming.  *Id.*

219.    **November of 2018 - Church secretary believes Boy Scouts and Girl Scouts
are "the same thing":**  In November of 2018, June Sisk, Outside Recruitment Manager for Girl
Scouts of Carolina Peaks to Piedmont, reached out to the Methodist Church in Bessemer City,
North Carolina to inquire about a new location to host a new Girl Scout troop. Ewing Dec., Exh.

224 (J. Sisk) at 61:15-22. The Church's secretary informed Sisk that it had recently dismissed the local Boy Scout pack and was no longer interested in Scouting. *Id.* at 61:20-25.  When Sisk informed the secretary that she was "with the Girls Scouts," the secretary asked "isn't that the same thing"? *Id.* at 62:1-13.

220.   **November 7, 2018 - Confused parent seeks refund of fees she paid to Boy Scouts thinking it was Girl Scouts:** On November 7, 2018, ███████████, who uses the email name ████████ sent an email to Jamie Gerald, a Girl Scout employee with the North Carolina Coastal Pines council, about mistakenly signing her daughter up for Boy Scouts. *See* Horowitz Dec., Exh. 59 at GSUSA_00011401-403; *see also* Ewing Dec., Exh. 157 (M. Trombley) at 76:22-79:4.  ████████ stated she "recently signed my daughter up for what I thought was girls scouts only to find out that what I signed her up for and paid for was actually boy scouts!" *Id.* ████████ further stated that "it makes total sense now why I was so confused at the initial sign up," as she was "pretty sure they even used the name girls scouts for the older children which caused further confusion." *Id.* She wanted to "resign [her daughter] up for the actual Girl Scouts," and asked for a call to get further details. *Id.*

221.   **November 28, 2018 - California Boy Scouts announce "girl Scout Troops":** On November 28, 2018, the Boy Scouts Pacific Skyline Council sent an email newsletter erroneously announcing that "Beginning February 1, 2019, the BSA will welcome girl Scouts Troops to [its] program."  Horowitz Dec., Exh. 51 at GSUSA_00085427.

222.   **December 21, 2018 - Missouri Boy Scouts council infringes Girl Scouts trademark:** On December 21, 2018, the Boy Scouts Ozark Trails Council Blazing Trails District posted to Facebook announcing that "The First Presbyterian Church of Branson will be sponsoring our District's first ALL GIRL Scouts BSA Troop!"  Horowitz Dec., Exh. 52 at

GSUSA_00061638-GSUSA_00061642.  Another Facebook user responded to the post, stating "Please be aware this isn't Girl Scouts of the USA. It is a girls troop for Boy Scouts. Don't get confused."  *Id.*  The Boy Scouts council representative replied but did ***not*** confirm that this was not a Girl Scout troop.  Instead they called the response "mostly right" (although not pointing out any errors) and went on to say that the new group was "an all girls troop for the Scouts BSA under the Boy Scouts of America umbrella."  *Id.*

223.    **January 3, 2019 - Principal of Carolina Beach Elementary School expresses confusion over whether Girl Scouts is a different organization from Boy Scouts:**  Debbie Todd, Membership Director for Wilmington/New Hanover County for the Girl Scouts of North Carolina Coastal Pines, emailed ██████████, Carolina Beach Elementary School principal, requesting to visit the school to discuss Girl Scouts, only to have ████ respond and ask if Todd represented a different organization form the "scout group" (*i.e.*, Boy Scouts) that presented to "both our boys and girls prior to the break."  Ewing Dec., Exh. 157 (Trombley) at 95:4-18, 98:7-25, 100:18-21; *see also* Exh. 230 (Dep. Exh. 1208).

224.    **January 17, 2019 - Parent visits Girl Scouts retail shop to pick up her son's Boy Scout uniform at the same time as her daughter's Girl Scout uniform:** On January 18, 2019, Kristen Neurer, a Girl Scouts of Minnesota and Wisconsin River Valley employee, sent an email to Patricia Bolger, Chief Executive Officer of Girl Scouts of Minnesota and Wisconsin River Valley since October 26, 2015, and Jen Thorson, another Girl Scouts of Minnesota and Wisconsin River Valley employee, about an incident on January 17, 2019, in which a mother came into the Girl Scouts' store in St. Paul, Minnesota and was confused that she could not pick up a Boy Scout uniform for her son, since she was there getting her daughter's Girl Scouts uniform. *See* Ewing Dec., Exh. 231 (Dep. Exh. 708); *see also* Exh. 115 (P. Bolger) at 10:23-

11:14, 227:1-12. Neurer, who working the shop at this time, informed the mother that they were "different organizations." *See* Ewing Dec., Exh. 231 (Dep. Exh. 708); *see also* Exh. 115 (P. Bolger) at 227:12-14. In her email, Neurer exclaimed that "confusion of the brands was there." *See* Ewing Dec., Exh 231 (Dep. Exh. 708). Before Boy Scouts announced it was going to open up its CUB SCOUTS and BOY SCOUTS programs to girls, Bolger had never encountered confusion in the marketplace between Boy Scouts and Girl Scouts. Ewing Dec., Exh. 115 (P. Bolger) at 197:13-22, 198:1-2. When Boy Scouts rebranded and starting allowing girls, "that's what's really confused the marketplace." *Id.* at 201:10-13.

225. **April 1, 2019 - Manufacturer Confuses Females in Boy Scouts for "Girl Scouts":** On April 1, 2019, plumbing equipment manufacturer Americh Corporation tweeted about an event it hosted for females in Boy Scouts programs, mistaking those children for "Girl Scouts":



Horowitz Dec., Exh. 55 at GSUSA_00001753.

226.    **May 25-27, 2019 - Woman believes Girl Scouts and Boy Scouts are the same organization:** Over Memorial Day Weekend 2019, at a military appreciation fair at Four Winds Field in South Bend, Indiana, the event organizer told Amy Kanouse, Outside Membership Recruiter for the Girl Scouts of Northern Indiana, that Kanouse would be sharing a table with Boy Scouts.  Ewing Dec., Exh. 154 (A. Kanouse) at 29:22-25, 37:15-20, 39:11-23. When Kanouse asked to be placed at a different table to "avoid confusion between the two organizations," the event organizer asked "why," as she "thought we were the same organization."  *Id.* at 39:15-23.

227.    **May 2019 - Public believes food drive hosted by a Boy Scouts girl troop is actually Girl Scouts:** In May 2019, Sandra DeTora, a Girl Scout volunteer for local Troop Service Unit 923 in Enterprise, Alabama, whose employer is a Boy Scouts chartering organization, and who therefore works with both organizations, received a call from a parent seeking more information about "the Girl Scouts food drive" at the local Walmart.  *See* the accompanying Declaration of Sandra Emmons DeTora, ¶ 7.  DeTora remarked that she was not aware of an upcoming Girl Scouts-sponsored food drive, and later learned the food drive was run by the local girl troop associated with Boy Scouts.  *Id.*  Following the food drive, DeTora was approached by many people who told her that "Girl Scouts at Walmart doing a food drive." *Id.*, ¶ 8.  When DeTora tried to explain to one woman, █████████, that the food drive was actually hosted by the girl troop of Boy Scouts, and not Girl Scouts, ██████ responded that she "d[id]n't understand, but you keep doing your good work with your girls." *Id.* at ¶ 9.  The confusion DeTora has encountered is, in her view, attributable to the use of SCOUTS BSA by Boy Scouts to designate its program for older youth, in that the "BSA" acronym is not widely known among

the members of the public with whom she interacts, such that they tend to focus on the word

SCOUTS as used in connection with girls services, and thereby become confused. *Id.*, ¶¶ 6-7.

228.     **Summer 2019 - Nancy Grace states that Boy Scouts and Girl Scouts are now**

**"all Scouts":** Nancy Grace, a television journalist, made a guest appearance on a segment of the

television program, The Hub Today.  Ewing Dec., Exh. 232.  Grace showed The Hub hosts an

image of her twin children and mentioned that she had recently chaperoned them to a "Scout"

sleep away camp.  *Id.*  She then stated "you know now the Boy Scouts and the Girl Scouts are all

'Scouts.'" *Id.*  One of the hosts asked, "Oh, is it that way now?  They're together?" *Id.* Grace

responded, "yeah." *Id.*  The host responded "I did not know it was not girl scout, boy scout; it

was just scouts.  I love that."  Ms. Grace nodded vigorously.

229.     **August 5, 2019 - Boy Scouts causes confusion among parents with "family**

**scouting" language:** On August 5, 2019, Carrie Davis, a recruiting specialist with Girl Scouts of

Western Oklahoma, was at Katherine I. Daily Elementary School in Noble, Oklahoma at a

recruiting event.  There, the Boy Scouts council representative kept referring to "family

scouting" when girls would walk by their booth, and then individuals would come up to the Girl

Scouts booth and ask for clarification on whether Girl Scouts was a separate organization.

Ewing Dec., Exh. 116 (Ca. Davis) at 27:21-28:7, 49:21-50:11, 51:1-51:9, 51:20-52:4, 53:8-21;

*see also* Exh. 233 (Dep. Exh. 1075).

230.     **August 9, 2019 - Man believes Boy Scouts and Girls Scouts have merged:** On

August 9, 2019, at a community event in Fitchburg, Massachusetts, Kerry Ann O'Brien,

Community Development Specialist for the Girl Scouts of Central & Western Massachusetts,

was approached by a man she recognized from her previous position at the Gardner News.

Ewing Dec., Exh. 123 (K. O'Brien) at 8:14-21; 60:24-61:10.  The man asked O'Brien, "Oh, have

the Boy Scouts and [Girl Scouts]—you've merged, you're taking boys now too?" *Id.* at 61:13-14; 61:20-24.  O'Brien asked the man if he was joking, to which the man gave O'Brien a look that indicated "no," he was not joking. *Id.* at 61:15-17.  O'Brien responded "No, oh no, we're still just Girl Scouts […] the Girl Scouts are a separate organization from Boy Scouts." *Id.* at 61:17-19; 62:3-12.

231.     **August 11, 2019 - Boy Scouts council responds to Girl Scout inquiry with information about Boys Scouts:** On August 11, 2019, a woman named ▮▮▮▮▮▮▮ emailed Nicole DeYoung and Jim Bollback of Northern Star Boy Scouts Council and asked them to "please tell me the day/time the Lake Minnetonka Girl Scout group meets" and that her "daughter is interested but I want to ensure it doesn't conflict with other activities. *See* Ewing Dec., Exh. 234 at NSBSA00001103. Jim Bollback, the Program Relations Executive for the Northern Star Council, asked what grade her daughter was in, to which ▮▮▮▮▮ responded that her daughter is six years old and starting first grade. *Id.* Bollack then recommended the "Pack 3285" and gave ▮▮▮▮▮ the name and contact information of the "Cubmaster" for that pack. *Id.* The email does not reflect any effort by Bollback to clarify whether the mother was interested in a Boy Scouts or a Girl Scouts program before trying to sign her daughter up for a program that was different from the one she had inquired about.  *Id.*

232.     **August 20, 2019 - Boy Scouts council responds to Girl Scouts inquiry with information about Boys Scouts:**  On August 20, 2019, a woman named ▮▮▮▮▮▮▮ emailed Adam McCarrison, the Heartland Senior District Executive for Boy Scouts' Piedmont Council, stating that her daughter, ▮▮▮▮▮▮, was "interested in ***girl scouts***," and requesting more information about getting her enrolled. *See* Ewing Dec., Exh. 236 at PIEDMONT0001105 (emphasis added).  Rather than clarifying that he was not a representative of "Girl Scouts" as ▮▮ .

█████ was requesting, McCarrison responded by saying "[o]ur next sign-up night next week will

be…" and providing information about sign-up nights for Boy Scouts.  *Id.*  McCarrison signed

his email as "Heartland Senior District Executive for the Piedmont Council,

B.S.A."  *Id.*  Nevertheless, █████ emailed McCarrison again the next day and wrote (apparently

still confused): "[m]y daughter and I are unable to make it tonight, how do I go about signing her

up for ***girl scouts*** anyway?"  *See id.*, Exh. 235 at PIEDMONT0001104.  As shown below,

McCarrison again did not clarify that he was not a representative of "Girl Scouts" and added the

subject line "Scouting" to the email chain.  *Id.*

```
From:    Adam McCarrison
Sent:    Wed 8/21/2019 8:42 PM (GMT-00:00)
To:      ███████████
Cc:
Bcc:
Subject: RE: Scouting


██████  What school does your daughter attend? We have additional sign-up nights this week and into next
         week throughout Lincoln County. Thanks! Adam McCarrison; Heartland Senior District Executive for the
         Piedmont Council, B.S.A.
         --------------------------
From: ████████████████████████
Sent: Wednesday, August 21, 2019 4:14 PM
To: Adam McCarrison <Adam.McCarrison@scouting.org>
Subject:

Hi Adam,

My daughter and I are unable to make it tonight, how do I go about signing her up for girl scouts
anyway? Is there a separate meeting I can attend this week?
```

233.   **August 22, 2019 - Church secretary believes Boy Scouts representative**

**represented Girl Scouts:** On August 22, 2019, Nena Ellis-Stagger, the membership director for

Girl Scouts of North Carolina Coastal Pines since March 18, 2019, called the First Presbyterian

Church in Greenville, North Carolina to request to form a Girl Scouts troop there.  Ewing Dec.,

Exh. 237 (N. Ellis-Stagger) at 6:16-7:9, 23:9-24:8, 27:1-28:7; *see also* Exh. 238 (Dep. Exh.

1063).  The church's secretary was confused and told her that a Girl Scout troop already existed

at the Church.  *Id.*, Exh. 237 (N. Ellis-Stagger) at 6:16-25; 23:9-24:8; 27:1-28:7; *see also* Exh.

238 (Dep. Exh. 1063).  The secretary told Ellis-Stagger that she spoke to someone the week

before who requested a "Girl Scouts troop," and while she did not know who called, it was the

same people as for the "Boy Scouts troop." *Id.*, Exh. 237 (N. Ellis-Stagger) at 78:13-80:4. Ellis-

Stagger had to explain that Boy Scouts and Girl Scouts are different organizations.  *See* Exh. 238

(Dep. Exh. 1063).

234.  **August 27, 2019 - Parent emails Boy Scouts council expressing interest in**

**"Girl Scouts":** On August 27, 2019, a woman named ███████████ emailed Adam

McCarrison the Heartland Senior District Executive for Boy Scouts' Piedmont Council that her

daughter was "looking forward to joining," and that her niece was "joining this year." *See* Ewing

Dec., Exh. 239 at PIEDMONT00000983.  The subject line of ██████ email was "Girl

Scouts," but McCarrison made no apparent effort to clarify which organization ██████ wanted

her daughter to sign up with.  *Id.*  Boy Scouts Piedmont Council also did not produce any

response to ██████ email. *Id.*, ¶ 177.

235.  **August 28, 2019 - Boy Scouts council responds to other "Girl Scout"**

**inquiries with information about Boy Scouts:** On August 28, 2019, a woman named ██████

██████ emailed McCarrison advising that her "daughter is interested in joining girl scouts," and

asking for more information. *See* Ewing Dec., Exh. 240 at PIEDMONT00000871-72.

McCarrison responded with Boy Scouts sign-up times and locations but made no effort to clarify

which organization Parker wanted to her daughter to sign up with.  *Id.* Indeed, McCarrison

changed the subject line from "Girl scouts" to "Cub Scouting (Rock Springs)." *Id.*  Also on

August 28, 2019, a woman named █████████ emailed McCarrison and advised that her

daughter is "interested in joining Girl Scouts" and asked for more information about the

program. *See* Exh. 241 at PIEDMONT00001103 (see image reproduced below).



```
From:    Adam McCarrison
Sent:    Wed 8/28/2019 2:58 PM (GMT-00:00)
To:      ████████████
Cc:
Bcc:
Subject: RE: Cub Scouting ████████

████ No problem; we have additional sign-ups tomorrow evening (Thursday, the 29th) at Battleground
Elementary and
Childers Elementary. Both presentations are the same with local unit leadership available at both
locations. Both are at 6 P.M. in the cafeterias. Does that work with your schedule? If not, we have
additional sign-ups next week in Lincoln County after the Labor Day Weekend. Thanks!
Adam McCarrison | Senior District Executive; Heartland District
BOY SCOUTS OF AMERICA
Piedmont Council

1222 East Franklin Blvd. | P.O. Box 1059
Gastonia, NC 28054
Cell: 412.477.7349
-------------------------------------------------
-----Original Message-----
From:    ██████████████████████
Sent: Wednesday, August 28, 2019 9:13 AM
To: Adam McCarrison <Adam.McCarrison@scouting.org>
Subject: Girl Scout inquiry

Good morning,

My daughter attends ████████████████ She is interested in joining Girl Scouts. I was unable to
attend the meeting on Tuesday. Can you please provide more information about the program.

Thank you,
██████████

Sent from my iPhone
```

The subject line of the email reads "Girl Scout inquiry." *Id.* McCarrison responded on the same day, providing information about additional sign-up times and locations, but once again made no effort to clarify which organization ████ wanted her daughter to sign up with. *Id.* And, once again, McCarrison changed the subject line from "Girl Scout inquiry" to "Cub Scouting ████

████" *Id.*

236. **September 10, 2019 - Boy Scouts council refunds registration fee due to confusion:** On September 10, 2019, Gail Wojtkowiak, the Certified Registrar of Boy Scouts' Western Massachusetts Council, sent an email to Eric Oulette, another council employee, about the refund of an online registration fee to a "████████." *See* Ewing Dec., Exh. 242 at WMABSA00000261. Wojkowiak noted that she was "not sure if this is the one who called and said she thought she was signing up for Girl Scouts." *Id.*

237.    **September 16, 2019 - Boy Scouts council responds to Girl Scout inquiry with information about Boys Scouts:** On September 16, 2019, a woman named ██████████ emailed Doug Band, a Boy Scouts East Carolina Council employee, about her daughter who wanted to "attend a Girl Scout meeting." *See* Ewing Dec., Exh. 243 at ECCBSA00000679. The subject line read "Richlands Girl Scout." *Id*. Band responded, "this is Cub Scouts, and we now allow Girls and Boys to be part of the Cub Scout Program." *Id*.  He then provided information on the next Cub Scouts meeting. *Id.*

238.    **September 17, 2019 - Boy Scouts council receives inquiry intended for Girl Scouts:** On September 17, 2019, ████████████ reached out to Doug Band, a Boy Scouts East Carolina Council employee, about her daughter being "interested in becoming a Girl Scout." *See* Ewing Dec., Exh. 244 at ECCBSA00000665. ██████ asked Band for information on how to get her daughter signed up. *Id*. The subject line of the email read "Girl Scouts." *Id*. Later that day, Band responded that he "would be glad to help get your daughter signed up for Cub Scouts. This is not the Girl Scouts, this is the Cub Scouts and we now offer a one stop shop for busy families who want to have one Scout meeting to go to each week." *Id.*.  Band then provided information on the times and locations of local meetings. *See id.*

239.    **September 23, 2019 - School representative does not allow Girls Scouts a recruiting night because Boy Scouts had already recruited at the school:** Amy Kanouse, Outside Membership Recruiter for the Girl Scouts of Northern Indiana, called to set up a recruiting event at Success Academy in South Bend, Indiana.  Ewing Dec., Exh. 154 (A. Kanouse) at 30:1-21. When she asked about setting up the recruiting event, the Success Academy representative stated that the school did not feel that Girl Scouts needed to hold a recruiting event because Girl Scouts had representation at the open house earlier in the year. *Id.*

at 34:20-35:1. When Kanouse clarified that she had not attended that open house, the Success

Academy representative responded that "we already had someone here. Maybe it was the Boy

Scouts, and we are not interested in having you come in." *Id.* at 34:20-35:1.

240.     **September 24, 2019 - Church volunteer confuses a Boy Scouts' girl troop**

**formation event with a Girl Scout event:** On September 24, 2019, a First Presbyterian Church

volunteer told Nena Ellis-Stagger, Membership Director for Girl Scouts of North Carolina

Coastal Pines, that a troop formation event had gone really well, but what she was referring to

was a Boy Scouts troop formation event for a Boy Scouts girl troop, not a Girl Scouts troop

formation event. Ewing Dec., Exh. 237 (N. Ellis-Stagger) at 33:14-18; 34:5-35:17.  The wording

of the Boy Scouts' associated bulletin with the event lead the church volunteer to believe that it

was a Girl Scouts event. *See id.* at 36:2-10. Ellis-Stagger spoke to a parent who believed she had

signed her daughter up for Girl Scouts, but in fact, it was a girl troop for Boy Scouts. *See id.* at

73:4-74:13.

241.     **October 20, 2019 - Boy Scouts council responds to Girl Scouts inquiry with**

**information about Boys Scouts:** On October 20, 2019, ███████████ emailed McCarrison

about her daughter ████, who is "interested in joining girl scouts," but was not able to attend the

meeting. *See* Ewing Dec., Exh. 246 at PIEDMONT00001046-1047. McCarrison responded "it is

great to hear that you are interested in our Scouting program. Our Cub Scouting program is

offered locally to both boys and girls in your area." *Id.*  He then provided additional sign-up

times, and a link to register directly online. *Id.* ████████ responded later that day, thanking him

for the information, and asking for more sign-up information. *Id.*  McCarrison responded on

October 21, 2019 with more meeting times. *Id.* Once again, McCarrison made no attempt to

clarify which program ███████ was interested in signing up for, even though she stated that her daughter was "interested in joining girl scouts." *See id.*

242.   **January 9, 2020 - Parent emails Boy Scouts about signing his daughter up for Girl Scouts:** On January 9, 2020, a man named ████████████ emailed Jason Powers, Alamance District Director for Boy Scouts Old North State Council, about "more information so I can look into getting my two sons enrolled and enroll my daughter in Girl Scouts." *See* Ewing Dec., Exh. 247 at ONSC00001235-36.  Powers responded asking for more information about which schools the children attend, and where they lived to provide more information.  *Id.*  Powers did not clarify that ██████ had reached out to Boy Scouts instead of Girl Scouts.  ███████ supplied the requested information, to which Powers noted that someone would follow up with ███████ soon. *Id.*

243.   **January 13, 2020 - GIRL SCOUTS and Profiles Trademark Appears in Boy Scouts Recruiting Materials.**  On January 13, 2020, Girl Scouts contacted Boy Scouts Aloha Council objecting to its use of the Girl Scouts Profiles logo and confusing language about girls joining the "scouts" or "scouting organizations" in recruitment materials.  On June 17, 2020, Girl Scouts again wrote to Boy Scouts Aloha Council, after the *Honolulu Star-Advertiser* misidentified female members of Boy Scout Troop 616 as members of "Girl Scout Troop 616" in a photo caption. The Boy Scouts and Boy Scouts Aloha Council responded to both of Girl Scouts' letters two days later, disavowing any responsibility for the creation and posting of the infringing recruiting material or the misidentification of female Boy Scouts as Girl Scouts in the *Honolulu Star-Advertiser*.  True and correct copies of this correspondence are attached as part of Horowitz Exhibit 50, at GSUSA_00187499-50, GSUSA_00188386-88, GSUSA_00188616-17, GSUSA_00188619-20.

244.    **Confusion about Boy Scouts and Girl Scouts merging:** In Garland County, Arkansas Girl Scouts' recruiters received questions about Boy Scouts and Girls Scouts "merging" and "are they wearing the same uniform" and other questions that demonstrated misinformation in the marketplace. *See* Ewing Dec., Exh. 111 (K. Dailey) at 5:23-25; 7:10-8:16; 9:8-10:25; 62:6-18; 66:9-16. Similarly, in El Dorado, Arkansas, Boy Scouts volunteers told the general public that Girl Scouts and Boy Scouts were merging, and that Girl Scouts in El Dorado would be recruited to Boy Scouts. *Id.* at 69:22-70:4; 71:9-14.

245.    **The incidents described above, in which Boy Scouts employees received inquiries from parents seeking information about "girl scouts" are a mere sample of Boy Scouts emails:** The emails described above in paragraphs 215, 231-32, 234-35, 237-38, 241-42, in which members of the public contacted employees of Boy Scouts councils seeking information about "girl scouts" (or similar variations) were among the documents produced by nineteen Boy Scouts councils pursuant to document subpoenas served by Girl Scouts.  Ewing Dec., ¶ 187.  Boy Scouts has over 250 local councils, meaning that there are more than 200 Boy Scouts councils whose emails were not searched, even though many of them use the "scouting.org" domain that Boy Scouts owns and has access to.  *See* paragraphs 4, 14, *supra*; Ewing Dec., Exh. 228 at WMABSA00000887; *id.,* Exh. 235 at PIEDMONT00001104; *id.*, Exh. 263 at ECCBSA00000679; *id.*, Exh. 247 at ONSC00001235.  Further, of the nineteen Boy Scouts councils that produced documents to Girl Scouts, the emails of only 65 custodians were searched, in light of Boy Scouts' objections that searches of additional custodians would be unduly burdensome and disproportional to the needs of this action.  Ewing Dec., ¶ 187.

246.    ████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ Ewing Dec., Exh. 83 (P. Wellen) at 278:22-292:20; Exh. 138 (Dep. Exh. 262, 2018 CUB SCOUTS data); Exh. 139 (Dep. Exh. 263, 2019 CUB SCOUTS data); Exh. 140 (Dep. Exh. 264, 2019 SCOUTS BSA data). ████████

███████████████████████████████████████████████████

██████████████████ *Id.* at "Objectives and Methodology." ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████ Ewing Dec., Exh. 83 (P. Wellen) at 284:16-288:6; Exh. 138 (Dep. Exh. 262, 2018 CUB SCOUTS data). █████████████████████████████████

██████████████████████████████████ *Id.*

247.  ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████ Ewing Dec., Exh. 138 (Dep. Exh. 262, 2018 CUB SCOUTS Data, at Trended Results, Rows 449-452 (PDF page 59)).

248.  ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████ Ewing Dec., Exh. 139 (Dep. Exh. 263, 2019 CUB SCOUTS Data at Trended Results, Rows 414-17(PDF page 60)).

249.  ███████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

████████████████████   Ewing Dec., Exh. 140 (Dep. Exh. 264, 2019 SCOUTS BSA Data

at Trended Results, Rows 230-233 (PDF page 37)).

250.   **Survey Evidence of Confusion:**  A survey conducted for purposes of this case by

Dr. Eugene Ericksen showed that a net 26.9% of respondents surveyed are "likely to be confused

by BSA's use of SCOUTS and SCOUTING in connection with programs and activities for

girls."  *See* the Declaration of Eugene P. Ericksen ("Ericksen Dec."), ¶¶ 5, 23 submitted in

opposition to Boy Scouts' motion to exclude Dr. Ericksen's opinions concerning likely

confusion and the results of his survey; Scher Dec. Exh. MMMMMM (Ericksen Report), ¶ 13.

251.   Finally, Boy Scouts is mimicking certain programming elements that have long

been unique to Girl Scouts.  As noted in paragraph 137, *supra*, the five core skills that the Girl

Scout Cookie Program has promoted for decades for participants in the Program are goal setting,

decision making, money management, people skills, and business ethics, as shown below:



Horowitz Dec., Exh. 60 at GSUSA_00188753.  Recently, Girl Scouts has observed that Boy

Scouts has now adopted a virtually identical framework of skills for its own popcorn fundraising

program, as shown below.

## Scouts Learn 6 Lifelong Skills



Become Decision Makers Learn Money Management Become Goal Setters



Develop Business Ethics Become Future Entrepreneurs Learn People Skills

About Trail's End: For over 40 years, Trail's End has partnered with the Boy Scouts of America to help Scouts, units, and councils raise the money they need to fund programs and activities throughout the year.

*Id.*, Exh. 61 at GSUSA_00188752.

### H.   Boy Scouts' Partnership with and Control of its Local Councils and Volunteers

252.     Boy Scouts local councils are chartered on an annual basis.  Ewing Dec., Exh. 248 at BSA00043674.  "Councils must be organized and operated pursuant to the Bylaws, Rules and regulations, policies, and guidelines of the Boy Scouts of America. Local councils serve as the local representative of the National Council in administering the Scouting program and accepting and processing applications for membership, registration, and unit charters, as well as all other applications for certificates, commissions, awards, and other matters subject to the approval of the National Council." *Id*., Exh. 64 at BSA00167066.  Importantly, local councils are not permitted to "act in a manner inconsistent with the Bylaws, Rules and Regulations, policies, and guidelines of the Boy Scouts of America." *Id*.

253.    "It is the duty of the local council to promote the Scouting program through the organization and annual registration of units and their personnel and to provide leadership and support of program activities in such a manner as to ensure compliance with the provisions of the Bylaws, Rules and Regulations, policies, and guidelines of the Boy Scouts of America." *Id*.; Ewing Dec., Exh. 85 (P. Sterrett) at 295:25-296:1 ("local councils are using Boy Scouts of America programs.").

254.    Boy Scouts also maintains a high degree of control over its volunteers.  According to the Rules and Regulations of Boy Scouts, "Members and Scouters should conduct themselves in accordance with the Scout Oath and Scout Law. Additionally, the Boy Scouts of America may adopt rules or codes of conduct for youth members, adult program participants, and adult leaders, as well as others for specific positions. A code of conduct is enforceable in the same manner as these Rules and Regulations."  Ewing Dec., Exh. 64 at BSA00167064.  By definition, "Leaders" are adult Scouters, who are registered at the council, district or unit level.  *Id*. at BSA00167063. Boy Scouts makes clear that "[r]egistration and participation in Scouting is a privilege that may be denied, limited, or terminated when determined to be in the best interest of Scouting. Scouters must abide by the provisions of any applicable code of conduct." *Id*. at BSA00167069

255.    More specifically, Boy Scouts states: "As a private, membership organization, the Boy Scouts of America has the right to set standards of membership and leadership. That right includes the ability to deny, expire, revoke, or otherwise limit or bar registration or affiliation with the Boy Scouts of America or any local council or any other affiliated organization. The general procedure for maintaining those standards is expressed in a publication titled *Procedures for Maintaining Standards of Membership and Leadership*; however, nothing contained therein

limits the ability of the Boy Scouts of America to take such action as it may deem appropriate in its sole discretion." *Id*. at BSA00167070.

256.    In addition, Boy Scouts also maintains strict control over the use of its intellectual property by councils, volunteers and others, noting that "The National Council has the sole right to authorize the use of insignia, words, phrases, designation marks, pictorial representations, and descriptive marks relating to the program of the Boy Scouts of America on commercial products, promotional efforts, and/or sale and distribution to members of the Boy Scouts of America and/or the general public. The use of the same by local councils must be only as authorized by the National Service Center." *Id*. at BSA00167064 and BSA00167073.  Boy Scouts' Brand Guidelines further state that "The Boy Scouts of America maintain its right to regulate use of trademarks and constrain that use whenever the BSA, in its sole discretion, deems it necessary to do so." Ewing Dec., Exh. 66 (Dep. Exh. 69) at 15.  In other words, Boy Scouts' Chief Operating Officer, Patrick Sterrett, testified that "we have brand guidelines that we push out to local councils and to units, and we work with them when we see they're outside the lanes of using those, to take immediate corrective behaviors on those." *Id*., Exh. 85 (P. Sterrett) at 304:1-5.

257.    The Terms and Conditions of Use on BSA's Brand Center include similarly restrictive provisions and note that:

> By downloading an asset, you (a) represent that you are either a National Council employee, local council employee or a registered BSA volunteer, and (b) agree to (1) use the asset solely for the purpose of promoting the BSA and your local council's or unit's approved programs and activities, (2) not reproduce, display or perform the asset in, on or through any website, social media page, or printed communications other than those approved by the BSA or your local council or unit leadership, (3) not edit or create any derivative work based on the asset unless it is labeled as a "editable template" and then only in accordance with the instructions for using editable templates, and (4) not combine or use the asset in conjunction with the name, trademarks, or brand elements of any other youth-serving organization.

Ewing Dec., Exh 65 at GSUSA_00188960.

258.    As part of its "longstanding quality control process," Boy Scouts "diligently oversee[s] the use of others' intellectual property on and in connection with BSA products." *Id*., Exh. 68 at GSUSA_00106535.

259.    Boy Scouts, often referred to as the "National Service Center" internally, has stated that its "#1 goal is to help councils recruit more new members." *Id*., Exh. 249 (Dep. Exh. 157) at BSA00030095.  In furtherance of that goal, Boy Scouts provides its councils with numerous marketing, communications, magazine and public relations support services, ranging from social media content to recruiting material templates and crisis support to fundraising support. *Id*., Exh. 250 (Dep. Exh. 106) at BSA00160370-72; Exh. 79 (E. Delimarkos) at 16:20-19:18.

260.    In anticipation of the February 2019 start date for the enrollment of girls in Boy Scouts core program, now called SCOUTS BSA, Boy Scouts developed a Membership/Marketing Plan.  Ewing Dec., Exh. 251 (Dep. Exh. 156) at BSA00101658-79.  The plan included video, print and digital assets that councils were directed to "begin using [] to recruit new members throughout 2019." *Id*. at BSA00101670.

261.    Boy Scouts also developed a Paid Marketing Plan Summary during the same timeframe. *Id*., Exh. 252 (Dep. Exh. 162) at BSA00135486.  The strategy included "partnering with councils for growth." *Id*. at BSA00135487.  As part of the plan, Boy Scouts (the "National Service Center") had a long list of commitments, including funding, planning and managing the project, and participating local councils also had obligations, including utilizing SCOUT ME IN collateral available on Boy Scouts' online Brand Center. *Id*. at BSA00135488-89.

262.     For the Fall of 2019, Boy Scouts developed an additional plan for certain councils to recruit SCOUTS BSA members with a "heavy emphasis on girls."  Boy Scouts' idea was to "fund and manage the media plan," which included paid social media advertising.  *Id*., Exh. 213 (Dep. Exh. 166) at BSA00138678.  "No need for councils to do anything except for follow-up leads in BeAScout.org." *Id*. at BSA00138679.

**H.     The Core Programs Offered by Girl Scouts and Boy Scouts
         as of 2017 and the Manner in Which Those Programs Are Delivered**

263.     Girl Scouts and Boy Scouts have similar organizational structures.  Both national organizations develop their respective SCOUTING programs, and then foster the implementation of those programs through chartering organizations and supporting local councils.  *See* ¶¶ 4-5, *supra*; Horowitz Dec., ¶ 4.  The councils, which are independently incorporated non-profit entities, are, among other things, primarily responsible for administering the programs of Boy Scouts and Girl Scouts.  Ewing Dec., Exhs. 253 and 254 at GSUSA_00188804.

264.     The core programs offered to the members of Girl Scouts and Boy Scouts share some of the same broad objectives, such as promoting honesty, friendliness, helpfulness and respect among SCOUTS.  Ewing Dec., Exhs. 255 and 256.  According to Boy Scouts' former Chief Scout Executive, both programs "have roots in a program that Lord Baden-Powell started . . . [and] have similar kinds of character overall objectives."  Ewing Dec., Exh. 63 (M. Surbaugh) at 26:2-19; *see also* Joachimsthaler Dec., Exh. 13 (Joachimsthaler Report) at ¶ 13(c) ("[T]here are strong similarities associated with [Girl Scouts' and Boy Scouts'] Scouting programs, such as values, leadership, character, badges, teamwork and activities . . . .").

265.     Now that Boy Scouts has chosen to admit girls into the CUB SCOUTS and SCOUTS BSA programs in single-gender groups, the core programs of Boy Scouts and Girl Scouts are both being offered to girls between the ages of 5-17 and to their parents.  Ewing Dec.,

Exh. 67 (M. Ramsey) at 202:11-203:20; *id.*, Exh. 86 (T. Rugh) at 60:20-62:7; *id.*, Exh. 90; Horowitz Dec., ¶ 4.

266.    Most members of Girl Scouts participate with a group of girls of about the same age, known as a troop, organized by adult volunteers.  They also can participate in events held by their local council and go to camp.  Ewing Dec., Exh. 257. Female members of CUB SCOUTS are organized in girl-only groups of participants about the same age that are led by adult volunteers.  *Id.*, Exh. 90.

267.    Members of Girl Scouts and female members of the CUB SCOUTS and SCOUTS BSA programs can advance through various ranks or levels, each of which has its own name.  Girl Scouts has six levels, which are determined by grade as follows: Daisies (Grades K-1); Brownies (Grades 2-3); Juniors (Grades 4-5); Cadettes (Grades 6-8); Seniors (Grades 9-10); and Ambassadors (Grades 11-12).  Ewing Dec., Exh. 258.  Cub Scouts has seven ranks, which, with the exception Bobcat, are based on age or grade:  Lion (kindergarten); Bobcat (earned by all Cub Scouts except Lions); Tiger (first grade or seven years old); Wolf (second grade or eight years old); Bear (third grade or nine years old); Webelos (fourth grade or ten years old); and Arrow of Light (fifth grade).  Once in SCOUTS BSA, members can advance through multiple ranks based no longer upon age, but achievement.  Ewing Dec., Exh. 259.

268.    Members of Girl Scouts and female members of the CUB SCOUTS and SCOUTS BSA programs are encouraged to and can earn badges through mastering various skills or achieving various accomplishments.  Ewing Dec., Exhs. 258, 260–262. In some cases, these badges are identical or concern very similar subject matter.  *Id.*, Exhs. 258, 260 – 262.

269.    Members of Girl Scouts and female members of the CUB SCOUTS and SCOUTS BSA programs all wear uniforms that, depending on the level or rank, contain elements in shades

of green, blue or brown. Ewing Dec., Exhs. 263 -268; *id.*, Exh. 71 (D. Kinn) at 238:11-21; *see also* Response to paragraph 21, *supra*. These uniforms provide members of both organizations with the ability to affix their badges to them, so they can display their achievements. Ewing Dec., Exhs. 269 -270.

270.     Both Boy Scouts and Girl Scouts have a highest and most prestigious award that can be earned by their members: the Girl Scout Gold Award and the Eagle Scout rank. Ewing Dec., Exhs. 271 -272. Both the Gold Award and Eagle Scout rank require significant accomplishments in service and leadership. *Id.*, Exh. 271 – 272; *id.*, Exh. 93 (S. Acevedo) at 301:18-302:2.

271.     Both Boy Scouts and Girl Scouts programming presently and historically have emphasized outdoor activities. *See* Girl Scouts Response to paragraph 75, *supra*; Ewing Dec., Exh. 152 (Dep. Ex. 49) at GSUSA_00113890 (*Pocket Oxford American Dictionary*, pub. 2008, Scout: "a member of the Boy Scouts or Girl Scouts, organizations that aim to develop character through outdoor and other activities"); Ewing Dec., Exh. 93 (S. Acevedo) at 258:4-6; Scher Dec., Exh. AAAAA (2019 Interbrand study) at GSUSA_00124862. This includes camps and related activities. Ewing Dec., Exhs. 273 – 274.

272.     Both Boy Scouts and Girl Scouts councils conduct fundraising activities that involve the seasonal sale of food products: Girl Scouts sell cookies and Boy Scouts sell popcorn. *See* Girl Scouts Response to paragraphs 137 and 58, *supra*; Ewing Dec., Exh. 117 (M. Gerard) at 22:4-6; Exhs. 275 -276.

273.     The recruiting and signup processes for Girl Scouts and Boy Scouts are also similar. Growing membership is one of the primary duties of Girl Scouts and Boy Scouts councils. Ewing Dec., Exhs. 253 – 254. Common recruiting efforts include posting fliers,

engagement on social media, using word-of-mouth, and holding events in schools and in the

community.  Ewing Dec., Exhs. 277 - 278; Joachimsthaler Dec., Exh. 13 (Joachimsthaler Report)

at ¶ 133 ("The similarities between the organizations extend even further, as both of their

acquisition strategies parallel one another. Both Girl Scouts and Boy Scouts are heavily reliant

on word-of-mouth recommendations from the families and friends of current members and

marketing their brands at local schools to acquire new members.").

274.    Members of Girl Scouts and female members of CUB SCOUTS and SCOUTS

BSA pay membership dues to their respective national organizations: $25 for Girl Scouts and

$66 for Boy Scouts (as of August 1, 2020); the prior dues for Boy Scouts were $60 as of January

1, 2020, and $33 before that.  Horowitz Dec., ¶ 4; Ewing Dec., Exh. 279.   New program

participants in certain Boy Scouts programs, including CUB SCOUTS and SCOUTS BSA, now

also must pay a one-time $25 joining fee.  Ewing Dec., Exh. 278.

## I.    The Damage Girl Scouts Has Suffered as a Result of Boy Scouts' Misconduct

275.    In 2018, Girl Scouts began a marketplace positioning initiative to respond to the

competitive and related threats created by Boy Scouts' decision to admit girls to its core

programs and its initial marketing and recruiting efforts resulting from that decision.  Swanson

Dec., ¶ 2.

276.    ████████████████████████████████████████

████████████████████████████████████████

Ewing Dec., Exh. 280 (Dep. Exh. 768) at GSUSA_00072928.  ████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████ *Id.*

277.    One of the primary harms that Girl Scouts already was experiencing by that time was confusion in the marketplace, which was evident in traditional media reports, on social media, among school administrators, and via word of mouth from Girl Scouts members and staff members.  Ewing Dec., Exh. 98 (J. Neubert) at 316:11-17; 326:16-327:2; Swanson Dec., ¶ 5.

278.    A significant portion of the budget allocated to the marketplace positioning initiative therefore was expended to combat the confusion in the marketplace resulting from Boy Scouts' wrongful conduct, including misleading recruiting efforts and confusing advertising and promotion.  Swanson Dec., ¶ 6.  Girl Scouts undertook unprecedented national efforts to promote its brand and services with the primary goal of distinguishing itself from Boy Scouts to address and correct the rampant confusion in the marketplace.  *Id.*, ¶ 7; Ewing Dec., Exh. 290 (Dep. Exh. 772).

279.    Specifically, Girl Scouts spent at least ▮▮▮▮▮▮▮ on these corrective advertising and marketing efforts from May 2018 to January 2019.  Swanson Dec., ¶ 15; *id.* Exh. 285 (Dep. Exh. 1176) at GSUSA_00188668; Ewing Dec., Exh. 107 (S. Swanson) at 26:8-23; Scher Dec., Exh. OOOOOO at p. 5.  Those expenses consisted of:

a.    <u>Digital Marketing</u>: Girl Scouts seeks the recovery of ▮▮▮▮▮▮ in corrective advertising damages related to the digital marketing campaign, the vast majority of which was conducted on its behalf by Mercury.  Swanson Dec., ¶ 18.  The digital marketing expenses can be further broken down as follows:  (i) ▮▮▮▮▮ to Mercury for a paid digital campaign, including advertisements placed on Facebook and Instagram, all of which were focused on the geographic markets most impacted or likely to be impacted by confusion in the marketplace; (ii) ▮▮▮▮▮ to Mercury for television advertisements on Spanish-language television and aimed at the Latina market, which Girl Scouts identified as a market that was

███████████████████████████████████████████████████ (iii)

██████ in expenses to Mercury related to the creation and placement of the digital and

television advertisements; and (iv) ██████ to VPE Public Relations for press engagement in

Latina markets, which again were viewed as particularly susceptible to the confusion being

caused in the marketplace by Boy Scouts.  Swanson Dec., ¶¶ 19-23; *id.*, Exh. 285 (Dep. Exh.

1176) at GSUSA_00188668.  Girl Scouts had never worked with Mercury on any similar

advertising or promotional campaigns, nor had it ever spent national advertising dollars to

support local councils in a similar fashion.  Swanson Dec., ¶ 12.

        b.      <u>Conversion and Placement</u>.  Girl Scouts invested in a call center in

connection with the digital marketing campaign aimed at the geographic locations in which Girl

Scouts had identified the most confusion being caused by Boy Scouts.  Swanson Dec., ¶ 25;

Ewing Dec., Exh. 137 (L. McKay) at 128:23-129:8; 132:3-9; 292:19-293:5; *id.*, Exh. 107 (S.

Swanson) at 42:24-43:7 ("[The call center] was part of the package when we decided to invest in

digital marketing . . . .").  The call center was focused on converting new leads to members for

selected councils by contacting those leads – which had been generated from the digital

marketing campaign – and providing them additional information about Girl Scouts.  Swanson

Dec., ¶ 25; Ewing Dec., Exh. 107 (S. Swanson) at 41:2-16.  Girl Scouts did not have a call center

prior to May 2018.  Swanson Dec., ¶ 27; Ewing Dec., Exh. 107 (S. Swanson) at 42:24-43:7.

Through January 2019, Girl Scouts spent ██████ on the call center.  Swanson Dec., ¶ 24;

*id.*, Exh. 285 (Dep. Exh. 1176) at GSUSA_00188668.

        c.      <u>Grassroots Mobilization</u>.  Girl Scouts incurred ██████ in expenses

to provide organizers on the ground called regional directors in selected geographic areas where

Girl Scouts was seeing the most confusion.  Swanson Dec., ¶ 28; *id.*, Exh. 285 (Depo Exh. 1176)

at GSUSA_00188668.  Working from July to October 2018, these regional directors primarily

assisted with recruiting efforts at schools and community events.  Swanson Dec., ¶ 29.  The

regional directors were engaged by Mercury on Girl Scouts' behalf and were managed by Jill

Bader of Bader Consulting, to whom GSUSA paid ███████████ ; the other ███████████ in

expenses for grassroots mobilization was paid to Mercury.  Swanson Dec., ¶ 30; *id.*, Exh. 285

(Dep. Exh. 1176) at GSUSA_00188668; *id.*

        d.    <u>School and Family Engagement</u>.  Girl Scouts incurred a total of

███████████ in expenses related to its school and family engagement efforts.  Swanson Dec.,

¶ 31; *id.*, Exh. 285 (Dep. Exh. 1176) at GSUSA_00188668.  Girl Scouts partnered with

Discovery Education to offer Girl Scouts-inspired resources in the classroom and to demonstrate

the value of Girl Scout's female-focused approach.  Swanson Dec., ¶ 32; Ewing Dec., Exh. 108

(A. Archibald) at 70:10-18.  These services were provided directly to students during the school

day to elevate Girl Scouts' presence in the classroom as a direct response to the confusion and

interference created by Boy Scouts in the context of school recruitment efforts.  Swanson Dec.,

¶ 32; Ewing Dec., Exh. 137 (L. McKay) at 250:5-23.  In addition to Discovery Education's fees,

Girl Scouts incurred other associated expenses, including travel costs, school incentive materials,

and costs for translating materials to Spanish.  Swanson Dec., ¶ 33; Ewing Dec., Exh. 137 (L.

McKay) at 249:14-252:4. Girl Scouts also incurred ████████ in expenses relating to parent-targeted

material created by another vendor, CEROS, as part of its school and family engagement efforts.

Swanson Dec., ¶ 34; *id.*, Exh. 285 (Dep. Exh. 1176) at GSUSA_00188668.

        e.    <u>Marketplace Positioning Administration</u>.  Girl Scouts incurred

███████████ in fees directly associated with the oversight and administration of its marketplace

positioning initiative and corrective advertising efforts.  Swanson Dec., ¶ 35; *id.*, Exh. 285 (Dep.

Exh. 1176) at GSUSA_00188668.  These expenses consist of full-time or partial salaries and travel-related expenses for the employees who conducted this oversight and administration, including: Susan Swanson (vice president, placed in charge of marketplace positioning initiative), Erin Stadnik (project manager), Sandhya Sivasankaran (strategic data analyst), Christin Alvarado (administrative support) and Janet Neubert (council consultant manager). Swanson Dec., ¶ 36; *id.* Exh. 285 (Dep. Exh. 1176) at GSUSA_00188668.

280.    Boy Scouts earns revenues from its members in the form of yearly membership dues, merchandise sales, camping fees and other payments.  Scher Dec., Exh. OOOOOO at ¶¶ 22-24.  Therefore, the more members who join Boy Scouts, the more profits it earns from those members.  *Id.*

281.    Girl Scouts' damages expert, Lauren Kindler, determined that Boy Scouts earns an average expected profit of $194 for each new CUB SCOUTS member who joined Boy Scouts as of January 2018, when girls were first permitted to join the CUB SCOUTS program, and an average expected profit of $221 for each new SCOUTS BSA member who joined Boy Scouts as of February 2019, when girls were first permitted to join that program. Scher Dec., Exh. OOOOOO at ¶¶ 10, 22-24.

282.    Using the confusion rate from the consumer survey conducted by Girl Scout's expert Dr. Ericksen, and other data produced by Boy Scouts, Kindler determined that Boy Scouts' profits attributable to its wrongful conduct through November 13, 2019, were $4,998,301.  Scher Dec., Exh. OOOOOO at ¶¶ 22-24.  This number was calculated by multiplying the average expected profit for each new CUB SCOUT or SCOUTS BSA member by the number of girl members of the CUB SCOUTS and SCOUTS BSA programs who were wrongfully obtained, as informed by the confusion rate from the Ericksen survey, and as

conservatively reduced by the percentage of girls who had a family member who had been or

currently was a Boy Scouts member.  *Id.*

Dated:     New York, New York              Respectfully Submitted,
           December 23, 2020
                                           DORSEY & WHITNEY LLP


                                   By:    */s/ Bruce R. Ewing*                    
                                          Bruce R. Ewing
                                          Fara S. Sunderji
                                          Jonathan Montcalm
                                          Kimberly Frumkin
                                          51 West 52nd Street
                                          New York, New York 10019
                                          (212) 415-9200
                                          *Attorneys for Plaintiff*
                                          *Girl Scouts of the United States of America*