# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

GIRL SCOUTS OF THE UNITED STATES
OF AMERICA,

                  Plaintiff,

     v.

BOY SCOUTS OF AMERICA,

                  Defendant.

Case No. 1:18-cv-10287 (AKH)

## DEFENDANT BOY SCOUTS OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RULE 37 SANCTIONS AGAINST PLAINTIFF GIRL SCOUTS OF THE UNITED STATES OF AMERICA

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ....................................................................................................1

FACTS ..........................................................................................................................................3

LEGAL STANDARD...................................................................................................................11

ARGUMENT ...............................................................................................................................12

I.      GSUSA'S FAILURE TO PRODUCE DOZENS OF COMMUNICATIONS
        CONCERNING ITS ███████████████ AGAINST THE BSA IN THE
        RUN-UP TO THIS LAWSUIT VIOLATES RULE 37(b)..................................................12

II.     GSUSA'S FAILURE TO SUPPLEMENT ITS PRODUCTION WITH ALL OF ITS
        COMMUNICATIONS WITH MERCURY ALSO VIOLATES RULE 37(c) .................13

III.    AS A SANCTION FOR GSUSA'S VIOLATIONS OF RULE 37, THE COURT
        SHOULD AWARD THE BSA ITS RELATED COSTS AND ATTORNEY'S FEES....16

CONCLUSION..............................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page**

### <u>Cases</u>

*Boyde v. Monroe Cty.*,
  2011 WL 4457668 (W.D.N.Y. Sept. 23, 2011) ................................................................. 11

*Capricorn Mgmt. Sys., Inc. v. Gov't Employees Ins. Co.*,
  2019 WL 5694256 (E.D.N.Y. July 22, 2019) ................................................................... 10

*Creative Res. Grp. of N.J., Inc. v. Creative Res. Grp., Inc.*,
  212 F.R.D. 94 (E.D.N.Y. 2002) ........................................................................................ 17

*E.L.A. v. Abbott House, Inc.*,
  2020 WL 5682019 (S.D.N.Y. Sept. 24, 2020) ................................................................. 16

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*,
  2009 WL 855955 (S.D.N.Y. Mar. 24, 2009) .................................................................... 18

*Gateway, Inc. v. ACS Commercial Sols., Inc.*,
  2009 WL 10695887 (S.D.N.Y. Sept. 18, 2009) ............................................................... 11

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
  2019 WL 4727537 (S.D.N.Y. Sept. 26, 2019) ................................................................. 11

*Kelly v. City of N.Y.*,
  2007 WL 1746912, at *2 (S.D.N.Y. June 15, 2007) ........................................................ 10

*Kim v. Columbia Univ.*,
  2009 WL 528604 (S.D.N.Y. Mar. 2, 2009) ...................................................................... 18

*Medina v. Gonzalez*,
  2010 WL 3744344 (S.D.N.Y. Sept. 23, 2010) ................................................................. 13

*Meyo v. Kang*,
  2015 WL 13882427 (S.D.N.Y. Dec. 18, 2015) ................................................................ 17

*Novick v. AXA Network, LLC*,
  No. 07-cv-7767, ECF No. 243 (S.D.N.Y. Mar. 19, 2014) ............................................... 10
  2015 WL 13686754 (S.D.N.Y. Jan. 5, 2015) ................................................................... 11

*Scantibodies Lab., Inc. v. Church & Dwight Co., Inc.*,
  2016 WL 11271874 (S.D.N.Y. Nov. 4, 2016) ............................................................ 12, 17

*In re Sept. 11th Liab. Ins. Coverage Cases*,
  243 F.R.D. 114 (S.D.N.Y. 2007) ...................................................................... 2, 14, 15, 16

*Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*,
  2017 WL 2840279 (S.D.N.Y. June 27, 2017) .................................................................. 11

*Stingray Music USA, Inc. v. uCast LLC*,
  2020 WL 2489069 (S.D.N.Y. May 14, 2020) .................................................................. 16

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
    900 F.2d 522 (2d Cir. 1990)........................................................................................ 18

## **Statutory Authorities**

15 U.S.C. § 1125(c) ........................................................................................................ 3

15 U.S.C. § 1125(c)(2)(C) ............................................................................................ 12

N.Y. Gen. Bus. Law § 360-l ........................................................................................ 3

## **Rules**

Fed. R. Civ. P. 11 ......................................................................................................... 10

Fed. R. Civ. P. 37(b) ....................................................... 1, 10, 11, 12, 13, 16, 17

Fed. R. Civ. P. 37(b)(2)............................................................................... 10, 11

Fed. R. Civ. P. 37(c) .......................................................................... 1, 11, 13, 16

Fed. R. Civ. P. 37(c)(1)................................................................................ 10, 11, 16

Pursuant to Federal Rule of Civil Procedure 37(b) and (c), Defendant Boy Scouts of America (the "BSA") requests that the Court sanction Plaintiff Girl Scouts of the United States of America ("GSUSA") and its counsel for its failure to produce dozens of documents that, if timely produced, would have spared the BSA the expense of defending itself against GSUSA's improper and meritless dilution-by-tarnishment claims.  The BSA seeks relief in the form of an award of the BSA's relevant attorney's fees and costs, monetary penalties to discourage and deter such misconduct in the future, and such other relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

As part of its initial Complaint, GSUSA pleaded dilution-by-tarnishment claims, alleging that the BSA's use of the marks SCOUT and SCOUTING in connection with its youth services "harms the reputation[] of GSUSA's famous GIRL SCOUTS mark."  Dkt. 1 ¶¶ 115, 137.  More specifically, GSUSA alleged that certain "negative publicity" about the BSA damaged the goodwill associated with the BSA's marks, and that this, in turn, purportedly would tarnish the goodwill associated with the GIRL SCOUTS mark.  *Id.* ¶ 86.  The BSA served document requests concerning GSUSA's tarnishment claims early in the case.  GSUSA agreed to produce such documents in March 2019, and the Court ordered the production of these and other documents by June 2019.  Unbeknownst to the BSA at the time, GSUSA failed to produce critical responsive documents on this subject.

Many months later, the BSA subpoenaed GSUSA's public strategy firm Mercury who, after repeated meet-and-confers, finally produced responsive documents in 2020.  Mercury's production confirmed that the factual allegations underpinning GSUSA's tarnishment claims were baseless, including because they were ███████████████████████████.  Specifically, the Mercury documents confirmed that beginning in spring 2018, GSUSA ███████████████████ ██████████████████████████ in the run-up to filing its tarnishment claims in its

1

November 2018 lawsuit against the BSA.  Stunningly, ████████████████████

████████████████████████████████████████████████████████████

████████████████ in its Complaint ████████████████████████████

████████████████.

     In fall 2020, after learning of ████████████████████████████ as

reflected in these Mercury documents, the BSA served GSUSA with a Rule 11 motion seeking the

withdrawal and dismissal of GSUSA's tarnishment claims.  In response, GSUSA capitulated,

dismissing its tarnishment claims with prejudice and amending its complaint to delete them.

     GSUSA's withdrawal of those claims in the face of Rule 11 sanctions does not excuse

GSUSA's failure to produce its critical communications with Mercury.  If it had done so, consistent

with its discovery obligations, GSUSA's tarnishment claims would have instead been dismissed

in the early stages of the case.  The documents GSUSA withheld are highly relevant (and extremely

damaging) to GSUSA's tarnishment claims, resided in the files of GSUSA's identified document

custodians, and hit on search terms GSUSA disclosed to the BSA.  GSUSA's failure to produce

them is inexcusable.

     While the tarnishment claims were alive in this case, the BSA was forced to devote

significant sums defending itself against them without having the benefit of this critical discovery

wrongfully withheld by GSUSA.  This Court, facing similar circumstances, previously held that

"[w]here the parties have settled the issue as to which the undisclosed information pertained, as

they have in this case, reimbursement for the expense of unnecessary litigation caused by the

failure to disclose is the most appropriate sanction."  *In re Sept. 11th Liab. Ins. Coverage Cases*,

243 F.R.D. 114, 132 (S.D.N.Y. 2007) (Hellerstein, J.).  The Court should do likewise here and

sanction GSUSA for its failure to produce indisputably claims-dispositive documents, in the form

of an order awarding the BSA its fees and costs incurred due to GSUSA's discovery failures.

## FACTS

GSUSA brought this suit on November 6, 2018, alleging multiple causes of action

including federal and state dilution-by-tarnishment claims.  *See* Dkt. 1 ¶¶ 113-121, 134-139.

### The BSA's First Set of Document Requests to GSUSA

On February 11, 2019, the BSA served its first set of requests for documents on GSUSA,

seeking among other things:

(1) "All Documents concerning [GSUSA's] cause of action in the Complaint for federal trademark dilution under 15 U.S.C. § 1125(c) (Count III)" (RFP 5);

(2) "All Documents concerning [GSUSA's] cause of action in the Complaint for trademark dilution under New York General Business Law § 360-l (Count VI)" (RFP 8); and

(3) "All Documents concerning Communications issued by GSUSA to any segment or member of the public concerning the BSA, services offered by the BSA, or the BSA Marks used in connection to the BSA's programs servicing girls since January 1, 2017" (RFP 50).

Jenkins Decl. ¶ 3 & Ex. A.[1]  On June 6, 2019, this Court issued an order requiring that the parties

"complete all of their document production in response to their first sets of discovery requests by

June 28, 2019."  Dkt. 37 at 1 ("June 6 Order").

During discovery, GSUSA agreed that it would run the search terms BSA or "Boy Scout*"

or BS across the documents collected from custodians Joshua Ackley, Christine Butler, Valerie

Gallagher, and Lynn Godfrey and produce responsive documents that were found.  Jenkins Decl.

---

[1]   All the exhibits cited herein are attached to the Declaration of Sara Jenkins ("Jenkins Decl.").
These RFPs and GSUSA's responses are set forth in Exs. A and B.  As to RFP 50, GSUSA limited
its response by stating that it was only refusing to produce the subset of communications issued
by GSUSA "to its councils, troops and leaders" (which are not at issue in this motion) unless
responsive to another request; GSUSA did not disclose it would be withholding communications
to or from its public strategy firm Mercury.  Ex. B (Resp. to RFP 50).

¶ 5.  GSUSA also searched, and produced responsive documents from, custodians Sylvia Acevedo (GSUSA's then-CEO) and Michael Lopes, among others.  *Id.* ¶ 4.

**The BSA's Subpoena to Mercury Public Affairs, LLC**

In October 2019, the BSA served a third-party subpoena on Mercury Public Affairs, LLC ("Mercury"), GSUSA's public strategy firm.  *Id.* ¶ 6 & Ex. C.  The BSA sought production of, among other things, all documents and communications generated or received by Mercury referencing the BSA.  *Id.* (RFP 4).  In response, Mercury—represented by Dorsey & Whitney, which is also acting as counsel to GSUSA—agreed to produce "non-duplicative, non-privileged documents and communications created in connection with its work for GSUSA and referencing the BSA."  Ex. D (Resp. to RFP 4).

Fact discovery closed on December 20, 2019.  Dkt. 61.  However, despite repeated requests, Mercury failed to make any production of documents until February 6, 2020 (the day before this Court's status conference), at which time Mercury produced over 2,900 documents totaling approximately 15,000 pages.  Jenkins Decl. ¶ 8.

On February 18, 2020, before the BSA's counsel had the opportunity to review Mercury's production, the BSA filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, which automatically stayed all litigation activity pertaining to this action.  Dkt. 68.  That stay was lifted on July 23, 2020.  Dkt. 72.

**Mercury's Document Production Reveals GSUSA's Execution of a ███████████████████████████████████████████ in the Run-up to GSUSA's Filing of This Lawsuit**

Mercury's production revealed that in spring and summer 2018, GSUSA ███████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████  Ex. E (emphasis



added).[2]  As part of this ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████.

   Specifically, Mercury's internal documents show that in spring 2018, GSUSA ████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████. *See, e.g.*, Exs. F,

G. ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████. *See,*

*e.g.*, Exs. H, I, J. ████████████████████████████████████████████

██████████████████████████████████████████████. *See* Ex. K; *see also, e.g.*,

Exs. L, M, N. █████████████████████████████████████████████████

████████████████████████████████████████████████████████ Ex. J.

████████████████████████████████████████████████████████████ in its

Complaint ████████████████████████ alleged "particular concerns" about being associated

with the BSA because the BSA "has received significant negative publicity regarding its activities

conducted under the BOY SCOUTS and SCOUTS marks."  Dkt. 1. ¶ 86 & n.2.[3]

---

[2]   In July 2018, Mercury ██████████████████████████████████████████████

████████████████████████████████████████████████████████. Ex. O.

[3]   ████████████████████ aligns with GSUSA's apparent purpose for filing its Complaint: alarmed by the loss of its "monopoly," GSUSA recognized that "[w]ith Boy Scouts opening up their doors to girls, this means that girls who are having a bad experience have options."  Ex. YY. GSUSA responded by adopting Mercury's recommendations "for stopping BSA in individual markets" through the use of "<u>litigation – to principally create uncertainty</u> for teachers, administrators, and parents," and then "communicat[ing]" those "legal actions to target publics [sic] in markets and nationally."  Dkt. 123-1, Scher Decl. Ex. IIII (at GSUSA_00158172) (emphasis added).

**Mercury's Production Confirms That GSUSA Had Failed to Produce Critical Communications with Mercury in Discovery, Thereby Concealing the** ██████████ ████████████████████████

Notwithstanding the BSA's February 2019 discovery requests and the June 6 Order setting a deadline for document production, GSUSA failed to produce more than a hundred indisputably responsive, relevant documents from its own files bearing on GSUSA's tarnishment claims, which only came to light because of Mercury's document production.[4]  GSUSA's unproduced documents consist of communications between GSUSA and Mercury specifically about the BSA, concerning subjects such as ████████████████████████████████████ ███████████████████████████████████ in the run-up to its filing of its tarnishment claims in this action.

Relevant here, the nature of GSUSA's involvement in ████████████ only became apparent from Mercury's production of more than 130 emails <u>with GSUSA</u> that were not—but should have been—produced by GSUSA.  These documents reveal how GSUSA ████████ ████████████████████ this lawsuit.  For example:

- ██████████████████████████████████████████ ██████████████████████████████████████████ ████████ Ex. Q.

- ██████████████████████████████████████████ ██████████████████████████████████████████ ████████ Exs. R, S.

- ██████████████████████████████████████████ ██████████████████████████████████████████

---

[4]    The BSA attaches as Exhibit P a list of 133 Bates numbers reflecting emails between GSUSA custodians and Mercury that were produced by Mercury, but not GSUSA, and reference the BSA. The BSA has not attached each of these documents to this motion due to their volume, but would be happy to submit them to the Court upon request.



Ex. T.

- ████████████████████████████████████. Ex. U.

- ████████████████████████████████ Ex. V.

- ████████████, just days after GSUSA filed its Complaint, ████████████████████████████████ Ex. W.

- ████████████████████████████. Ex X.

- ████████████, shortly after GSUSA filed this lawsuit, ████████████████████████████████. Ex. Y.

- ████████████████████████ Ex. Z.

- ████████████████████████████ Ex. AA.

- ████████████████████████████

Ex. BB.



- ████████████████████████████████████
  ████████████████████████████████████
  ██████████.  Ex. CC.

- ████████████████████████████████████
  ████████████████████████████████████
  ████████████.  Ex. DD.

- ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████  Ex. EE.

- ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████  Ex. FF.

- ████████████████████████████████████
  ██████  Ex. GG (at MERCURY_00008082).  ██
  ████████████████████████████████████
  ██████████████████████  *Id.* (at
  MERCURY_00008083).

- ████████████████████████████████████
  ████████████████████████████████████
  ██████████████  Ex. HH.

- ████████████████████████████████████
  ████████████████████████████████████
  ██████████████████████  Ex. II.

- ████████████████████████████████████
  ████████████████████████████████████
  ██████  Ex. JJ.

- ████████████████████████████████████
  ████████████████████████████████████
  ██████████  Ex. KK.

*See also, e.g.*, Exs. LL–NN (

███████); Exs. OO–QQ (██████

██████████); Exs. RR, SS (███████████

███████); Exs. TT–XX (██████████████████).

As stunning as these withheld emails are, they are not isolated examples.  GSUSA failed to produce over 300 communications with Mercury, including over 130 specifically about the BSA, on subjects such as ██████████████████████████ in the run-up to the filing of this lawsuit.  Jenkins Decl. ¶ 21.  These documents should have been produced by April 30, 2019 as GSUSA initially promised, *id.* ¶ 3, or certainly by no later than June 28, 2019, as directed by the Court's June 6 Order.[5]

GSUSA's failure to produce these relevant (and damaging) documents is particularly troubling given that GSUSA previously disclosed: (1) it collected custodial documents from Mr. Ackley; and (2) it ran search terms that would have hit on these documents—including "**Boy Scout\***," "**BSA**," and "**BS**." *Id.* ¶ 5.  All of the unproduced ███████ emails were sent from or to custodians that GSUSA collected documents from and explicitly referenced the BSA.  *Id.* ¶ 21.  GSUSA's counsel has yet to provide any explanation for failing to produce them.[6]

---

[5]   Of course, these withheld documents are the ones which have come to light thus far.  Given GSUSA's multiple production failures, *see also infra* n.6, there may be additional damaging documents pertinent to this action that GSUSA has failed to produce but which Mercury did not possess or produce (such as GSUSA internal documents concerning its ██████████████, and possibly concerning other subjects pertinent to GSUSA's anti-competitive conduct toward the BSA).

[6]   GSUSA's failure to produce these Mercury documents is yet another example of GSUSA's efforts to withhold unfavorable information in discovery.  For example, GSUSA previously made baseless redactions on hundreds of its produced documents on grounds of purported "non-responsiveness."  The BSA discovered that many of these redactions concealed highly relevant information damaging to GSUSA's claims.  As one example, GSUSA redacted as "non-responsive" a highly relevant PowerPoint slide showing that, ██████████████████████████

## The BSA's Rule 11 Motion

On October 30, 2020, shortly after completing its review and investigation of the Mercury documents, the BSA served GSUSA with a notice of motion for sanctions pursuant to Rule 11, identifying documents obtained from Mercury and seeking GSUSA's withdrawal and dismissal of its tarnishment claims, on the basis that GSUSA ███████████████████████████████████. Jenkins Decl. ¶ 61.  In response, GSUSA agreed to file a stipulated dismissal with prejudice of its tarnishment claims on November 19, 2020, which this Court so-ordered on November 20, 2020. Dkt. 88.  GSUSA thereafter filed an Amended Complaint removing its tarnishment claims.  Dkt. 89.[7]

To date, GSUSA has proffered no colorable excuse for its failure to produce these critical Mercury documents.  Jenkins Decl. ¶ 63.[8]

---

████████████████████████████████████████████████████████  GSUSA agreed to remove its groundless "non-responsiveness" redactions only after receiving the BSA's portion of a motion to compel. *See* Dkt. 40 at 2, 6-11 (detailing GSUSA's improper redactions to relevant, damaging documents on grounds of purported "non-responsiveness").

[7]   Because GSUSA dismissed with prejudice its tarnishment claims on November 19, 2020 in response to the BSA's service of a Rule 11 motion, those claims are not at issue in the BSA's currently-pending motion for summary judgment, filed November 24, 2020.  Dkt. 97.

[8]   The BSA submits this motion pursuant to the Court's Individual Rule 2.B.  *See, e.g.*, *Novick v. AXA Network, LLC*, No. 07-cv-7767, ECF No. 243 at 2 (S.D.N.Y. Mar. 19, 2014) (Hellerstein, J.) (Court "not[ing] that under my Individual Rule 2.B," a party "may, if he wishes, file a new motion [seeking sanctions under Rule 37]").  And while there is no meet-and-confer requirement prior to filing a motion seeking sanctions under Rule 37(b) or (c), the BSA nevertheless attempted to solicit GSUSA's explanation for its production failures.  *See* Jenkins Decl. ¶ 63; *see also, e.g.*, *Kelly v. City of N.Y.*, 2007 WL 1746912, at *3 (S.D.N.Y. June 15, 2007) ("sanctions are warranted under Rule 37(b)(2), which does not require parties to meet and confer prior to imposing sanctions"); *Capricorn Mgmt. Sys., Inc. v. Gov't Employees Ins. Co.*, 2019 WL 5694256, at *5 (E.D.N.Y. July 22, 2019) ("Rule 37(c)(1) contains no meet and confer requirement"); *see also* Court's Individual Rule 2.B ("Motions may be filed in the discretion of the attorneys.").

**LEGAL STANDARD**

**Rule 37(b).**  Rule 37(b) "provides that sanctions are appropriate if a party fails to obey an order to provide discovery, and that sanctions can extend to … the paying of the reasonable expenses, including attorneys' fees, incurred due to a party's failure to obey a discovery order." *Novick v. AXA Network, LLC*, 2015 WL 13686754, at *1 (S.D.N.Y. Jan. 5, 2015) (Hellerstein, J.); *see also* Fed. R. Civ. P. 37(b)(2).  "The only predicates to the imposition of sanctions under Rule 37(b) are a 'court order directing compliance with discovery requests' and 'non-compliance with that order.'"  *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2019 WL 4727537, at *18 (S.D.N.Y. Sept. 26, 2019) (quoting *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, 2017 WL 2840279, at *9 (S.D.N.Y. June 27, 2017)).  Upon finding a Rule 37(b) violation, a court must award reasonable expenses and attorney's fees on the disobedient party unless the court finds that "the failure was substantially justified or that other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2).  Willfulness, bad faith and prejudice to the receiving party are not required, but may be relevant to the selection of the appropriate sanction.  *Joint Stock Co.*, 2019 WL 4727537, at *18.

**Rule 37(c).**  Under Rule 37(c), the Court may impose sanctions if a party fails to supplement an earlier discovery response as required by Rule 26(e).  Fed. R. Civ. P. 37(c)(1); *see also Boyde v. Monroe Cty.*, 2011 WL 4457668, at *3 (W.D.N.Y. Sept. 23, 2011) ("Under Rule 37(c), a party's failure to supplement an earlier discovery response is sanctionable.").  The Court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure," *Gateway, Inc. v. ACS Commercial Sols., Inc.*, 2009 WL 10695887, at *13 (S.D.N.Y. Sept. 18, 2009).  To obtain sanctions under Rule 37(c), the moving party must show:  "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing

evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find

that it would support that claim or defense." *Scantibodies Lab., Inc. v. Church & Dwight Co., Inc.*,

2016 WL 11271874, at *18 (S.D.N.Y. Nov. 4, 2016). To avoid sanctions, the responding party

must prove that its noncompliance was either "substantially justified" or "harmless." *Id.* at *17.

## ARGUMENT

## I. GSUSA'S FAILURE TO PRODUCE DOZENS OF COMMUNICATIONS CONCERNING ITS ███████████████ AGAINST THE BSA IN THE RUN-UP TO THIS LAWSUIT VIOLATES RULE 37(b)

The only two predicates to Rule 37(b) sanctions – a court's discovery order and non-

compliance with that order – are met here.

*First*, under the June 6 Order regarding the BSA's first set of document requests, GSUSA

was instructed to "complete all of [its] document production … by June 28, 2019." GSUSA failed

to comply with the Order by failing to produce all of its relevant communications with Mercury

as described above. The Mercury documents are responsive to the BSA's requests "concerning"

GSUSA's tarnishment claims, as well as documents "concerning [c]ommunications issued by

GSUSA to any segment or member of the public concerning the BSA, services offered by the BSA,

or the BSA Marks used in connection to the BSA's programs servicing girls since January 1, 2017."

Ex. A; *see also* 15 U.S.C. § 1125(c)(2)(C) ("tarnishment" occurs from association that "harms the

reputation" of a famous mark). The unproduced Mercury documents also hit on the search terms

GSUSA disclosed, for the custodians GSUSA identified.

*Second*, GSUSA failed to produce these documents in compliance with the June 6 Order.

All of these documents: (1) were within the files of GSUSA's identified custodians (with nearly

all including Mr. Ackley); and (2) made explicit reference to the BSA, including by hitting specific

search terms GSUSA disclosed using on Mr. Ackley's files, including "Boy Scout*," "BSA," and

"BS." Jenkins Decl. ¶¶ 5, 21 & Ex. P. Nor does this implicate just one or two overlooked

documents – there are dozens of incriminating communications with Mercury, confirming this was not a one-off, inadvertent omission.  *See* Exs. P-XX.  By failing to produce these documents, GSUSA failed to comply with the Court's June 6 Order.  GSUSA never represented that such documents existed and were being withheld.  It was only when the BSA subpoenaed and obtained documents from third-party Mercury that GSUSA's failure came to light.

GSUSA has offered no basis to deem its failure to produce as "substantially justified" or otherwise excusable.  All of the withheld documents predate the June 28, 2019 production deadline set forth in the June 6 Order.  Dkt. 37.  "[T]he Second Circuit has emphasized the importance it places on a party's compliance with discovery orders, and has warned that a party who flouts such orders does so at his peril."  *Medina v. Gonzalez*, 2010 WL 3744344, at *15 (S.D.N.Y. Sept. 23, 2010) (quotations omitted).  Sanctions under Rule 37(b) are warranted.

## II.   GSUSA'S FAILURE TO SUPPLEMENT ITS PRODUCTION WITH ALL OF ITS COMMUNICATIONS WITH MERCURY ALSO VIOLATES RULE 37(c)

Sanctions against GSUSA independently are warranted under Rule 37(c), as GSUSA's failure to timely supplement by producing all of its relevant communications with Mercury easily satisfies all three elements of the Rule 37(c) sanctions test.

*First*, for the reasons stated above, *see supra* Part I, GSUSA has "control" over the documents, as all of the documents at issue included a GSUSA custodian as either a sender or recipient.  *See* Jenkins Decl. ¶¶ 4, 21 & Ex. P.  GSUSA had an obligation to produce these documents, as they were called for by the BSA's document requests, GSUSA never objected to their production, and they are relevant to (and indeed were dispositive of) GSUSA's tarnishment claims in this action.  *Id.* ¶¶ 61-62 & Exs. A, B.  Moreover, GSUSA agreed to produce such documents when it confirmed that Mr. Ackley was a custodian from whom documents were collected, and that the search terms GSUSA ran on his custodial files included "Boy Scout*,"

"BSA," and "BS." *Id.* ¶ 5. GSUSA has yet to explain why its production omitted a trove of BSA-related communications with Mercury.

*Second*, the record confirms that GSUSA had a "culpable state of mind." This element is satisfied by a showing that "a party has breached a discovery obligation … through bad faith or gross negligence [or] ordinary negligence." *In re Sept. 11th Liab. Ins.*, 243 F.R.D. at 125. Here, GSUSA produced select emails with Mercury, including at least one email ████████████ ████████████████████████████ referenced above. *See* Ex. AAA. GSUSA withheld more than 130 responsive, damaging emails that undermined the core of its tarnishment claims. While even mere negligence is enough, here, the Court has more: the volume of the withheld documents and the fact that these documents hit on disclosed search terms for identified custodians allows the Court to reasonably infer that GSUSA acted with "bad faith or gross negligence." That these documents undermine GSUSA's claims, implicate ███████ ████████████████████████, and reflect poorly on GSUSA as an organization, are yet more reasons why the Court can reasonably infer negligence and/or bad faith.

*Third*, the "relevance" element is easily met. The withheld documents here are highly relevant to the BSA's defense against GSUSA's tarnishment claims, establishing that GSUSA ████████████████████████████████████████████████████ ████████████████████████████. GSUSA's failure to produce caused the BSA injury, including in the form of the BSA's many months of defense costs incurred with respect to GSUSA's tarnishment claims, and related efforts to secure discovery from Mercury.[9]

---

[9] While the relevance of these documents is unquestionable, it bears noting that "a finding that a party breached its discovery obligations in bad faith is sufficient to establish the relevance of untimely produced … evidence as a matter of law; a finding that a party breached its obligations through gross negligence is 'frequently' sufficient." *In re Sept. 11th Liab. Ins.*, 243 F.R.D. at 125. Thus, even assuming "the breach of discovery obligations was merely negligent," "the negligent

Moreover, these documents are also relevant to the damages GSUSA seeks to recover in this action, including ██████████ in GSUSA payments to Mercury under its 2018 Professional Services Agreement, which GSUSA claims as a form of "corrective advertising."  *See* Dkt. 136 ¶¶ 9, 19, 21-22, 30 (Declaration of Susan Swanson, Vice President of Customer Initiatives and Network Alignment, GSUSA).  When asked to produce Mercury's Statement of Work (SOW) specifically for the █████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████  The type of work referenced in MERCURY_00005074 [██████████████████████████ ] ████████████████████████████████████████████████████████████ ████████████████████████████"  Jenkins Decl. ¶ 60.  This is consistent with both the ██████████████████████████████  as well as GSUSA executive Ms. Swanson's recent declaration testimony.  *See* Dkt. 110-6 (Scher Decl., Ex. HHHH at GSUSA_00124941) (██████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████); Dkt. 136 ¶ 10 (Swanson Decl.) ("Boy Scouts is the 'competitor' referenced in the Professional Services [A]greement.").  In other words, GSUSA████████████████████████████████████████████████████████ █████████████████████████████asserted in this lawsuit – ███████████████████ ██████████████████████████████████████████████.

---

party should sustain liability for breaching its discovery obligations where such breach causes injury."  *Id.*

10   GSUSA_00184472 is an unsigned draft of ████████████████████████████████, Dkt. 110-6 (Scher Decl., Ex. HHHH).

*Finally*, for the reasons set forth above, GSUSA's failure to produce was neither "substantially justified" nor "harmless." GSUSA's failure to produce these materials forced the BSA to incur substantial attorney's fees and costs in defending against GSUSA's tarnishment claims for many more months – fees and costs that could have been avoided, had GSUSA honored its discovery obligations. Indeed, this Court previously relied on Rule 37(c) to impose sanctions on a party's "untimely production of documents and information required to be produced" that, if produced earlier, would have significantly obviated discovery expenses. *In re Sept. 11th Liab. Ins.*, 243 F.R.D. at 125 (Hellerstein, J.).

## III.    AS A SANCTION FOR GSUSA'S VIOLATIONS OF RULE 37, THE COURT SHOULD AWARD THE BSA ITS RELATED COSTS AND ATTORNEY'S FEES

Once a Rule 37(b) violation is established, "the Court <u>must</u> grant [the] sanctions [in the form of reasonable attorney's fees and costs] unless Plaintiff's counsel establishes that [the] 'failure was substantially justified or other circumstances make an award of expenses unjust," neither of which is demonstrated here. *E.L.A. v. Abbott House, Inc.*, 2020 WL 5682019, at *5 (S.D.N.Y. Sept. 24, 2020) (emphasis in original). Under Rule 37(c), "[a]ppropriate sanctions" for failure to supplement "may include 'payment of reasonable expenses, including attorney's fees, caused by the failure.'" *In re Sept. 11th Liability Ins.*, 243 F.R.D. at 132 (quoting Fed. R. Civ. P. 37(c)(1)). This is because such a remedy "will restore the parties to the position they would have occupied but for the breach of discovery obligations and deter future misconduct." *Id.* at 131-32. "[O]rdering the problem party to pay the aggrieved party's reasonable expenses, including attorney's fees … is considered 'the least severe' of the sanctions provided by Rule 37." *Stingray Music USA, Inc. v. uCast LLC*, 2020 WL 2489069, at *1 (S.D.N.Y. May 14, 2020) (Hellerstein, J.).

16

Had GSUSA produced these documents, BSA would have saved significant costs and attorney's fees in connection with defending itself against GSUSA's tarnishment claims, including:

- The BSA's preparation of a subpoena to Mercury for and reviewing Mercury's extensive document production on this subject;

- The BSA's participation in meet-and-confers, including extensive written correspondence, on GSUSA's baseless tarnishment claims;

- The expense of preparing motions relating to GSUSA's baseless tarnishment claims;

- The BSA's preparation for and taking and defending of depositions on the subjects of GSUSA's baseless tarnishment claims;

- The BSA's participation in multiple mediation sessions during which this information remained withheld;

- The BSA's preparation of and response to written discovery on, and collecting documents response to, GSUSA's baseless tarnishment claims; and

- The cost of preparing the instant motion, *see* Fed. R. Civ. P. 37(b).

The BSA should be compensated for these fees and costs.  *See, e.g.*, *Scantibodies Lab.*, 2016 WL 11271874, at 37 ("where excusing a party's dilatory conduct would have the effect of causing another party to incur additional costs that it would not have otherwise incurred, it may be appropriate for the court to shift those costs to the party at fault"); *Creative Res. Grp. of N.J., Inc. v. Creative Res. Grp., Inc.*, 212 F.R.D. 94, 103 (E.D.N.Y. 2002) (aggrieved party "is entitled to … costs incurred in certain third party discovery necessitated by the defendants' bad behavior"); *Meyo v. Kang*, 2015 WL 13882427, at *3 (S.D.N.Y. Dec. 18, 2015) (ordering payment of cost of taking unnecessary depositions).  GSUSA cannot hide behind the fact that the BSA ultimately obtained the documents from Mercury, as "even if the discovering party ultimately obtains, through Herculean and expensive effort, the discovery to which it was entitled, that does not preclude it from being awarded appropriate relief to remedy the injury, including monetary relief,

that it has suffered." *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 2009 WL 855955, at *5 (S.D.N.Y. Mar. 24, 2009).

The Court should award the BSA its costs and reasonable attorney's fees in connection with defending itself against GSUSA's tarnishment claims as of the date these documents should have been produced, through the date of the dismissal of those claims.[11]  In addition, the Court should hold GSUSA and its counsel jointly and severally liable, particularly given that GSUSA's counsel is also counsel for Mercury, and that such counsel took no steps to correct this failure to produce. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 527 (2d Cir. 1990) (affirming sanction holding client and counsel "equally responsible for the failure to comply with discovery requests and court orders").  Should the Court grant the BSA's motion, the BSA promptly will provide an accounting of its costs and attorney's fees corresponding to the categories of work necessitated by GSUSA's failure to produce these documents concerning its improper actions.

## CONCLUSION

The BSA respectfully requests that its motion be granted, and the Court award the BSA: (1) its reasonable attorney's fees and costs incurred due to GSUSA's misconduct; (2) monetary penalties at the Court's discretion, to discourage and deter such misconduct in the future; and (3) such other relief as the Court deems just and proper.

Dated:  December 31, 2020                    Respectfully submitted,

                                             By:  */s/ Rachel Kassabian*
                                                  Rachel Kassabian (*pro hac vice*)
                                                  rachelkassabian@quinnemanuel.com
                                                  Margret M. Caruso

---

[11]   The Court may also issue monetary penalties against GSUSA "to deter those who might be tempted to engage in such conduct in the absence of such a deterrent." *Kim v. Columbia Univ.*, 2009 WL 528604, at *16 (S.D.N.Y. Mar. 2, 2009) (quotations omitted).  GSUSA's failure to produce documents concerning its improper actions taken in the months before and after initiating this litigation (as described herein) and should be penalized for deterrent purposes.

margretcaruso@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5005
Facsimile: (650) 801-5100

Todd Anten
toddanten@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212)  849-7100

*Attorneys for Defendant Boy Scouts of America*