

BRUCE R. EWING
Partner
(212) 415-9206
FAX (212) 953-7201
ewing.bruce@dorsey.com

January 11, 2021

**BY ECF**
The Honorable Alvin K. Hellerstein
United States District Court
 for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

       Re:   *Girl Scouts of the United States of America v. Boy Scouts of America*
              18-cv-10287 (AKH)

Dear Judge Hellerstein:

     We are counsel to non-party Mercury Public Affairs LLC ("Mercury") and to plaintiff Girl Scouts of the United States of America ("Girl Scouts") in the above-referenced matter. Pursuant to the Court's Individual Rule 4, Mercury submits this letter in support of its motion to seal certain documents (the "Documents") it produced in response to a subpoena from defendant Boy Scouts of America that contain confidential, proprietary and commercially sensitive information, and that Boy Scouts has filed with its Motion for Rule 37 Sanctions (the "Motion").[1] *See* Dkt. 150. The parties met and conferred in an unsuccessful attempt to narrow the scope of the sealing requests made in this letter motion.[2]

     The Documents are Exhibits E-O, Q-XX, and YY-ZZ to the Declaration of Sara Jenkins submitted in support of the Motion ("Jenkins Dec."), Dkt. 152. They consist of emails containing several categories of sensitive information, all of which warrant sealing: (a) confidential communications between Mercury and Girl Scouts relating to work being undertaken by Mercury on behalf of Girl Scouts; (b) Mercury's internal deliberations regarding that work; and (c) related confidential communications with members of the press.

---

[1] Girl Scouts joins this motion to seek the sealing of two documents it produced, and to the extent that certain Documents that are the subject of Mercury's application contain confidential information belonging to Girl Scouts as well.

[2] Reference is made herein to the accompanying Declaration of Dan Wilson, a Managing Director of Mercury, dated January 11, 2021 (the "Wilson Dec."), and to the previously filed Declaration of Barry Horowitz, Girl Scouts' Chief Revenue Officer, dated November 30, 2020 (the "Horowitz Dec."). *See* Dkt. 114.



The Honorable Alvin K. Hellerstein
January 11, 2021
Page 2

**Mercury's Business and the Nature of its Confidential Communications**

Mercury is a public affairs firm that works with its clients to develop media, communications and political strategies, including in relation to its clients' most critical issues. Wilson Dec., ¶¶ 4-5. Clients regularly reveal highly sensitive, non-public information to Mercury, including about organizational crises, business strategies, and organizational deficiencies. *Id.*, ¶ 5. Mercury and its clients (including Girl Scouts) have an understanding that such sensitive information will be kept confidential, and Mercury is diligent in maintaining that confidentiality. *Id.*, ¶ 6.

In 2018, Girl Scouts engaged Mercury to provide media relations and other services regarding the decision by Boy Scouts to admit girls to its core programs. In this context, Mercury has interacted with news organizations and journalists to explain the differences between Girl Scouts and Boy Scouts. *Id.*, ¶ 4.

Consistent with Mercury's regular custom, there has been an understanding among Mercury and Girl Scouts that their communications will be treated confidentially – unless Mercury is authorized to release specific information received from Girl Scouts. Mercury has acted consistently with this understanding. *Id.*, ¶ 7.

**The Court Should Seal the Confidential, Proprietary**
**And Commercially Sensitive Information in the Documents**

As a threshold matter, many of the Documents are not relevant to the claims in this action, which alone should be sufficient grounds to justify their sealing. *See United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption [of access] is low and amounts to little more than a prediction of public access absent a countervailing reason. Documents that play **no role** in the performance of Article III functions, such as those passed between the parties in discovery, **lie entirely beyond the presumption's reach**") (emphasis added); *see also Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 505 (E.D.N.Y. 1999) (same).

Here, Boy Scouts argues that the Documents are "highly relevant to the BSA's defense against GSUSA's [dilution by] tarnishment claims…" *See* Defendant's Memorandum of Law in Support of Its Motion for Sanctions [Dkt. 151, 154] ("BSA Rule 37 Mem.") at 14. Girl Scouts disagrees with this contention, but even if Boy Scouts were to have been correct in its view when the dilution-by-tarnishment claim was pending, that claim was dismissed before the Documents were filed, *see* Dkt. 88, such that they cannot be relevant to the merits of the case on Boy Scouts' own theory. Boy Scouts also argues that the Documents are relevant because the services Mercury rendered are encompassed by Girl Scouts' damages claim, BSA Rule 37 Mem. at 15, but that contention is false. Although Girl Scouts' damages claim includes a variety of corrective advertising expenses paid to Mercury, it does not include amounts paid to Mercury for the media relations services reflected in the Documents. *See* Declaration of Susan



The Honorable Alvin K. Hellerstein
January 11, 2021
Page 3

Swanson [Dkt. 136, 145], ¶¶ 11, 18-22, 28-30 (confirming that only fees paid by Girl Scouts to Mercury for certain types of services are part of Girl Scouts' damages claim, *i.e.* for digital marketing, community organizing and television advertising, not media relations services). To the extent there remains any doubt on the issue of relevance, Boy Scouts' failure to submit **any** of the Documents produced by Mercury on its pending summary judgment motion should lay that issue to rest.

Beyond the lack of relevance, it is well established that "[c]onfidential 'business information that might harm a litigant's competitive standing' may warrant protection from disclosure." *Coventry Capital US LLC v. EEA Life Settlements, Inc.*, No. 17-cv-7417 (VM) (HBP), 2017 U.S. Dist. LEXIS 182474, at *5-6 (S.D.N.Y. Nov. 2, 2017) (citing *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 598 (1978)); *Gelb v. Am. Tel. & Tel. Co.*, 813 F. Supp. 1022, 1035 (S.D.N.Y. 1993) (noting that "defendants' assertion that its competitors . . . could use [the information] to do competitive injury to the defendants is, on the facts of this case, a sufficient basis" for sealing); *Tropical Sails Corp. v. Yext, Inc.*, No. 14-cv-7582, 2016 LEXIS 49029, at *9 (S.D.N.Y. Apr. 12, 2016) (marketing and business development documents properly sealed); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (permitting redaction of documents disclosing advertising expenditures and plans, merchandising strategies, policies, and sales information); *Cumberland*, 184 F.R.D. at 506 ("Documents falling into categories commonly sealed are those containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like.").

Moreover, Mercury's status as a non-party warrants enhanced protection of its confidential materials. In *Amodeo*, the Second Circuit heard an appeal by a non-party law firm from a district court decision to release a report regarding union corruption that included information about the firm, which had represented the union. 71 F.3d at 1047, 1050-51. The court reversed with respect to one portion of the report and remanded for consideration on another, directing that "privacy interests of innocent third parties should weigh heavily in a court's balancing equation." *Id.* at 1050 (internal quotations and citation omitted). The Second Circuit found that "[s]uch interests, while not always fitting comfortably under the rubric of 'privacy,' are a venerable common law exception to the presumption of access" and that "Courts have the power to insure that their records are not 'used to gratify private spite or promote public scandal,' and have 'refused to permit their files to serve as reservoirs of libelous statements for press consumption.'" *Id.* at 1051 (citing *Nixon*, 435 U.S. 589).

Other courts have discussed the same principle. *See Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12-cv-6608 (PKC) (JCF), 2014 U.S. Dist. LEXIS 122732, at *2, 5 (S.D.N.Y. Sept. 2, 2014) (allowing documents containing confidential information concerning the business relationship between defendant and a non-party entity to be sealed, including because they were submitted in support of a non-dispositive motion to compel discovery); *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 11-cv-1209 (CSH), 2013 U.S. Dist. LEXIS 110400, at *59 (D. Conn. Aug. 5, 2013) (sealing information "in light of its non-party status and the potential



The Honorable Alvin K. Hellerstein
January 11, 2021
Page 4

for harm to its reputation and business from the release of its commercially sensitive business information").

    1.   Documents Containing Confidential Client Communications

Many of the Documents contain communications between Mercury and Girl Scouts regarding media strategy, including discussion of specific stories and journalists.  Jenkins Dec., Exhs. Q-W, Y-WW.  Several reflect communications between Mercury and Girl Scouts regarding political developments, including legislation to lengthen limitations periods applicable to claims by survivors of sexual abuse.  *Id.*, Exhs. X and XX.

Consistent with their understanding and common practice, Mercury has treated these communications with Girl Scouts as confidential.  The public disclosure of these communications would, thus, be contrary to a basic tenet of Mercury's relationship with Girl Scouts.  Wilson Dec., ¶ 7.

Disclosure could also cause other clients or potential clients of Mercury to question whether Mercury can keep communications private, which could only negatively impact Mercury's business.  In addition, revealing these documents publicly would allow Mercury's competitors to see the communications strategies used by Mercury in its work for a well-known client.  That too would place Mercury at a competitive disadvantage.  *Id.*, ¶ 8.  Indeed, Boy Scouts argued this very point in a recent motion to seal that the Court granted.  *See* Dkt. 160 at 3 (requesting materials be sealed because they "discuss the BSA's confidential analysis of communications strategies" and their public disclosure would put Boy Scouts at a "competitive disadvantage"); Dkt. 162 (1/8/21 Order granting motion).  For these reasons, the Documents reflecting communications between Mercury and Girl Scouts should be shielded from public disclosure.[3]

    2.   Documents Containing Confidential Communications with the Press

A good number of the Documents reflect communications between Mercury and individual reporters regarding various potential articles.  Jenkins Dec., Exhs. H-L and N.  Given that Mercury provides media relations services, it is critical that the firm maintain working relationships with journalists.  In fact, in the normal course, Mercury staff exchange information with reporters.  Wilson Dec., ¶ 9.

---

[3] Certain Documents addressed in this section begin with emails containing Girl Scouts' internal strategic discussions, including with respect to the media that are then forwarded to Mercury for additional discussion.  *See* Jenkins Dec., Exhs. GG, MM and TT.  Exhibit GG also contains an internal Girl Scouts media policy.  Beyond the fact that these communications are incorporated into ensuing communications between Girl Scouts and Mercury, the Girl Scouts' communications themselves would properly be sealed as confidential and commercially sensitive information of Girl Scouts, pursuant to the authorities cited herein and for reasons addressed previously by Girl Scouts.  *See* Horowitz Dec., ¶¶ 10-12.



The Honorable Alvin K. Hellerstein
January 11, 2021
Page 5

It is understood by Mercury and journalists that their communications will be treated confidentially by all participants thereto; as an exception, Mercury occasionally provides specific verified factual information to journalists on the understanding that the information may be published. Even in those situations, though, the fact of the communication between Mercury and the reporter is kept confidential because journalists do not wish to reveal sources, a well-established precept of a free press. *Id.*, ¶ 10.

For these reasons, it is necessary for Mercury to keep confidential its communications with journalists. If confidential discussions between Mercury and reporters became public, it could jeopardize the relationships Mercury has with the media. Weakening those relationships would likely harm Mercury's business by degrading Mercury's ability to serve clients who have come to the firm specifically for media relations services. *Id.*, ¶ 11.

There are other reasons why Mercury must maintain the confidentiality of these communications. In some instances, reporters want to ascertain the identity of the clients for whom Mercury is acting before proceeding with a story. With client consent, Mercury can reveal that information on the understanding that the journalist will not reveal it. *Id.*, ¶ 12.

Beyond that, the public disclosure of Mercury's confidential communications with reporters would disclose to its competitors Mercury's approach to conducting a critical aspect of its business: how Mercury provides (accurate) information to journalists and the nature of relationships Mercury has with specific journalists. Therefore, the disclosure of these communications could easily harm Mercury's competitive position. *Id.*, ¶ 13. Mercury has a substantial interesting in insulating these communications from public disclosure as, again, Boy Scouts itself successfully argued regarding its own communications. *See* Dkt. 160 at 3.[4]

3.  Documents Containing Confidential Internal Mercury Communications

Certain Documents contain internal Mercury communications regarding the services it is providing or might provide to Girl Scouts. *See* Jenkins Dec., Dkt. 152, Exhibits E-G, M and O. Consistent with its normal practices, Mercury does not reveal its internal communications regarding clients, given that such communications necessarily address private client information; strategies being formulated or employed for clients; and/or communications with the media. The disclosure of such internal Mercury communications would impair Mercury's relationships with clients and journalists. It also would provide a public view into Mercury's

---

[4] Certain Documents containing communications between Mercury and Girl Scouts (that were addressed in Section 1), begin with emails reflecting Girl Scouts' communications with reporters, which are then forwarded to Mercury. *See* Jenkins Dec., Exhs. R, W, KK, LL, RR, SS and UU. Those initial portions should not be treated any differently from the remainder of the Documents because: (i) they are incorporated into subsequent communications with Mercury; and (ii) they concern confidential communications with the media generally. Exhibit X contains communications between Girl Scouts and Capitol Hill staff, later forwarded to Mercury. This document should be sealed because it reflects Mercury-Girl Scouts strategy with respect to elected officials. *See Baker v. Seaworld Entm't, Inc.*, No. 14-cv-2129-MMA (AGS), 2017 U.S. Dist. LEXIS 182897, at *16 (Nov. 3, 2017 S.D. Cal.) (sealing "legislative strategies").



The Honorable Alvin K. Hellerstein
January 11, 2021
Page 6

essential business practices. It is therefore critical for Mercury not to disclose publicly its internal client-related deliberations. Wilson Dec., ¶ 14.[5]

4. Portions of Documents for Which Sealing Is Not Sought

Certain Documents addressed above have portions containing discrete pieces of public information for which sealing is not necessary or requested: (i) Exhibit DD at MERCURY_00004252-55; (ii) Exhibit FF at MERCURY_00011798-803; (iii) Exhibit MM at MERCURY_00004024-27; (iv) Exhibit SS at MERCURY_00008183-207; and (v) Exhibit VV at MERCURY_00014835-39. If the Court grants this application, then redacted versions of these Documents can and should be filed publicly by Boy Scouts.

5. Two Documents Produced by Girl Scouts Should Also Be Sealed, in Part

Boy Scouts' Motion relies on three documents produced by Girl Scouts and submitted under seal. Jenkins Dec., Exhs. YY, ZZ and AAA. Exhibit AAA does not need to be sealed. Exhibit YY contains market research information that is highly confidential and qualitatively similar to material produced by Girl Scouts (and Boy Scouts) that the Court has sealed previously. *See* Dkt. 116, 120 (allowing Scher Dec., Exh. WWWWW, Dkt. 110-15, to be filed under seal); Dkt. 162 (granting motion to seal documents including Ewing Dec., Exhs. 138-140, 179, Dkts. 149-27, 149-28, 149-29, 149-36). Exhibit ZZ consists of a cover email that need not be sealed and a confidential Girl Scouts' Board Task Force presentation, stamped confidential on every page, that contains confidential membership and financial data, media strategies and competitive information. For the reasons set forth above (with respect to media strategies) and in paragraphs 7-9, and 14 of the Horowitz Declaration, the presentation portion of this Exhibit should also be sealed. Dkt. 160 at 3 (requesting materials relating to membership, financial projections, and expenditures be sealed); Dkt. 162 (Order granting motion).

---

[5] Nine of the Documents, Jenkins Dec., Exhs. E, H, I, J, BB, CC, DD, EE, and GG, were the subject of a prior confidentiality challenge by Boy Scouts sent on September 25, 2020. Due to an internal calendaring error, Mercury's objections to those de-designation requests were provided to Boy Scouts within ten business days, rather than the seven business days provided for in paragraph 17 of the Stipulated Protective Order. *See* Dkt. 32. Boy Scouts has claimed that this three-business-day delay waived Mercury's confidentiality designations applied to those documents when they were produced. Given the lack of prejudice to Boy Scouts from the three-day delay in receiving those objections, Mercury requested that Boy Scouts reconsider its position on waiver. The parties decided not to litigate the waiver issue at that time. If Boy Scouts now opposes Mercury's sealing request based upon a purported waiver of confidentiality under paragraph 17 of the Protective Order, then Mercury also requests relief from the Court under paragraph 21 of that Order, which permits any party to seek relief from the mechanisms for maintaining confidentiality, including those contained in paragraph 17. It would be manifestly unjust to penalize Mercury – a non-party that did not even stipulate to the Protective Order – for a slight delay in objecting to confidentiality challenges raised as to Documents that were not filed until months later.



The Honorable Alvin K. Hellerstein
January 11, 2021
Page 7

We thank the Court for its time and attention to this matter.

                                                Respectfully Submitted,

                                                /s/ *Bruce R. Ewing*

                                                Bruce R. Ewing

Cc:  All Counsel of Record (by ECF)

51 West 52nd Street | New York, NY | 10019-6119 | **T** 212.415.9200 | **F** 212.953.7201 | dorsey.com