DORSEY & WHITNEY LLP
Bruce R. Ewing
Fara S. Sunderji
Jonathan Montcalm
51 West 52nd Street
New York, New York 10019
(212) 415-9200

*Attorneys for
Plaintiff Girl Scouts of the United States of America
and Mercury Public Affairs LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
GIRL SCOUTS OF THE UNITED STATES        :
OF AMERICA,                             :
                                        :         18-CV-10287 (AKH)
                     Plaintiff,         :
                                        :
         - against -                    :
                                        :
BOY SCOUTS OF AMERICA,                  :
                                        :
                     Defendant.         :
-------------------------------------------------------------X

## DECLARATION OF DAN WILSON

Dan Wilson, under penalty of perjury, declares:

1. I am a managing director of non-party Mercury Public Affairs LLC ("Mercury"), where I have worked since 2013.

2. I submit this Declaration in support of the Letter Motion to Seal Documents (the "Documents") that were filed by defendant Boy Scouts of America ("Boy Scouts") in connection with its Motion for Rule 37 Sanctions (the "Motion"). *See* Dkt. 150 (Motion), Dkt. 152 (Declaration of Sara Jenkins in Support of Motion, attaching the Documents).

3. The testimony set forth herein is based on my own personal knowledge or documents maintained by Mercury that I have reviewed.

4. Mercury is a public affairs firm that provides, among other things, media-relations and government-relations services to its clients. During my tenure with the firm, Mercury has provided services to Girl Scouts of the United States of America ("Girl Scouts"). Beginning in 2018, Mercury was engaged by Girl Scouts to, among other things, provide media-relations services pertaining to the decision by Boy Scouts to admit girls into its core programs. Part of those services involved interacting with news organizations and journalists regarding the differences between the two organizations.

**Mercury's Confidential Communications with Clients**

5. Mercury assists its clients in addressing their most sensitive issues by developing media, communications and political strategies. For Mercury to be effective in this role, clients must reveal their confidences to Mercury, including non-public information about organizational crises, business strategies and other proprietary material, and internal discussions regarding potential organizational deficiencies and challenges.

6. Given that Mercury regularly receives client confidences, Mercury is assiduous in treating client communications confidentially. Indeed, it is a fundamental understanding between Mercury and its clients that Mercury will act in this manner.

7. Consistent with Mercury's normal practices, it has been understood between Mercury and Girl Scouts that communications among the entities will be treated confidentially – unless Mercury is authorized by Girl Scouts to release specific information. Mercury has always acted consistently with this understanding. Therefore, the public disclosure of Mercury's communications with Girl Scouts would violate one of the most basic components of Mercury's relationship with Girl Scouts.

8. Such public disclosure would have other harmful consequences as well. For example, it could call into question for other clients or potential clients whether their communications with

Mercury would be kept confidential; that questioning could only adversely affect Mercury's business. Such disclosure also would reveal to competitors (and others) the strategies employed by Mercury in its representation of a high-profile client, which would likely place Mercury at a competitive disadvantage. As such, Mercury has a substantial interest in shielding materials reflecting its communications with Girl Scouts from public disclosure.

**Mercury's Confidential Communications with the Media**

9. As a firm that provides media-relations services, Mercury must maintain relationships with a range of journalists. In the normal course of Mercury's business, my colleagues and I communicate frequently with reporters.

10. It is understood by all participants that these communications are to be treated confidentially as a general matter. I note that, as an exception, Mercury does sometimes provide specific factual (and verified) information to journalists on the mutual understanding that it may be published. However, even in that context, the fact of the communication between Mercury and a reporter is kept confidential, given that journalists do not wish to have their sources or their discussions with sources revealed, principles that are widely accepted as critical to a free press.

11. For these reasons, keeping communications with journalists confidential is essential to maintaining relationships with them. If confidential communications between Mercury and reporters were made public, contrary to well-established expectations, it could jeopardize the relationships between the firm and the media. Any deterioration of those relationships would, in turn, likely harm Mercury's business by impairing Mercury's ability to serve clients who rely on Mercury specifically to provide public-relations services.

12. It is important to maintain confidentiality of discussions with the media for other reasons as well. For example, there are instances when reporters wish to know the clients on whose

behalf Mercury is acting, and, with client consent, Mercury is able to provide that information on the understanding that it will not be revealed.

13.     In addition, if confidential communications between Mercury and the media were revealed publicly, it would give our competitors unprecedented insight into the manner in which we conduct a critical part of our business. It would show how we communicate accurate information to journalists about issues of interest to our clients. It also would show the nature of the relationships Mercury has with specific journalists. As such, these confidential communications would be of interest to our competitors and their disclosure could easily harm Mercury's competitive position. Again, Mercury's interest in insulating these communications from public disclosure is substantial.

**Mercury's Confidential Internal Communications**

14.     Consistent with the practices described above, Mercury keeps its internal discussions regarding clients strictly confidential. Such internal discussions necessarily address private information provided by clients; strategies being considered, developed or employed on behalf of clients; and communications or potential communications with the media. For reasons explained above, the disclosure of Mercury's internal client-related discussions addressing these topics would harm its relationships with clients and journalists, while revealing its essential business practices. Mercury's interest in keeping its competitors and others from a public viewing of this information would be difficult to overstate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 11, 2021

DocuSigned by:
*Dan Wilson*
447B98CA0A1C4DD...
DAN WILSON