**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

WRITER'S DIRECT DIAL NO.
**(650) 801-5005**

WRITER'S EMAIL ADDRESS
rachelkassabian@quinnemanuel.com

January 14, 2021

**VIA ECF**
The Honorable Alvin K. Hellerstein
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:   *Girl Scouts of the United States of America v. Boy Scouts of America*, No. 18-cv-10287

Dear Judge Hellerstein:

We represent defendant Boy Scouts of America (the "BSA") in the above-referenced action. Pursuant to Your Honor's Individual Rule ¶ 4(B)(ii), we write in response to the January 11, 2021 letter to the Court by plaintiff Girl Scouts of the United States of America ("GSUSA") and its PR firm Mercury Public Affairs, LLC's ("Mercury") in support of their application to seal or redact certain of Mercury's and GSUSA's documents that have been filed by the BSA in connection with its Motion for Rule 37 Sanctions against GSUSA. *See* Dkt. 163 ("Jan. 11 Ltr.").

As noted in the BSA's December 31, 2020 letter seeking permission to temporarily file documents under seal, GSUSA and Mercury had not by that time informed the BSA whether it intended to request that certain documents be filed under seal, and if so, why. *See* Dkt. 153 at 1. Having now received their claimed justifications and the supporting declaration of Dan Wilson of Mercury ("Wilson Decl.") [Dkt. 164], the BSA hereby objects to Mercury's and GSUSA's requests to seal with respect to 43 of the 47 documents at issue.[1]

A.   **The Presumption Of Public Access Applies Because All of The Documents at Issue Are Relevant To The BSA's Pending Motion For Rule 37 Sanctions Against GSUSA**

Mercury's argument that the documents at issue do not have a presumption of public access (Jan. 11 Ltr. at 2) is incorrect. Mercury relies on *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995), but fails to include the entire quote from that case, which holds that "***[d]ocuments that play no role in the performance of Article III functions***, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach, and ***stand[ ] on a different footing than … a motion filed by a party seeking action by the court,*** *or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions*." *Id*. (emphasis added, citations omitted). The documents at issue here have been submitted by the BSA to the Court in

---

[1]   Specifically, the BSA objects to sealing Jenkins Decl., Exs. E-O, Q-W, Y-LL, NN-SS, UU-XX, and ZZ [Dkts. 155-1 – 155-18; 155-20 – 155-33; 155-35 – 155-40; 155-42 – 155-45; 155-47].

support of a motion that will require the Court to invoke its powers, and will affect its decisions. As such, there is a presumption of public access for the documents.

The contents of the documents GSUSA and Mercury now seek to seal paint a troubling picture GSUSA's litigation misconduct in this case.[2] *See, e.g.,* Declaration of Sara Jenkins in Support of the BSA's Motion for Rule 37 Sanctions ("Jenkins Decl."), Exs. E, Q, GG [Dkts. 155-1; 155-12; 155-28]; *see also* Dkt. 154 (the BSA's Memorandum of Law in Support of Its Motion for Rule 37 Sanctions) ("Rule 37 Motion") at 1-9. In October 2020, the BSA served GSUSA with a notice of motion for sanctions pursuant to Rule 11, seeking GSUSA's withdrawal and dismissal of its dilution-by-tarnishment claims. *See* Rule 37 Motion [Dkt. 154] at 10. In response, GSUSA conceded by filing a stipulated dismissal with prejudice of its tarnishment claims on November 19, 2020, which this Court so-ordered on November 20, 2020. *Id.*

These documents reveal what GSUSA secretly was doing in the months leading up to, and continuing after, its filing of this lawsuit against the BSA. GSUSA's pre-filing conduct implicated Rule 11, as GSUSA effectively acknowledged by dropping its tarnishment claims following the BSA's discovery of GSUSA's actions and invocation of Rule 11. While GSUSA and Mercury may wish to seal these documents to avoid embarrassment, that is not a proper ground for sealing. *See, e.g.*, *Nursing Home Pension Fund v. Oracle Corp.*, 2007 WL 3232267, at *5 (N.D. Cal. Nov. 1, 2007) (denying motion to seal deposition transcript filed with motion for terminating sanctions even though "embarrassment … may result if the public views" the information").[3]

**B.    Given GSUSA's Failure To Produce Most Of These Documents, It May Not Claim The Documents Are Entitled To Enhanced Protection As Third-Party Documents**

GSUSA incorrectly claims that these documents should receive "enhanced protection" because they were produced by a non-party (Mercury) rather than a party (GSUSA). Jan. 11 Ltr. at 3-4 n.4. Of the 43 documents at issue here, 34 are responsive communications between GSUSA and Mercury that GSUSA should have produced in this case, but did not. Jenkins Decl., Exs. Q-XX [Dkts. 155-12 – 155-45]. Indeed, GSUSA's failure to produce these documents underpins the BSA's Motion for Rule 37 Sanctions. Thus, these documents should be considered party documents for purposes of the sealing standard.

---

[2]  Your Honor's Individual Rule ¶ 4(B)(ii) that submissions "should not include confidential information sought to be filed under seal" prevents the BSA from providing greater detail in this letter. The BSA respectfully directs the Court to the underlying documents for their contents.

[3]  Contrary, to GSUSA's and Mercury's contention in the January 11 Letter, these documents are also relevant to GSUSA's damages claim. *Compare* Declaration of Susan Swanson in Opposition to the BSA's Motion for Summary Judgment [Dkt. 145] ¶¶ 28-30 (GSUSA damages claim description, seeking recovery for "grassroots mobilization" expenses targeting the BSA that GSUSA paid to Mercury), *with* Declaration of Dylan Scher ("Scher Decl."), Ex. HHHH [Dkt. 110-6] at GSUSA_00124941 (¶ 5) & -944 (Mercury Agreement, detailing components of "grassroots mobilization" work against the BSA); Rule 37 Motion [Dkt. 154] at 15; Jenkins Decl. [Dkt. 155] ¶ 60 (describing correspondence from GSUSA's counsel confirming relevance).

### C.     **GSUSA's And Mercury's Communications With The Press Should Not Be Sealed Because They Concern Matters of Public Knowledge**

GSUSA and Mercury fail to articulate any proper basis to seal their communications with the press. Jenkins Decl., Exs. H-L, N, R, S, W, KK, LL, RR, SS and UU [Dkts. 155-4 – 155-8; 155-10; 155-13, 155-14, 155-18, 155-32, 155-33, 155-39, 155-40]. A review of the documents themselves shows that they do not contain the types of confidential business information or trade secrets which courts have found are suitable for sealing. *See Coventry Capital US LLC v. EEA Life Settlements, Inc.*, 2017 WL 5125544, at *3 (S.D.N.Y. Nov. 2, 2017). For example, Exhibits H-L and N [Dkts. 155-4 – 155-8; 155-10] reflect communications between Mercury and a reporter, in which Mercury is providing information to the reporter so that the information will be published. Stated another way, these documents contain information that both GSUSA and Mercury were attempting to, and did, make public – not keep confidential. As such, these communications with journalists "implicat[e] matters of public knowledge," and should not be sealed. *See* Dkt. 120 at 2 (Court Order Resolving Motions to File Under Seal).

Similarly, Exhibits R, S, W, KK, LL, RR, SS and UU [Dkts. 155-13; 155-14; 155-18; 155-32; 155-33; 155-39; 155-40; 155-42] are communications between GSUSA and the press, then forwarded to Mercury, which should not be sealed. There is nothing about these eight emails that suggests the senders or recipients intended for them to be confidential. Instead, GSUSA was either seeking press (Exs. R, S, KK, LL) or responding to requests from the press for comment on stories that would be publicized, and then forwarding those to Mercury (Exs. W, RR, SS, UU).

#### 1.   *GSUSA and Mercury Have Already Publicly Disclosed Their Business Relationship*

Mercury's argument that six of these documents should remain sealed because Mercury keeps the identity of its clients confidential absent client consent is unavailing. Jan. 11 Ltr. at 5; Wilson Decl. ¶ 10. Here, the fact that Mercury represented GSUSA with respect to its public strategy work against its claimed competitor, the BSA, is already a matter of public record. *See* Wilson Decl. ¶ 10; Declaration of Susan Swanson in Opposition to the BSA's Motion for Summary Judgment [Dkt. 145] ¶¶ 8-11. Moreover, Mercury does not argue that GSUSA asked it to keep its identity confidential with respect to any of the documents at issue. *See, e.g.*, Jenkins Decl., Ex. J [Dkt. 155-6] at MERCURY_00001718 (Mercury correspondence to journalist); *cf.* Dkt. 110-6 (Scher Decl., Ex. HHHH) at GSUSA_00124931, ¶ 5(B) (Mercury Agreement).

#### 2.   *Any Concerns About Proprietary Journalist Contact Information Can Be Addressed Through Narrow Redactions To PII*

Mercury's claim that unsealing its communications with specific journalists would harm its relationships with journalists can be addressed by redacting the names and email addresses of the reporters and press contacts with whom Mercury communicated in these documents, while filing the remainder of the documents publicly. The BSA does not object to the redaction of personally identifying information ("PII") of Mercury's press contacts.

### D.  Emails Between GSUSA And Mercury Regarding Mercury's Media Relations Work For GSUSA Should Not Be Sealed

GSUSA and Mercury provide no reasonable basis under which to seal their discussions about Mercury's media relations work. Jenkins Decl., Exs. Q, T-V, Y-JJ, NN-QQ, VV-XX [Dkts. 155-12; 155-15 – 155-17; 155-20 – 155-31; 155-35 – 155-38; 155-43 – 155-45].[4]

With only one exception (Ex. GG [Dkt. 155-28]),[5] GSUSA concedes that these documents do not include GSUSA's confidential business strategies, in that GSUSA does not ask that they be sealed. *See* Jan. 11 Ltr. at 4 n.3 (seeking to seal Exs. GG, MM and TT [Dkts. 155-28, 155-34, 155-41], but not seeking to seal any of the other documents in this category).[6] For its part, Mercury argues that these documents should be sealed, but Mercury's arguments are flawed.

*First*, Mercury argues that the documents should remain sealed because it has assured GSUSA that it would keep the communications between the two organizations confidential, and that making these communications public would hurt its relationship with GSUSA, or potentially with other clients who expect confidentiality. Jan. 11 Ltr. at 2; Wilson Decl. at ¶¶ 5-8. But GSUSA does not seek to seal these documents (with the exception of Ex. GG), and GSUSA's initiation of this lawsuit is the only reason these documents have come to the attention of the Court.

*Second*, Mercury claims these documents contain confidential business information. A review of the documents confirms that they do not. For example, Exhibits CC, EE, KK, NN, PP, and VV [Dkts. 155-24, 155-26; 155-32; 155-35; 155-37; 155-43] represent communications between GSUSA and Mercury that contain links or text of public articles and limited commentary. No confidential business information is disclosed.

### E.  Mercury's Internal Discussions About Its Media Relations Work For GSUSA Should Not Be Sealed

Mercury fails to articulate any basis for sealing the five internal Mercury documents at issue here. Jenkins Decl., Exs. E-G, M & O [Dkts. 155-1 – 155-3; 155-9 ; 155-11].

---

[4] In their sealing letter, Mercury and GSUSA selectively disclose some of the contents of these communications, while concurrently arguing that the remainder of the communications, which contain negative or embarrassing information about GSUSA, should be sealed. *See* Jan. 11 Ltr. at 4. GSUSA should not be permitted to use the sealing process to paint an inaccurate picture of the true contents of these documents.

[5] Although GSUSA claims Exhibit GG contains confidential information, a review of this document suggests that GSUSA might have other reasons for keeping it under seal, such as to hide its own bad acts or prevent embarrassment. As discussed above, this is not a proper reason to seal a document. *See supra* Part A.

[6] The BSA does not object to the sealing of Exhibits MM and TT [Dkts. 155-34, 155-41].

### *1. GSUSA Does Not Claim These Documents Should Be Sealed*

Mercury's client, GSUSA, has not requested that these documents remain sealed. As such, Mercury's argument for sealing the documents (that the documents address private client information and strategies, the disclosure of which could impair Mercury's relationships with clients and journalists), falls apart. Jan. 11 Ltr. at 5. Nor do these documents disclose the identities of reporters. They describe PR work plaintiff GSUSA had commissioned Mercury to do – work that is highly relevant to this lawsuit. As such, the documents should not be sealed.[7]

### *2. Exhibits F and G Contain Information That Mercury Intended To Publicize And Should Not Be Sealed*

Exhibits F and G [Dkts. 155-2; 155-3] should not be sealed for the additional reason that they contain information that Mercury intended to share with third parties (and ultimately publicly). They do not reflect information intended to be kept confidential.

### F. **The Portion Of GSUSA's PowerPoint Quoted In The BSA's Motion For Sanctions Should Not Be Sealed As It Has Already Been Filed Publicly**

As part of its Motion for Summary Judgment, the BSA filed portions of a different version of Exhibit ZZ with redactions that were proposed by GSUSA. *See* Scher Decl., Ex. RRRRR [Dkt. 103-81]. In that version, GSUSA consented to publicly filing an exact replica of the slide located at GSUSA_00076678 in Exhibit ZZ. *See* Dkt. 103-81 at 12 (GSUSA_00068356). Because that slide has already been filed publicly, there is no basis for sealing it here.

### **Conclusion**

For the foregoing reasons, the BSA respectfully requests that the following materials be unsealed:

1. Exhibits E-O, Q-W; Y-LL, NN-SS, and UU-XX [Dkts. 155-1 – 155-18; 155-20 – 155-33; 155-35 – 155-40; 155-42 – 155-45], except that Exhibits H-L and N [Dkts. 155-4 – 155-8; 155-10] may be redacted to remove personally identifying information regarding reporters or press contacts;

2. Page GSUSA_00076678 of Exhibit ZZ [Dkt. 155-47], which may otherwise be redacted; and

3. The BSA's Memorandum of Law in Support of Its Rule 37 Motion [Dkt. 154] and the supporting Declaration of Sara Jenkins [Dkt. 155], except for any language that quotes or characterizes any specific exhibit that remains under seal.

---

[7]   The BSA's opposition to Mercury's sealing request is on the merits, and is not premised on grounds of waiver for Mercury having previously missed its deadline to object to the BSA's challenge to nine documents' confidentiality designations. The current dispute concerns sealing, not confidentiality designations under the Protective Order. *See* Jan. 11 Ltr. at 6 n.5.

5

The BSA does not object to the following materials being maintained under seal:

1. Exhibits X, MM and TT [Dkts. 155-19; 155-34; 155-41]; and

2. The redactions to Exhibit YY [Dkt. 155-46].

Further, GSUSA has confirmed that Exhibit AAA [Dkt. 155-48] may be unsealed and filed publicly.  Jan 11 Ltr. at 6.

Respectfully submitted,

*Rachel Kassabian*

Rachel Kassabian

*Attorneys for Defendant Boy Scouts of America*