**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GIRL SCOUTS OF THE UNITED STATES OF AMERICA, | Case No. 1:18-cv-10287 (AKH) |
| Plaintiff, | |
| v. | |
| BOY SCOUTS OF AMERICA, | |
| Defendant. | |

**DEFENDANT BOY SCOUTS OF AMERICA'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES**
**AND RELATED NONTAXABLE EXPENSES**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND .......................................................................................................2

    A.    The History Of The Parties ............................................................3

    B.    GSUSA's Initiation Of This "Litigation … To Principally Create Uncertainty" In The Marketplace ....................................................................3

    C.    The Unreasonable Manner In Which GSUSA Conducted This Litigation..............5

    D.    The Court's Opinion And Order Granting Summary Judgment In The BSA's Favor ..........................................................................7

LEGAL STANDARD ................................................................................................8

ARGUMENT .........................................................................................................10

I.    THE BSA SHOULD BE AWARDED ITS ATTORNEYS' FEES UNDER § 1117(a) BECAUSE THIS CASE "STANDS OUT FROM OTHERS" AND IS THUS EXCEPTIONAL .............................................................................10

    A.    GSUSA's Lawsuit Was Initiated As A "Competitive Ploy" ...............................11

    B.    GSUSA's Claims Were Objectively Unreasonable ...............................13

    C.    GSUSA Litigated The Case In An Unreasonable Manner ...................................15

    D.    An Award Of The BSA's Fees Would Advance Considerations Of Compensation And Deterrence ..............................................................16

II.    THE BSA SHOULD BE AWARDED ITS RELATED NONTAXABLE EXPENSES...18

III.    THE BSA SHOULD BE GRANTED LEAVE TO FILE A FEE APPLICATION DETAILING ITS REQUESTED ATTORNEYS' FEES AND RELATED NONTAXABLE EXPENSES ........................................................................19

IV.    ALTERNATIVELY, THE COURT MAY AWARD THE BSA ITS ATTORNEYS' FEES AND NONTAXABLE EXPENSES UNDER 28 U.S.C. § 1927 OR THE COURT'S INHERENT POWER ........................................................20

CONCLUSION .......................................................................................................21

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*4 Pillar Dynasty LLC v. N.Y. & Co.*,
   933 F.3d 202 (2d Cir. 2019) ............................................. 9

*Anastasia Int'l, Inc. v. EM Online Pty Ltd.*,
   2013 WL 5550211 (S.D.N.Y. Oct. 4, 2013) ............................ 11

*Baker v. Urban Outfitters*,
   431 F. Supp. 2d 351 (S.D.N.Y. 2006) ................................. 17

*Beijing Daddy's Choice Sci. & Tech. Co. v. Pinduoduo Inc.*,
   2020 WL 729518 (S.D.N.Y. Feb. 13, 2020) .................... 10, 17, 18

*Benihana of Tokyo, LLC v. Benihana, Inc.*,
   2018 WL 3574864 (S.D.N.Y. July 25, 2018) .......................... 16

*BoxNic Anstalt v. Gallerie degli Uffizi*,
   2020 WL 2991561 (D. Ariz. June 4, 2020) ........................... 10

*Cognex Corp. v. Microscan Sys., Inc.*,
   2014 WL 2989975 (S.D.N.Y. June 30, 2014) ...................... 10, 15

*Dinsbach v. Harris*,
   2022 WL 742726 (D. Ariz. Mar. 11, 2022) ........................... 18

*Dropbox, Inc. v. Thru Inc.*,
   2017 WL 914273 (N.D. Cal. Mar. 8, 2017) ....................... 18, 19

*Florida Int'l Univ. Bd. of Trs. v. Florida Nat'l Univ., Inc.*,
   2017 WL 3610583 (S.D. Fla. Aug. 11, 2017) ....................... 9, 14

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
   2021 WL 1172335 (S.D.N.Y. Mar. 26, 2021) ......................... 10

*H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd.*,
   2020 WL 6263649 (S.D. Cal. Oct. 22, 2020) ........................ 10

*Imapizza, LLC v. At Pizza Ltd.*,
   2021 WL 2410713 (D.D.C. June 8, 2021) ............................. 9

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*,
   2016 WL 1267159 (D. Del. Mar. 31, 2016) .......................... 16

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018) ......................................... 21

*Leapers, Inc. v. SMTS, LLC*,
   2017 WL 3084370 (E.D. Mich. July 20, 2017) ....................... 10

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998) ....................................... 18

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
   764 F. App'x 39 (2d Cir. 2019) ..................................... 9

*Manhattan Rev. LLC v. Yun*,
   2017 WL 11455317 (S.D.N.Y. Sept. 21, 2017) .................... 15, 16

*Mennen Co. v. Gillette Co.*,
    565 F. Supp. 648 (S.D.N.Y. 1983) ............................................................ 11

*Miller v. Hurst*,
    2021 WL 859552 (M.D. Tenn. Mar. 8, 2021) .................................... 10

*Next Realty, LLC v. Next Real Est. Partners LLC*,
    2019 WL 1757781 (E.D.N.Y. Mar. 11, 2019) .................................... 18

*Noble Biomaterials v. Argentum Med., LLC*,
    2011 WL 13113786 (M.D. Pa. Aug. 25, 2011) .................................. 20

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ..................................................................... 9, 10

*Oliveri v. Thompson*,
    803 F.2d 1265 (2d Cir. 1986) ............................................................ 21

*Partners for Health & Home, L.P. v. Yang*,
    488 B.R. 431 (C.D. Cal. 2012) .......................................................... 18

*Pocket Plus, L.L.C. v. Runner's High, LLC*,
    2022 WL 575593 (N.D. Iowa Jan. 11, 2022) .................................. 10

*Regeneron Pharms., Inc. v. Merus N.V.*,
    2018 WL 1472507 (S.D.N.Y. Mar. 26, 2018) .................................. 20

*Reply All Corp. v. Gimlet Media, Inc.*,
    2021 WL 1291103 (E.D.N.Y. Apr. 5, 2021) ................... 10, 12, 13, 15, 19, 21

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
    909 F.3d 519 (2d Cir. 2018) ..................................................... 9, 11, 16

*TNS Media Rsch. LLC v. TiVo Rsch. & Analytics, Inc.*,
    2018 WL 2277836 (S.D.N.Y. May 18, 2018) .................................. 20

*Tobinick v. Novella*,
    884 F.3d 1110 (11th Cir. 2018) ........................................................ 15

*Union Carbide Corp. v. Montell N.V.*,
    179 F.R.D. 425 (S.D.N.Y. 1998) ...................................................... 16

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
    123 F. Supp. 2d 582 (D. Kan. 2000) ................................................ 20

*Universal City Studios, Inc. v. Nintendo Co.*,
    797 F.2d 70 (2d Cir. 1986) ............................................................... 11

*VIDIVIXI, LLC v. Grattan*,
    2016 WL 4367972 (S.D.N.Y. Aug. 13, 2016) .............................. 10, 11

*Warren Tech., Inc. v. UL LLC*,
    2021 WL 4940833 (11th Cir. Oct. 22, 2021) .................................. 10

*Wyatt Tech. Corp. v. Malvern Instrs., Inc.*,
    2010 WL 11404472 (C.D. Cal. June 17, 2010) ................................ 18

*Zouvelos v. Sur. Fin. of Am., Inc.*,
    2018 WL 2075300 (E.D.N.Y. Jan. 29, 2018) .................................. 18

**<u>Rules / Statutes</u>**

15 U.S.C. § 1117(a) ........................................................................................ 1, 8, 9, 10, 11, 18, 20

28 U.S.C. § 1920 ........................................................................................................................ 18

28 U.S.C. § 1927 ............................................................................................................... 1, 20, 21

Fed. R. Civ. P. 26(a)(1) ............................................................................................................... 7

Fed. R. Civ. P. 54 ............................................................................................................. 1, 18, 19

Local Rule 6.4 ........................................................................................................................... 18

Local Rule 54.1 ......................................................................................................................... 18

Local Rule 56.1 ........................................................................................................................... 5

Following the Court's Opinion and Order granting Defendant Boy Scouts of America (the "BSA") summary judgment on all of Plaintiff's claims and dismissing the Complaint in its entirety, Dkt. 259 ("SJ Order"), the BSA now respectfully moves for: (1) an order that it is entitled to its reasonable attorneys' fees and related nontaxable expenses incurred as a result of successfully defending this action pursuant to 15 U.S.C. § 1117(a), 28 U.S.C. § 1927, the Court's inherent power, and Fed. R. Civ. P. 54(d); and (2) permission to file a fee application setting forth and supporting the amount and reasonableness of its fees and expenses.

## PRELIMINARY STATEMENT

By any measure, this trademark case is "exceptional" under the fee award provision of the Lanham Act.  That is, it "stands out from others."  As the summary judgment evidence showed, Girl Scouts of the United States of America ("GSUSA") filed this lawsuit for an improper, anti-competitive purpose, with the Court finding that "[i]n truth, Girl Scouts' complaint is based, not on concern for trademark confusion, but on fear for their competitive position in a market with gender neutral options for scouting."  SJ Order at 21.  Under binding Second Circuit precedent, GSUSA's decision to initiate litigation against the BSA as a competitive ploy satisfies the exceptional case standard under the Lanham Act without more.

But there *is* more.  GSUSA's claims were substantively meritless, which also makes this an exceptional case.  Lacking any evidence of actual confusion, GSUSA nonetheless pressed the absurd argument that the BSA should not be permitted to use its long-standing SCOUT-formative trademarks for programs that included both male and female members, despite having already done so for 50 years.  Indeed, on summary judgment, GSUSA failed to persuade the Court that even a single factor weighed in GSUSA's favor to support a likelihood of confusion finding under the *Polaroid* test.

1

After improvidently filing this case for an improper purpose and with baseless claims, GSUSA then pursued it for years in an excessively costly and contentious manner.  Examples include the following:

- GSUSA designated twenty witnesses to provide 30(b)(6) testimony on two topics concerning instances of alleged consumer confusion, for which none of those witnesses had actual, first-hand  knowledge.

- GSUSA resisted producing documents until ordered by the Court, as reflected by the parties' discovery motion practice.

- GSUSA improperly redacted *hundreds* of produced documents on grounds of purported "non-responsiveness" in an attempt to conceal highly relevant information evidencing the meritless nature of GSUSA's claims.

- GSUSA concealed its communications with its PR agency on highly relevant subjects such as GSUSA's attempts to undermine the BSA's reputation through an orchestrated smear campaign in the run-up to the filing of this lawsuit, resulting in the BSA's service of a Rule 11 motion and GSUSA's voluntary dismissal of its tarnishment claims.

- GSUSA submitted a massive 151-page response and counterstatement to the BSA's 17-page statement of undisputed facts on summary judgment, which failed to comply with the Local Rules and reflected a transparent attempt to manufacture disputed facts where none existed.

Abuse of the legal system for anti-competitive ends – especially against a non-profit entity devoted to youth programs – should not be countenanced.  The BSA respectfully requests that the Court find that the BSA is entitled to its reasonable attorneys' fees and related nontaxable expenses for this exceptional case.  Upon the granting of this motion, the BSA will submit a fee application setting forth and supporting its calculations of those fees and expenses and their reasonableness.

## **BACKGROUND**

Given the volume of briefing already before the Court, including in the BSA's motion for summary judgment and accompanying declarations, exhibits and statement of undisputed facts (*see* Dkts. 97-105), the BSA repeats here only the basic factual and procedural history of this case as relevant to the instant motion.

A.    **The History Of The Parties**

The BSA is a century-old non-profit organization that provides leadership and development activities for boys and girls.  SJ Order at 2.  For almost its entire existence, BSA has used "Scout"-formative terms such as "Scout," "Scouts" and "Scouting" (the "Scout Terms") without being preceded by the word "boy" in connection with its youth leadership programs.  *Id.* 2-3; *see also* BSA's Reply Re: Statement of Undisputed Facts (Dkt. 236, "SUF") ¶¶ 9-21 (providing examples, including the BSA's historical uses of the Scout Terms in connection with images of girls and young women).  The BSA does not use, and forbids use of, the composite term "GIRL SCOUT." SJ Order at 3, 15.

GSUSA is a non-profit organization that provides leadership and development services, but only for girls.  *Id.* at 2, 16-17.  While GSUSA has used its composite mark "GIRL SCOUTS" since its founding, it consistently (since at least 2009) instructed that the word "girl" should always precede "scout" when referring to GSUSA or its services.  *Id.* at 3, 15-16.  GSUSA "rarely, if ever, has used the Scout Terms alone in commerce."  *Id.* at 10.

B.    **GSUSA's Initiation Of This "Litigation … To Principally Create Uncertainty" In The Marketplace**

In 2017, GSUSA heard that the BSA was considering opening up its two largest programs, Boy Scouts and Cub Scouts, to girls.  In response, GSUSA launched a "ground war" against the BSA, employing various "BSA combat" tactics to pressure the BSA to change course and not welcome girls into those programs.  Dkts. 103-35 & 103-36 (Scher Decl., Exs. ZZZ, AAAA).[1]

---

[1]  These "BSA combat" tactics included: (1) directing GSUSA local councils to pressure their BSA local council counterparts to vote down any decision to welcome girls into Cub Scouts or Boy Scouts; (2) forbidding the BSA from renting GSUSA camps; (3) blacklisting dual BSA/GSUSA parent volunteers; and (4) requiring vendors to agree not to work with "any person, organization, or entity providing scouting services," *i.e.*, the BSA.  SUF ¶¶ 28-31.  At the same time, GSUSA hastily tried to purchase domain names and social media handles that included the Scout Terms alone (without being preceded by "girl") specifically because it knew that the BSA used such terms.  SUF ¶¶ 90-94.

In October 2017, the BSA publicly announced it would soon begin welcoming girls into its Cub Scouts and Boy Scouts program.  SJ Order at 3.  Just a month later, in November 2017, GSUSA began a letter-writing campaign against the BSA, complaining about purported misuse of GSUSA's trademarks in local flyers or on church signs.  SUF ¶ 36.  These included complaints about *accurate* references to both "Boy Scouts" and "Girl Scouts" (*i.e.*, nominative fair uses) by third parties, such as churches that hosted BSA and GSUSA meetings; *accurate* references to GSUSA in volunteer-created materials (*e.g.*, "you can be a Girl Scout … and a Cub Scout"); and marketing materials *accurately* referencing joint events involving "Girl Scouts" that were approved or authorized by GSUSA local councils or volunteers.  *See* SUF ¶ 38.

In May 2018, the BSA announced it would rename its older-youth program "Scouts BSA" (as continuing to refer to it as "Boy Scouts" would be inconsistent with a program that was now welcoming of girls), and launched a marketing program under the inclusive slogan "Scout Me In." SJ Order at 3.  GSUSA was alarmed by the prospect of competition it thought it would face from the BSA's recruitment of girl members.   For example, in internal documents, GSUSA acknowledged: "in the past [GSUSA] had a monopoly on girl scouting.  With Boy Scouts opening up their doors to girls, this means that girls who are having a bad experience have options."  Dkt. 234-1 (Anten Decl., Ex. CCCCCCCC) at GSUSA_00049618 (May 18, 2018).[2]

One month later, GSUSA contracted with its PR firm, Mercury LLC, for a new "High Stakes Public Strategy Campaign."  SUF ¶ 51.  In September 2018, Mercury gave a presentation

---

[2]   Also in May 2018, GSUSA spurred its PR firm, Mercury, to draft and pitch negative articles about the BSA to reporters.  *See, e.g.*, Dkt. 221-2 & 221-3 (Jenkins Decl., Exs. F & G).  Within a few weeks, Mercury was working with a *Washington Post* reporter on an anti-BSA story, providing a quote from GSUSA's PR Director.  *See, e.g.*, Dkt. 221-4, 221-5, & 221-6 (Jenkins Decl., Exs. H, I, & J).  The article was published on May 9, 2018.  GSUSA then featured this article in its Complaint, using it to support GSUSA's tarnishment claims as evidence that negative BSA media coverage purportedly harmed GSUSA.  Dkt. 1, ¶ 86 & n.2.  When the BSA learned of this information at the very end of discovery, it served GSUSA with a Rule 11 motion seeking the withdrawal and dismissal of GSUSA's tarnishment claims.  Dkt. 221 (Jenkins Decl.) ¶¶ 61-62.  In response, GSUSA capitulated, dismissing its tarnishment claims with prejudice and amending its Complaint to delete them.  *Id.*; Dkts. 87-89.

to GSUSA outlining a plan to "check BSA in at-risk markets as they roll-out their new co-ed strategy, protect and grow GSUSA share, and degrade competitor's market power."  SUF ¶ 54. The plan included a "Legal Strategy" section to use "litigation – to principally create uncertainty for teachers, administrators and parents," and to communicate those "legal actions to target publics [*sic*] in markets and nationally."  SUF ¶ 54; Dkt. 231-7 (Scher Decl., Ex. IIII) at GSUSA_00158172.  Within weeks, GSUSA initiated this suit.

### C.      The Unreasonable Manner In Which GSUSA Conducted This Litigation

After initiating the lawsuit, GSUSA employed unreasonably contentious litigation tactics that needlessly escalated the cost and burden to the BSA.  The examples below, selected from numerous instances, capture the nature of GSUSA's unreasonable litigation tactics:

- **Unreasonable 30(b)(6) designations**: In response to the BSA's Rule 30(b)(6) deposition notice, GSUSA designated *twenty-seven* witnesses, including *twenty* on the two topics concerning instances of claimed consumer "confusion."[3]  Declaration of Rachel Kassabian ("Kassabian Decl.") ¶ 3.  Eighteen of these twenty witnesses were affiliated with GSUSA local councils and resided outside of this District.  *Id.* ¶ 4.  Given GSUSA's designation of these witnesses on the core issue of claimed confusion, and GSUSA's identification of each of them on its Initial Disclosures, the BSA was forced to incur the expense of: (i) preparing and serving document requests and deposition subpoenas directed to each witness; (ii) reviewing the resulting document productions; and (iii) preparing for and deposing each of these witnesses.  *Id.* ¶ 4.  But at these depositions, *not a single GSUSA witness* testified to having firsthand knowledge of any instance of actual confusion – *e.g.*, a personal conversation with someone who mis-enrolled or was otherwise confused about the source of the BSA's programs – stemming from the BSA's use of the Scout Terms.  SJ Order at 18-19; SUF ¶ 55.  GSUSA could have easily designated *one* of its employees to provide this level of hearsay testimony – and spared hundreds of hours of attorney time.

- **Unreasonable 56.1 statement**: As part of its motion for summary judgment, pursuant to Local Rule 56.1(a) & (d), the BSA submitted a 17-page "short and concise" statement of undisputed facts.  Dkt. 232.  While the Local Rule permitted GSUSA to respond by "specifically controverting" each fact and submitting a "short and concise statement of additional material facts" that GSUSA contended were disputed, L.R. 56.1(b) & (c), GSUSA instead filed a *151-page* response and counterstatement (Dkt. 242) that not only was extreme based on its sheer length, but also failed to comply with the Local Rule's

---

[3]   In contrast, the BSA designated just eight witnesses in response to GSUSA's 30(b)(6) deposition notice.  Kassabian Decl. ¶ 3.

requirements. *See* Dkt. 235 at 3-4 (describing how dozens of GSUSA's responses to the BSA's statements were improper including because they: (1) added lengthy explanation to admissions, to try to improperly "spin" their impact; (2) failed to dispute the fact as written; and (3) offered only semantic disputes). The BSA thus was forced to pick through GSUSA's blunderbuss to determine whether the fact at issue was or was not admitted, when GSUSA should have simply stated "admitted" for the vast majority of its responses. In addition, *none* of GSUSA's *158* counterstatements of additional facts was "short and concise," but rather consisted of 76 pages of lengthy and convoluted narration and argument, imposing further burden on the BSA. *See id.* at 4-5 (BSA's summary judgment reply brief describing the BSA's expense and effort to respond).

- **Unreasonable document redaction tactics**: In the summer 2019, the BSA discovered that GSUSA improperly redacted *thousands* of passages on more than 250 documents solely on grounds of purported "non-responsiveness." GSUSA refused to remove these redactions – even after the BSA provided clear authority of the impropriety – until confronted with the BSA's motion to compel. Dkt. 40 at 2, 6-11. The BSA ultimately learned that those redactions attempted to conceal information highly damaging to GSUSA's case, such as admissions that GSUSA was well-aware of the fact that there was "no trend correlation between BSA impact and GS membership loss" in the weeks before it filed this lawsuit – yet it sued anyway. Dkt. 40 at 8-10; Dkt. 220 at 8-9 n.6; Dkt. 221-47 (Jenkins Decl., Ex. ZZ) at GSUSA_00076678 (Oct. 24, 2018).

- **Unreasonable expert discovery**: On December 19, 2019, per the Court's schedule, GSUSA served the BSA with two expert reports conveying the results of two consumer surveys. Dkt. 61. Eight months later, GSUSA indicated its intention to serve a *third* consumer survey conducted by a new, undisclosed expert. The BSA was therefore forced to move to exclude that untimely expert report. Dkt. 77. The Court granted the motion, "agree[ing] with the BSA" that "the contemplated expert report regarding the new consumer survey … would be redundant." Dkt. 78 at 1. Undeterred, GSUSA moved for reconsideration, which the Court denied on multiple grounds. Dkt. 86.

- **Unreasonable custodian demands**: In late 2019, near the close of fact discovery, GSUSA demanded that the BSA collect, review and produce, from each subpoenaed BSA local council, the documents from all staff with "district executive" or "district director" in their titles (or equivalent roles). This would have required collecting documents from approximately 160 additional custodians, despite the fact that the BSA had already produced thousands of documents from dozens of other custodians. At a subsequent court conference, the Court rejected GSUSA's demand and limited GSUSA to just 20 additional custodians. Kassabian Decl. ¶ 7.

- **Unreasonable motion practice**: GSUSA's obstinate approach to discovery forced the BSA to file and/or defend against costly motions to compel. For example, in the parties' first joint discovery letter, the Court ruled against GSUSA on each of the seven issues GSUSA moved on, finding that the BSA's offered production was sufficient or the parties had not sufficiently met and conferred; in contrast, on the one request that the BSA moved on, the Court compelled GSUSA to produce responsive documents. Dkt. 37.

- **GSUSA's active concealment of documents**: GSUSA failed to produce more than a hundred responsive documents reflecting communications with its PR firm Mercury on subjects such as GSUSA's attempts to undermine the BSA's reputation in the run-up to filing this lawsuit.  *See* Dkt. 220 at 6-9; Dkt. 221 (Jenkins Decl.) ¶ 21 (detailing GSUSA's failure to produce).  The BSA learned of these documents' existence only after Mercury produced them at the last minute pursuant to a third-party subpoena.  *See* Dkt. 221 (Jenkins Decl.) ¶ 8.

- **Excessive designations**: GSUSA's penchant for over-litigation is reflected by its Rule 26(a)(1) Initial Disclosures: GSUSA named 29 witnesses, nearly three times as many as the BSA.  Kassabian Decl. ¶ 5.

While not even an exhaustive list, these tactics evince a pattern of unreasonably costly and contentious conduct.  Although the case involved just a few "scout"-formative marks, two parties and no counterclaims, it resulted in 44 depositions (38 fact witnesses, 6 expert witnesses), more than 360,000 pages of documents produced by the parties, 48 third-party subpoenas, and hundreds of written discovery requests.  Kassabian Decl. ¶ 6.

D.   **The Court's Opinion And Order Granting Summary Judgment In The BSA's Favor**

In its April 7, 2022 Opinion and Order, the Court granted the BSA's motion for summary judgment, dismissed GSUSA's Complaint in its entirety, directed that judgment be entered in the BSA's favor, and closed the case.  SJ Order at 1, 5, 29.  Specifically, the Court held that GSUSA's infringement claims must be limited to its composite "GIRL SCOUT" mark because GSUSA does not have valid rights to assert in the Scout Terms alone.  *Id.* at 9-12.  The Court ruled that: (1) GSUSA "rarely, if ever, has used the Scout Terms alone in commerce"; (2) GSUSA refrained or proactively discouraged use of "scout" without "girl"; and (3) both organizations should have equal access to use the Scout Terms such that GSUSA cannot enforce them against the BSA.  *Id.*

The Court also concluded that GSUSA "has failed to raise a genuine issue of material fact with respect to likelihood of confusion" because "[t]here is no trademark confusion."  *Id.* at 22. The Court addressed each of the *Polaroid* factors in detail, determining that each either favored

the BSA or was neutral; *no* factor favored GSUSA. *Id.* at 13-21. In so ruling, the Court recognized that: (1) the BSA consistently uses the Scout Terms with other brand indicia, *id.* at 16; (2) the BSA "adopted the Scout Terms to describe accurately the co-ed nature of programming, not to confuse or exploit Girl Scouts' reputation," which is "consistent" with the BSA's century-long use of scout-formative branding, *id.* at 19-20; and (3) GSUSA's evidence of a few "anecdotal and isolated" instances of purported confusion "*do[] not support the claim that any confusion stems from Boy Scouts' branding or use of the Scout Terms*," *id.* at 18-19 (emphasis added). The Court concluded: "In truth, Girl Scouts' complaint is based, not on concern for trademark confusion, but on fear for their competitive position in a market with gender neutral options for scouting." *Id.* at 21.

The Court ruled that the BSA is not vicariously liable for the unauthorized acts of "local councils, troops, packs and individual Boy Scouts participants." *Id.* at 22-23. And because there was no likelihood of confusion, the Court dismissed GSUSA's claim for modification or partial cancellation of the BSA's registration as well. *Id.* at 25. As for GSUSA's dilution-by-blurring claims, the Court dismissed them for the same reasons as GSUSA's infringement claims, given that the applicable factors are largely the same. *Id.* at 23-24.

Lastly, the Court dismissed GSUSA's claim for tortious interference, both because: (1) GSUSA "cannot point to any specific business relationship" that the BSA tortiously interfered with; and (2) GSUSA could not establish that the BSA's conduct amounted to a tort because GSUSA's only support was the Lanham Act violations that the Court dismissed. *Id.* at 25-26.

## LEGAL STANDARD

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

Under § 1117(a), "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) *or* the unreasonable manner in which the case was litigated." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530 (2d Cir. 2018) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014), which applied the Patent Act's "exceptional" case standard for awarding fees) (emphasis added). *Either* may independently support an award of attorneys' fees. *See, e.g.*, *Florida Int'l Univ. Bd. of Trs. v. Florida Nat'l Univ., Inc.*, 2017 WL 3610583, at *6 (S.D. Fla. Aug. 11, 2017) (awarding fees based on substantive strength of litigation position).

In determining whether a case is an "exceptional" one, "district courts [are] to be given wide latitude to "engage in a 'case-by-case exercise of their discretion, considering the totality of the circumstances.'" *4 Pillar Dynasty LLC v. N.Y. & Co.*, 933 F.3d 202, 215 (2d Cir. 2019) (quoting *Octane Fitness*, 572 U.S. at 554). The standard is a "flexible" one, *id.* at 206, encompassing "a wide variety of factors, including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Sleepy's LLC*, 909 F.3d at 530 (quoting *Octane Fitness*, 572 U.S. at 554 n.6).

The Court may grant whatever weight it wishes to any particular consideration it deems relevant and appropriate; there is no "precise rule or formula for making these determinations." *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 764 F. App'x 39, 41 (2d Cir. 2019). For example, the Second Circuit recognized that a plaintiff's motivation for bringing a lawsuit as a "competitive ploy" may alone justify an award of attorneys' fees. *Sleepy's LLC*, 909 F.3d at 530; *see also, e.g.*, *Imapizza, LLC v. At Pizza Ltd.*, 2021 WL 2410713, at *14 (D.D.C. June 8, 2021)

("While Plaintiff's claims may not have been frivolous or brought in bad faith, they were objectively unreasonable, and that factor weighs heavily in favor of awarding fees."); *cf. Cognex Corp. v. Microscan Sys., Inc.*, 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014) (awarding fees under *Octane Fitness* where party offered "defenses that … were particularly weak and lacked support in the evidence" and "engaged in unreasonable litigation tactics").

The standard of proof is a preponderance of the evidence. *Octane Fitness*, 572 U.S. at 557.

## ARGUMENT

## I. THE BSA SHOULD BE AWARDED ITS ATTORNEYS' FEES UNDER § 1117(a) BECAUSE THIS CASE "STANDS OUT FROM OTHERS" AND IS THUS EXCEPTIONAL

Upon demonstrating that a case is exceptional under the Lanham Act, prevailing defendants are routinely awarded their attorneys' fees. *See, e.g.*, *Reply All Corp. v. Gimlet Media, Inc.*, 2021 WL 1291103, at *2-4 (E.D.N.Y. Apr. 5, 2021) (awarding defendant attorneys' fees under § 1117(a)); *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 2021 WL 1172335, at *7 (S.D.N.Y. Mar. 26, 2021) (same); *Beijing Daddy's Choice Sci. & Tech. Co. v. Pinduoduo Inc.*, 2020 WL 729518, at *3-5 (S.D.N.Y. Feb. 13, 2020) (same); *VIDIVIXI, LLC v. Grattan*, 2016 WL 4367972, at *4 (S.D.N.Y. Aug. 13, 2016) (same).[4]

This Court should do the same. Considering the totality of the circumstances, including GSUSA's improper motivation, the objective weakness of its claims, and its unreasonable litigation tactics, this case is "exceptional" under § 1117(a).

---

[4]   *See also, e.g.*, *Warren Tech., Inc. v. UL LLC*, 2021 WL 4940833, at *2-3 (11th Cir. Oct. 22, 2021) (affirming award of attorneys' fees to defendant under § 1117(a) as "exceptional case"); *Pocket Plus, L.L.C. v. Runner's High, LLC*, 2022 WL 575593, at *6 (N.D. Iowa Jan. 11, 2022) (granting motion for attorneys' fees to defendant under § 1117(a) as "exceptional case"); *Miller v. Hurst*, 2021 WL 859552, at *6 (M.D. Tenn. Mar. 8, 2021) (same); *H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd.*, 2020 WL 6263649, at *3 (S.D. Cal. Oct. 22, 2020) (same); *BoxNic Anstalt v. Gallerie degli Uffizi*, 2020 WL 2991561, at *1 (D. Ariz. June 4, 2020) (same); *Leapers, Inc. v. SMTS, LLC*, 2017 WL 3084370, at *6 (E.D. Mich. July 20, 2017) (same).

A.    **GSUSA's Lawsuit Was Initiated As A "Competitive Ploy"**

Courts in this District will find a case "exceptional" under § 1117(a) if "[t]here is a substantial overtone in [the] case to warrant an inference that this suit was initiated as a competitive ploy." *Anastasia Int'l, Inc. v. EM Online Pty Ltd.*, 2013 WL 5550211, at *3 (S.D.N.Y. Oct. 4, 2013) (awarding defendant attorneys' fees on such ground) (quotations omitted); *see also Sleepy's LLC*, 909 F.3d at 530 (confirming initiation as "competitive ploy" may establish exceptional case); *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 77 (2d Cir. 1986) (awarding fees to defendant, finding that case was initiated as a "competitive ploy"); *VIDIVIXI, LLC*, 2016 WL 4367972, at *3 (similar); *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 657 (S.D.N.Y. 1983), *aff'd* 742 F.2d 1437 (2d Cir. 1984) (similar).

Here, the Court has already found that: "[i]n truth, Girl Scouts' complaint is based, *not on concern for trademark confusion, but on fear for their competitive position* in a market with gender neutral options for scouting." SJ Order at 21 (emphasis added).  This alone can support the Court's finding that this case is "exceptional."  *9's LLC*, 90 F.3d at 530.

The Court's recognition of GSUSA's true motivation is amply borne out by the record.  As discussed in detail above, *see supra* at 3-5, in the months leading up to this lawsuit  GSUSA admitted that its real concern with the BSA was that GSUSA would no longer "ha[ve] a monopoly on girl scouting," and dissatisfied girls would have "options."  Then, just weeks before filing this lawsuit, GSUSA conferred with its PR firm, Mercury, on a "Legal Strategy" to respond to the BSA's programming changes, including using "*litigation – to principally create uncertainty for teachers, administrators and parents*," and "*communicat[ing]*" those "*legal actions to target publics [sic] in markets and nationally*."  SUF ¶ 54; Dkt. 231-7 (Scher Decl. Ex. IIII) at GSUSA_00158172 (emphasis added).  While the Court could rely on an "inference" that a suit was initiated as a competitive ploy, there is no need to settle for an inference here: documents in

GSUSA's own files forthrightly *admitted* that its motivation in bringing litigation was as a mere tool to hurt the BSA's competitive position by "creating uncertainty" in the marketplace.

The Court may also rely on GSUSA's demand of millions of dollars in "corrective advertising" to find an improper motive. *See Reply All Corp.*, 2021 WL 1291103, at *3 (plaintiff's "increasingly tortured attempts to create a viable damages theory indicate bad faith and extortionary motives"). GSUSA's damages theories became increasingly far-fetched as the case progressed, as GSUSA claimed that it was entitled to millions of dollars in "corrective advertising" to remedy supposed confusion caused by the BSA's use of the Scout Terms, even though GSUSA's 30(b)(6) witness admitted that *none* of GSUSA's advertising sought to "correct" any alleged acts of trademark infringement or reinforce that the BSA and GSUSA are separate organizations – in fact, it never even mentioned the BSA. *See* SUF ¶¶ 119-120.

GSUSA's improper motivations are further evidenced by its ongoing anti-competitive campaign to smear the BSA's reputation. As noted above (*supra* at 4 n.2), GSUSA spurred its PR firm, Mercury, to draft and pitch negative articles about the BSA to reporters. Mercury soon began working with a *Washington Post* reporter on an anti-BSA story, providing a quote from GSUSA's PR director. After the story was published, GSUSA *featured the article prominently* in its Complaint as supposed third-party evidence of negative BSA media coverage that purportedly harmed the BSA in support of its tarnishment claims. Dkt. 1. ¶ 86 & n.2. When confronted about this impropriety (which BSA only learned of through third-party discovery months after discovery closed) via service of a Rule 11 motion, GSUSA voluntarily dismissed its tarnishment claims with prejudice. Dkts. 87-89; Dkt. 221 (Jenkins Decl.) ¶¶ 61-62; *see also* Dkt. 220 at 10 (detailing dismissal with prejudice).

**B.**     <u>**GSUSA's Claims Were Objectively Unreasonable**</u>

GSUSA's pursuit of claims that were meritless from the outset further supports an award of the BSA attorneys' fees.  A case will be found to be objectively unreasonable when a plaintiff has "a fatally weak claim with no hope for success."  *Reply All Corp.*, 2021 WL 1291103, at *2. It can be based on "factual contentions [that] are clearly baseless," or "an indisputably meritless legal theory."  *Id.* (quotations omitted).

As the Court's summary judgment decision confirmed, here "[t]here is no trademark confusion."  SJ Order at 22.  Indeed, GSUSA's claims were never plausible – as to the relief it sought, or as to the supposed rights it asserted were infringed.  GSUSA's Complaint remarkably sought an order that the BSA cannot use the word "scout" for its co-ed programs unless preceded by "boy" – even though the BSA had used the Scout Terms for a *century*, consistently accompanied by other BSA indicia.  *Id.* at 2-3, 16, 20.  This relief was particularly overreaching given GSUSA's disingenuous assertion of protectable rights in the Scout Terms in connection with girls even though GSUSA had for many years *prohibited* any use of the word "scout" without being preceded by "girl."  *Id.* at 3, 10.

Notwithstanding the dozens of depositions taken and thousands of documents produced, GSUSA did not proffer a single piece of evidence of confusion caused by the BSA's use of the Scout Terms (versus another non-trademark-related reason, such as pre-existing confusion about whether the organizations were related).  *See* SJ Order at 18-19; SUF ¶ 55.  As to the few instances of purported mis-enrollments, GSUSA had no evidence those recruits were confused at all, and some of the supposedly confused parents even submitted sworn declarations confirming they were

*not* confused.  *See* SUF ¶ 65(a)-(g).[5]  The Court thus recognized that GSUSA "d[id] not support the claim that any confusion stems from Boy Scouts' branding or use of the Scout Terms."  SJ Order at 18-19.  Other courts have recognized that similar deficiencies render a case "exceptional." *See, e.g.*, *Fla. Int'l Univ. Bd. of Trs*, 2017 WL 3610583, at *7 (S.D. Fla. Aug. 11, 2017) (plaintiff "litigated the case in an unreasonable manner" where it "litigated the case with only *de minimis* evidence of actual confusion," and "there was never a single known instance during the application process where a prospective student applied for admission to either FNU or FIU under the impression that FNU was associated with FIU, and there was not a single dollar of tuition that had been misdirected as a result of FNU's mark").[6]

Ultimately, the Court found that, as a matter of law, *every Polaroid* factor either favored the BSA or was neutral, and *not one* factor favored GSUSA.  SJ Order at 13-21.  The BSA does not repeat its motion for summary judgment, which established that GSUSA's Complaint was meritless.  For the purposes of this motion, it is enough for the Court to recognize that GSUSA should have realized its claims were baseless.  Examples abound of GSUSA disregarding facts that doomed its claims.  They include:

- GSUSA pressed its preposterous argument that the BSA was using the Scout Terms in a bad faith attempt to confuse girls, even though GSUSA was aware that the BSA had used the Scout Terms for more than 50 years – including in connection with its other programs for both girls and boys.  SJ Order at 19-20.

- GSUSA ignored that the BSA "consistently accompanies use of the Scout Terms with other brand indicia, such as its fleur-de-lis emblem, Cub Scout logo, Boy Scout logo, and the full name Boy Scouts of America."  *Id.* at 15-16 (noting that "[t]he Second Circuit has

---

[5]  Thus, even if GSUSA's lawsuit was not baseless when it was filed (and it was), GSUSA certainly should have realized as discovery progressed that its claims were objectively unreasonable.  *See Fla. Int'l Univ. Bd. of Trs.*, 2017 WL 3610583, at *7 (S.D. Fla. Aug. 11, 2017) (plaintiff's unreasonable manner of litigation supported by the fact that "Plaintiff failed to re-evaluate the strength of its case as discovery continued").

[6]  The same applies to GSUSA's tortious interference claim, for which GSUSA likewise had no evidence.  *See* SJ Order at 25-26 ("Girl Scouts cannot point to any specific business relationship with which the Boy Scouts intentionally and tortiously interfered").

repeatedly acknowledged that the presence of such brand indicia can weigh against a finding of similarity").

Ultimately, this case did not present a novel issue of law or materially disputed factual contentions. The complete absence of any evidence probative of consumer confusion stemming from the BSA's use of the Scout Terms, accompanied by the lack of any legal authority that would compel a different outcome, further warrants a finding that this case is exceptional.

### C. **GSUSA Litigated The Case In An Unreasonable Manner**

The Court may also find this case exceptional based on GSUSA's "manner of litigating [its] suit." *Tobinick v. Novella*, 884 F.3d 1110, 1119 (11th Cir. 2018) (affirming award of defendant's attorneys' fees). *See, e.g.*, *Reply All Corp.*, 2021 WL 1291103, at *3 (case "exceptional" under Lanham Act: plaintiff "used unreasonable litigation tactics that needlessly expanded the proceedings"); *Manhattan Rev. LLC v. Yun*, 2017 WL 11455317, at *7 (S.D.N.Y. Sept. 21, 2017), *aff'd*, 765 F. App'x 574 (2d Cir. 2019) (case "exceptional" under Lanham Act: "plaintiffs' litigation conduct has also been troubling"); *cf. Cognex Corp.*, 2014 WL 2989975, at *4 (case "exceptional" under Patent Act: "[non-prevailing parties] have engaged in unreasonable litigation tactics that have wasted the Court's time and have required [prevailing parties] to expend significant resources").

GSUSA's litigation conduct went far beyond zealous advocacy and veered into the unreasonable use of litigation tactics that needlessly expanded the scope of the proceedings and unnecessarily drove up the BSA's costs. As detailed above, these tactics included:

- Over-designating witnesses who lacked any material personal knowledge;

- Unilaterally redacting hundreds of documents for purported "non-responsiveness" that in fact were highly relevant and damning to GSUSA's case, withholding communications with its PR firm that the BSA discovered only by virtue of subpoenaing that PR firm (which documents ultimately led to a successful Rule 11 motion and the voluntary dismissal of GSUSA's tarnishment claim);

- Refusing to abide by the Court's Case Management Schedule in sandbagging the BSA with untimely expert reports,

- Making onerous last minute demands on the BSA for yet more discovery just as discovery was set to close, and

- Submitting a 75-page "response" to the BSA's 17-page 56.1 statement, and a 76-page and counterstatement of irrelevant "additional facts" that simply consisted of lengthy narrative arguments, in violation of the Local Rules – a tactic other courts have described as "outrageous."[7]

*See supra* at 5-7.  Even if "each individual action … may not have been 'exceptionally' unreasonable" when viewed in isolation, when considered in their totality they more than meet this standard.  *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, 2016 WL 1267159, at *3 (D. Del. Mar. 31, 2016).  Such conduct that served to needlessly increase the cost and scope of this litigation is "troubling," *Manhattan Rev.*, 2017 WL 11455317, at *7, and should be recognized as "stand[ing] out from other[]" trademark cases, *Sleepy's LLC*, 909 F.3d at 530.

### D.   An Award Of The BSA's Fees Would Advance Considerations Of Compensation And Deterrence

As the Court recognized, this lawsuit was both "expensive" and "contentious."  SJ Order at 1.  GSUSA's lawsuit required the BSA, a non-profit organization, to incur enormous expense and attention that could have been devoted to serving its mission of attending to its leadership and development programs for youth.  Given the groundless nature of GSUSA's claims, and its admitted anti-competitive motivation for asserting them, an award reimbursing the BSA for its defense fees would advance considerations of compensation and deterrence.  *See, e.g.*, *Manhattan Rev.*, 765 F. App'x at 577; *see also Benihana of Tokyo, LLC v. Benihana, Inc.*, 2018 WL 3574864, at *11 (S.D.N.Y. July 25, 2018), *aff'd*, 771 F. App'x 71 (2d Cir. 2019) (awarding attorneys' fees

---

[7]   *See, e.g.*, *Union Carbide Corp. v. Montell N.V.*, 179 F.R.D. 425, 428 & n.4 (S.D.N.Y. 1998) (rejecting 86-page counterstatement of additional facts, including because of its "outrageous length").

where defendant was "required to expend significant resources investigating … and defending against claims").

An award of fees would also deter GSUSA – and other plaintiffs who may seek to use federal courts as a tool for achieving anti-competitive ends – from bringing unreasonable and unsupported claims.  *See Beijing Daddy's Choice Sci. & Tech. Co.*, 2020 WL 729518, at *5; *Baker v. Urban Outfitters*, 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x. 845 (2d Cir. 2007) (awarding fees "so as to deter this plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences if they lose").

This case in particular is worthy of compensation and deterrence because the relief sought by GSUSA was not simply damages, but an injunction declaring that *any* use by the BSA of a Scout Term alone "in connection with services targeted to girls" be deemed infringing – even for BSA programs that have welcomed girls under these designations for decades.  Dkt. 89 (Am. Compl.) ¶¶ 5, 90, 102; *see also id.* at 42 ¶ (a)(ii).  The shadow of an injunction goes far beyond mere monetary concerns; GSUSA's threat to the BSA of the potential loss of designations that the BSA had used for over a century, as a penalty for welcoming girls – effectively demanding that the BSA not welcome girls at all, call them "Boy Scouts," or not accurately describe its programs as involving "scouting" – is the exact kind of sharp tactic, extreme in outcome and unwarranted by law or facts, that the Court should deter.

## II.   <u>THE BSA SHOULD BE AWARDED ITS RELATED NONTAXABLE EXPENSES</u>

As the prevailing party in an exceptional case, the Court's award of the BSA's attorneys' fees should include related nontaxable expenses that the BSA incurred.[8]

Rule 54(d) permits a party to include in its motion for attorneys' fees a request for its "related nontaxable expenses." Fed. R. Civ. P. 54(d)(2)(A).  The Second Circuit recognizes that "[a]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).  Courts have included such nontaxable expenses at part of an attorneys' fee award under § 1117(a) where a case is "exceptional."[9]  Thus, an award of the BSA's attorneys' fees will also necessarily include the BSA's related nontaxable expenses.

The BSA's nontaxable expenses related to its defense of this action include: (1) travel and accommodations, including for depositions and hearings; (2) online research; (3) photocopying; (4) PACER fees; (5) postage, express mail, delivery, and messenger expenses; (6) telephone charges; (7) mediator fees; (8) electronic document hosting, processing and related fees; and (9) other litigation-related expenses.[10]  *See* Kassabian Decl. ¶ 8.  In *Dropbox*, for example, the court

---

[8]   The BSA will separately file a notice of its taxable costs with the Clerk by no later than May 9, 2022.  *See* Local Rule 54.1(a) (notice of taxable costs to be filed within 30 days after entry of final judgment); Local Rule 6.4 (extending deadline).  To the extent the Clerk and Court find a particular requested cost is not taxable, the BSA respectfully requests that such cost be considered as part of its entitled non-taxable expenses.

[9]   *See, e.g.*, *Beijing Daddy's Choice Sci. & Tech.*, 2020 WL 729518, at *1 & n.1 (awarding prevailing defendant nontaxable "costs"); *Next Realty, LLC v. Next Real Est. Partners LLC*, 2019 WL 1757781, at *4 (E.D.N.Y. Mar. 11, 2019) ("Courts generally award costs to prevailing parties in cases involving violations of the Lanham Act."); *Dropbox, Inc. v. Thru Inc.*, 2017 WL 914273, at *5 (N.D. Cal. Mar. 8, 2017) ("attorney's fees under the Lanham Act may also include reasonable costs that the party cannot recover as the 'prevailing party' as long as such costs are reasonably incurred") (quotations omitted); *Partners for Health & Home, L.P. v. Yang*, 488 B.R. 431, 440 (C.D. Cal. 2012) ("Reasonable out-of-pocket expenses normally charged to a client may be recoverable *as attorney fees* even if not taxable pursuant to 28 U.S.C. § 1920, so long as those expenses are customarily charged to the client.") (emphasis added).

[10]   *See, e.g.*, *Zouvelos v. Sur. Fin. of Am., Inc.*, 2018 WL 2075300, at *10-11 (E.D.N.Y. Jan. 29, 2018) (recoverable expenses include: copies; postage; PACER fees); *Dinsbach v. Harris*, 2022 WL 742726, at *10 (D. Ariz. Mar. 11, 2022) (recoverable expenses include: online research expenses; copies; postage; delivery services; miscellaneous non-overhead expenses such as flash drives); *Wyatt Tech. Corp. v. Malvern Instrs., Inc.*, 2010 WL 11404472, at *2 (C.D.
(Footnote continued)

awarded the prevailing party in a Lanham Act action $419,610.41 for its nontaxable e-vendor discovery expenses because such expenditures "were necessary given the large volume of discovery in this case; the costs were largely related to hosting the voluminous documents produced by [the non-prevailing party], as well as to reviewing Dropbox's documents for privilege and responsiveness." 2017 WL 914273, at *6. So too here, the volume of electronic discovery was large, including as a result of the expense of hosting GSUSA's electronic document productions and GSUSA's demand that the BSA and over a dozen local councils collect, electronically search and produce a large volume of documents.

III.    **THE BSA SHOULD BE GRANTED LEAVE TO FILE A FEE APPLICATION DETAILING ITS REQUESTED ATTORNEYS' FEES AND RELATED NONTAXABLE EXPENSES**

By this Motion the BSA seeks an order that it is entitled to an award of fees and nontaxable costs. The BSA respectfully requests that along with granting the instant motion, the Court set a date by which the BSA may submit a fee application setting forth the specific calculations of the BSA's requested attorneys' fees and related nontaxable expenses, with appropriate supporting documentation. Rule 54(d) "does not require that the motion be supported at the time of filing with the evidentiary material bearing on fees … What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees and the amount of such fees (or a fair estimate)." Fed. R. Civ. P. 54 (1993 Adv. Comm. Notes).

This two-stage process of first ruling on the threshold matter of whether a case satisfies the "exceptional case" requirement and then, if granted, addressing a particularized fee application, is well established. *See, e.g.*, *Reply All Corp.*, 2021 WL 1291103, at *4 (granting defendants' motion

---

Cal. June 17, 2010) (recoverable expenses include: copying; electronic document processing; messenger/delivery expenses; travel expenses; mediator fees).

of entitlement to attorney fees as "exceptional case" under § 1117(a), and referring case "for a calculation of the reasonableness and amount of fees due to Defendants"); *Noble Biomaterials v. Argentum Med., LLC*, 2011 WL 13113786, at *2-3 (M.D. Pa. Aug. 25, 2011) (granting motion under § 1117(a) for "attorneys' fees and related nontaxable expenses" and ordering submission of statement with "supporting affidavits and documentation" within 20 days); *cf. TNS Media Rsch. LLC v. TiVo Rsch. & Analytics, Inc.*, 2018 WL 2277836, at *7 (S.D.N.Y. May 18, 2018) (Patent Act: finding case "exceptional" and directing defendant "to submit a detailed request for the fees and expenses incurred defending against TRA's patent claims"); *Regeneron Pharms., Inc. v. Merus N.V.*, 2018 WL 1472507, at *15 (S.D.N.Y. Mar. 26, 2018) (similar).

The BSA's fair estimate of the amount of attorneys' fees sought is approximately $15,400,000.00, and a fair estimate of the amount of related nontaxable expenses sought is approximately $615,000.00.[11]   Kassabian Decl. ¶ 8.   If given leave to file it, the BSA's fee application will be supported with appropriate documentation, including demonstration that Quinn Emanuel's hourly billing rate, and the number of hours billed, are reasonable.

## IV.   ALTERNATIVELY, THE COURT MAY AWARD THE BSA ITS ATTORNEYS' FEES AND NONTAXABLE EXPENSES UNDER 28 U.S.C. § 1927 OR THE COURT'S INHERENT POWER

The Court may alternatively award the BSA its reasonable attorneys' fees and nontaxable expenses under either 28 U.S.C. § 1927 or the Court's inherent power because GSUSA and its counsel vexatiously and unreasonably multiplied the scope of these proceedings and brought these claims in bad faith.

---

[11]   *See* Fed. R. Civ. P. 54(d)(2)(B)(iii).  The BSA seeks, and this Court should include in its ultimate award, the BSA's fees incurred in bringing the current motion and its forthcoming fee application.  *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 123 F. Supp. 2d 582, 587 (D. Kan. 2000) (awarding fees under § 1117(a), including "for work performed in presenting and preparing the fee application").  The BSA's fee estimate includes its reasonable estimate for preparing this motion and reply, and its fee application.

Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  "To impose sanctions under this provision, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'"  *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (quotations omitted).  The same standard applies to the Court's exercise of its inherent powers to issue sanctions against GSUSA in the form the BSA's costs, expenses and attorneys' fees.  *See Oliveri v. Thompson*, 803 F.2d 1265, 1272-73 (2d Cir. 1986) (court may award attorneys' fees to prevailing party when opposing party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons").

For the reasons stated above, these elements are met.  GSUSA initiated this action for an improper purpose by abusing the federal court system to seek competitive advantage rather than to address genuine trademark concerns, its case was unsupported by fact or law, and it litigated the case in a vexatious manner.  *See, e.g.*, *Reply All Corp.*, 2021 WL 1291103, at *4 (awarding defendant's attorneys' fees under § 1927 based on plaintiff's "vexatious litigation").  Thus, the Court may exercise its discretion to award the BSA its attorneys' fees and nontaxable expenses under this alternate authority, either against GSUSA or its counsel.

## **CONCLUSION**

For the foregoing reasons, the BSA respectfully requests that the Court find this to be an exceptional case for which the BSA is entitled to its attorneys' fees and related nontaxable expenses, and grant the BSA permission to submit a fee application setting forth and supporting its specific calculations of such fees and expenses.

21

Dated:   April 21, 2022                    Respectfully submitted,

                                      By: _____
                                          Rachel Kassabian (*pro hac vice*)
                                          rachelkassabian@quinnemanuel.com
                                          Margret M. Caruso
                                          margretcaruso@quinnemanuel.com
                                          Sara Jenkins (*pro hac vice*)
                                          sarajenkins@quinnemanuel.com
                                          QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                          555 Twin Dolphin Drive 5th Floor
                                          Redwood Shores, CA 94065
                                          Telephone: (650) 801-5005
                                          Facsimile: (650) 801-5100

                                          Todd Anten
                                          toddanten@quinnemanuel.com
                                          Dylan I. Scher
                                          dylanscher@quinnemanuel.com
                                          QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                          51 Madison Avenue, 22nd Floor
                                          New York, NY 10010
                                          Telephone: (212) 849-7000
                                          Facsimile: (212)  849-7100

                                          *Attorneys for Defendant Boy Scouts of America*