**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

WRITER'S DIRECT DIAL NO.
**(650) 801-5005**

WRITER'S EMAIL ADDRESS
rachelkassabian@quinnemanuel.com

August 19, 2022

**BY ECF**
The Honorable Alvin K. Hellerstein
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:   *Girl Scouts of the United States of America v. Boy Scouts of America*, No. 18-cv-10287

Dear Judge Hellerstein:

We write on behalf of the Boy Scouts of America (the "BSA"), to inform the Court that the United States Bankruptcy Court for the District of Delaware has approved the parties' settlement, which is now final.  *See In re Boy Scouts of Am.*, Dkt. 10193, No. 20-10343 (LSS) (Bankr. D. Del. Aug. 15, 2022) (attached hereto).  As a result, the BSA will not be re-filing its Motion for Attorneys' Fees And Related Nontaxable Expenses.  *See* Dkt. 261 (BSA's Motion for Attorneys' Fees And Related Nontaxable Expenses); Dkt. 277 (Court endorsement instructing that "[i]f the settlement is not consummated, Defendant may refile its motion and I will consider the matter fully briefed").

Respectfully submitted,

*Rachel Kassabian*

Rachel Kassabian

*Attorneys for Defendant Boy Scouts of America*

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| | (Jointly Administered) |
| Debtors. | Ref. Docket No.  DI 10117 |

### ORDER (I) APPROVING SETTLEMENT AGREEMENT BETWEEN BOY SCOUTS OF AMERICA AND GIRL SCOUTS OF THE UNITED STATES OF AMERICA AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Boy Scouts of America and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), for entry of an order (this "Order"), pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving that certain settlement agreement by and between the BSA and Girl Scouts of the United States of America ("GSUSA" and, together with the Debtors, the "Parties"), as memorialized in that certain Settlement Agreement attached to this Order as **Exhibit 1**, and (ii) granting related relief; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and entry of this Order being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Debtors having consented to the entry of a final order by this Court under Article III of the United States Constitution; and venue of this proceeding and the Motion in this District being

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and all objections to the Motion, if any, having been withdrawn, resolved or overruled; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. The Settlement Agreement is APPROVED in its entirety, and the Parties to the Settlement Agreement are authorized to take such action as is necessary or desirable to effectuate the terms of the Settlement Agreement.

3. This Order shall be immediately effective and enforceable upon its entry and the Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

4. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

**Dated:** August 15th, 2022
Wilmington, Delaware

*LAURIE SELBER SILVERSTEIN*
**UNITED STATES BANKRUPTCY JUDGE**

# Exhibit 1

## Settlement Agreement

## SETTLEMENT AGREEMENT AND RELEASE

This binding Agreement memorializes the settlement of the lawsuit filed by Girl Scouts of the United States of America ("GSUSA" or "Girl Scouts") against the Boy Scouts of America ("BSA") (collectively, "the Parties") and captioned *Girl Scouts of the United States of America v. Boy Scouts of America*, United States District Court for the Southern District of New York ("District Court") Case No. 1:18-cv-10287, and United States Court of Appeals for the Second Circuit ("Second Circuit") Docket No. 22-1031 (collectively "the Action"), and related proceedings before the Trademark Trial and Appeal Board Nos. 91247779, 91247375, and 91247071 ("TTAB Opposition Proceedings") and the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"), captioned *In re Boy Scouts of Am.*, Case No. 20-10343 (LSS) (the "BSA Chapter 11 Case").

For avoidance of doubt, nothing in this Agreement shall be read or construed as impacting or commenting on the District Court's findings and rulings in its April 7, 2022 Opinion and Order Granting Defendant's Motion For Summary Judgment (Dkt. No. 259) ("Summary Judgment Order"). The BSA reserves all rights to invoke and/or cite that Summary Judgment Order for any purpose in the future, including on grounds of collateral estoppel, issue preclusion, res judicata, law of the case, precedent, or any other legal doctrine that may be applicable to any future litigation between the BSA (on one hand) and GSUSA or any other party (on the other hand). The BSA and GSUSA each reserve all rights with respect to the Summary Judgment Order.

1. Future Non-Infringement: The BSA agrees (i) not to use "Girl Scouts" to describe its members and more generally not to use "girl" before "scouts," as reflected in its current guidelines and the BSA will instruct its councils and others it authorizes to use its marks to do the same; (ii) not to use "Gold Award" in connection with a BSA award or achievement; and (iii) not to rename its highest rank or award for each BSA program for youth members (i.e. Eagle, Arrow of Light, Summit, and Quartermaster) using the word "Gold" (for avoidance of doubt this excludes existing "Gold" references in connection with these highest ranks, such as the Palms for the Eagle rank). The BSA acknowledges GSUSA's ownership of its registered marks including but not limited to "Girl Scouts" (the combined mark) when used in connection with youth leadership and development services offered exclusively to girls, as well as cookies and commits to non-infringement of all Girl Scouts trademarks and other intellectual property ("Girl Scouts IP") and will instruct its councils to respect GSUSA's IP. Girl Scouts likewise acknowledges the BSA's ownership of its registered marks including but not limited to "Boy Scouts" and commits to non-infringement of all BSA trademarks and other intellectual property ("BSA IP") and will instruct its councils to respect the BSA's IP.

2. BSA Guidelines: The BSA will maintain the guidelines it currently has in place to prevent violations of GSUSA's intellectual property rights and will provide written guidance at least quarterly to its councils on non-infringement of GSUSA's marks and on

1



"do's and don'ts" to avoid confusion with GSUSA to its councils, similar to the Branding "Dos and Don'ts" that the BSA currently distributes.

3. The BSA will not implement any national fundraising programs involving cookies, and will instruct its councils not to do so on a council-wide basis. GSUSA will not implement any national fundraising programs involving popcorn, and will instruct its councils not to do so on a council-wide basis. If packaging for any products sold by either organization will disclose the beneficiary of the proceeds from the sale, it will name the specific organization ("BSA" or "GSUSA") or council, rather than refer only to "scouts" or "scouting".

4. The BSA will continue to use the name "Scouts BSA" for its older youth program and neither the BSA nor GSUSA will change their respective names to just "Scouts" for 10 years. Both Parties reserve any rights they may have in relation to any potential name change to "Scouts" that is not inconsistent with any other provision of this Agreement.

5. Mutual Covenant Not to Sue:

    a. The Parties hereby agree to a mutual covenant not to sue each other over the use of "Scout" alone, provided that the Party using "Scout" is in substantial compliance with all other terms of this Agreement and the April 7, 2022 Summary Judgment Order.

    b. GSUSA further agrees not to object to the use of the phrase "Scout Life" by the BSA for purposes covered by Trademark Classes 16 and 41, and covenants not to sue the BSA over such use. BSA further agrees not to object to the use of the phrase "Girl Scout Life" by GSUSA for purposes covered by Trademark Classes 16 and 41, and covenants not to sue GSUSA over such use.

6. The Parties will cooperate to minimize consumer confusion. Neither will represent that it is affiliated with the other, that it has merged with the other, or anything similar that suggests the other no longer exists. Councils will be instructed to do the same. If a parent contacts the wrong national organization, they will be redirected to the other, and councils also will be instructed regularly in writing to do the same.

7. IP Violation Reporting: The Parties will each designate a specific contact for purposes of reaching out to report violation of the other's IP. Both Parties agree to make prompt, reasonable, good-faith efforts to correct any misuses of the other's IP, including those that happen at the local level, and to provide further guidance and instruction to any local council that engages in such violations.

8. BSA and GSUSA commit upon execution of this Agreement to open channels of communication going forward to attempt to avoid any disputes that might arise escalating to litigation, including a conversation between the Parties' CEOs at least once a year.

2

9. <u>Non-Disparagement:</u> For a period of five (5) years after the date of this Agreement, the Parties agree that they shall not libel, denigrate, ridicule, or disparage the other in any public statement made by the organization or by an officer or executive of the organization, or by any other individual who was authorized by either of the Parties to make such statement.

10. <u>Joint Statement:</u> The Parties shall release a joint statement announcing that the Parties have agreed not to pursue any further litigation, and are moving forward with their respective missions to serve youth.

11. <u>No Vicarious Liability:</u> Neither Party will be held responsible for the acts of their respective councils, such as instructions to councils that are not followed. Any corrective action taken by either organization shall not be used or construed as an admission that any violation or wrongdoing actually occurred, nor as an assumption of liability as to the conduct of non-BSA or non-GSUSA employees or volunteers.

12. <u>Mutual General Release:</u> Each of the Parties agree to a general release of all claims alleged in the Action or relating to the Action. More specifically, and without limiting the generality of the foregoing sentence, Girl Scouts, for itself and on behalf of its predecessors, successors, agents, attorneys, and/or assigns, and all of those claiming by, through, under, or in concert with any of them, fully and unconditionally release and forever discharge the BSA, and each of its present and former parents, subsidiaries, related corporations and business entities, affiliates, partners, joint venturers, predecessors, successors, transferees, licensees, sub-licensees, assigns, vendors, distributors and contractors, and all of each of its present and former agents, employees, officers, directors, shareholders, representatives, insurers, and attorneys from any and all claims, demands, actions, causes of action, suits, rights, losses, debts and expenses, including attorneys' fees and costs actually incurred, of any kind or nature whatsoever alleged in or relating to the Action, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, including but not limited to any claims for damages, costs and attorneys' fees, or any claims in any judicial or United States Patent and Trademark Office ("USPTO") legal proceeding relating to the trademarks asserted or at issue in the Action. The BSA, for itself and on behalf of its predecessors, successors, agents, attorneys, and/or assigns, and all of those claiming by, through, under, or in concert with any of them, fully and unconditionally release and forever discharge GSUSA, and each of its present and former parents, subsidiaries, related corporations and business entities, affiliates, partners, joint venturers, predecessors, successors, transferees, licensees, sub-licensees, assigns, vendors, distributors and contractors, and all of each of its present and former agents, employees, officers, directors, shareholders, representatives, insurers, and attorneys from any and all claims, demands, actions, causes of action, suits, rights, losses, debts and expenses, including attorneys' fees and costs actually incurred, of any kind or nature whatsoever alleged in or relating to the Action, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, including but not limited to any claims for damages, costs and attorneys' fees, or any claims in any judicial or United

3



States Patent and Trademark Office ("USPTO") legal proceeding relating to the trademarks asserted or at issue in the Action.

It is understood and agreed that the General Releases provided in this Section 12 by both Parties are given with knowledge of and the intent to expressly waive all rights and any benefit of the provisions of California Civil Code § 1542 (and any comparable statute, rule of law or comparable provision of any other jurisdiction) which reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

13. <u>Dispute Resolution</u>: The Parties agree that in the event of any dispute, claim, or controversy alleging a breach of the terms of this Agreement, or otherwise arising out of or relating to this Agreement or the subject matter of the Action (subject to the Exclusion in Section 13.g. below), the Parties shall engage in the following process:

   a. The Parties agree that they will attempt in good faith to resolve such dispute, claim, or controversy by direct negotiations between themselves, to be commenced by a written notice from one Party describing the dispute, claim, or controversy to be resolved. The Parties shall bear their own attorneys' fees and costs for any such direct negotiations.

   b. If the dispute, claim, or controversy is not resolved within thirty (30) days of the effective date of delivery of such written notice, the Parties shall initiate and engage in nonbinding mediation with a mutually agreeable mediator, with such mediation to be held either virtually or in Chicago, Illinois (or another location agreed by the Parties). The Parties agree that for any such mediation, the CEOs of each respective organization shall be present. The Parties shall bear their own attorneys' fees and costs for any such mediation.

   c. If the dispute, claim, or controversy is not resolved by mediation within ninety (90) days of the effective date of delivery of the original written notice, the Parties shall engage in binding, confidential arbitration conducted before a mutually agreeable single arbitrator (the "Arbitrator") and in accordance with the then-existing JAMS Comprehensive Rules, with such arbitration to be held either virtually or in Chicago, Illinois (or another location agreed by the Parties).

   d. The Arbitrator shall be required to decide the controversy in accordance with applicable substantive law, however, the Arbitrator shall not have the power to invalidate this Agreement or any part thereof and any Award to that effect will be outside of the powers of the Arbitrator. Any controversy concerning whether a dispute is an arbitrable dispute or as to the interpretation or enforceability of this

4



7/21/22

Section shall be determined by the Arbitrator. The Arbitrator shall be a retired or former judge. All arbitration proceedings shall be held in confidence and all Parties and counsel shall be bound by such requirement of confidentiality. The Parties intend that in any arbitration, discovery between the Parties and third party discovery shall be permitted to the fullest extent permitted by law. The Parties intend that this Agreement to arbitrate be valid, enforceable and irrevocable.

e. The Arbitrator's award will be final, binding and non-appealable, and may be enforced in any applicable federal district court that may have jurisdiction over the parties.

f. In an Arbitration alleging a breach of the terms of this Agreement, or otherwise arising out of or relating to this Agreement or the subject matter of the Action, such as a subsequent proceeding to enforce an Arbitral Award per Section 14(e), the prevailing party (as determined by the Arbitrator) shall be entitled to recover its reasonable attorneys' fees and costs, as well as the expenses of the Arbitrator and expert witnesses.

g. Matters Excluded from Arbitration: The sole exclusion from the Parties' agreement to arbitrate as set forth above shall be for any future trademark opposition, modification, or cancellation proceedings that originate before the U.S. Patent and Trademark Office, including the Trademark Trial and Appeal Board ("TTAB"). Any other claims (whether or not related to a TTAB proceeding) shall be subject to arbitration as set forth above.

14. Governing Law: This Agreement shall be interpreted, construed and enforced in accordance with the laws of the State of New York irrespective of any choice of law provision.

15. Dismissals and Withdrawals:

    a. Within one (1) business day after full execution of this Agreement, the BSA will notify the District Court that the Parties have reached a settlement that will be submitted to the Bankruptcy Court for approval, and request that the District Court stay any action on BSA's pending Motion for Attorneys' Fees pending a decision by the Bankruptcy Court.

    b. Within five (5) days after approval of this Agreement by the Bankruptcy Court, the BSA will withdraw its pending Motion for Attorneys' Fees in the District Court and will not re-file a motion for costs, and will not seek costs, reimbursement of any attorneys' fees, or any other relief from the District Court in the case.

    c. Within five (5) days after approval of this Agreement by the Bankruptcy Court, Girl Scouts will dismiss its Second Circuit Appeal, and will not seek any other

5

7/21/22

form of appeal or other relief from the Second Circuit or District Court in the Action.

   d. Within five (5) days after approval of this Agreement by the Bankruptcy Court, Girl Scouts will withdraw with prejudice its TTAB Opposition Proceedings, and allow the opposed BSA trademark applications to proceed to registration.

   e. Within five (5) days after approval of this Agreement by the Bankruptcy Court, GSUSA will withdraw all objections to confirmation of the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 9696] (as may be amended, modified, or supplemented from time to time), filed in the BSA Chapter 11 Case, including the *Girl Scouts of the United States of America's Objection to Debtors' Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 8679], filed on February 4, 2022.

   f. Within five (5) days after approval of this Agreement by the Bankruptcy Court, Girl Scouts will withdraw its Proof of Claim (assigned claim number 12172) asserted on account of the Action by filing a withdrawal of claim on the docket of the BSA Chapter 11 Case. Omni Agent Solutions, the BSA's claims and noticing agent in the BSA Chapter 11 Case, shall be authorized by Girl Scouts to update the claims register to reflect the withdrawal of the Girl Scouts Proof of Claim in accordance with the terms of this Agreement.

   g. Both Parties expressly waive any right they may have to seek payment, damages, fees or costs from the other in connection with the Action, the TTAB Opposition Proceedings and the BSA Chapter 11 Case.

16. <u>Notices</u>. All notices required hereunder shall be in writing and shall be given by personal delivery or overnight courier service to both (1) the receiving Party's signatory as set forth below, at the then-current address of the Party's headquarters, or at such other address as each Party hereto may direct by notice given in accordance with the terms and conditions of this paragraph, and (2) the receiving Party's lead counsel of record in the Action. All notices shall be deemed effective five (5) business days following personal delivery or deposit with any overnight courier service in accordance with this paragraph.

17. <u>Counterparts</u>. This Agreement may be executed in counterparts and by facsimile or PDF signature, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

18. <u>Bankruptcy Court Approval of Settlement</u>: This Agreement will become effective upon the entry of an order of the Bankruptcy Court approving this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. If this Agreement is not approved by the Bankruptcy Court, this Agreement will be null and void and of no further effect.

6

7/21/22

In the event this Agreement is not approved by the Bankruptcy Court for any reason, the Parties agree to seek and hereby consent to an extension of the 2nd Circuit briefing schedule for the number of days between June 30, 2022 and the date an order rejecting approval of the settlement is entered, and the BSA will notify the District Court of the Bankruptcy Court's decision and request a ruling on its Motion for Attorneys' Fees.

Agreed to and accepted:

| GIRL SCOUTS OF THE UNITED STATES OF AMERICA | BOY SCOUTS OF AMERICA |
|---|---|
| By: *(signature)* | By: *(signature)* |
| Name: SOFIA CHANG | Name: Roger C. Mosby |
| Title: CEO | Title: President & CEO |
| Address: 420 Fifth Avenue, NY, NY 10018 | Address: P.O. Box 152079, Irving, TX 75015-2079 |
| Date: 7-21-2022 | Date: 7-20-22 |